

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NS:TH
F. #2020R00708

271 Cadman Plaza East
Brooklyn, New York 11201

November 4, 2020

By Hand and ECF

The Honorable Steven M. Gold
United States Magistrate Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    United States v. Martin et al.
       Magistrate Docket No. 20-432

Dear Judge Gold:

The government respectfully submits this letter in support of its motion for a permanent order of detention as to the defendant Cory Martin. As further described below, the defendant poses a significant danger to the community and is a flight risk and no combination of conditions of release can assure the safety of the community and his appearance at court proceedings. The government also seeks a substantial bail package with regard to defendant Adelle Anderson to mitigate the risk of flight from prosecution and danger to the community.

I.    Background

The defendants are charged by complaint with conspiring to commit wire fraud, in violation of Title 18, United States Code, Section 1349, and aggravated identity theft, in violation of Title 18, United States Code, Section 1028A. As described in the complaint, the facts of which are incorporated herein by reference, these charges arise out of a scheme to fraudulently obtain several life insurance policies in the name of Brandy Odom, a 26-year-old woman, murder her, and then claim benefits under the life insurance policies. The defendants arranged for premium payments to the life insurance companies by Western Union money orders and by using a debit card in Odom's name. After the defendant Cory Martin murdered Odom by asphyxiation, severed her body into several pieces and disposed of her body parts in a Brooklyn park, the defendant Adelle Anderson, the beneficiary of Odom's life insurance policies, made several attempts to claim benefits under the life insurance policies.

II.     The Bail Reform Act

Under the Bail Reform Act, Title 18, United States Code, Sections 3141, et seq., federal courts "shall" order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]"  18 U.S.C. § 3142(e).  A finding of risk of dangerousness must be supported by clear and convincing evidence and a finding of risk of flight must be supported by a preponderance of the evidence.  See United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis:

(1)     "the nature and circumstances of the offense charged. . .";

(2)     "the weight of the evidence against the person";

(3)     "the history and characteristics of the person, including . . . the person's character, . . . past conduct, . . . [and] criminal history, and record concerning appearance at court proceedings"; and

(4)     "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

18 U.S.C. § 3142(g).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'"  United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

The government is entitled to proceed by proffer in a detention hearing. United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004); United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986).

III.    Elaborate Bail Packages Are Insufficient to
        Protect the Community Against Violent Defendants

The Second Circuit repeatedly has rejected "elaborate" bail packages for dangerous defendants.  See United States v. Ferranti, 66 F.3d 540, 543-44 (2d Cir. 1995) (rejecting $1 million bail package secured by real property); Orena, 986 F.2d at 630-33 (rejecting $3 million bail package secured with real property, home detention, restricted visitation and telephone calls, and electronic monitoring); Colombo, 777 F.2d at 97, 100

2

(rejecting $500,000 bail package secured by real property). The Second Circuit has viewed home detention and electronic monitoring as insufficient to protect the community against dangerous individuals. In <u>United States v. Millan</u>, the Second Circuit held that:

> Home detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills. If the government does not provide staff to monitor compliance extensively, protection of the community would be left largely to the word of [the defendants] that [they] will obey the conditions.

4 F.3d 1039, 1048-49 (2d Cir. 1993) (citations and internal quotations omitted). <u>See also</u> <u>Orena</u>, 986 F.2d at 632 ("electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (internal quotation marks and citations omitted).

Similarly, courts in this district have denied dangerous defendants bail in recognition of the Second Circuit's dim view of the effectiveness of home detention and electronic monitoring. <u>See</u>, <u>e.g.</u>, <u>United States v. Cantarella</u>, 2002 WL 31946862, at *3-4 (E.D.N.Y. 2002) (adopting "principle" of "den[ying] bail to 'dangerous' defendants despite the availability of home detention and electronic surveillance and notwithstanding the value of a defendant's proposed bail package"); <u>United States v. Agnello</u>, 101 F. Supp. 2d 108, 116 (E.D.N.Y. 2000) ("[T]he protection of the community provided by the proposed home detention remains inferior to that provided by confinement in a detention facility[.]"); <u>United States v. Masotto</u>, 811 F. Supp. 878, 884 (E.D.N.Y. 1993) (rejecting bail because "the Second Circuit appears to be saying to us that in the case of 'dangerous defendants' the Bail Reform Act does not contemplate the type of conditions suggested by this Court [including home confinement and electronic monitoring] and that, even if it did, the conditions would not protect the public or the community, given the ease with which many of them may be circumvented").

IV.    <u>Cory Martin Should Be Detained Pending Trial and A Substantial Bail Package Is Warranted for Adelle Anderson</u>

The government respectfully submits that the defendant Cory Martin poses a danger to the community and a significant risk of flight, and therefore should be detained pending trial. As set forth below, the defendant committed a gruesome murder in connection with the charged crimes. The evidence implicating him in the murder and the fact that he is under investigation for such a serious crime demonstrate that he is both a danger to the community and a flight risk. In addition, the Court should not release the defendant Adelle Anderson absent a substantial bail package.

A.    Nature and Circumstances of the Crimes Charged and Evidence of Guilt

The defendants are charged with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349, and aggravated identity theft, in violation of Title 18, United States Code, Section 1028A, which are serious offenses.  The evidence of the defendants' guilt is exceedingly strong.  The government intends to prove the defendants' guilt at trial through, among other sources of evidence, recorded phone calls, emails, text messages, insurance policy applications and associated records, bank records, and the testimony of multiple witnesses.

