LAW OFFICE OF ANTHONY CECUTTI
217 Broadway, Suite 707
New York, New York 10007
Phone: (212) 619-3730
Cell: (917) 741-1837
Fax: (212) 962-5037
anthonycecutti@gmail.com

January 15, 2024

<u>BY ECF & E-Mail</u>
The Honorable Ann M. Donnelly
United States District Court Judge
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

              Re:     *United States v. Cory Martin*, 20 Cr. 549 (AMD)

Dear Judge Donnelly:

      We represent Cory Martin in the above-referenced matter, having been appointed pursuant to the provisions of the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A.

      Pursuant to the Court's Order dated August 22, 2023, please find our motions *in limine*. For the reasons set forth below, it is respectfully requested that the Court: 1) preclude the Government from introducing photographs of Brandy Odom's autopsy; 2) preclude the Government from introducing testimony from K-9 handler Detective Colecchia, unless it properly qualifies him as an expert witness; 3) examine prospective jurors about explicit and implicit racial bias during *voir dire*; and 4) order that the Government supplement its expert notice dated December 6, 2023, attached hereto as Exhibit "A", to comply with the 2022 amendment to Rule 16 of the Federal Rules of Criminal Procedure.

      **1.**     **The Government Should Be Precluded from Introducing Photographs of Brandy Odom's Autopsy and Body in Canarsie Park**

      In anticipation of the Government's exhibits, we move to preclude the introduction of photographs of Brandy Odom's autopsy and body in Canarsie Park. The photographs are incredibly graphic and disturbing. Because the fact that Ms. Odom's body was dismembered is not in dispute, admission of the photos will serve no purpose other than to inflame the jury.

      In the Government's expert disclosure, it discusses its intent to call Dr. Shana Straub, Medical Examiner with the Office of Chief Medical Examiner ("OCME"), for the

state of Connecticut. Exhibit A at 2. She is expected to testify regarding the autopsy performed on Ms. Odom on or about April 10-12, 2018. Specifically, she will testify about Ms. Odom's cause and manner of death and the nature of injuries sustained. The Government also intends to call Dr. Angela Soler, a forensic anthropologist with the OCME, who is expected to testify regarding Ms. Odom's dismemberment. *Id.* at 2. It is anticipated that Dr. Soler will testify that all four of Ms. Odom's extremities were dismembered and that there are six areas that exhibit dismemberment trauma.

Photographs of Ms. Odom's autopsy and photographs of Ms. Odom's body in Canarsie Park, which simply demonstrate that she was in fact dismembered, are not relevant to the resolution of any disputed point at trial, nor do they otherwise help the jury in a factual determination. Because they are highly prejudicial, these exhibits should be precluded under Federal Rule of Evidence 403. *See United States v. Eyster*, 948 F.2d 1196, 1212 (11th Cir. 1991).

### 2. The Government Should Be Precluded from Introducing Canine Evidence, Unless the Government Properly Qualifies the Canine Handler as an Expert

During a December 22, 2023 phone call with the Government, it represented that it intends to call New York Police Department ("NYPD") Detective and canine ("K-9") handler Frank Colecchia, at trial. The Government expects that he will testify about the contents of an April 2018 incident report, which details how K-9 Timoshenko was requested to the Rosedale house and purportedly alerted to the trunk of a Nissan registered to Adelle Anderson. Despite the nature and content of this testimony, the Government did not include Detective Colecchia in its expert notice (*See* Exhibit A), and it does not plan to seek to qualify Detective Colecchia as an expert.

Federal Rule of Evidence 701, which addresses opinion testimony by lay witnesses, states: "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: … (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Parties may not use Rule 701(c) as an end-run around the reliability requirement of Rule 702, regarding expert witness testimony, and disclosure requirements set forth in Federal Rule of Criminal Procedure 16. Preventing such attempts is the very purpose of Rule 701(c).

We expect that Detective Colecchia's Jencks' Act Material and testimony might include, for example, documents and statements related to his role and responsibilities as a K-9 handler for the NYPD, both his and K-9 Timoshenko's specialized training and certifications as part of the K-9 team, the purpose of the K-9 request at the Rosedale house in April 2018, where the "alerts" occurred and what they indicate, and what those findings meant to the larger investigation into Ms. Odom's homicide.

