

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

TH/EJD/AP
F. #2020R00708

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 22, 2024

By ECF

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:  United States v. Cory Martin
        Criminal Docket No. 20-549 (S-1) (AMD)

Dear Judge Donnelly:

  The government respectfully submits this letter in opposition to the defendant Cory Martin's motions in limine. (Martin Ltr., ECF Docket Entry No. 96.) For the reasons set forth below, the defendant's motions are without merit and should be denied.

  I.  Crime Scene and Autopsy Photographs

  The defendant first moves to preclude the introduction of autopsy and crime scene photographs on the grounds that they are "graphic and disturbing." (Martin Ltr. at 1.) But as set forth in the government's motion in limine, ECF Docket Entry No. 95, the Second Circuit has made plain that the fact that crime scene and autopsy "photos might have been graphic does not render them unfairly prejudicial under Rule 403[.]" United States v. Osborne, 739 F. App'x 11, 18 (2d Cir. 2018); see also United States v. Salim, 189 F. Supp. 2d 93, 98 (S.D.N.Y. 2002) ("[T]he graphic or disturbing nature of a photograph alone is not enough to render it inadmissible.").

  The sole authority cited in the defendant's motion, United States v. Eyster, 948 F.2d 1196, 1212 (11th Cir. 1991), is not only out-of-Circuit, but it is entirely inapposite, since the defendants in that case were charged not with murder, but with narcotics trafficking.

For the reasons set forth in the government's motion in limine, the Court should permit the admission of autopsy and crime scene photographs at trial.

II. Detective Benjamin Colecchia

The defendant next moves the Court to require the government to qualify Detective Benjamin Colecchia, a canine handler, as an expert or, in the alternative, to preclude his testimony. (Ltr. at 2-3.) The Court should deny the defendant's motion because Detective Colecchia's anticipated testimony is not expert testimony within the meaning of Rule 702 of the Federal Rules of Evidence and, even if it were, the testimony the government intends to elicit is proper and adequately noticed.

Detective Colecchia is expected to testify that on April 28, 2018, he responded to a residence at 249-45 148th Road in Queens with a cadaver canine, Timoshenko, who is trained and certified in cadaver and human remains detection by state and federal agencies. Specifically, Detective Colecchia is expected to testify that K-9 Timoshenko performed an evidence search outside of the residence and "alerted" to the mid-rear trunk of a Nissan vehicle, thus indicating the scent of decomposing human tissue.[1]

Detective Colecchia's testimony is not properly characterized as expert testimony because the government does not intend to elicit Detective Colecchia's opinion on any subject. "A witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony expert as long as it was based on his investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise." United States v. Rigas, 490 F.3d 208, 224 (2d Cir. 2007) (internal quotation marks and alterations omitted); see Fed. R. Crim. P. 701, Advisory Committee's Notes to 2000 Amendments (explaining that the distinction between lay and expert testimony is that lay testimony "results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field" (citations omitted)). Detective Colecchia's testimony that K-9 Timoshenko, a dog trained in locating the scent of decomposing human tissue, alerted to the trunk of a vehicle, is testimony that plainly "results from a process of

---

[1] The government expects the evidence at trial to establish that the defendant used the Nissan to transport Brandy Odom's body parts to Canarsie Park, where they were discarded.

2

reasoning familiar in everyday life" rather than a process of reasoning that is available to specialists in the field alone.[2]

The testimony of canine handlers is regularly admitted within the Second Circuit and this District "provided that the Government produces all the materials pursuant to 18 U.S.C. § 3500 regarding the canine['s] training and the Government properly lays a foundation for the admissibility of this evidence through the testimony of the respective dog handler[.]" United States v. Demosthene, No. 03 CR. 1409 (VM), 2004 WL 1243607, at *3 (S.D.N.Y. June 4, 2004) (citing United States v. Perez, No. 01-CR-0848, slip op. at 2-3 (S.D.N.Y. Oct. 16, 2002)); United States v. Sierra-Garcia, 760 F. Supp. 252, 268 (E.D.N.Y. 1991) ("The issue [regarding canine's alert to the presence of narcotics on seized currency] is not one of scientific reliability; it is, rather, one of relevance and the weight the jury will give to the reaction of the dog. The defendant will have an opportunity to cross-examine the dog's handler and explore the reliability of such a reaction based upon past experience.").

