LAW OFFICE OF ANTHONY CECUTTI
217 Broadway, Suite 707
New York, New York 10007
Phone: (212) 619-3730
Cell: (917) 741-1837
Fax: (212) 962-5037
anthonycecutti@gmail.com

January 22, 2024

**BY ECF & E-Mail**
The Honorable Ann M. Donnelly
United States District Court Judge
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

      Re: *United States v. Cory Martin*, 20 Cr. 549 (AMD)

Dear Judge Donnelly:

  We represent Cory Martin in the above-referenced matter, having been appointed pursuant to the provisions of the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A.

  Pursuant to the Court's Order dated August 22, 2023, please find our motions in opposition to the Government's motions *in limine*, filed January 15, 2024. For the reasons set forth below, it is respectfully requested that the Court deny the Government's motion to introduce evidence concerning Mr. Martin's alleged physical and sexual abuse of CW-1 and Mr. Martin's alleged past participation in financial fraud.

  We respectfully request leave to supplement our response to the Government's motions *in limine* following the full production of Jencks Act Material ("3500").

**I. The Court Should Deny Government Motion *in Limine* To Introduce "Other Acts" Evidence**

  The Government seeks to introduce evidence of the following alleged prior bad acts: (1) the defendant's alleged involvement in the victim's commercial sex work; (2) his physical and sexual abuse of CW-1; and (3) his past participation in financial crimes with Witness-1. For the following reasons, the Court should deny the Government from introducing evidence of (2) and (3).

  *A. Applicable Law*

  In conspiracy cases, "the government may offer proof of acts not included within

the indictment, as long as they are within the scope of the conspiracy." *United States v. Bagaric*, 706 F.2d 42, 64 (2d Cir. 1983). Accordingly, the uncharged criminal activity does not fall within the purview of 404(b) of the Federal Rules of Evidence, "if it arose out of the same transaction or series of transactions as the charged offense, or if it is necessary to complete the story of the crime on trial. *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000). Where "it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." *United States v. Townsend*, 2007 U.S. Dist. LEXIS 32639, 2007 WL 1288597, at *1 (S.D.N.Y. May 1, 2007), *aff'd United States v. Mercado*, 573 F.3d 138 (2d Cir. 2009).

Where uncharged criminal activity does not satisfy the standard described in *Carboni*, to be admissible it must meet the requirements under Rule 404(b), which provides that: "[e]vidence of other crimes, wrong or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In *Huddleston v. United States*, 486 U.S. 681, 691-92 (1988), the Supreme Court discussed that the four prerequisites for admitting other "bad act" evidence are that the evidence must: (i) be offered for a proper purpose as defined in Rule 404(b); (ii) be relevant; (iii) its probative value must outweigh its prejudicial effect under Rule 403; and (iv) the trial court must, upon request, instruct the jury to consider the evidence only for its limited purpose. *See also, United States v. Ortiz*, 857 F.2d 900, 903 (2d Cir. 1988).

While taking an "inclusionary approach" to 404(b) evidence (*see United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)), the Second Circuit has nevertheless repeatedly warned trial courts that, in determining the admissibility of prior bad acts, "caution and judgment are called for." *United States v. Mohel*, 604 F.2d 748, 751 (2d Cir. 1979); *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1970); *see also, United States v. Colon,* 880 F.2d 650, 656 (2d Cir. 1989). Additionally, this "inclusionary" approach "does not invite the government to offer, carte blanche, any prior act of the defendant in the same category of crime." *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) (holding that evidence of prior convictions was "propensity evidence in sheep's clothing"); *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004). Of critical importance, "uncharged" crimes evidence cannot be introduced to show a defendant's criminal propensity. *See Huddleston*, 485 U.S. 681 (1988); *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012).

Should a court find that the first two prongs of *Huddleston* are satisfied, the court must then decide whether the probative value of the "uncharged bad act" evidence is substantially outweighed by the danger of unfair prejudice. As the Supreme Court set forth in *Old Chief v. United States*, 519 U.S. 172 (1997), "unfair prejudice" is an "undue tendency to suggest decision on an improper basis," and invokes, as an example, a jury's "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)." 519 U.S. at 180-81. The Second Circuit has instructed that the probative-prejudice balancing analysis demands

2

"particularly searching, conscientious scrutiny" in the context of prior crimes evidence because such evidence poses a severe risk of unfair prejudice. *McCallum*, 584 F.3d at 476. Indeed, when conducting this balancing, the trial court must remain attentive to the potential for "undermin[ing] the fairness of the trial" with "classic, and powerful, evidence of propensity." *Id.* at 477.