If convicted at trial, the defendants face a mandatory sentence of two years in addition to up to 20 years' imprisonment for the wire fraud conspiracy, which creates a substantial incentive to flee.  See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987); Martir, 782 F.2d at 1147 (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."); United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

B.    Martin Poses A Danger to the Community and a Risk of Flight

In addition to the charged crimes, the defendant Cory Martin committed the murder of Brandy Odom, an extraordinarily serious crime, in furtherance of the wire fraud conspiracy.[1]

As reflected in thousands of text messages on Martin's cellular phone, Odom was engaged in commercial sex services for Martin in the months prior to her death.  As just one example, on November 27, 2017, Martin sent a text message to Odom detailing, in explicit terms, the sexual acts requested by a potential customer.  Both Odom and Anderson referred to Martin as "daddy" in dozens of text messages.  This term is common in sex trafficking, prostitution and related crimes and reflects the disproportionate power dynamic between the individual performing commercial sexual services and the individual profiting from those services.

Martin and Anderson exchanged text messages about the life insurance policies for Brandy Odom.  For instance, on December 2, 2017, Anderson sent the following text messages to Martin:

Insurance place closed today

---

[1]    The government is investigating this murder as a violation of 18 U.S.C. § 1958 (use of interstate commerce facilities in the commission of murder-for-hire).

4

> And that policy is no longer gone be active if j don't try n do
> something with that bitch this week
> u*

On or about April 6, 2018, at approximately 4:36 p.m., Martin accessed online listings for "Reciprocating Saws" on the Home Depot website and accessed a page for the "Dewalt 12-Amp Corded Reciprocating Saw," described as featuring a "powerful 12 Amp motor designed for heavy-duty applications." At approximately 5:52 p.m. the same day, the Home Depot in Valley Stream, New York recorded the purchase, in cash, of a Dewalt 12-Amp Corded Reciprocating Saw, five saw blades and black contractor bags. At approximately 7:15 p.m. that day, Martin searched YouTube for the following search terms: "how to insert blade for reciprocating saw" and "using reciprocating saw," which he subsequently deleted from his phone.

Video surveillance footage obtained from outside the residence shared by Martin, Anderson and Odom in Queens ("the Residence") indicates that in the early morning of April 8, 2018, two individuals placed black garbage bags into the trunk of Martin's vehicle, after which the vehicle left the Residence.

The torso of Brandy Odom's body was discovered in the evening of April 9, 2018 in Canarsie Park in Brooklyn. On April 10, 2018, three additional garbage bags were identified containing Odom's arms and legs. Odom's arms had been severed at the elbow and both legs had been severed at the hips. The autopsy report indicated that Odom's manner of death was homicidal asphyxia and that the corpse had been posthumously dismembered. The autopsy report further noted that the "edges" of the separation sites were "ragged, irregular, and focally dried."

On April 10, 2018, Martin conducted dozens of Internet searches for news articles, including, "eyewitness news nyc," "breaking news nyc today," "abc live," and "brooklyn12." At approximately 2:52 p.m, Martin accessed an article titled, "Search area expands after dismembered body found in Canarsie Park in Brooklyn." At approximately 3:40 p.m., Martin accessed a website titled "Woman's dismembered body found inside Canarsie Park." At approximately 5:22 p.m., Martin accessed a Twitter post titled "Person walking dog discovers remains of woman in Brooklyn park." On April 11, 2018, Martin searched YouTube for the following search terms: "exclusive interview of mother of girl found in park."

Last week, on October 29, 2020, the defendant Adelle Anderson participated in a voluntary interview with law enforcement, which was video-recorded. During the interview, after waiving her Miranda rights, Anderson stated, in substance and in part, that Cory Martin had committed the murder of Brandy Odom by strangling Odom and that Martin cut up Odom's body with a saw. Anderson further stated that she assisted Martin in disposing of Odom's body at a park on Seaview Avenue in Brooklyn. At several times

during the interview, Anderson expressed fear that the defendant would threaten her physical safety.[2]

Given these facts, the government submits that the defendant Cory Martin poses a serious danger to the community.  The murder of Brandy Odom and the subsequent dismemberment and disposal of her body reflects Martin's utter disregard for human life. The crime was premeditated, gruesome, and motivated by greed.  Moreover, as the Second Circuit has observed, "prior acts of domestic violence" can be relevant to "a determination of dangerousness" because a "willingness to strike loved ones offers probative evidence of tendency to violence and dangerousness towards others."  United States v. Mercedes, 354 F.3d 433, 4337-38 (2d Cir. 2001) (quoting United States v. Quartermaine, 913 F.2d 910, 917 (11th Cir. 1990)).  That Martin is implicated in an extraordinarily serious crime is also relevant to assessing his risk of flight.  As to defendant Adelle Anderson, the Court should not release Anderson absent a substantial bail package to mitigate the risk of danger or flight from prosecution.

V.    Conclusion

For the foregoing reasons, the government respectfully requests that the Court enter a permanent order of detention as to defendant Cory Martin and should not release the defendant Adelle Anderson absent a substantial bail package.

Respectfully submitted,

SETH D. DuCHARME
Acting United States Attorney

By:    _/s/_____
Tanya Hajjar
Assistant U.S. Attorney
(718) 254-6109

cc:    Douglas G. Morris, Esq. (counsel for defendant Cory Martin)
Deborah A. Colson, Esq. (counsel for defendant Adelle Anderson)

---

[2]    NYPD reports reflect a history of domestic violence involving Martin and Anderson.  In January 2018, while living at the Residence, Anderson filed a complaint with the NYPD that Martin had punched her in the face, choked her, and threatened to kill her and her son.