Whether or not Detective Colecchia's testimony meets the *Daubert* standards for qualification, a premature question we do not address herein, his testimony is based, if not on scientific or technical knowledge, specialized knowledge, which fits squarely within the

2

scope of Rule 702. Statements predicated on "specialized knowledge," fall within the ambit of Rule 702. *Black v. Consol Freightways Corp.*, 219 F. Supp. 2d 243, 2002 U.S. Dist. LEXIS 13691 (E.D.N.Y. 2022). The Government cannot skirt reliability and disclosure requirements through the simple expedient of proffering an expert in lay witness clothing. *See* Fed. R. Evid. 701, Advisory Committee notes. According to the Advisory Committee, what separates expert and lay testimony is that "lay testimony results from a process of reasoning *familiar in everyday life*," whereas "expert testimony results from a process of reasoning *which can be mastered only by specialists in the field*." *Id.* Canine teams are comprised of specialists. Their work cannot and is not done by those outside of the field; it is not even done by officers at the NYPD without specialized knowledge and training.

If Detective Colecchia is not qualified as an expert, the Government should not be permitted to offer his report or opinion(s). This Circuit and others have determined that handler testimony regarding dog-sniff evidence constitutes expert testimony that justifies a *Daubert* hearing. *See e.g., United States v. Hildenbrandt*, 207 F. App'x. 50, 52 (2d. Cir. 2006) ("The decision on whether to admit evidence related to an accelerant-sniffing dog is within the district court's broad discretion and may be admitted so long as it 'rests on a reliable foundation and is relevant to the task at hand.'" (*citing Daubert v. Merrill Dow Pharms. Inc.,* 509 U.S. 579, 597, 113 S. Ct. 2786 (1993))); *United States v. Marji*, 158 F.3d 60, 62-63 (2d Cir. 1998).[1]

If the Government intends to call Detective Colecchia, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, it must promptly disclose: 1) a complete statement of all opinions the Government will elicit from the witness, 2) the bases and reasons for those opinions, 3) the witness's qualifications, including a list of all publications authored in the previous 10 years; and 4) a list of all other cases, during the previous four years, where the witness has testified as an expert at trial. Fed. R. Crim. P. 16(g)(iii). The Government cannot be permitted to call Detective Colecchia as a lay person and elicit testimony regarding his specialized knowledge and training and K-9 Timoshenko's purported alerts. As such, we request immediate expert notice and disclosure related to Detective Colecchia. If the Government does not seek to qualify him as an expert, the Court should preclude his testimony in its entirety.

### 3.  The Court Should Examine Prospective Jurors About Racial Bias

---

[1] *See also United States v. Naranjo-Rosario*, 871 F.3d 86, 104 (1st Cir. 2017) (district court erred in finding that the dog handler was not an expert because the handler testified about dog's reactions, that the dog alerted to different locations, and what those alerts meant in terms of investigation, and the handler received training to teach him to handle the trained dog and interpret the dog's reactions); *United States v. Graham*, 2011 U.S. Dist. LEXIS 39444, at *32 (W.D.N.Y. 2011, No. 08-CR-6259L) (*citing United States v. Hebshie*, 754 F. Supp. 2d 89, 2010 U.S. Dist. LEXIS 120746, 2010 WL 4722040, *23-25 (D. Mass. 2010) (finding counsel ineffective for failing to request *Daubert* hearing concerning evidence about accelerant-sniffing dog) and *United States v. Myers*, 2010 U.S. Dist. LEXIS 67939, 2010 WL 2723196 (S.D.W.Va. 2010) (excluding expert testimony from K-9 handler because government failed to provide sufficient "evidence regarding the general acceptance, standard, or testing of canine searches" and forensic testing "did not support the findings of the canine search")).

3

*Voir dire* is an integral, vital element of a fair trial. Without a meaningful *voir dire*, criminal defendants are deprived of their constitutional right to a fair trial. To ensure a fair trial, an impartial jury, adequately vetted for potential biases and prejudices, must be selected.

The history of racism in the United States, racial attitudes and experiences (or the lack thereof), and social expectations based on racial identity, make race at issue in a criminal trial where the defendant is a person of color, particularly where the defendant is a man of color. Black and brown men who are on trial face the presumption that they are guilty and dangerous. This presumption will be evermore pronounced in this trial; a trial at which Mr. Martin, a young Black man, is accused by the Government of fraudulently taking out life insurance policies on Brandy Odom, then murdering and dismembering her. As such, guilt and dangerousness will be unspoken presumptions that must be explored with prospective jurors during *voir dire*. Accordingly, race must be discussed, and prospective jurors should be examined about racial bias.