The defendant has not cited any authority within the Second Circuit in which a court has required the qualification of a canine handler as an expert before permitting the handler's testimony, and courts in this District routinely permit similar testimony as non-expert testimony. See, e.g., United States v. Landaverde, 10-CR-531 (BMC) (E.D.N.Y. Nov. 13, 2019) (admitting testimony of canine handler as non-expert fact witness and testimony of defense canine expert at suppression hearing); United States v. Medina, 17-CR-390 (RJD) (E.D.N.Y. Oct. 2, 2019) (admitting testimony of canine handler as non-expert fact witness and testimony of defense canine expert at suppression hearing); United States v. Black, 13-CR-316 (DLI) (E.D.N.Y. Nov. 2, 2014) (admitting testimony of canine handler as non-expert fact witness at trial); United States v. Rivera et al., 13-CR-149 (KAM) (E.D.N.Y. Sep. 9, 2014) (admitting testimony of canine handler as non-expert fact witness at suppression hearing).[3]

But even if Detective Colecchia's testimony were appropriately characterized as expert testimony, the disclosures that the government has made regarding his qualifications and the bases of his testimony satisfy Rule 16(a)(1)(G). The government has now provided Section 3500 materials for Detective Colecchia, which includes certification

---

[2] The testimony of a canine handler can be analogized to that of a crime scene detective or forensic examiner. Each of these law enforcement witnesses has specialized knowledge and training, but their proffered testimony does not typically "purport to render an opinion based on the application of specialized knowledge to a particular set of facts" or "turn on or require a technical understanding" or expertise. United States v. Marsh, 568 F. App'x 15, 17 (2d Cir. 2014) (concluding that law enforcement agent's testimony regarding extraction of data from a cellular phone and review of contents of the messages was not expert testimony).

[3] The government will provide copies of the transcripts of the examination of the canine handlers at each of these proceedings to the Court or counsel upon request.

3

and other training records relevant to his and K-9 Timoshenko's performance, as well as Detective Colecchia's memo book entries and ESU canine team report from the relevant search. The defendant will therefore have an opportunity to evaluate and challenge, through cross-examination or otherwise, K-9 Timoshenko's reliability.

The defendant's motion should therefore be denied.

### III. Voir Dire and Jury Instruction Requests

The defendant's motion indicates that the defendant "intends to request that questions related to racial bias be asked during voir dire" and that the Court instruct the jury on implicit racial bias prior to opening and closing statements. (Ltr. at 5.) The defendant has not yet proposed any voir dire questions or jury instructions addressing racial bias, and the government respectfully reserves the right to object to any specific proposed questions or instruction at the appropriate time.

### IV. The Sufficiency of the Government's Expert Notices

Lastly, Martin argues that the government's expert notice is deficient as to the five expert witnesses the government intends to call at trial. (Ltr. at 5-6.)

#### A. The Expert Witness Disclosures

On December 6, 2023, the government provided written notice as to each of its expert witnesses (the "December 6 Notice") to the defendant.[4] On January 4, 2023, the government supplemented its expert notice as to Special Agent Richard Busick (the "Busick Supplemental Notice"). As to each witness, the December 6 Notice and the Busick Supplemental Notice identified the anticipated content of his or her testimony, appended the witness's curriculum vitae and a list of the witness's prior testimony, and referred to the expert report previously produced to the defendant which contained the expert's opinions and bases and reasons for those opinions.

The government will make the expert notices and the expert reports referred to therein available for the Court's review under separate cover.

#### 1. Dr. Shana Straub

Dr. Shana Straub, M.D. is a Medical Examiner with the Office of the Chief Medical Examiner ("OCME") for the state of Connecticut, and was previously employed as a Medical Examiner for the OCME, City of New York. As set forth in the December 6 Notice, Dr. Straub will testify regarding the victim's cause and manner of death and the nature of her

---

[4] The December 6 Notice also noticed a sixth expert witness, Criminalist Patricia Zippo, who the government no longer intends to call at trial.

4

injuries, as set forth in the signed autopsy reports and materials under Medical Examiner number K18-9095, previously disclosed to the defendant and Bates-stamped MARTIN005320-005771, as well as the laboratory report under Medical Examiner number K18-9152, previously disclosed to the defendant and Bates-stamped MARTIN005846-MARTIN006100. The December 6 Notice also appended Dr. Straub's curriculum vitae and a list of her prior testimony.

      2.    <u>Dr. Angela Soler</u>

Dr. Angela Soler, PhD, D-ABFA, is employed by the OCME, City of New York, as a forensic anthropologist. As set forth in the December 6 Notice, Dr. Soler will testify as to the opinions set forth in a 13-page signed expert report previously disclosed to the defendant and Bates-stamped MARTIN005340-MARTIN005352. As reflected in the report, Dr. Soler will opine that the remains of the victim can be "skeletally re-associated at the arms/elbows, upper legs and knees indicating that they belong to the same individual" and "exhibit dismemberment trauma at six anatomical locations," which is "consistent with dismemberment via a combination of cutting, chopping, and the use of a mechanically-powered reciprocating blade." The December 6 Notice also appended Dr. Soler's curriculum vitae and a list of her prior testimony.