In this case, evidence of "uncharged bad acts" merits "particularly searching, conscientious scrutiny." Such evidence easily lends itself to generalized reasoning about a defendant's criminal propensity and undermines his presumption of innocence. Despite the most careful instructions from the court, jurors are likely to believe that because of such "uncharged bad act" evidence, there is a high probability that the defendant is guilty of the offenses for which he is on trial. *See* 1A Wigmore, Evidence § 58.2 (Tillers rev. 1983) (stating that, where prior crimes evidence is adduced, "[t]he natural and inevitable tendency of the tribunal…is to give excessive weight to the vicious record of crime thus exhibited and either allow it to bear too strongly on the present charge or to take the proof of it as justifying a condemnation, irrespective of the accused's guilt of the present charge").

Accordingly, "uncharged bad acts" should not be admitted unless a trial court has carefully conducted the Rule 403 balancing test required by *Huddleston*. *See, e.g., United States v. Salameh*, 152 F.3d 88, 110 (2d Cir. 1988) ("To avoid acting arbitrarily, the district court must make a 'conscientious assessment' of whether unfair prejudice substantially outweighs probative value." (quoting *United States v. Birney*, 686 F.2d 102, 106 (2d Cir. 1982)); *United States v. Williams*, 596 F.2d 44, 51 (2d Cir. 1979) ("District judges must carefully scrutinize both the basis for the claimed relevance of [prior crimes] evidence and the balance between its probative value and prejudicial effect. The key to a fair trial in such cases is careful determination by the trial judge of both issues, particularly the latter.").

As is true for all evidence, uncharged criminal activity, to be properly admitted, must satisfy Federal Rule of Evidence 403. Rule 403 excludes otherwise relevant evidence if "the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The district court has broad discretion in considering the exclusion of prior bad act evidence pursuant to this rule. *See United States v. Gilan*, 967 F.2d 776, 780 (2d Cir. 1992). In the context of this rule, "[t]he term 'unfair prejudice' as to a criminal defendant speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180 (1997). In other words, "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly though not necessarily, an emotional one." *Id.* (*citing* Advisory Committee Notes on Fed. R. Evid. 403, 28 U.S.C. App. p. 860).

It is axiomatic that propensity – or "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged" – constitutes one such improper basis for admission. *Old Chief*, 519 U.S. at 180; *see also* Fed. R. Evid. 404(b) (prohibiting the admission of evidence of "other crimes, wrongs or

3

acts to prove the character of a person in order to show action in conformity therewith"). Further, the risk that evidence will be so misused is at its highest when the prior bad act is the same, or very similar, to the bad acts alleged against the defendant in the current indictment. *See, e.g., United States v. Gotti,* 399 F. Supp. 2d 417 (S.D.N.Y. 2005) (excluding evidence of uncharged, 20-year-old murder when defendant on trial for double homicide and two attempted murders).

Further, any probative value of such evidence is diminished by the existence of other, less prejudicial means of proving the same point. In *Old Chief*, the Supreme Court specified that once the district court had determined that some evidence of a prior bad act raised the danger of unfair prejudice, the court should then "evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substances as well [because] a judge applying 403 could reasonably apply some discount to the probative value of an item when faced with less risky alternative proof going to the same point." *Id.* at 182-83.

None of the Government's proffered evidence of prior uncharged crimes and bad acts satisfy the first two prongs of the *Huddleston* analysis; they are not offered for any proper purpose delineated in Rule 404(b)(2), and they are not relevant. Alternatively, even assuming *arguendo* that the proffered evidence satisfies the first two *Huddleston* prongs, the probative value of said evidence in each instance is substantially outweighed by prejudicial effect.