Racial bias may be explicit or implicit. "Explicit bias" refers to the attitudes and beliefs we have about a person or group on a conscious level. Of perhaps greater concern in *voir dire* is "implicit bias." "Implicit bias" is described by the Honorable Mark W. Bennett, United States District Court Judge in the Northern District of Iowa, as "the plethora of fears, feelings, perceptions, and stereotypes that lie deep within our subconscious, without our conscious permission or acknowledgment … that we are, for the most part, unaware of … As a result, we unconsciously act on such biases even though we may consciously abhor them."[2] Implicit bias affects prospective jurors' ability to be fair and impartial. It denies a defendant the full benefit of their presumption of innocence. Studies have shown that when evidence is presented against persons of color, jurors are more likely to draw adverse inferences against such defendants. As described, when a man of color is on trial, and facing allegations related to violence, jurors are more likely to presume him guilty and dangerous. As such, their view of the evidence and ability to be fair and impartial is compromised.

Making race salient in *voir dire* can reverse the effects of implicit bias. Through meaningful and constructive *voir dire*, by directly calling attention to racial bias, jurors can reflect and think about their attitudes toward race and the perceptions and stereotypes they have that affect their day-to-day judgment and how they may honestly view the trial evidence.[3] In so doing, jurors can be encouraged and directed to view the trial evidence without the common preconceptions, stereotypes and associations involving race that many make and that we all are susceptible to, especially those related to men of color. More

---

[2] Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149 (2010); Judge Mark Bennett - Addressing Unconscious Implicit Bias in Voir Dire, https://vimeo.com/163018292; Western District of Washington, "Unconscious Bias Video," *available at* https://www.wawd.uscourts.gov/jury/unconscious-bias.

[3] Samuel R. Sommers & Phoebe C. Ellsworth, *How Much Do We Really Know About Race and Juries? A Review of Social Science Theory and Research*, 78 Chi-Kent L. Rev. 997, 1026-27 (2003).

specifically, it will mitigate the impact of the presumption of guilt and dangerousness that is commonly assigned to men of color.

We intend to request that questions related to racial bias be asked during *voir dire*. Additionally, we will ask the Court to instruct the jury on implicit racial bias prior to opening and closing statements and also include an instruction in our requests to charge.[4]

### 4. The Government Should Be Required to Supplement its Expert Notice to Comply with the 2022 Amendment to Rule 16

The Government's expert notice, dated December 6, 2023, must be supplemented with greater specificity and analysis with regard to four of the five experts listed, in order to comply with the 2022 amendment to Federal Rule of Criminal Procedure 16. In its initial expert notice, the Government provided notice that it anticipates calling the following individuals to testify as experts at Mr. Martin's trial: (1) Dr. Shana Straub, Medical Examiner with the OCME; (2) Dr. Angela Soler, forensic anthropologist with the OCME; (3) Bo Lim, a criminalist with the OCME Forensic Biology Laboratory; (4) Special Agent Richard Busick, with the Federal Bureau of Investigation; (5) Detective Cynthia Ramirez, an examiner with the NYPD Latent Print Unit; and (6) Patricia Zippo, a criminalist formerly with the NYPD laboratory. On December 18, 2023, the Government notified us that it no longer intended to call Zippo. On January 4, 2023, it shared a supplemental notice and expert report for Special Agent Busick.

With respect to Dr. Straub, Dr. Soler, Mr. Lim and Detective Ramirez, the Government has not yet fulfilled its disclosure obligations pursuant to Rule 16. The 2022 amendment to Rule 16 now requires that disclosure for each expert witness contain: "a complete statement of all opinions that the government will elicit from the witness in its case-in-chief" and the "bases and reasons for" each of those opinions. The notice has not provided a complete statement of all opinions for any of the experts, nor has it provided the bases for those opinions. It simply notes the general topics on which each expert is expected to testify, and the Bates numbers of relevant reports in previously produced Rule 16 discovery. *See* Exhibit A at 2-3. With respect to Special Agent Busick, while the Government did supplement its initial notice, attached hereto as Exhibit "B", it still evaded the requirement of providing "a complete statement of all opinions," by sharing only broad topics, related to historical cell site and location data analysis. *See* Exhibit B.