      3.    <u>Criminalist Bo Lim</u>

Criminalist Bo Lim is a Criminalist Level III with the OCME's Forensic Biology Laboratory. As set forth in the December 6 Notice, Criminalist Lim will testify regarding the DNA analysis conducted during the investigation into the murder of Brandy Odom, and the conclusions set forth in twelve OCME forensic biology reports which were previously disclosed to the defendant. The December 6 Notice also appended Criminalist Lim's curriculum vitae. On January 5, 2024, a list of Criminalist Lim's prior testimony was provided to the defendant.

      4.    <u>Special Agent Richard Busick</u>

As set forth in the signed Busick Supplemental Notice, Agent Busick will testify regarding his analysis of cell-site location data associated with two cellular phones (separately identified as belonging to the defendant and a co-conspirator) during periods of time between approximately April 2, 2018 and April 10, 2018. Agent Busick will testify regarding the "particular areas, times and usage" of the two cellular devices during the period of time analyzed, as set forth in an appended chart. Agent Busick's testimony will establish that the cellular devices were located in geographic proximity to locations of relevance to the case, including the defendant's residence, the residence of the co-conspirator's mother, and Canarsie Park. The Busick Supplemental Notice also includes a list of Agent Busick's prior testimony. Agent Busick's expert report and curriculum vitae were produced with the Busick Supplemental Notice.

### 5. Detective Cynthia Ramirez

Detective Cynthia Ramirez is an examiner with the New York City Police Department Latent Print Section. As set forth in the December 6 Notice, Detective Ramirez will testify regarding the analysis of latent prints recovered during the course of the investigation into the murder of Brandy Odom as reflected in two signed reports of examination which were previously disclosed to the defendant.

B. Analysis

As recently amended, Rule 16(a)(1)(G) requires the government, upon a defendant's request, to disclose to the defendant (1) a "complete statement of all opinions" the government will elicit from the witness in its case-in-chief; (2) "the bases and reasons" for those opinions; (3) "the witness's qualifications, including a list of all publications authored in the previous 10 years;" and (4) "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Fed. R. Crim. P. 16(a)(1)(G)(iii). The rule also provides that "[i]f the government previously provided an [expert report] that contained the information" listed above, "that information may be referred to, rather than repeated, in the expert-witness disclosure." Fed. R. Crim. P. 16(a)(1)(G)(iv).

The defendant's motion makes no specific argument regarding how or why he believes the government's expert notices are deficient beyond the general and conclusory statement that the government has not fulfilled its obligations pursuant to Rule 16. As to each witness, and as expressly contemplated by the Advisory Committee's Notes to the 2022 Amendments to Rule 16, the government has referred to a detailed expert report that comprises a "complete statement of all opinions," as well as the "bases and reasons" for those opinions. See Fed. R. Crim. P. 16, Advisory Committee's Notes to 2022 Amendments (recognizing that the expert's opinions may be contained in a previously disclosed report and accompanying documents). The Advisory Committee also cautioned that the recent amendments "does not require a verbatim recitation of the testimony the expert will give at trial." Id. (noting that criminal cases differ from civil cases "in many significant ways").

The opinions and conclusions set forth in each of the reports referred to in the December 6 Notice and Busick Supplemental Notice amply satisfy the "concerns animating Rule 16's expert disclosure requirements," including the need to "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." United States v. Raniere, No. 18-CR-204 (NGG), 2019 WL 2212639, at *4 (E.D.N.Y. May 22, 2019) (quoting Advisory Committee's Notes to the 1993 Amendment to Rule 16); United States v. Ramsey, No. 21-CR-495 (ARR), 2023 WL 2598682, at *3 (E.D.N.Y. Mar. 22, 2023) (finding that disclosure of cell site expert containing report of "PowerPoint slides showing the cell sector [the defendant's] and CC-1's phones were used in during relevant times to be sufficient under the requirements of Rule 16 as amended); see also Fed. R. Crim. P. 16, Advisory Committee's Notes to 2022

Amendments (recognizing the need to "facilitate trial preparation" and allow "the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed.").

The government is aware of no case in which an autopsy, laboratory, or other report like those referred to in its expert disclosures was deemed to be insufficient expert notice under Rule 16(a)(1)(G), and the defendant has cited none. The government has provided sufficient notice of each of the five expert witnesses it intends to call at trial, and the defendant's motion should be denied.

    Respectfully submitted,

    BREON PEACE
    United States Attorney

By:   /s/_____
    Tanya Hajjar
    Emily J. Dean
    Andy Palacio
    Assistant U.S. Attorneys
    (718) 254-7000

cc:     Counsel of record (by ECF)
       Clerk of Court (AMD) (by ECF)