### B. The Government's Proffered Evidence that Mr. Martin Physically and Sexually Abused CW-1 Should Be Excluded

The Government argues that evidence of Mr. Martin's alleged physical and sexual abuse of CW-1 is direct evidence of the murder-for-hire scheme and necessary to complete the story of the charged crime. The Government also suggests that it will elicit testimony from CW-1 about Mr. Martin's alleged abuse of CW-1's children and Ms. Odom. However, its muddled motion fails to clearly notice Mr. Martin or the Court of the particular instances of abuse it seeks to admit and their connection to the charged crimes. Whether it seeks to admit evidence of this nature relating to CW-1, CW-1's children, Ms. Odom or all, and through CW-1 testimony or documents, such evidence should be precluded, as it not intrinsic proof of the crimes charged, and any probative value is substantially outweighed by its prejudicial effect. This is nothing more than an attempt to overwhelm the jury with unsubstantiated collateral evidence of bad character to unduly and inappropriately influence them.

First, this is plainly Rule 404(b) evidence, subject to the *Huddleston* analysis. This uncharged criminal activity did not "ar[i]se out of the same transaction or series of transactions as the charged offense," and it is not "necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 44. It is not intrinsic proof of the charged crimes. There is a difference between adding context to the Government's proof of charges and manufacturing a nexus between the charges and alleged domestic violence incidents within a consensual adult relationship that predated and postdated the conspiracy. Evidence about

alleged abuse in Mr. Martin and CW-1's relationship would not help the jury in understanding the charged crime. Quite the contrary, the proffered evidence would lead to a trial-within-a-trial, as Mr. Martin would essentially be required to defend himself against a highly inflammatory second set of accusations. This will lead to juror speculation and confusion of facts and issues. The jury, upon review of this highly prejudicial evidence, will be inclined to convict based upon perceived bad character, violent tendency and criminal propensity. CW-1's extensive involvement in the life insurance scheme and ultimate murder and dismemberment of Mr. Odom is not at issue at this trial. Mr. Martin's involvement is at issue. Any evidence of Mr. Martin's alleged physical and sexual abuse of CW-1 is unnecessary for the jury to determine Mr. Martin's guilt with respect to the charged crimes. As such, this evidence falls squarely within the purview of Rule 404(b) and must come in, if at all, pursuant to an analysis under the prongs of *Huddleston*.

The first prong of *Huddleston* requires that the evidence be offered for a proper purpose under Rule 404(b). The Government makes a number of unimpressive attempts to articulate a proper purpose for this evidence. It argues that the evidence "establish[es] the development of the relationships of trust among the coconspirators," but provides no analysis and cites to cases that miss the mark. ECF No. 95 at 16. In *United States v. Pipola*, 83 F.3d 556 (2d Cir. 1996), the Government sought to admit evidence that the defendant and his coconspirators committed uncharged crimes together, to explain the evolution of their relationships. In *United States v. Everett*, 825 F.2d 658 (2d Cir. 1987) and *United States v. Basciano*, No. 03-CR-929 (NGG) at *4 (E.D.N.Y. Feb. 17, 2006), the "other crimes" evidence was held admissible to corroborate prosecution testimony, as long as the Government could establish a close relationship between the proffered evidence and the evidence to be corroborated. *Id.* at 660. These cases outline entirely different uses of Rule 404(b) evidence. The Government does not seek to admit other acts evidence in Mr. Martin's case to corroborate cooperating witness testimony. Rather, the Government intends to seek the introduction of seemingly unlimited other acts evidence, only by way of CW-1's testimony.

The Government goes on to argue that the evidence is further admissible to establish Mr. Martin's knowledge, intent, motive, opportunity, lack of accident and absence of mistake with respect to the charged offenses, but it does not even try to address how any of those purposes might be achieved with the admission of evidence related to Mr. Martin's alleged abuse of CW-1. ECF No. 95 at 17. That is because it serves no purpose. The connection between the alleged abuse and the ultimate facts the Government must prove beyond a reasonable doubt is far too attenuated, and thereby weakened in probative value. In such a case, the admission of "other crimes" evidence is not only irrelevant to any consequential trial issue, but it is likely to adhere unfairly to Mr. Martin, without the justifying presence of probativeness. Giving CW-1 *carte blanche* to lodge unsubstantiated, unrelated abuse allegations against Mr. Martin will not help the jury make their determination as to Mr. Martin's guilt of the charged conduct.

If the Court were to find that there is some proper purpose for such evidence, it should nevertheless be excluded because it fails the Rule 403 balancing test. No degree of care or precautionary instruction could minimize the immense prejudice of such evidence.