Broad and generalized topics cannot be understood to be expert "opinions." *See United States v. Mrabet*, 2023 U.S. Dist. LEXIS 210180, at *5 (E.D.N.Y. Nov. 27, 2023, No. 23-cr-69 (JSR)). As the Supreme Court and the Second Circuit have long made clear in their holdings with respect to expert testimony under Federal Rule of Evidence 702, a statement of an opinion's bases and reasons cannot merely be "the *ipse dixit* of the expert"

---

[4] We will provide proposed instructions which have been used in other districts, including the Northern District of Iowa and the Western District of Washington. Such instructions are aimed to encourage jurors to check in with themselves to examine the impact of implicit racial bias in the evaluation of their decision-making. This will assist in ensuring that Mr. Martin receives a fair trial and that the jury, in evaluating the evidence, is not influenced by racial bias.

5

from experience. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Rather, "an expert opinion requires some explanation as to *how* the expert came to his conclusion and *what* methodologies or evidence substantiate that conclusion." *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006) (emphasis added). Judge Rakoff in *Mrabet*, a criminal case, wrote: "The Government might also consider having its prosecutors take a look at expert witness reports in civil cases, which typically consist of 20 or more pages of specific opinions and detailed statements of the reasons for those opinions and methodologies employed." U.S. Dist. LEXIS 210180, at *7.

Therefore, we respectfully request that the Court require the Government to comply with the 2022 amendment to Rule 16 by further supplementing its expert notice.

5.  **Conclusion**

For the reasons set forth above, it is respectfully requested that the Court: 1) preclude the Government from introducing photographs of Brandy Odom's autopsy; 2) preclude the Government from introducing testimony from K-9 handler Detective Colecchia, unless it properly qualifies him as an expert witness; 3) examine prospective jurors about explicit and implicit racial bias during *voir dire*; and 4) order that the Government supplement its expert notice dated December 6, 2023, attached hereto as Exhibit "A", to comply with the 2022 amendment to Rule 16 of the Federal Rule of Criminal Procedure.

We thank the Court for its consideration.

Respectfully submitted,

/s/

Anthony Cecutti
Kestine Thiele
Kenneth Montgomery
*Attorneys for Cory Martin*

# Exhibit A



U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JRS:TH/EJD/AP  
F. #2020R00708

*271 Cadman Plaza East*  
*Brooklyn, New York 11201*

December 6, 2023

By Email

Anthony Cecutti, Esq.  
Kestine Thiele, Esq.  
217 Broadway, Suite 707  
New York, NY 10007  
anthonycecutti@gmail.com  
kestine@kthielelaw.com

Kenneth J. Montgomery, Esq.  
198 Rogers Avenue  
Brooklyn, NY 11225  
ken@kjmontgomerylaw.com

        Re:    United States v. Cory Martin  
                 Criminal Docket No. 20-549 (AMD)

Dear Counsel:

      Pursuant to Fed. R. Crim. P. 16(a)(1)(G), the government hereby provides notice that it anticipates calling the following individuals to testify as experts at trial: (1) Dr. Shana Straub, Medical Examiner with the Office of Chief Medical Examiner ("OCME"), State of Connecticut; (2) Dr. Angela Soler, forensic anthropologist with the OCME, City of New York; (3) Bo Lim, a criminalist with the OCME Forensic Biology Laboratory, City of New York; (4) Special Agent Richard Busick, with the Federal Bureau of Investigation; (5) Detective Cynthia Ramirez, an examiner with the New York City Police Department ("NYPD") Latent Print Unit; and (6) Patricia Zippo, a criminalist formerly with the NYPD Laboratory.

      Unless otherwise noted below, the government is compiling a complete list of all other cases in which the witnesses have testified as an expert in the previous four years, pursuant to Fed. R. Crim. P. 16(a)(1)(G)(iii), and will supplement this expert disclosure as soon as that information is finalized.