The primary duty of the jury in this case will be to determine whether the evidence describing the acts charged is credible. The explosive allegations concerning uncharged abuse of CW-1, whose involvement in Ms. Odom's murder is not in dispute, do not in any way render her testimony pertaining to the charged crimes more persuasive. Unrelated and inflammatory mitigating arguments around CW-1's criminal liability or relative culpability in this case serve no purpose at Mr. Martin's trial.

This kind of incendiary testimony, portraying Mr. Martin as a violent man, with a hatred of women, will result in the jury drawing impermissible inferences of his bad character and criminal proclivity. At trial, the Government will present its evidence of Mr. Martin's involvement in a wicked and monstrous crime. When the jury decides Mr. Martin's fate, the law requires that its determination be made without the Government tipping the scales with highly prejudicial character evidence.

### C. The Government's Proffered Evidence that Mr. Martin Engaged in Past Financial Fraud with Witness-1 Should Be Excluded

The Government argues that Witness-1 should be permitted to testify about his past participation in "financial fraud" with Mr. Martin. It expects Witness-1 to testify that "he and the defendant had previously engaged in financial fraud, or 'scamming.'" ECF No. 95 at 18. This uncharged evidence is irrelevant, unduly prejudicial and an attempt to demonstrate criminal propensity.

In this very short motion, the Government again fails to state what specific "other acts" evidence it intends to elicit from Witness-1. Without clear details and boundaries, Mr. Martin cannot effectively respond, nor can the Court rule. Although it does not explicitly indicate this, the Government's two-sentence analysis suggests that it does seek to admit this evidence under Rule 404(b), as prior alleged financial fraud is not direct evidence of or inextricably intertwined with the charged crimes. The Government argues that the proper purpose for its admission is to explain Mr. Martin and Witness-1's mutual trust, and that it is "necessary to assess Witness-1's credibility." ECF No. 95 at 18-19. Witness-1 and Mr. Martin are not co-conspirators, and as such, the law it refers to in Section II. B. of its motion, regarding evidence admitted to explain "mutual trust" between co-conspirators, does not apply. Without *any* analysis, the Government awkwardly falls back on the argument that uncorroborated prior criminal conduct by Mr. Martin should be admitted because it demonstrates the relationship and trust between Mr. Martin and the witness. There is no reason that other background evidence on Mr. Martin and Witness-1's extended personal relationship cannot be sufficient to achieve the same purpose.

If Witness-1 is permitted to testify that he and Mr. Martin engaged in financial fraud in the past, the jurors' imaginations would be left to run wild. The world of financial fraud is expansive. Admission of such testimony will lead the jurors to believe that Mr. Martin has a pattern of engaging in financial fraud—that he is a criminally deceptive person. It is highly prejudicial evidence that "easily lends itself to generalized reasoning about [his] criminal propensity and thereby undermines the presumption of innocence." *McCallum*, 584 F.3d at 476. In a case with such high stakes, the risk that "others acts" evidence could

undermine Mr. Martin's presumption of innocence cannot be overstated. Evidence of "uncharged bad acts" merits "particularly searching, conscientious scrutiny," and where Government has failed to specify what other acts evidence it actually seeks to admit and makes little to no effort to provide meaningful analysis as to the evidence's proper purpose, relevance, or probative value, the Court has no choice but to preclude its admission. At trial, the Government will proffer direct evidence relevant to the fraud charged in the indictment. Allowing Witness-1 to testimony about alleged past "scamming" with Mr. Martin will do nothing to help the jury decide a consequential trial issue. It will only serve as improper bad character evidence.

The *Huddleston* analysis and Rule 403 balancing test were designed with that highly prejudicial result in mind. The Government cannot admit propensity evidence in sheep's clothing. The Court should preclude Witness-1 from testifying about alleged past financial fraud with Mr. Martin, as jurors will conclude there is a high probability that Mr. Martin is guilty of the offenses for which he is on trial.

## II.     Conclusion

For the reasons set forth above, it is respectfully requested that the Court deny the Government's motions to introduce evidence concerning Mr. Martin's alleged physical and sexual abuse of CW-1 and his alleged past participation in financial fraud with Witness-1.

We thank the Court for its consideration.

Respectfully submitted,

/s/

Anthony Cecutti
Kestine Thiele
Kenneth Montgomery
*Attorneys for Cory Martin*