I.   Shana Straub, M.D.

Dr. Shana Straub, M.D., is a Medical Examiner with the Office of Chief Medical Examiner ("OCME") for the state of Connecticut. Dr. Straub was previously employed as a Medical Examiner for the OCME, City of New York. Dr. Straub's areas of expertise include anatomic and forensic pathology. Dr. Straub's curriculum vitae is enclosed as Exhibit A and contains a list of Dr. Straub's publications for the previous 10 years. The government further attaches a complete list of cases in which the witness has testified as an expert in the previous four years as Exhibit B. Dr. Straub is expected to testify regarding the autopsy performed on Brandy Odom on or about April 10-12, 2018. Specifically, Dr. Straub will testify regarding Odom's cause and manner of death and the nature of injuries sustained. The conclusions reached in this regard and bases for those conclusions are set forth in the signed autopsy reports and materials for Brandy Odom under Medical Examiner numbers K18-9095 and K18-9152, previously produced at MARTIN005320-005771 and MARTIN005846-MARTIN006100.

II.   Angela Soler, PhD, D-ABFA

Dr. Soler is employed by the OCME, City of New York, as a forensic anthropologist. Dr. Soler's areas of expertise include forensic anthropology and anthropological trauma. Dr. Soler's curriculum vitae is enclosed as Exhibit C and contains a list of Dr. Soler's publications for the previous 10 years. The government further attaches a complete list of cases in which the witness has testified as an expert in the previous four years as Exhibit D. Dr. Soler is expected to testify regarding the dismemberment of Brandy Odom and the anthropological trauma inflicted on Odom's body. Dr. Soler will testify regarding the body parts examined under Medical Examiner numbers K18-9095 and K18-9152 and the method of dismemberment. The conclusions reached in this regard and bases for those conclusions are set forth in the signed anthropology report for Brandy Odom, previously produced with the autopsy file at MARTIN005320-005771 and MARTIN005846-MARTIN006100. The signed anthropology report is at MARTIN005340-MARTIN5352.

III.   DNA Analysis Expert Witness

Criminalist Bo Lim is a Criminalist Level III with the OCME's Forensic Biology Laboratory. Criminalist Lim is an expert in DNA analysis. Criminalist Lim's curriculum vitae is enclosed as Exhibit E. Mr. Lim is expected to testify regarding DNA analysis conducted during the investigation into the homicide of Brandy Odom. The conclusions reached in this regard and bases for those conclusions are set forth in OCME forensic biology reports FB18-02127, FBS13-0094, FBS18-01551, FBS18-01552, FBS18-01553, FBS18-01554, FBS18-01607, FBS18-01710, FBS18-02274, FBS18-02277, FBS18-02304, and FBS19-03941, which were all previously produced at MARTIN003562-MARTIN005319, MARTIN008684-MARTIN008822, MARTIN010544-MARTIN010671, and MARTIN010760-MARTIN010988. We expect Mr. Lim to provide signature pages for each of the above-listed forensic biology reports, which will be produced when it is completed.

IV. Cell Site Analysis Expert Witness

Special Agent Richard Busick is a special agent with the FBI who is an expert regarding cell phone location data. SA Busick's curriculum vitae is enclosed as Exhibit F. SA Busick has not authored any publications within the last ten years. SA Busick is expected to testify regarding his review of AT&T telephone records for telephone numbers (718) 600-1072 and (347) 729-4723 and his analysis of cell site information contained therein. SA Busick is further expected to testify regarding the conclusions he drew as a result of this analysis and maps he created reflecting data drawn from the AT&T records that he analyzed. The AT&T phone records upon which SA Busick's conclusions are based were previously produced as MARTIN006145-006252 and MARTIN011062. The government will produce a report reflecting SA Busick's opinions and the bases and reasons for them when it is completed.

V. Fingerprint Analysis Expert Witness

Detective Cynthia Ramirez is an examiner with the NYPD Latent Print Section, who will testify regarding the analysis of fingerprints recovered during the course of the investigation into the homicide of Brandy Odom. Detective Ramirez's curriculum vitae is enclosed as Exhibit G. Detective Ramirez has not authored any publications within the last ten years. The government further attaches a complete list of cases in which the witness has testified as an expert in the previous four years as Exhibit H. The government anticipates that Detective Ramirez will testify about the value of fingerprints lifted during the course of the investigation into Odom's homicide, as well as a latent print comparison and resulting exclusions, including to the opinions set forth in documents previously produced in discovery as MARTIN008838-9089 and the September 11, 2023 signed Latent Print Section Report of Re-examination produced on September 22, 2023 as MARTIN010199-010285.[1]

VI. Handwriting Analysis Expert Witness

Criminalist Patricia Zippo is a forensic document examiner in private practice and was previously a criminalist with the NYPD Laboratory, who will testify regarding handwriting analysis that she conducted related to a life insurance policy taken out in Brandy Odom's name and purportedly signed by Brandy Odom. Examiner Zippo's curriculum vitae is enclosed as Exhibit I and contains a list of Examiner Zippo's publications for the previous 10 years. The government further attaches a complete list of cases in which the witness has testified as an expert in the previous four years as Exhibit J. The government expects that Examiner Zippo will testify about conclusions that she was able to draw based on a comparison of Brandy Odom's known writing samples to the purported signature of Brandy Odom on a life insurance policy. The conclusions reached in this regard and bases for those conclusions are set forth in the signed NYPD laboratory report and related documents authored by Examiner Zippo, previously produced as MARTIN008017-MARTIN008091.

---

[1] These are the conclusions originally reached by Detective Patricia Lezcano of the NYPD's Latent Print Section. Because Detective Lezcano is unavailable to testify at the upcoming trial, the government intends to offer testimony regarding this analysis through Detective Ramirez, who is an active member of the NYPD's Latent Print Section.

3

The government reserves the right to call additional and/or substitute expert witnesses. The government will comply with Federal Rule of Criminal Procedure 16(a)(1)(G) and Federal Rules of Evidence 702, 703 and 705, and notify you in a timely fashion of any additional or substitute experts that the government intends to call at trial and provide you with a summary of the experts' opinions.[2]

                                                Very truly yours,

                                                BREON PEACE
                                                United States Attorney

By:   /s/_____
      Tanya Hajjar
      Emily J. Dean
      Andy Palacio
      Assistant U.S. Attorneys
      (718) 254-7000

cc:       Counsel of record (by ECF)
           Clerk of Court (AMD) (by ECF)

---

[2] The government will supplement the following summaries as any additional materials or information become available. The government also may provide notice as to additional witnesses it intends to qualify as expert witnesses.

# Exhibit B

**Notice as to Expert Witness Special Agent Richard Busick**

I.      Statement of Opinions, Bases and Reasons

The following is "a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under [Rule 16](b)(1)(C), and the bases and reasons for them," Fed. R. Crim. P. 16(a)(1)(G)(iii):

Special Agent ("SA") Busick will testify regarding his historical cell site and location data analysis of the records and data previously produced, including for telephone numbers (347) 729-4723 and (718) 600-1072 during periods of time between approximately April 2, 2018 and April 10, 2018. SA Busick will also explain how cellular technology works, including how cell sites, also known as cell towers, operate and how cellular phones connect with the cell sites. SA Busick will discuss how data concerning cellular phone usage is reflected in call detail records retained by service providers. SA Busick will explain how using cell-site technology assists in the locating the approximate location where a cellular phone is located at the time a telephone call is initiated.

SA Busick will further identify the particular areas, times and usage of cellular devices during the period of time analyzed. His current analysis is reflected in the enclosed maps, which is attached hereto as Exhibit A and which is a part of this notice. SA Busick's analysis is ongoing and if any additional maps or amendments to Exhibit A are created, they will be promptly disclosed. SA Busick will also explain the methodology used to create his report. SA Busick will discuss how call detail records with cell site location information provided were used to create cell site maps contained in his report. SA Busick will also explain in detail what the mapping in his report reflects.

The above statements are based on SA Busick's experience and training as a member of the Cellular Analysis Survey Team ("CAST"), which is detailed in his curriculum vitae ("CV"), attached hereto as Exhibit B, as well as his review and analysis of call detail records and cell site data obtained in this matter, a copy of which was previously produced at MARTIN006145-006252 and MARTIN011062.

II.     Qualifications

The following is a list of "the witness's qualifications, including a list of all publications authored in the previous 10 years," Fed. R. Crim. P. 16(a)(1)(G)(iii):

A complete list of SA Busick's "qualifications, including a list of all publications authored in the previous 10 years" is included on his updated CV, which is attached hereto as Exhibit B and incorporated by reference. SA Busick has not authored any publications within the past 10 years.