1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
2

3    - - - - - - - - - - - - - X

4    UNITED STATES OF AMERICA,   :   20-CR-549(AMD)

5

6        -against-         :   United States Courthouse
                          Brooklyn, New York

7    CORY MARTIN,           :
                          February 12, 2024

8         Defendant.     :   9:00 o'clock a.m.

9    - - - - - - - - - - - - - X

10

11                  TRANSCRIPT OF JURY SELECTION
              BEFORE THE HONORABLE PEGGY KUO
              UNITED STATES MAGISTRATE JUDGE.

12

13    APPEARANCES:

14

15    For the Government:       BREON PEACE
                          United States Attorney
                          BY: EMILY J. DEAN

16                           TANYA HAJJAR
                           ANDRES PALACIO

17                        Assistant United States Attorneys
                        271 Cadman Plaza East

18                        Brooklyn, New York

19

20    For the Defendant:        ANTHONY CECUTTI, ESQ.
                          KESTINE THIELE, ESQ.

21

22    Court Reporter:          Charleane M. Heading
                          225 Cadman Plaza East

23                        Brooklyn, New York
                        (718) 613-2643

24

25    Proceedings recorded by mechanical stenography, transcript
    produced by computer-aided transcription.

1          (In open court; defendant not present.)

2          THE CLERK:  This is criminal cause on trial, Docket

3     20 CR 549, United States versus Corey Martin.  United States

4     Magistrate Judge Peggy Kuo presiding.

5          Please state your appearances, starting with the

6     government.

7          MS. DEAN:  Good morning, Your Honor.  Emily Dean,

8     Tanya Hajjar, Andy Palacio, AUSAs for the government, with

9     Paralegal Specialist Theodore Rader and FBI Special Agent

10    Brigitte Wendel.

11         THE COURT:  Good morning.

12         MS. HAJJAR:  Good morning.

13         MR. CECUTTI:  Good morning, Your Honor.  Anthony

14    Cecutti and Kestine Thiele.  We're also joined by Paralegals

15    Preston Glover and Mayerlin Ulerio.

16         THE COURT:  Good morning.

17         So I understand the defendant is being brought up.

18    I just wanted to make sure everything is in order and we have

19    the jurors, we have a lot of jurors here today.  And so, what

20    I was intending to do is the first 95 will come in here

21    because that's all we can fit.

22         I was going to ask up to question number seven.  I

23    anticipate there will be a lot of people with issues on

24    scheduling because it's such a long trial, as well as the

25    nature of the case.  So we'll take those questions at sidebar

1   and jurors can be excused for cause.

2          If we have more than 25 or 30 jurors excused at that

3   point, I propose calling in another batch of jurors.  I would

4   ask then the first group of jurors to take a half-hour break

5   and then we can do the first questions again for the new

6   jurors so that they are caught up to speed, and then we'll

7   combine the two groups to ask the remainder of the questions.

8          Does this make sense?

9          MS. DEAN:  Yes, Your Honor.

10         MR. CECUTTI:  Yes.

11         THE COURT:  Okay.  Great.

12         And were there issues on the voir dire questions

13  that I sent everybody over the weekend?

14         MS. DEAN:  Not on the questions, Your Honor.  Just a

15  couple of small things.

16         One was with the proposed date of March 15th as

17  being the outer date.

18         THE COURT:  Yes.

19         MS. DEAN:  The parties spoke, and we think that

20  March 11th would be more than enough and would still give us

21  an extra window.  So we wanted to ask you to shorten that

22  somewhat.  And then the government just had one other name to

23  add to the list of witnesses that we're going to ask you to

24  review with the jurors.

25         THE COURT:  Okay.  And who is that?

1    MS. DEAN:  James Richardson, who is an NYPD

2  detective.

3    THE COURT:  Okay.  Thank you.

4    And Mr. Cecutti?

5    MR. CECUTTI:  Nothing with respect to the questions,

6  Your Honor.  And we did confer with the government and agree

7  that March 11th seems like the most appropriate outer date.

8    THE COURT:  Okay.  Excellent.  That should help.

9    MR. CECUTTI:  Okay.

10    THE COURT:  Okay.  Great.  So let's wait for the

11  defendant to arrive.

12    MR. CECUTTI:  Okay.

13    (Pause.)

14    THE COURT:  We're back on the record.  Good morning,

15  Mr. Martin.

16    Mr. Martin, do you need a few moments to talk to

17  your lawyer?  We're about to get the jury.

18    MR. CECUTTI:  Just one moment, Your Honor.

19    (Pause.)

20    THE COURT:  Back on the record for a moment.  I

21  wanted to remind the parties that when we have the sidebar, if

22  you want to excuse the juror for cause, what you should say is

23  "no objection."  That means no objection to the juror being

24  excused for cause.

25    And then, just so Mr. Martin knows, that we spoke,

the lawyers spoke to me very quickly before you came in, to

let me know that they anticipate the trial will go through

March 11th, rather than 15th -- so that should help with the

jury selection -- and then they added, the government added

the name of Detective James Richardson.

MR. CECUTTI:  Your Honor, one other item is we have

reviewed the consent form with Mr. Martin to proceed before

Your Honor.

THE COURT:  Okay.

MR. CECUTTI:  I signed it, he has signed it, and I

believe the government has as well.  I can hand it up.

THE COURT:  You can pass it up.  Thank you very

much.

(Pause.)

(Prospective jurors enter.)

THE COURT:  We seem to be missing two jurors.  So

we're just going to try to locate them, if we can.

How is everyone doing?  Good?  Okay.  Great.

(Pause.)

THE COURT:  All right.  Thank you for your patience,

everyone.  Good morning.

I am Magistrate Judge Peggy Kuo.  We are here today

to select a jury for a trial in the case of United States of

America versus Corey Martin.  It is a criminal case.

First, on behalf of all the judges in the Eastern

District of New York, I thank you for being here today and for
fulfilling one of the most important contributions you can
make to our system of justice, jury service. The right to a
jury trial is guaranteed by the Constitution of the United
States and our system of justice could not work without
contributions of people like you, who take time out of your
lives to sit here and serve on a jury.

The system of justice we have is pretty amazing,
when you think about it. We entrust important decisions, such
as whether a person is guilty or not of criminal charges, not
to a single person, such as a dictator or an emperor or king.
Rather, such important decisions are entrusted to jurors of
people from the community, who are sworn to be fair and
impartial, and will listen to the evidence and render a fair
verdict. So it is not just a responsibility of citizenship
but a right and also, I hope, an honor.

So I thank you, again, for your service here this
morning and, if you are picked to serve on this jury, for the
service that you'll be rendering for the duration of the
trial.

I'm going to have you sworn in as prospective jurors
because I'll be asking you some questions and I need for your
answers to be under oath. So everybody please stand up and
raise your right hand.

THE CLERK: You can respond with "yes" or "I do."

1        (The panel of prospective jurors was sworn/affirmed
2    by the clerk of the court.)
3        THE COURT:  All right.  Thank you.  Please be
4    seated.
5        So now that you have taken an oath to tell the
6    truth, you should answer the questions truthfully; and I hope
7    that you will also answer your questions openly and
8    forthrightly so that we have a better sense of the things that
9    we'll be seeking answers to.
10        Your answers will help us select a group of 12
11    jurors and four alternates.  The information that we get will
12    help determine whether any jurors should be excused for cause,
13    that is, that there's a good reason that you can be excused
14    from this jury, and then also because the parties each have
15    the right to excuse jurors for which they don't need to give a
16    reason at all.  And so for that, they need to have answers to
17    certain questions that we'll be asking, that I'll be asking.
18        Some of these questions may be personal, and so we
19    will take answers here at the side so that the other jurors
20    can't hear your answers; and we hope that will encourage you
21    to be more open.  I apologize in advance because I recognize
22    that some of these questions may be quite personal, and so we
23    try to make it as comfortable for you as possible.
24        When we're at sidebar, you'll see we have a court
25    reporter taking down all the things that we're saying today.

1   When we're at sidebar, the court reporter will join us.

2   Everything will be taken down.  It's just that people in the

3   jury, in the courtroom will not hear those answers at that

4   moment.

5         So let me give you a couple of tips on answering

6   questions.

7         So the first thing is you each will have a number.

8   That's where you're seated and corresponds to your jury

9   number.  So when I ask a question, if you have a yes answer,

10   please raise your number up high so that we can take down all

11   the people who said yes to that particular question, and then

12   we'll gather up the answers and then have you tell us here at

13   the sidebar what your answer is.

14         So let me start right away.  So the first question

15   is I'm going to introduce you to the parties in this case.

16   The attorneys representing the prosecution are Assistant

17   United States Attorneys.

18         Ms. Dean, will you introduce those with you at

19   counsel table.

20         MS. DEAN:  Thank you, Your Honor.  Good morning,

21   everyone.  I'm Emily Dean.  I'm an Assistant United States

22   Attorney in the Eastern District.  With me are AUSAs Tanya

23   Hajjar, Andy Palacio.  Next to Mr. Palacio is Paralegal

24   Specialist Theodore Rader.  At the end of the table is FBI

25   Special Agent Brigitte Wendel.

1          THE COURT:  Good morning.  Does anybody recognize

2     any of these individuals?  All right.

3          Please be seated.

4          The defendant is Corey Martin; and, Mr. Cecutti,

5     will you introduce those at the table with you.

6          MR. CECUTTI:  Good morning, everyone.  My name is

7     Anthony Cecutti, and this is our client, Corey Martin.

8          I'm also joined by co-counsel Kestine Thiele and

9     Paralegals Preston Glover and Mayerlin Ulerio.

10          THE COURT:  Does anybody recognize any of these

11     individuals?

12          All right.  Thank you.

13          Let me introduce you to some of the courtroom staff.

14     My courtroom Deputy Clerk Ryan O'Neill-Berven.  You probably

15     met him already.  And assisting him today are Meghan Liu and

16     Nathan Shi, who are law clerks.

17          Does anybody recognize any of these individual?

18          All right.  The judge presiding over this will not

19     be me.  It will be District Judge Ann M. Donnelly.  Her

20     courtroom deputy is Donna Green, and her law clerks are Jared

21     Allen and Haley Amster.

22          Does anybody know any of those individuals?

23          All right.  Does anybody here have a special

24     disability or a physical problem that make it difficult to sit

25     as a juror in this case?  An example might be a hearing loss

1  or vision loss problem or you need to take medication or

2  anything of that nature.

3          All right.  Does anybody have any difficulty

4  speaking, reading, or understanding the English language?

5          All right.  Juror No. 3.

6          Now, I'm going to talk about how long this trial is

7  likely to last.  There are, of course, no fixed timetables for

8  trials.  No one can predict exactly how long it will take, but

9  the parties' best estimate is that the trial will last for

10  four weeks.

11          Now, after the jury selection, we will take a break

12  and the trial itself will not start until next Tuesday,

13  February 20th.  That's the day after President's Day.  And

14  then it's expected to last until approximately Monday,

15  March 11.  So that's the estimated time of the trial.

16          The Court will sit Monday through Friday, from 9:30

17  to about 5:30.  We will take short breaks in the morning,

18  obviously for lunch, and then in the afternoon.  You'll need

19  to make sure that you're here on time or in advance of 9:30.

20  Judge Donnelly will give you an exact time for when you need

21  to be here so that people are not kept waiting.

22          So let me tell you that obviously trial creates

23  inconvenience for everyone, and it's difficult for everybody

24  to take time out of their lives.  The lawyers will be taking,

25  and The Court of course will also be making sure that things

1  proceed as expeditiously and efficiently as possible so that

2  things don't take more time than is necessary.  The reason we

3  do this is not just because we're good hearted, even though we

4  are, but it's because this is an extraordinarily important

5  case for everyone involved.

6         Both sides are seeking a fair cross section of the

7  community to consider the case, and that includes people who

8  work and people who are busy with other important

9  responsibilities.  So because of this, I cannot excuse people

10 simply because the length of the trial would be inconvenient

11 for you or for your employer or your family or others.  So

12 you're required to serve unless there's some truly

13 extraordinary or unavoidable situation or hardship that

14 prevents it.

15        So based on that, is there anybody who, because of

16 the length of the trial or the trial schedule, believes that

17 he or she should be excused from service?  All right.

18        So let's see.  Two -- when I call your number out,

19 can you put your number down.  2, 4, 5, 8, 15, 16, 17, 18, 22,

20 30, 31, 34, 37, 40, 41, 42, 44, 45, 48, 49, 50, 51, 55, 56,

21 57, 58, 59, 62, 64, 65, 66, 68, 71, 72, 81, 84, 85.  I missed

22 75.  Okay.  Great.  Thank you.

23        So now I want to ask if anybody has any familiarity

24 with this case.  I want you to understand that nothing I say

25 today regarding the description of the case is evidence.  The

1  evidence that you'll consider, if you're selected as a juror,

2  will only come from the trial testimony of witnesses and from

3  exhibits that are admitted into evidence.

4          I'll now briefly summarize the charges in the

5  indictment.  My description of the charge today is only

6  intended to assist you in considering whether you can sit as a

7  fair and impartial juror in this action.  Again, it is not

8  evidence.

9          Mr. Martin has pleaded not guilty to the charges in

10  the indictment and has thus raised issues of fact that the

11  jury will have to determine.

12          Mr. Martin has been charged with five counts.  These

13  are:  Murder for hire, murder for hire conspiracy, wire fraud

14  conspiracy, aggravated identity theft, and fraudulent use of

15  identification.

16          The indictment alleges that between March 2017 and

17  April 2018, the defendant murdered and dismembered Brandy Odom

18  to collect proceeds from life insurance policies that he

19  fraudulently obtained through the unauthorized use of

20  Ms. Odom's personal identifying information.  Mr. Martin has

21  denied these charges.

22          Has anyone heard or read anything about this case?

23          All right.  Because of the nature of the charges,

24  some of the evidence will involve violence, prostitution,

25  domestic abuse, and drug use.  In addition, some of the

1  evidence in the case will include testimony and images

2  relating to the murder and dismemberment of the victim,

3  including autopsy and/or crime scene photos.

4          Is there anything about the nature of this type of

5  evidence that might affect your ability to be fair and

6  impartial in this case?

7          All right.  So let's take a pause here because there

8  were so many answers to the scheduling question, and I'll hear

9  from each of you in order.  Ryan will have you line up here

10  and so we can take your answers at the bench.  All right?  So

11  if the lawyers can meet me here up that sidebar, we will speak

12  there.

13          (The following occurred at sidebar; prospective

14  juror joins.)

15          THE COURT:  You're Judith Healy?

16          PROSPECTIVE JUROR:  Yes.

17          THE COURT:  You have a scheduling issue?

18          PROSPECTIVE JUROR:  Yes.  I'm traveling to Nashville

19  in two weeks for a wedding.

20          THE COURT:  During the week?

21          PROSPECTIVE JUROR:  Yes.  Tuesday through Friday.

22  Saturday is the wedding.

23          THE COURT:  Any objection?

24          MS. DEAN:  No objection.

25          MR. CECUTTI:  No objection.

1        THE COURT:  Okay.  You're excused.  Go back to the

2   jury room on the second floor.

3        PROSPECTIVE JUROR:  Thank you.

4        (Prospective juror excused.)

5        (Prospective juror joins.)

6        THE COURT:  Hello, Juror No. 3.  Andrea Ross?

7        THE PROSPECTIVE JUROR:  Yes.

8        THE COURT:  You said you have an issue with

9   language?

10        PROSPECTIVE JUROR:  I'm speaking, but I have a hard

11   time understand some of the language, what used here.

12        THE COURT:  Okay.  Your English sounds fine.

13        PROSPECTIVE JUROR:  Well, actually, I don't

14   understand the last, this question.  There's a couple words I

15   don't understand.

16        THE COURT:  What kind of work do you do?

17        PROSPECTIVE JUROR:  In part --

18        THE COURT:  What kind of work do you do?

19        PROSPECTIVE JUROR:  I'm a server in Carvel.

20        THE COURT:  Carvel?

21        PROSPECTIVE JUROR:  Yes.

22        THE COURT:  Ice cream?

23        PROSPECTIVE JUROR:  Yes.

24        THE COURT:  So do you use English when you're

25   working?

1          PROSPECTIVE JUROR:  I do, but I think it's different

2     than here.

3          THE COURT:  Well, the lawyers will try very hard to

4     speak clearly for you.  Did you understand everything that

5     I've been saying today?

6          PROSPECTIVE JUROR:  Most of it, yes.

7          THE COURT:  Yes?

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  So and you were pointing to something on

10    the paper you don't understand.

11         PROSPECTIVE JUROR:  What's this?

12         THE COURT:  Impartial verdict.

13         MS. HAJJAR:  No objection.

14         MR. CECUTTI:  No objection.

15         THE COURT:  All right.  Thank you.  So go back to

16    the second floor.  Okay?

17         PROSPECTIVE JUROR:  Okay.

18         THE COURT:  Turn over the number and go back to the

19    second floor.

20         (Prospective juror excused.)

21         (Prospective juror joins.)

22         THE COURT:  Good morning.  Frank Biazzo?

23         PROSPECTIVE JUROR:  Yes.

24         THE COURT:  You said you have a scheduling issue.

25         PROSPECTIVE JUROR:  I have travel plans next week.

1  Monday, Tuesday, Wednesday.

2          THE COURT:  And where are you going?

3          PROSPECTIVE JUROR:  Lake George.

4          THE COURT:  And that's something you can't change?

5          PROSPECTIVE JUROR:  Well, if I cancel the room, it's

6  non-refundable because it's pretty close to the date.

7          THE COURT:  You already have reservations?

8          PROSPECTIVE JUROR:  Yes.

9          MS. DEAN:  No objection.

10          MR. CECUTTI:  No objection.

11          THE COURT:  All right.  You're excused.  Go back to

12  the jury room on the second floor.

13          PROSPECTIVE JUROR:  Sure.

14          (Prospective juror excused.)

15          (Prospective juror joins.)

16          THE COURT:  Hi.  Ms. Sigal?

17          PROSPECTIVE JUROR:  Yes.

18          THE COURT:  You have a scheduling issue?

19          PROSPECTIVE JUROR:  It feels incredibly selfish, but

20  I canceled a trip to Rome on Tuesday to do this; and then, in

21  March my adult children, a resident, he's a doctor, and one is

22  in med school, we are all going to Disney in March.  So I

23  never get to see them.  So to miss that would really break my

24  heart.

25          THE COURT:  You were able to reschedule the trip to

1  Rome?

2          PROSPECTIVE JUROR:  It doesn't matter.  Personal

3  problems, but Rome will still be there, but the kids can't

4  always be there.  So that's why.  It seems so this seems

5  important.

6          THE COURT:  They have to?

7          PROSPECTIVE JUROR:  I can't reschedule.  The kids,

8  when they have a break.  My older guy's getting married and

9  it's going to be hard.

10          MS. DEAN:  Can we inquire about the dates, the

11  march dates?

12          PROSPECTIVE JUROR:  Well, here's the problem.  I

13  don't have my cell phone or my watch with me.  I think I would

14  have it emblazoned in my mind, but I think it's around the

15  17th.

16          THE COURT:  We're done by then.

17          PROSPECTIVE JUROR:  But not necessarily, right?

18          THE COURT:  We'll be done.

19          PROSPECTIVE JUROR:  You'll be done?  Promise?

20          THE COURT:  Yes.

21          PROSPECTIVE JUROR:  I will be balling my eyes out.

22          THE COURT:  The 17th is safe because we'll be done

23  by the 11th.  If it runs over, it will be the 12th.

24          PROSPECTIVE JUROR:  The 17th, what's that, Saturday,

25  that Sunday?  Do you know what the Sunday?

1          THE COURT:  Sunday is the 17th.

2          PROSPECTIVE JUROR:  That's it.

3          THE COURT:  Then you're set.

4          PROSPECTIVE JUROR:  That would kill me.

5          (Prospective juror leaves.)

6          (Prospective juror joins.)

7          THE COURT:  Hello.  You're Marcelo?

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Tell me about your scheduling issue.

10         PROSPECTIVE JUROR:  It's the school vacation.  I

11    have a ten-year-old I have to watch.

12         THE COURT:  And what happens, next week, right?

13         PROSPECTIVE JUROR:  It's starting the 19th all the

14    way to, for like the whole week.

15         THE COURT:  Okay.  And what issue does that present

16    for you?

17         PROSPECTIVE JUROR:  I have, somebody has to watch my

18    son.  I have a ten-year-old kid.

19         THE COURT:  And you don't have other ways of

20    babysitting?

21         PROSPECTIVE JUROR:  No.  My wife has to work.

22         THE COURT:  Okay.  And are you -- okay.  So because

23    of the vacation?

24         PROSPECTIVE JUROR:  Yes, because of the vacation, I

25    don't have, my parents moved to Maryland.

1        THE COURT:  Okay.  And you couldn't get a --

2        PROSPECTIVE JUROR:  No.

3        THE COURT:  -- friend or somebody to baby-sit?

4        PROSPECTIVE JUROR:  No.

5        MS. DEAN:  No objection.

6        MR. CECUTTI:  No objection.

7        THE COURT:  All right.  So you're excused.  Turn in

8   your number, go to the second floor jury room, and they'll

9   pick you for another jury.

10        (Prospective juror excused.)

11        (Prospective juror joins.)

12        THE COURT:  Hello.  Juror No. 15.

13        PROSPECTIVE JUROR:  I have travel plans.

14        THE COURT:  Kimberly?

15        PROSPECTIVE JUROR:  Yes.  I'm sorry.  I have travel

16   plans from the 19th to the 23rd.  Otherwise I would be

17   available the following week.

18        THE COURT:  Where are you going?

19        PROSPECTIVE JUROR:  Florida.

20        THE COURT:  And do you already have tickets?

21        PROSPECTIVE JUROR:  Yes.  I have copies.

22        THE COURT:  Okay.

23        MS. DEAN:  No objection.

24        MR. CECUTTI:  No objection.

25        THE COURT:  So you're excused.  Go back to the

1  second floor jury room and see if there's another jury.

2         PROSPECTIVE JUROR:  Thank you.  Thank you.  Good

3  luck.

4         (Prospective juror excused.)

5         (Prospective juror joins.)

6         THE COURT:  Good morning.

7         PROSPECTIVE JUROR:  Good morning.

8         THE COURT:  Shari Durden-McCain?

9         PROSPECTIVE JUROR:  Yes.

10        THE COURT:  Tell me about your scheduling issue.

11        PROSPECTIVE JUROR:  On the 20th I have a doctor's

12 appointment, and on March 14th I have vacation scheduled.  I

13 start a trip.

14        THE COURT:  March 14th we should be done because

15 March 11th is the last day.

16        PROSPECTIVE JUROR:  I heard you say it might run

17 over.  So that's why I said that.

18        THE COURT:  Yes.  The 20th, for the doctor's

19 appointment, what time is that?

20        PROSPECTIVE JUROR:  11:45.

21        THE COURT:  And that's not, is that something that

22 can be rescheduled maybe?

23        PROSPECTIVE JUROR:  I can try to reschedule but

24 they're sending me to, I go to Advantage Care.  My facility

25 doesn't have the doctor specialist there.  So they're sending

1   me to another location with specialists.

2          THE COURT:  Okay.

3          PROSPECTIVE JUROR:  But I'll try to see if I can.

4          THE COURT:  So why don't we try that.  I'll keep you

5   on the jury for now and then let's see what happens.  Okay?

6          PROSPECTIVE JUROR:  Okay.

7          THE COURT:  Thank you.  Please have a seat.

8          (Prospective juror leaves.)

9          (Prospective juror joins.)

10          THE COURT:  Good morning.  Michael Barbosa?

11          PROSPECTIVE JUROR:  Yes.

12          THE COURT:  Tell us about your scheduling issue.

13          PROSPECTIVE JUROR:  I have a pregnant wife well into

14   her third trimester, and so if she does give birth, I'm not

15   going to be able to come.  So even if she doesn't give birth,

16   she needs a lot of help.  It takes two hours to drive here.

17          MR. CECUTTI:  No objection.

18          MS. DEAN:  No objection.

19          THE COURT:  You're excused.  Why don't you go to the

20   second floor jury room.

21          PROSPECTIVE JUROR:  Thank you.

22          (Prospective juror excused.)

23          (Prospective juror joins.)

24          PROSPECTIVE JUROR:  Hello.

25          THE COURT:  Shutima?

1          PROSPECTIVE JUROR:  Yes, that's correct.  So have I

2     a snowboarding trip from March 20th to March 29th.

3          THE COURT:  Okay.  We'll be done by them.

4          PROSPECTIVE JUROR:  Okay.

5          THE COURT:  So by March 11th we should be done.

6          PROSPECTIVE JUROR:  Okay.

7          THE COURT:  Did you mean February?

8          PROSPECTIVE JUROR:  I meant February.  Sorry.  I was

9     like next week.

10         THE COURT:  So that's next week.

11         PROSPECTIVE JUROR:  Yes.

12         THE COURT:  Where are you going?

13         PROSPECTIVE JUROR:  Colorado.

14         THE COURT:  Is that something that can be

15    rescheduled?  You have tickets?

16         PROSPECTIVE JUROR:  I have tickets.

17         MR. CECUTTI:  No objection.

18         MS. DEAN:  No objection.

19         THE COURT:  Go back to the jury room.  You're

20    excused.  Maybe there's a trial you can sit on.

21         (Prospective juror excused.)

22         (Prospective juror joins.)

23         THE COURT:  Good morning.  Maureen Russell?

24         PROSPECTIVE JUROR:  Good morning.

25         THE COURT:  How are you doing?

1          PROSPECTIVE JUROR:  I'm good.

2          THE COURT:  Tell us about your schedule.

3          PROSPECTIVE JUROR:  I have a doctor's appointment.

4   I have two doctors' appointments.

5          THE COURT:  When?

6          PROSPECTIVE JUROR:  One on the 27th, one on the

7   19th, and one on the 14th.

8          THE COURT:  And are these things that can be

9   rescheduled?

10         PROSPECTIVE JUROR:  I have to call and find out.

11  The reason, I waited three months for the appointments.  So

12  these I was given before the case.  So I have to call and find

13  out if I can change it.

14         THE COURT:  Okay.

15         PROSPECTIVE JUROR:  I mentioned that I was here.

16         THE COURT:  I'm sorry?

17         PROSPECTIVE JUROR:  Melissa mentioned say you have a

18  doctor's appointment, let them know.

19         THE COURT:  Okay.  Thank you.  I appreciate it.  So

20  you thought that -- would it be a hardship for you to try to

21  reschedule it?

22         PROSPECTIVE JUROR:  Not necessarily.

23         THE COURT:  Would you be willing to try?

24         PROSPECTIVE JUROR:  I will try, yes.  Let me try.

25         THE COURT:  Okay.  So why don't we see what happens.

1        PROSPECTIVE JUROR:  Okay.

2        THE COURT:  So I won't excuse you at this moment,

3   but if it, as things go on making, during, if we take a break

4   at lunch, you can see if those could be rescheduled and if

5   they can, you can reschedule.  If you can't reschedule it let

6   me know.

7        PROSPECTIVE JUROR:  I might mean to get some of them

8   today and maybe tomorrow.  So is that okay?

9        THE COURT:  Well --

10       MS. DEAN:  No objection.

11       THE COURT:  Then in that case, we'll excuse you.

12       MR. CECUTTI:  No objection.

13       PROSPECTIVE JUROR:  Thank you.

14       THE COURT:  Go back to the jury room.  Okay.

15       (Prospective juror excused.)

16       (Prospective juror joins.)

17       THE COURT:  Hello.  Ms. Cheung?

18       PROSPECTIVE JUROR:  Yes.

19       THE COURT:  What's your scheduling issue?

20       PROSPECTIVE JUROR:  I'm traveling on March 5th.

21       THE COURT:  Where are you going?

22       PROSPECTIVE JUROR:  California.

23       THE COURT:  And is that something that you have

24   tickets for already?

25       PROSPECTIVE JUROR:  I'm sorry?

1          THE COURT:  Do you have airplane tickets already for

2    that trip?

3          PROSPECTIVE JUROR:  No, not yet.

4          THE COURT:  So is it something that can be

5    rescheduled?

6          PROSPECTIVE JUROR:  No.

7          THE COURT:  What's happening in California?

8          PROSPECTIVE JUROR:  For work.

9          THE COURT:  For work.  Okay.  And could your

10   employer reschedule that?

11         PROSPECTIVE JUROR:  It's a summit.

12         THE COURT:  It's a summit.

13         PROSPECTIVE JUROR:  It's like a global summit.

14         THE COURT:  Oh, I see.

15         MR. CECUTTI:  No objection.

16         MS. DEAN:  No objection.

17         THE COURT:  Okay.  You're excused.  Go back to the

18   jury room on the second floor.  Maybe there's a trial you can

19   sit on.

20         PROSPECTIVE JUROR:  To the window?

21         THE CLERK:  Yes, to the second floor.

22         (Prospective juror excused.)

23         (Prospective juror joins.)

24         THE COURT:  You're Karina Lew?

25         PROSPECTIVE JUROR:  Yes.  I'm going out of the

1  country on March 16th.  So I don't know if this trial will be

2  exactly four week weeks or it will go over.

3             THE COURT:  No.  I think we can promise that it

4  won't be.

5             PROSPECTIVE JUROR:  Okay.

6             THE COURT:  So you're okay?

7             PROSPECTIVE JUROR:  Yes.  That was it.

8             THE COURT:  Okay.

9             (Prospective juror leaves.)

10            (Prospective juror joins.)

11            THE COURT:  Juror 34, Jesse Abrams?

12            PROSPECTIVE JUROR:  Yes.

13            THE COURT:  Abrahams.

14            PROSPECTIVE JUROR:  Yes.  So the trial is supposed

15  to start on Tuesday.  I have a flight scheduled next week that

16  would span being on the trial.

17            THE COURT:  What day are you leaving?

18            PROSPECTIVE JUROR:  Monday.

19            THE COURT:  And then when are you coming back?

20            PROSPECTIVE JUROR:  Wednesday.

21            THE COURT:  Where are you going?

22            PROSPECTIVE JUROR:  Chicago.

23            THE COURT:  That's not anything that can be

24  rescheduled?

25            PROSPECTIVE JUROR:  No.

1          MR. CECUTTI:  No objection.

2          MS. DEAN:  No objection.

3          THE COURT:  Okay.  You're excused.  Go back to the

4     second floor jury room and maybe there's a trial this week

5     that you can sit on.

6          PROSPECTIVE JUROR:  Thank you.

7          (Prospective juror excused.)

8          (Prospective juror joins.)

9          THE COURT:  Good morning.  You're juror number 37,

10    Crystal Thompson?

11         PROSPECTIVE JUROR:  Yes.  Hey.  So I left, I just

12    left my husband of 25 years, who was abusive, and he took all

13    my money; and I just got a big job and I will not be able to

14    take that job if I stay here.  So I just got a Broadway show,

15    very excited.

16         THE COURT:  Oh, my gosh.

17         PROSPECTIVE JUROR:  But I'm not going to be able to

18    do it if I stay here.  And also he looks like the guy at the

19    table.  My ex-husband looks like the guy at the table there.

20         THE COURT:  Are you performing in the Broadway show?

21         PROSPECTIVE JUROR:  No, I'm a seamstress.  I'm

22    making costumes.

23         THE COURT:  And when does that start?

24         PROSPECTIVE JUROR:  It's already happening.  So we

25    have fittings every day.  So I would basically lose that job.

1        MR. CECUTTI:  No objection.

2        MS. DEAN:  Judge, no objection.

3        THE COURT:  You're excused.  Go back to the second

4   floor.

5        (Prospective juror excused.)

6        (Prospective juror joins.)

7        THE COURT:  Mr. Dominique?

8        PROSPECTIVE JUROR:  I have a dying sister.  She

9   lives in France.  I mean she's been sick for ten years with

10  some kind of neurodegenerative disease of the body, and she,

11  last Friday, last week she was not doing well; and last night

12  the doctor told one of my brothers that she only had a few

13  weeks to live, not even a month.

14       THE COURT:  Yes.  You're excused.

15       PROSPECTIVE JUROR:  Thank you.

16       THE COURT:  Go back to the second floor.

17       PROSPECTIVE JUROR:  Thank you.

18       (Prospective juror excused.)

19       (Prospective juror joins.)

20       THE COURT:  Jennifer Bareilles?

21       PROSPECTIVE JUROR:  Yes.  I have a non-refundable

22  plane ticket to go teach in Spain for a few months but not

23  until April 11th.

24       THE COURT:  Okay.  You should be great.

25       PROSPECTIVE JUROR:  And then just, is there a chance

1  we would be sequestered?

2          THE COURT:  No.

3          PROSPECTIVE JUROR:  Okay.  Because I have family

4  coming from the West Coast.

5          THE COURT:  You'll be free to go at the end of every

6  day.

7          PROSPECTIVE JUROR:  Okay.

8          (Prospective juror leaves.)

9          (Prospective juror joins.)

10          THE COURT:  Juror No. 42, Ximena?

11          PROSPECTIVE JUROR:  Okay.  So my mother has colon

12  cancer right now and she just finish, a week ago, the

13  radiation.  So I want to be on call in case she has a

14  reaction.

15          MS. DEAN:  No objection.

16          MR. CECUTTI:  No objection.

17          THE COURT:  Okay.  You're excused.  Go back to the

18  second floor.

19          PROSPECTIVE JUROR:  Thank you.

20          (Prospective juror excused.)

21          (Prospective juror joins.)

22          PROSPECTIVE JUROR:  Hello.  Nice to meet you.

23          THE COURT:  Joanna Huang?

24          PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Come closer.

1    PROSPECTIVE JUROR:  So I'm doing a sponsoring of

2  fiance visa and he's going to be here in two weeks for my

3  fiance's interviews.  I'm not sure how everything works.

4    THE COURT:  You have a date already?

5    PROSPECTIVE JUROR:  Yes.  February 27th.  Not for

6  me, just for my fiance.

7    THE COURT:  But you have to be there with him?

8    PROSPECTIVE JUROR:  I don't know how like the

9  process works.  I don't know if he's going to be accepted and

10 be able to come to the U.S.

11   THE COURT:  He's not in the U.S.?

12   PROSPECTIVE JUROR:  No.  It's a fiance visa for him

13 to come here.  The interview date is February 27th.  We're not

14 sure if he's going to get accepted or not.  He's going to like

15 come to the U.S. after that so.

16   THE COURT:  But the interview is with you or with

17 him?

18   PROSPECTIVE JUROR:  No, it's with him.

19   THE COURT:  But nobody's told you you need to be

20 someplace on the 27th?

21   PROSPECTIVE JUROR:  No.

22   THE COURT:  So I think you're probably okay.

23   PROSPECTIVE JUROR:  And even like losing four weeks

24 of pay for student loans, that's not a good enough reason?

25   THE COURT:  Well, what are you doing?

 1          PROSPECTIVE JUROR:  I'm a pharmacist.

 2          THE COURT:  So you would lose --

 3          PROSPECTIVE JUROR:  I just started working this

 4   January.

 5          THE COURT:  I see.  And if you don't work you don't

 6   get paid?

 7          PROSPECTIVE JUROR:  No.  It's a small mom-and-pop

 8   firm pharmacy.  It's not the big chains.

 9          MR. CECUTTI:  No objection.

10          MS. DEAN:  No objection.

11          THE COURT:  We'll excuse you.

12          PROSPECTIVE JUROR:  Okay.  Thank you so much.

13          THE COURT:  Go back to the second floor.

14          (Prospective juror excused.)

15          (Prospective juror joins.)

16          PROSPECTIVE JUROR:  Hello.  Number 45.

17          THE COURT:  Taisa.  Tell me what your scheduling

18   issue is.

19          PROSPECTIVE JUROR:  I'm working, program analyst,

20   and I'm working from home in Long Island.  It took more than

21   two hours to come here.  I don't drive long ways.  And I

22   completely occupy with my work.

23          THE COURT:  And who is your employer?

24          PROSPECTIVE JUROR:  BT System LLC, BT System.  I

25   work from home.

1          THE COURT:  So if you sat on the jury and didn't

2    work, would you get paid?

3          PROSPECTIVE JUROR:  I don't think so, but I'm afraid

4    to lose my job because it's a private company, right.  They

5    want me to work.

6          THE COURT:  Yes.

7          PROSPECTIVE JUROR:  Because if I am here, I'm not

8    working.  So I'm really concentrating on my work, you

9    understand.

10         THE COURT:  Well, many employers will pay even if

11   you're on jury duty.

12         PROSPECTIVE JUROR:  It's not just about money.

13         THE COURT:  No?

14         PROSPECTIVE JUROR:  It's not just about money.  The

15   problem is if I'm not working, who will do my job, right?  And

16   company, private company, they give people that work.

17         THE COURT:  Well, there are a lot of companies where

18   somebody else can work.  You're saying no one else can do it?

19   How big is the company?

20         PROSPECTIVE JUROR:  BT System, LLC.  What did you

21   say the name?

22         THE COURT:  How big is it?

23         PROSPECTIVE JUROR:  Not really big.  It's 20 people

24   in New York and, 20 people, and in some other parts of the

25   world.  It's like international company.

1          THE COURT:  Right.  And if you, if you were sick,
2  what would happen?
3          PROSPECTIVE JUROR:  Actually, I working from home,
4  right?
5          THE COURT:  Right.
6          PROSPECTIVE JUROR:  Depends on how sick I am.  If
7  I'm not sick, I continue to work.
8          THE COURT:  Have you been told by your employer that
9  you are, that nobody else can do your job during the time you
10  are on jury duty?
11          PROSPECTIVE JUROR:  Okay.  There's a lot of firings
12  lately, okay?  Okay?  If I'm working, that's good.  If I'm not
13  working they found somebody else.  But in my age, it's very
14  difficult to find any job.  So I'm very, very concerned.
15          THE COURT:  So are you afraid you'll be fired?
16          PROSPECTIVE JUROR:  Of course.
17          THE COURT:  If you don't work?
18          PROSPECTIVE JUROR:  Of course, of course.
19          MR. CECUTTI:  No objection.
20          MS. DEAN:  May we speak to Your Honor?
21          THE COURT:  Okay.  Can you just step back for a
22  moment?  I want to speak to the lawyers.
23          (Prospective juror leaves.)
24          MS. DEAN:  Judge, I'm concerned this kind of,
25  someone saying they have to work and it's burdensome.  So we

1    don't want to go down that road.  So we do have an objection

2    for that reason.

3            I think it, you know, perhaps Your Honor can tell

4    her that her company is not allowed to fire somebody for jury

5    duty, and we can keep the juror.  I'm word about the slippery

6    slope of --

7            THE COURT:  I understand.

8            MR. CECUTTI:  My concern, Your Honor, is that she's

9    expressing a work issue but also the fear of losing her job;

10   and this is going to be a trial with complex facts.  It's

11   going to require every juror to be paying attention closely,

12   and if she has divided attention because of any kind of fear

13   relating to losing her job, that would be problematic.

14           THE COURT:  She does seem especially stressed out.

15           MS. DEAN:  Okay.

16           THE COURT:  I appreciate what you're saying, and

17   that's why I pressed her, but I think her demeanor in

18   answering indicates to me that she will be distracted.

19           (Prospective juror joins.)

20           THE COURT:  All right.  So we wanted you to know

21   that your employer cannot fire you for jury duty; but, given

22   what you've told us, we'll excuse you this time but please

23   understand that the employer is not allowed to fire people for

24   serving on a jury.

25           PROSPECTIVE JUROR:  Okay.

1        THE COURT:  Tell them the judge told them that.

2        PROSPECTIVE JUROR:  Okay.  But you see, I'm not

3  completely sure that I understand everything, you know, this

4  case as well.

5        THE COURT:  I'm excusing you, but I wanted you to

6  let your employer know.

7        PROSPECTIVE JUROR:  Okay.  Thank you so much.  I

8  don't know.  It's very easy, okay, you didn't finish your job

9  on time and --

10        THE COURT:  I understand.  So go back.  Maybe

11  there's a short jury trial that you can sit on.

12        PROSPECTIVE JUROR:  Short?

13        THE COURT:  Yes.  Go back to the jury room on the

14  second floor and they will let you know if there's a short

15  trial for you.  Okay?

16        PROSPECTIVE JUROR:  Thank you.

17        (Prospective juror excused.)

18        (Prospective juror joins.)

19        THE COURT:  Hello, Ms. Moore.  Tell us your

20  scheduling issue.

21        PROSPECTIVE JUROR:  Tuesday the 20th, I have an oral

22  surgeon appointment.  And then Wednesday, I have to see my

23  hematologist.  Those are the only two dates.  It's the 20th

24  and the 21st.

25        THE COURT:  Are there, could you reschedule them?

1          PROSPECTIVE JUROR:  The oral surgeon I can't, but

2     the hematologist I go every six months.

3          THE COURT:  All right.

4          MR. CECUTTI:  No objection.

5          MS. DEAN:  No objection.

6          THE COURT:  You're excused.  Thank you.  And maybe

7     there's a trial this week you can sit on.

8          PROSPECTIVE JUROR:  Okay.  Thank you.

9          (Prospective juror excused.)

10         (Prospective juror joins.)

11         THE COURT:  Hello.  Are you Juror No. 49, Marco?

12         PROSPECTIVE JUROR:  Yes.

13         THE COURT:  What's your issue?

14         PROSPECTIVE JUROR:  I am, sorry.  I'm a public

15    accountant, CPA.  Currently I'm just really busy but that's

16    not really the main issue.  The main issue is my job only

17    offers ten days of jury duty pay, one of which is today.

18         My wife is unemployed.  We rent in Nassau County.

19    We have two cars.  She's training to go back to school for a

20    master's.  I won't be able to afford four weeks and paid just

21    $50 a day.

22         THE COURT:  So your employer has already told you

23    that you only get paid for ten days?

24         PROSPECTIVE JUROR:  Yes.  So I only have nine more

25    days of pay, paid days.  Otherwise, it's just the $50 a day.

1          THE COURT:  Okay.

2          MR. CECUTTI:  No objection.

3          MS. DEAN:  No objection.

4          THE COURT:  Okay.  So you're excused and go back to

5    the second floor.  There might be a short trial that you can

6    sit on.

7          PROSPECTIVE JUROR:  Thank you.

8          (Prospective juror excused.)

9          (Prospective juror joins.)

10         THE COURT:  Hello.  Erik Hansen?

11         PROSPECTIVE JUROR:  Yes.

12         THE COURT:  What is your issue?

13         PROSPECTIVE JUROR:  I'm currently a full-time

14   student at the College of Staten Island.  I was told

15   apparently I was supposed to file about this before, but I

16   didn't see any indication on the website.

17         THE COURT:  I see.  Okay.  So you have classes

18   during the day?

19         PROSPECTIVE JUROR:  Yes.  Yes, all week.

20         THE COURT:  Okay.

21         MR. CECUTTI:  No objection.

22         MS. DEAN:  No objection.

23         PROSPECTIVE JUROR:  I've got a schedule here.

24         THE COURT:  That's fine.  You're excused.  Go back

25   to the jury room.

1           PROSPECTIVE JUROR:  Thank you so much.

2           (Prospective juror excused.)

3           (Prospective juror joins.)

4           THE COURT:  Manav Dalmiya?

5           PROSPECTIVE JUROR:  Yes, Dalmiya.  I wanted to, I'm

6    on short-term disability for medical leave, for like anxiety,

7    depression, panic disorder, for the next month.  So I don't

8    know if, I'm supposed to be taking care of myself before I

9    start working again.

10          MR. CECUTTI:  No objection.

11          MS. DEAN:  No objection.

12          THE COURT:  You're excused.  Go back to the second

13   floor.

14          (Prospective juror excused.)

15          (Prospective juror joins.)

16          THE COURT:  You're Julia Cipriano?

17          PROSPECTIVE JUROR:  That's me.  So I'm a publicist,

18   and I represent ReedPop.  They throw all the comic conventions

19   around the country.

20          So Seattle's convention is coming up at the end of

21   this month.  It runs February 29th through the beginning of

22   March.  So if I'm not expected to be on the ground in Seattle,

23   I'm expected to be available 24/7 for all press needs for it,

24   so.

25          THE COURT:  And that is happening during the day?

1            PROSPECTIVE JUROR:  Yes.  It runs from like 9:00 to

2       7:00.

3            THE COURT:  Okay.

4            MR. CECUTTI:  No objection.

5            MS. DEAN:  No objection.

6            THE COURT:  Okay.  Great.  You're excused.  Go back

7       to the jury room on the second floor.  Maybe there's a trial

8       happening this week.

9            PROSPECTIVE JUROR:  Perfect.  Thank you so much.

10           THE COURT:  That you.

11           (Prospective juror excused.)

12           (Prospective juror joins.)

13           THE COURT:  Number 56, Karen?

14           PROSPECTIVE JUROR:  Yes.  So with scheduling, I'm in

15      school right now, and I have my practicum because I'm in

16      special education, and I have to do scheduled work in my

17      classroom.  So I can't, like I have to observe students, I

18      have to make plans, and I have to be in my class to complete

19      my practicum?

20           MR. CECUTTI:  No objection.

21           MS. DEAN:  No objection.

22           THE COURT:  All right.  You're excused.  Go back to

23      the second floor jury room.

24           PROSPECTIVE JUROR:  Thank you.

25           (Prospective juror excused.)

1          (Prospective juror joins.)

2          THE COURT:  Barbara?

3          PROSPECTIVE JUROR:  Hello.  I have travel plans,

4    which I sent in.

5          THE COURT:  Okay.

6          PROSPECTIVE JUROR:  I'm a nurse.  Document

7    everything.

8          THE COURT:  All right.  And let me see those dates.

9          PROSPECTIVE JUROR:  I gave them all the days.

10         THE COURT:  February 27 to March 1st.

11         MS. DEAN:  No objection.

12         MR. CECUTTI:  No objection.

13         THE COURT:  Go back to the second floor jury room.

14   Maybe there's a trial you can sit in this week.

15         PROSPECTIVE JUROR:  We'll see.

16         (Prospective juror excused.)

17         (Prospective juror joins.)

18         THE COURT:  Are you Gabriella?

19         PROSPECTIVE JUROR:  Yes, Gabriella.  So I currently

20   work for ABC News, where I'm heading the research for the

21   Oscars coming up, and that's the fourth week of the trial,

22   where I'll be based out of L.A.  So that would kind of be a

23   conflict there.

24         And I also work as an hourly paid member, paid

25   worker, so I'm not part of staff.  So I would have no pay for

1  the next four weeks, which would kind of be unsustainable for

2  me to live.  I need an income.

3          THE COURT:  So you get paid by the hour?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  So if you're not there you don't get

6  paid?

7          PROSPECTIVE JUROR:  I don't get paid.

8          MS. DEAN:  No objection.

9          MR. CECUTTI:  No objection.

10         THE COURT:  Okay.  You're excused.  Go back to the

11 second floor, please.

12         PROSPECTIVE JUROR:  Thank you.

13         (Prospective juror excused.)

14         (Prospective juror joins.)

15         THE COURT:  Let me see your number, number 59,

16 Allison Ospina?

17         PROSPECTIVE JUROR:  Yes.  So I'm a college student,

18 and I have classes scheduled from Monday to Thursdays.  I'm an

19 education major.  So I have to sit with a high school teacher

20 and do field work in public schools.  So I have to go in the

21 mornings and afternoons, and I have to do 50 hours just this

22 semester so, you know, I have classes.

23         MR. CECUTTI:  No objection.

24         MS. DEAN:  No objection.

25         THE COURT:  You're excused.  Go back to the second

1  floor.

2        PROSPECTIVE JUROR:  Thank you so much.

3        (Prospective juror excused.)

4        (Prospective juror joins.)

5        THE COURT:  Hi.  You are Kaleena?

6        PROSPECTIVE JUROR:  Yes.  Yes.  I have a dental

7  appointment on the 22nd.  It took me like seven months to get

8  this appointment.

9        THE COURT:  What time is the appointment?

10        PROSPECTIVE JUROR:  At 9 a.m.

11        THE COURT:  And is it somewhere nearby?

12        PROSPECTIVE JUROR:  No, it's in Manhattan.

13        THE COURT:  Okay.  Any chance it could be done --

14        PROSPECTIVE JUROR:  It's a tooth.  I'm getting a

15  crown and a bridge put in, and it's been a process to get all

16  of the appointments leading up to the one I have on the 22nd,

17  and it's for the whole side of my mouth here.  And then I have

18  a follow-up for the opposite side, and, I don't know, we

19  haven't scheduled that yet.  That will happen after I heal.

20        MR. CECUTTI:  No objection.

21        MS. DEAN:  No objection.

22        THE COURT:  Okay.  You're excused.

23        PROSPECTIVE JUROR:  Thank you so much.

24        THE COURT:  Thank you.

25        (Prospective juror excused.)

1          (Prospective juror joins.)

2          THE COURT:  Hello, Juror 64, Jia Chen?

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Okay.  What is your issue?

5          PROSPECTIVE JUROR:  I'm a full-time college student

6   and I work part time and I have midterms within the next two

7   weeks.

8          MR. CECUTTI:  No objection.

9          MS. DEAN:  No objection.

10          THE COURT:  Okay.  You're excused.  Go back down to

11  the second floor.

12          PROSPECTIVE JUROR:  Thank you.

13          (Prospective juror excused.)

14          (Prospective juror joins.)

15          THE COURT:  Hello.  Marissa Duque?

16          PROSPECTIVE JUROR:  Yes.

17          THE COURT:  What is your issue?

18          PROSPECTIVE JUROR:  Oh, I have financial

19  difficulties.  I'm a single mom, and I have a doctor's

20  appointment also, and my relative needs me because I take

21  care, I'm an HHA, home health aide.  So one of my relatives

22  needs me because of, you know, her issue.  Like she lives

23  alone.  So I take care of her also.

24          THE COURT:  And how often do you need to take care

25  of that relative?

1        PROSPECTIVE JUROR:  Three times a week.

2        THE COURT:  During the day?

3        PROSPECTIVE JUROR:  Yes.

4        THE COURT:  Is there anyone else who can do that?

5        PROSPECTIVE JUROR:  And also, like I have also

6   another, like two job to meet my ends.  So not only her, I

7   have another job that I take care of another client for HHA to

8   meet my needs.

9        THE COURT:  Right.

10       PROSPECTIVE JUROR:  Because I have a lot of credit

11  cards to pay.  I'm a single mom.

12       THE COURT:  So if you don't, if you're sitting on

13  the jury, are you saying you can't work and so you won't get

14  paid?

15       PROSPECTIVE JUROR:  I don't know about that so, but,

16  you know, like I said, it's not, it's financial issue.  I

17  don't know about the --

18       THE COURT:  Well, it would be a financial issue if

19  you didn't get paid, but sometimes people get paid even if

20  they're not working.

21       PROSPECTIVE JUROR:  I'm not sure about that.

22       THE COURT:  You don't know?

23       PROSPECTIVE JUROR:  No.

24       THE COURT:  And then you said you had a doctor's

25  appointment?

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  When is that?

3          PROSPECTIVE JUROR:  That's on the

4   February something.  It's in my calendar in my book.  In my

5   calendar.

6          THE COURT:  So February, this coming month?

7          PROSPECTIVE JUROR:  In February, like this month,

8   the end of the month.

9          THE COURT:  And is that a doctor --

10         PROSPECTIVE JUROR:  It's a doctor.

11         THE COURT:  Is that for you?

12         PROSPECTIVE JUROR:  Yes, for me.  I have a

13  cardiology appointment.

14         MS. DEAN:  No objection.

15         MR. CECUTTI:  No objection.

16         THE COURT:  All right.  So you're excused.  Go back

17  to the second floor.

18         PROSPECTIVE JUROR:  Thank you.

19         THE COURT:  Thank you for letting us know.

20         PROSPECTIVE JUROR:  Thank you very much.

21         (Prospective juror excused.)

22         (Prospective juror joins.)

23         THE COURT:  Hello.  You are Loretta Lewis?

24         PROSPECTIVE JUROR:  Yes.  I would like to be

25  excused.  I'm in therapy for the next five weeks, and after

1  that I already purchased a ticket to go to my country

2  March 4th.

3          THE COURT:  Okay.  And where are you going?

4          PROSPECTIVE JUROR:  Costa Rica.

5          THE COURT:  Nice.  And you said you already have the

6  ticket?

7          PROSPECTIVE JUROR:  Yes.  I'm retiring.

8          MR. CECUTTI:  No objection.

9          MS. DEAN:  No objection.

10         THE COURT:  Have a good trip.  You are excused.  Go

11 back to the second floor.

12         (Prospective juror excused.)

13         (Prospective juror joins.)

14         THE COURT:  Guoping Zhang?

15         PROSPECTIVE JUROR:  Yes.

16         THE COURT:  What is your issue?

17         PROSPECTIVE JUROR:  My issue is March 10, I'm going

18 to traveling.  I bought the airline ticket already.  I'm not

19 sure it will be, the trial will be too long.

20         THE COURT:  Yes.

21         PROSPECTIVE JUROR:  That's my concern.

22         THE COURT:  Right.  And you said your airplane

23 ticket is to leave on March 10th?

24         PROSPECTIVE JUROR:  Yes.

25         THE COURT:  And that can't be changed?

1            PROSPECTIVE JUROR:  I bought it a while ago.

2            THE COURT:  Where are you going?

3            PROSPECTIVE JUROR:  Going back to China.

4            MR. CECUTTI:  No objection.

5            MS. DEAN:  No objection.

6            THE COURT:  All right.  Thank you.  You're excused.

7    Go back to the jury on the second floor.  There could be a

8    trial sooner.

9            PROSPECTIVE JUROR:  Go back to the second floor?

10           THE COURT:  Go back to the second floor.  Thank you.

11           (Prospective juror excused.)

12           (Prospective juror joins.)

13           THE COURT:  Rebecca Rodriguez?

14           PROSPECTIVE JUROR:  Yes.

15           THE COURT:  Tell us your issue.

16           PROSPECTIVE JUROR:  The issue is I'm the only one

17   that takes my four-year-old to school from, at 8 o'clock and

18   then I pick him up at 2:15, but then the other issue is I'm a

19   high-risk pregnancy and I have an appointment in two weeks for

20   high-risk doctors.  So I don't want to miss that.

21           MR. CECUTTI:  No objection.

22           MS. DEAN:  No objection.

23           THE COURT:  All right.  You're excused.  Go back to

24   the jury room.  Second floor.

25           (Prospective juror excused.)

1        (Prospective juror joins.)

2        THE COURT:  Hi.  Ms. Ferrigno?

3        PROSPECTIVE JUROR:  Yes.  My name is Maryanne

4   Ferrigno, and I'm concerned with the length of the trial

5   because I do have two jobs.  One is a Department of Education

6   and I'm very happy to get away from it, but my second job is

7   in the evening.  I care for three autistic nonverbal children

8   under the age of eight, and I receive them after school.  So

9   I'm concerned for that amount of time to be away from them.

10        THE COURT:  What time do you pick them up?

11        THE PROSPECTIVE JUROR:  3 o'clock.

12        MR. CECUTTI:  No objection.

13        MS. DEAN:  No objection.

14        THE COURT:  Okay.  Thank you.  You're excused.

15        PROSPECTIVE JUROR:  Thank you so much.

16        (Prospective juror excused.)

17        (Prospective juror joins.)

18        THE COURT:  Hello.  Rafael Verdov?

19        THE PROSPECTIVE JUROR:  Yes.

20        THE COURT:  Tell us your issue please.

21        PROSPECTIVE JUROR:  I came here from Ukraine in

22   2000.  From 1990 to 2000 there was huge criminal activity in

23   the former Soviet Union states.  So I don't know.  It's a fact

24   of life, you know, my life.  That's why I'm here in America as

25   a refugee.

1        THE COURT:  Right.

2        PROSPECTIVE JUROR:  So I don't know about criminal

3   cases, you know.

4        THE COURT:  What's your concern?

5        PROSPECTIVE JUROR:  Concern that I will not be able

6   to do the right decision about the criminal.  He's already

7   here.  I don't know.

8        THE COURT:  So you can't presume that he's innocent?

9        PROSPECTIVE JUROR:  I don't know.

10       MR. CECUTTI:  No objection.

11       THE COURT:  Let me ask a few more questions.

12       MR. CECUTTI:  Sorry.

13       THE COURT:  So the question, you know, nobody likes

14  crime.

15       PROSPECTIVE JUROR:  Yes.

16       THE COURT:  But the issue is whether this particular

17  person is guilty of the crime that's been charged.  He's

18  presumed innocent until you hear evidence that --

19       PROSPECTIVE JUROR:  I understand, but I don't know.

20       THE COURT:  You don't know?

21       PROSPECTIVE JUROR:  I don't know what to say.  I'm

22  afraid I'm going to have a hard time.

23       THE COURT:  Thank you for being honest with us.

24  You're excused.

25       PROSPECTIVE JUROR:  Thank you.

1          THE COURT:  I think there's some civil cases,

2    non-criminal cases.  Go back to the second floor.

3          PROSPECTIVE JUROR:  Thank you.

4          (Prospective juror excused.)

5          MR. CECUTTI:  Sorry for jumping in.

6          THE COURT:  That's okay.  I get it.

7          (Prospective juror joins.)

8          THE COURT:  Hi.  You are Kerry Anne Shea?

9          PROSPECTIVE JUROR:  Yes.

10         THE COURT:  Tell us your issue.

11         PROSPECTIVE JUROR:  Two things.  The first is a work

12   issue.  Because we're a very, very small office and they can

13   work with me for, like without me for a week but not for a

14   whole month.  And secondly, is a little more hypothetical

15   because my mother was just diagnosed with cancer.  So I'm not

16   sure, you know, what her schedule is but, you know, if I have

17   to be there.

18         MS. DEAN:  No objection.

19         MR. CECUTTI:  No objection.

20         THE COURT:  You're excused.  I'm sorry about your

21   mother.

22         PROSPECTIVE JUROR:  Thank you.

23         (Prospective juror excused.)

24         (Prospective juror joins.)

25         THE COURT:  Tell us your issue.

1    PROSPECTIVE JUROR:  Your Honor, well, I

2 unfortunately was part of a restructuring at work at the end

3 of the year.  So I was let go.  So I'm currently seeking

4 employment.  I've got a couple good prospects I'm in my second

5 and third rounds with.  If I put that on pause, that's really

6 going to put a burden on my family.

7    THE COURT:  You have interviews and things like that

8 set up?

9    PROSPECTIVE JUROR:  Correct.

10    MR. CECUTTI:  No objection.

11    MS. DEAN:  No objection.

12    THE COURT:  Thank you.

13    (Prospective juror excused.)

14    (Prospective juror joins.)

15    THE COURT:  Tania Jeremy?

16    PROSPECTIVE JUROR:  Hi.

17    THE COURT:  Tell us your issue, please.

18    PROSPECTIVE JUROR:  I have a couple.  One, I can't

19 sit that long.  I'm under chiropractic care.  And I work for a

20 children's company and I'm commission based.  I'm number two

21 in the company.

22    And the month of the, the last two weeks of this

23 month, going into March, is blackout month for retail in my

24 company and being the fact that I'm commission based, I have

25 no income.

1    THE COURT:  So are you, you said blackout for retail

2  so I'm not sure.

3    PROSPECTIVE JUROR:  My company is I work with a

4  high-end orthodox client and they have multiple children, and

5  I am number two in the whole region and that's my income.

6    THE COURT:  So are you saying --

7    PROSPECTIVE JUROR:  I only get paid.  My company is

8  only paying me for three days to be here and any time after

9  that, I have no money.

10    THE COURT:  Okay.

11    PROSPECTIVE JUROR:  Because I'm commission based,

12  but if I stay here four weeks, they're going into my vacation

13  time and I have nothing after that.

14    THE COURT:  So you don't have a salary?

15    PROSPECTIVE JUROR:  Right.

16    MR. CECUTTI:  No objection.

17    MS. DEAN:  No objection.

18    THE COURT:  All right.  Thank.  You're excused.  Go

19  back to the jury room on two, the second floor.

20    PROSPECTIVE JUROR:  Okay.

21    (Prospective juror excused.)

22    (Prospective juror joins.)

23    THE COURT:  So we have some additional people.

24  You'll see their numbers when they come up.

25    MR. CECUTTI:  Okay.  Thank you.

1          (Prospective juror joins.)

2          THE COURT:  Okay.  Dana Kennedy.  What's your issue?

3          PROSPECTIVE JUROR:  I don't think I can look at the

4    evidence photos of like the dismembered body pieces.  My

5    boyfriend's in medical school, and I can't even help him study

6    because I can't look at the brains and the inside and stuff

7    like that.

8          I also have a history of police and other law

9    enforcement in my family.  So I don't believe that I can be

10   unbiased.

11         MR. CECUTTI:  No objection.

12         THE COURT:  So you think looking at the photographs

13   would make it hard for you to be fair?

14         PROSPECTIVE JUROR:  Yes.  Well, like I'm already

15   shaking because I don't even like looking at it thinking about

16   it, anything.

17         THE COURT:  Okay.

18         MS. DEAN:  No objection.

19         THE COURT:  All right.  Thank you.  You're excused.

20   Go back down to the second floor.  There are some cases you

21   might be able to sit.

22         PROSPECTIVE JUROR:  Okay.

23         (Prospective juror excused.)

24         (Prospective juror joins.)

25         THE COURT:  Hello.  Juror No. 47, August Marty?

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Tell us your issue.

3          PROSPECTIVE JUROR:  So I don't know if I would be

4    able to make it here because I currently don't have a job, I

5    don't have a car, and the only way I got here today was

6    because my sister-in-law drove me here.  So I don't know if

7    she would be able to do that in the future.  She didn't have

8    work today.  So that's why she was able to do it for me.

9          THE COURT:  All right.

10          PROSPECTIVE JUROR:  I live on Long Island.  So it

11    was a two-hour drive here, and for me to take a train, it

12    would be about three hours.

13          THE COURT:  Okay.  How far out in Long Island are

14    you?

15          PROSPECTIVE JUROR:  Hauppauge.

16          THE COURT:  And there's no other way?  I mean,

17    unfortunately, this district is big.

18          PROSPECTIVE JUROR:  I know.

19          THE COURT:  So people have to travel a distance.

20          PROSPECTIVE JUROR:  I know.

21          THE COURT:  And there's no other -- how long would

22    it take you on the train?

23          PROSPECTIVE JUROR:  About three hours.

24          THE COURT:  Three hours on the train?  Are there any

25    other issues?  Because you said you don't have a job.

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  You don't have another place to be

3    necessarily.

4          PROSPECTIVE JUROR:  I know.  I don't have money for

5    like the train.

6          THE COURT:  Do we pay for transportation?

7          THE CLERK:  We reimburse for train tickets and

8    train.

9          THE COURT:  We'll reimburse you for that.  So you

10   get the $50 for the jury fee, and we'll reimburse you for the

11   train.  Can you do that?  In terms of the cost.

12          I know it still takes a long time, but if the cost

13   is the issue, you can give the receipt to the jury office and

14   they'll reimburse you.

15          PROSPECTIVE JUROR:  I don't have money.  I don't

16   have anything in my bank account.

17          MR. CECUTTI:  No objection.

18          MS. DEAN:  No objection.

19          THE COURT:  All right.  So we'll excuse you.

20          PROSPECTIVE JUROR:  All right.

21          THE COURT:  Go back to the jury room on the second

22   floor.

23          PROSPECTIVE JUROR:  The second floor?

24          THE COURT:  Yes.

25          (Prospective juror excused.)

1        (Prospective juror joins.)

2        THE COURT:  Let me see your juror number.

3        PROSPECTIVE JUROR:  It's 53.

4        THE COURT:  Christina West?

5        PROSPECTIVE JUROR:  Yes.  It's not for the excuse.

6   It's the nature.  I don't feel comfortable.  You know, being

7   what you said with dismemberment and autopsies, I don't feel

8   comfortable.

9        THE COURT:  So do you think that having to look at

10  those photos would make you not be a fair and impartial juror?

11       PROSPECTIVE JUROR:  I mean even thinking about it

12  now, it's a little bit nauseating for me.  It's just too much.

13       THE COURT:  I see.

14       MR. CECUTTI:  No objection.

15       MS. HAJJAR:  No objection.

16       THE COURT:  No objection from the government.

17       MS. DEAN:  No objection.

18       THE COURT:  All right.  So you're excused.  There

19  are some other trials that might be better for you.

20       PROSPECTIVE JUROR:  Thank you so much.

21       THE COURT:  Go back to the second floor.

22       (Prospective juror excused.)

23       (Prospective juror joins.)

24       THE COURT:  Rhonda Chahine?

25       PROSPECTIVE JUROR:  Yes.  So this is not a

1    scheduling thing.  I'm not trying to get out it of it.

2           I'm just conflicted about the nature of the

3    evidence.  I thought about it.  I just don't know what the

4    effect will be on me.  I might be okay.  It's just I do have

5    nightmares and anxiety and I just am a little concerned of how

6    that would impact me.

7           Having said that, I am okay with still sitting in

8    this.  I just, I don't know.  I'm conflicted about it.  I just

9    wanted to bring it up.

10          THE COURT:  No.  Thank you.  We want to know.  So do

11   you think you could --

12          PROSPECTIVE JUROR:  I can answer the questions and

13   maybe just see.  I just, the more I thought about, it the

14   evidence of it, I think I'll be okay.  I don't mean to waste

15   your time.  I'm just kind of like back and forth with it.

16          THE COURT:  So do you want to think about it some

17   more?

18          PROSPECTIVE JUROR:  Yes.  Put me back on.  I'm

19   sorry.

20          THE COURT:  Thank you for letting us know.

21          PROSPECTIVE JUROR:  Thank you.

22          (Prospective juror leaves.)

23          (Prospective juror joins.)

24          THE COURT:  Hello.  Come on up.  You are Raymond

25   Teer?

1    PROSPECTIVE JUROR:  Yes.  Hi, Your Honor.  I'm

2  currently in a master's program.  I'm getting a master's in

3  public health.  I'm set to graduate in early June.

4    And I'm concerned with the length of the trial would

5  interfere with me graduating on time and potentially push back

6  the graduation date.  We have classes during the week that

7  we're required to attend.  I have a capstone project.  I'm

8  supposed to go to Hanover, New Hampshire and speak about, the

9  week of the 18th of the March, so it doesn't necessarily

10  conflict.

11    THE COURT:  But you have classes between now and

12  then?

13    PROSPECTIVE JUROR:  Yes.

14    THE COURT:  Every week?

15    PROSPECTIVE JUROR:  Every week.

16    MS. DEAN:  No objection.

17    MR. CECUTTI:  No objection.

18    THE COURT:  So you're excused.  Go back to the jury

19  room on the second floor.

20    PROSPECTIVE JUROR:  Thank you so much.

21    (Prospective juror excused.)

22    (Prospective juror joins.)

23    THE COURT:  Fatema?

24    PROSPECTIVE JUROR:  I don't have a scheduling issue.

25  It was in your question.  Is there, are you going to be able

1    to listen to the evidence.  I have bad anxiety, especially

2    with the content of this nature.  I don't mean to cry.  I

3    faint and I disassociate and it's just really hard for me to

4    listen to.

5              MS. DEAN:  No objection.

6              MR. CECUTTI:  No objection.

7              THE COURT:  So you're excused.  There are some civil

8    trials that might be better.  Okay.

9              PROSPECTIVE JUROR:  Thank you.

10             THE COURT:  Thank you.

11             (Prospective juror excused.)

12             (Prospective juror joins.)

13             THE COURT:  Hello.  Mowmita Jabir?

14             PROSPECTIVE JUROR:  Yes.  My child's after-school

15   program only goes to 5:30.  So if the trial ends at 4:00, I'm

16   fine, but after that, I'm not sure how I can manage that for

17   four weeks.

18             THE COURT:  Okay.  And where is your child?

19             PROSPECTIVE JUROR:  Queens.  So it's at least an

20   hour ride from here.

21             THE COURT:  Okay.

22             MR. CECUTTI:  No objection.

23             THE COURT:  Is there anyone else who could pick up

24   the child?

25             PROSPECTIVE JUROR:  Then my husband also has to take

1  off.  His work is in New Jersey.  He works for U.S. Navy in

2  Lakehurst.  So it's two hour.  I don't think he can make it

3  before 5:30.

4        THE COURT:  So somebody has to pick up your child at

5  5:30.

6        PROSPECTIVE JUROR:  That's the latest, yes.  If the

7  trial ends at 4:00, I'm fine.

8        THE COURT:  But it's probably going to go to 5:30

9  each day.

10        Can you think of anyone else who can help out?

11        PROSPECTIVE JUROR:  No.  I have another 12-year-old.

12  He cannot go and pick him up.  He can come home himself.

13        MS. DEAN:  No objection.

14        THE COURT:  All right.  Thank you for letting us

15  know.  You're excused.  Go back to the second floor.

16        (Prospective juror excused.)

17        (Prospective juror joins.)

18        THE COURT:  Hello.

19        PROSPECTIVE JUROR:  How are you all doing?  I have

20  travel plans.  March 10th to the 14th I believe I'll be in

21  Chicago and my company is planning to send me to Vegas late

22  March for work.

23        THE COURT:  And you said from March 10 to 14th?

24        PROSPECTIVE JUROR:  I believe so, yes.

25        THE COURT:  You believe so.  Do you have tickets?

1          PROSPECTIVE JUROR:  Yes.  It's on my phone.  I've

2  got to just confirm.

3          THE COURT:  Where do you need to go?

4          PROSPECTIVE JUROR:  Chicago.

5          THE COURT:  Is that for work?

6          PROSPECTIVE JUROR:  For personal reasons.

7          THE COURT:  Is that something that can be

8  rescheduled?

9          PROSPECTIVE JUROR:  I mean my parents can't

10  reschedule.

11          THE COURT:  This is to see your parents?

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Because if the trial ended on the 11th,

14  then you might be able to go on the 12th.

15          PROSPECTIVE JUROR:  It's possible, yes.  I'm just

16  being forthright.

17          THE COURT:  I appreciate it, and it's possible the

18  trial could end earlier but we won't know until then.

19          PROSPECTIVE JUROR:  That's right.  Because of those

20  travel plans I don't think it would be fair for me to be, have

21  that.

22          THE COURT:  You said your parents are in Chicago?

23          PROSPECTIVE JUROR:  My sister's in Chicago.  We're

24  all meeting as a family.  I haven't seen them in over a year.

25          THE COURT:  And your parents are traveling from

1  where?

2          PROSPECTIVE JUROR:  California.

3          THE COURT:  Is that the only issue?  Do you have any

4  other issue?

5          PROSPECTIVE JUROR:  That's the only scheduling

6  issue.

7          MR. CECUTTI:  No objection.

8          MS. HAJJAR:  Can we be heard just briefly, Your

9  Honor?

10          THE COURT:  Can you step aside.

11          (Prospective juror leaves.)

12          MS. HAJJAR:  It's just I think we're very likely to

13  finish before then, and he's very late in the numerical order.

14  He's likely to be an alternate or something.  We've stricken

15  so many jurors for travel.

16          THE COURT:  Okay.

17          MS. HAJJAR:  I just don't know.

18          MR. CECUTTI:  The added complication with Mr. Oh is

19  he has other family, his parents that are traveling from

20  California, and I don't know if they have booked their travel

21  but it's not just him who's traveling, it's other people for

22  some type of family gathering.  I would assume that's an

23  important, it is an important event.  He mentioned he hasn't

24  seen them in a year.  I don't think that we should be taking a

25  chance.  It is going to be, it may be tight.

1     THE COURT:  Well, the issue is I don't think -- what

2  I hear you saying is he doesn't have to change his plans

3  because you think you'll be done before then, but if you run

4  over, then you're saying you would be willing to consider that

5  he would be an alternate anyway, and therefore you're willing

6  to take a chance just to say don't cancel your plan, we'll try

7  to get done before then?  I'm just trying.

8         MS. HAJJAR:  That was my suggestion, yes.

9         THE COURT:  What do you think, because we're

10  looking?

11         MR. CECUTTI:  I mean I have the same position.  I

12  think we have a lot of people and this is a travel issue and

13  why chance it.

14         THE COURT:  So I'll leave him on for now and then

15  see because as we get closer to the, because we might, I don't

16  know how many we've struck so far.  So I won't excuse him

17  quite yet.

18         (Prospective juror joins.)

19         THE COURT:  Why don't you stay on for now and we'll

20  see how things go.

21         PROSPECTIVE JUROR:  Okay.  All right.  Thank you.

22         THE COURT:  Thanks.

23         (Prospective juror leaves.)

24         (Prospective juror joins.)

25         THE COURT:  Allison Moser.  How are you doing?

1          PROSPECTIVE JUROR:  Currently my husband is

2     unemployed.  So I'm the only income earner, and I don't have

3     anyone to replace me.

4          Also, point of note, I work in unscripted

5     television, and I'm currently working on a true crime

6     anthology series.  So I feel like that might affect my

7     impartiality a little bit.

8          THE COURT:  How do you think that will affect it?

9          PROSPECTIVE JUROR:  Just because I'm surrounded by

10    like gruesome images all day, and I just immediately just.

11         THE COURT:  Do you think it will make you not be

12    fair and impartial one way or the other?

13         PROSPECTIVE JUROR:  I don't know.

14         THE COURT:  You don't know.  Tell me about your

15    work.  If you are sitting on the jury, will you still get paid

16    for your work?

17         PROSPECTIVE JUROR:  No, I will not get paid.

18         THE COURT:  You will not get paid.

19         PROSPECTIVE JUROR:  No, I don't have another right

20    now.

21         THE COURT:  Which crime show are you involved with?

22         PROSPECTIVE JUROR:  It's for the CW.  It's their

23    first one, and it's called Crime Nation, and it's ten

24    episodes.  Each one is a different murder, some unsolved, some

25    not.

1        THE COURT:  Okay.  So just to be clear, if you're

2  sitting on the jury you will not get paid?

3        PROSPECTIVE JUROR:  I will not get paid because I'm

4  not there.  We're like in the middle of delivery right now.

5        MR. CECUTTI:  No objection.

6        MS. DEAN:  No objection.

7        THE COURT:  Okay.  You're excused.  Thank you.

8        PROSPECTIVE JUROR:  Thank you.

9        (Prospective juror excused.)

10        (Prospective juror joins.)

11        THE COURT:  Hello.  Willard Mahler?

12        PROSPECTIVE JUROR:  Yes, number 77.

13        THE COURT:  Okay.

14        PROSPECTIVE JUROR:  Scheduling conflict with work.

15  I work at a triple A.  We do like DMV services.  It can also

16  affect it being short staffed and also the schedule came out a

17  month in advance.  Just for that time period it can affect the

18  business and just a shortage, you know, of people.

19        THE COURT:  Well, the, if you're not there, can

20  somebody else cover you?

21        PROSPECTIVE JUROR:  Not always, no.  We only have

22  limited people that work there.

23        THE COURT:  Right.  But the DMV services, people

24  have to schedule those?

25        PROSPECTIVE JUROR:  Yes.  It's very particular.

1          THE COURT:  So you don't, do you know if it's all

2     full or maybe it's not that busy these days?

3          PROSPECTIVE JUROR:  It usual is.  We're a very busy

4     branch.

5          THE COURT:  Will you get paid if you're not working?

6     Will the triple A pay you?

7          PROSPECTIVE JUROR:  They do, yes, but also it could

8     affect, like I said, the quality of the service.

9          THE COURT:  Well, if you're getting paid, and triple

10    A is a pretty big company.

11         PROSPECTIVE JUROR:  It's up to two weeks.  They

12    don't give four weeks.

13         THE COURT:  They pay you?

14         PROSPECTIVE JUROR:  Anything past that, they

15    wouldn't go further than that.

16         THE COURT:  Okay.  So are you saying that if the

17    trial goes four weeks, you won't get paid for two weeks?

18         PROSPECTIVE JUROR:  It's only two weeks.  My

19    supervisor showed me and had it on there.

20         THE COURT:  Okay.  And then is that a hardship for

21    you, if you don't get paid --

22         PROSPECTIVE JUROR:  Yes.

23         THE COURT:  -- those days?

24         PROSPECTIVE JUROR:  Money is, you know, time is

25    money as well.

1          THE COURT:  Okay.

2          MS. DEAN:  No objection.

3          MR. CECUTTI:  No objection.

4          THE COURT:  Okay.  You're excused.  Maybe there's a

5    shorter trial you can sit on.  So go back to the second floor.

6          PROSPECTIVE JUROR:  All right.  Thank you.

7          (Prospective juror excused.)

8          (Prospective juror joins.)

9          THE COURT:  Lakeisha Strong?

10         PROSPECTIVE JUROR:  Yes.

11         THE COURT:  What's your issue?

12         PROSPECTIVE JUROR:  Health problems.  I take

13   medication, and also I have a cardiologist appointment next

14   month that's going to be a problem.

15         THE COURT:  What day is the appointment?

16         PROSPECTIVE JUROR:  I think it's the second week of

17   the following month.

18         THE COURT:  Second week of March?

19         PROSPECTIVE JUROR:  Yes.

20         THE COURT:  Is that something that can be

21   rescheduled?

22         PROSPECTIVE JUROR:  I just rescheduled that.  I have

23   to go because I have medical problems in my family and that's

24   why I'm getting checked out.

25         THE COURT:  And you said, what was the other issue?

1          PROSPECTIVE JUROR:  Excuse me?

2          THE COURT:  You said you have --

3          PROSPECTIVE JUROR:  I have health problems, heart

4     problems, and I take medication metformin for diabetes.

5          THE COURT:  Would that, is there any reason you

6     couldn't sit and listen to evidence?

7          PROSPECTIVE JUROR:  I just wanted to make sure

8     because there's times I'm in and out of the hospital.  So that

9     was another concern for me too.  I was just in the hospital

10    last week.  So I just wanted to like make sure everything is

11    clear.

12         THE COURT:  Oh, gosh, and what causes you to have to

13    go to the hospital?

14         PROSPECTIVE JUROR:  My sugar is high and blood

15    pressure is high.

16         THE COURT:  And that's not anything that you can

17    control?

18         PROSPECTIVE JUROR:  They gave me medication, and I'm

19    taking a new one but it's like seeming not to work.  That's

20    why I schedule the appointment with the cardiologist.

21         MR. CECUTTI:  No objection.

22         MS. DEAN:  No objection.

23         THE COURT:  Okay.  You're excused.  Go back to the

24    second floor and let them know.

25              (Prospective juror excused.)

1          THE COURT:  So let's see who we have left.

2          We have 1, 5, 6, 7, 9, 10, 11, 12, 13, 14, 16, 19,

3    20, 21, 23, 24, 25, 26, 27, 28, 29, 31, 32, 35, 36, 38, 39,

4    41, 43, 45, 46, 52, 54, 60, 61, 63, 67, 69, 70, 76, 78, 79,

5    82, 83, 86, 88, 89, 90, 91, 92, 93, 94.  We only have 45

6    left -- no.  We lost 45 so we have 50 left.  And we need to

7    get 36 qualified.

8          So should we ask for the reinforcements?

9          MS. DEAN:  Your Honor, what is your count?

10         THE COURT:  We only have 50 jurors left.

11         MS. DEAN:  I think it makes sense, yes.

12         MR. CECUTTI:  Yes.

13         THE COURT:  So I'm going to excuse them to go to

14   lunch and come back at 1:00.  We'll call for reinforcements.

15         MR. CECUTTI:  Okay.

16         MS. DEAN:  Thank you.

17         THE COURT:  Great.  Thank you.

18         (In open court; sidebar ends.)

19         THE COURT:  All right.  Thank you, everybody, for

20   your patience.

21         What I'm going to do now is I'm going to let you go

22   to lunch and come back at 1 o'clock.  There will be another

23   group of jurors that we'll be talking to, and when you come

24   back from lunch, we'll combine the two groups and continue

25   because we have a bunch of other questions to go through.

1  Okay?  But thank you for your patience so far and for your

2  continued participation.

3           Come back at 1:00 -- to the jury room, Ryan, second

4  floor?

5           THE CLERK:  Across the hall.

6           THE COURT:  Across the hall.  You'll show them?

7           THE CLERK:  Yes.

8           THE COURT:  So there will be a gathering place for

9  you in the courtroom across the hall.  Ryan will show you.  So

10  when you come back at 1 o'clock, if you come back early, make

11  yourselves comfortable but please be back by 1 o'clock.  All

12  right.  Thank you.

13           We have a cafeteria on the third floor and you're

14  free to go out.

15           (Prospective jurors exit.)

16           THE COURT:  So let's take a 15-minute break and 35

17  additional jurors will be called and they'll gather outside

18  and they'll obviously wait for us to be here before they're

19  brought in.  But let's take a 15-minute break.

20           MS. DEAN:  Thank you.

21           (Brief recess.)

22           (Continued on next page.)

23

24

25

 1    (Continuing)

 2            THE COURTROOM DEPUTY:  Jury entering.

 3            (Prospective jurors enter.)

 4            THE COURT:  Please be seated, everyone.

 5            Good morning, everyone.

 6            PROSPECTIVE JURORS:  Good morning.

 7            THE COURT:  I'm Magistrate Judge Peggy Kuo.  Thank

 8    you for your patience.

 9            We are here today to select a jury for the jury

10    trial in the United States of America versus Corey Martin.  It

11    is a criminal case.

12            On behalf of all of the judges in the Eastern

13    District of New York, let me take this opportunity to thank

14    you for your service so far.  The system of justice that we

15    have in the United States depends on people like you who are

16    taking time out of your busy lives to come and serve.  So we

17    thank you in advance for your service so far, and then if you

18    can picked to be a juror in this case, for your service for

19    the duration of the trial.  I want to remark that serving on a

20    jury is a responsibility but it is also a right of all

21    citizens, and I hope that you will also consider it an honor.

22    When you think about it, it is pretty amazing where we have a

23    system of justice where important decisions like whether a

24    person is guilty of a crime or not is not made by a single

25    person, like a king or an emperor or a dictator, but those

1   questions are entrusted to the community and people like you

2   who, like I said, take time out of your lives to come listen

3   to the evidence.  So thank you for your diligent service.

4          I'm going to ask you some questions and I need to

5   have your answers under oath.  The first thing we will do is

6   ask everyone to stand and take an oath to tell the truth.

7          THE COURTROOM DEPUTY:  Please raise your right hand.

8          (Prospective jurors sworn.)

9          THE COURT:  All right.  Please be seated.

10         Now that you have taken an oath to tell the truth,

11  you should answer all questions truthfully.  And I hope that

12  you will also be very open and honest with us.

13         The reason we are asking these questions is so that

14  we have the information that is necessary to determine whether

15  there are any jurors who can be excused for cause, and also

16  the parties here have the right to excuse jurors for which

17  they don't need to give a reason.  Those are called peremptory

18  challenges.  So in order to make those decisions, we need to

19  have certain information.  I apologize in advance.  Some of

20  the questions I will be asking can be very personal and the

21  answers can be very sensitive.  So in order to ensure that you

22  are open and feel comfortable, we will be taking your answers

23  here at sidebar.  So that means even though the court reporter

24  will also be with us there and taking down all of the answers,

25  the rest of the audience and all the other jurors will not

1   hear the answers.  So, again, I hope that encourages people to

2   be open with their responses.

3          If you are not selected as a juror, please don't

4   take that as a reflection on your ability to be fair or

5   impartial.  We trying to pick a jury in this case.  And, so,

6   the questions are designed to particular a fair or impartial

7   juror in this case.  So if you're not selected as a juror and

8   you are excused, please go down to the second floor jury room

9   where you came from.  There are several other juries that are

10  being picked today and in the coming week or so, so you might

11  be more suitable for one of those trials.

12         Let's just start with the questions.  All right.  So

13  the first one is I will introduce you to some of the

14  participants in this case.

15         The prosecution is represented by Assistant United

16  States Attorneys, and I will ask Ms. Dean, if you could

17  introduce the people with you at counsel table.

18         MS. DEAN:  Thank you, Your Honor.

19         Good afternoon, everyone.  I'm Emily Dean.  I am an

20  Assistant United States Attorney in the Eastern District of

21  New York.  I have two AUSAs with me, Tanya Hajjar and Andrew

22  Palacio.

23         MR. PALACIO:  Good morning.

24         MS. DEAN:  Next to Mr. Palacio is Paralegal

25  Specialist Theodore Rader and at the end of our table is FBI

1   Special Agent Bridgitte Wendel.

2          THE COURT:  Does anybody recognize any of these

3   people?

4          Thank you.  Please be seated.  If you do have a yes

5   answer, you have a number, so just raise the number so we can

6   acknowledge you.

7          The defendant in this case is Mr. Corey Martin.

8          Mr. Cecutti, will you introduce everyone at counsel

9   table with you.

10         MR. CECUTTI:  Good morning, everyone.  My name is

11  Anthony Cecutti.  I represent Corey Martin, along with

12  co-counsel Kestine Thiele and Paralegal Specialist Preston

13  Glover and Mayerlin Illerio.

14         THE COURT:  Does anybody recognize any of these

15  individuals?

16         All right.  Thank you.  Please be seated.

17         Now, let me introduce you to some of the Court

18  staff.  Ryan O'Neil is the courtroom deputy clerk who will be

19  helping during the jury selection.  You have already met him.

20  Meghan Liu is one of my law clerks and Nathan Shi is another

21  law clerk who you may encounter.

22         The judge who will preside over the trial is not me.

23  Her name is Judge Ann M. Donnelly and her courtroom deputy is

24  Donna Greene.  Her law clerks are Jared Allen and Holly

25  Hamster.

1          Does anybody recognize any of us?

2          All right.  Thank you.

3          Let me ask if anybody has a special disability or a

4    physical problem that would make it difficult to sit as a

5    juror in this case.  This might be hearing loss or vision

6    problems, the need to take constant breaks.  Those kinds of

7    things.  So just let me know if you have an issue along those

8    lines.

9          All right.  128.  Thank you.

10          Does anybody have any difficulty speaking, reading

11   or understanding English?

12          All right.  Thank you.

13          So let me talk about the length of the trial.  Of

14   course nobody can predict with certainty how long a trial is

15   going to take, but the parties have made their best estimates

16   and it is believed that the trial will last approximately four

17   weeks.  So the trial will not start until next Tuesday,

18   February 20th, the day after President's Day, and it's likely

19   to go through March 11th, which is a Monday.  It could be

20   shorter, not likely to be longer, but that's the best estimate

21   that people have.  The Court will sit Monday through Friday.

22   The trial will go from 9:30 to about 5:30 every day.  Judge

23   Donnelly will give you more instructions on exactly when she

24   would like you to get here, how early, so that she can start

25   promptly at 9:30 without people delaying things and you will

1    need to show up on time.

2          The trial obviously creates a lot of inconvenience

3    and difficulty for everyone involved, and the attorneys and

4    the Court will make every effort to make sure that things go

5    efficiently and that we are not taking up your time

6    unnecessarily.  The reason we all do that is not just because

7    we are good hearted, because we are, but it also because this

8    case is extraordinarily important to all parties involved and

9    both sides are seeking a fair cross section of the community

10   to consider the case.  So this includes people who work,

11   people who are busy with important responsibilities and other

12   things.  So I cannot excuse you just because the length of the

13   trial will be inconvenient for you, your employer, your family

14   or others.  You are required to serve unless there are some

15   truly extraordinary or unavoidable situation or hardship that

16   prevents it.

17         Having heard that, is there anybody who cannot serve

18   because of the length of the trial or other scheduling issues.

19   All right.  I will take down your number.  And when I call out

20   your number, you can put your number down.  Hold it high so I

21   can see.

22         96, 98, 99, 100, 101, 102, 104, 105.

23         96 and 99, I already called your numbers.

24         110, 112, 114, 120, 121, 123, 124, 129, 130, 132,

25   and 134.  Thank you.

1      Let me ask you about your familiarity with this

2  case.  I want you to understand that nothing that I say today

3  regarding the description of the case is evidence.  The

4  evidence that you will consider, if you are selected as a

5  juror, will only come from the trial testimony of witnesses

6  and from the exhibits that are admitted into evidence.

7      I will now briefly summarize the charges in the

8  indictment.  My description of the case today is only intended

9  to assist you in considering whether you can sit as a fair and

10  impartial juror in this action.  Again, it is not evidence.

11      Mr. Martin has plead not guilty to the charges in

12  the indictment and has thank you raised issues of fact to be

13  determined by a jury.

14      Mr. Martin is charged with five counts, or charges.

15  He is charged with murder-for-hire, murder-for-hire

16  conspiracy, wire fraud conspiracy, aggravated identity theft,

17  and fraudulent use of identification.

18      The indictment alleges that between March 2017 and

19  April 2018, the defendant murdered and dismembered Brady Odom

20  to collect proceeds from life insurance policies that he

21  fraudulently obtained through the unauthorized use of Ms.

22  Odom's personal identifying information.  Mr. Martin, as I

23  said, has denied the charges.

24      Has anybody heard or read anything about this case?

25      All right.  Because of the nature of the charges,

1  some of the evidence will involve violence, prostitution,

2  domestic abuse and drug use.  In addition, some of the

3  evidence in this case will include testimony and images

4  related to the murder and dismemberment of the victim,

5  including autopsy and/or crimes photos.

6           Is there anything about the nature of this type of

7  evidence that might affect your ability to be fair and

8  impartial in this case?

9           THE COURT:  All right.  121.

10          Let pause here, and I will hear your responses to

11 the different questions here at sidebar.  So if the lawyers

12 can just come up here the court reporter.

13          We will have you line up one by one.  If you are

14 excused, please go back to the jury room on the second floor.

15 If you are not excused, please just take your seat again.

16 Thank you.  You can come up.

17          (Sidebar; prospective juror joins.)

18          THE COURT:  Craig Reino?

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  You told us you have an issue with

21 English?

22          THE PROSPECTIVE JUROR:  No.  I'm diagnosed hard of

23 hearing, but on top of that, I'm also diabetic.  I have kidney

24 issues and I have to have blood work at least two to three

25 times a month.

1          THE COURT:  During the time of the trial that I have

2    talked about, will you have to go get blood work?

3          THE PROSPECTIVE JUROR:  Yes, I have blood work that

4    I have to get done at local doctors two or three times a month

5    and it has to be on-site.

6          THE COURT:  What time would that be?

7          THE PROSPECTIVE JUROR:  They're various.

8          THE COURT:  And could it be done before or after the

9    trial?

10          THE PROSPECTIVE JUROR:  No, because between the

11    blood thinners and my kidney function, it's depending on the

12    results.

13          THE COURT:  I see.

14          MS. DEAN:  No objection.

15          MR. CECUTTI:  No objection.

16          THE COURT:  You are excused.  You can go back to the

17    jury room.

18          THE PROSPECTIVE JUROR:  Thank you.

19          (Prospective juror excused.)

20          (Sidebar continues; prospective juror joins.)

21          THE PROSPECTIVE JUROR:  Good morning.

22          THE COURT:  Hello.  Felipe Gonzalez?

23          THE PROSPECTIVE JUROR:  Good morning.

24          THE COURT:  Tell us what your issue with the

25    scheduling is.

1          THE PROSPECTIVE JUROR:  Well, just maybe my

2   daughters.  I got three daughters.

3          THE COURT:  Three daughters.

4          THE PROSPECTIVE JUROR:  Yes.  So it's only for that

5   issue.

6          THE COURT:  Okay.

7          THE PROSPECTIVE JUROR:  So my wife she working, I'm

8   working and by the time -- so probably I don't be available to

9   follow that way.

10          And I don't know whether my super -- I live in

11  Staten Island.  So the super told me do whatever you have to

12  do.  There's no problem with that.  It's only I concerned

13  about my daughters.

14          THE COURT:  And how old are your daughters?

15          THE PROSPECTIVE JUROR:  She's 11, 14, and 18 years

16  old.

17          THE COURT:  What do you need to do with regard to

18  your daughter that is a problem?

19          THE PROSPECTIVE JUROR:  The thing is I got to go

20  back home, so I have to be home for my daughters, one left

21  alone at home.

22          THE COURT:  But if you are working --

23          THE PROSPECTIVE JUROR:  Yes, but my wife she stay

24  there, so when I go back home, so I will be in charge.

25          THE COURT:  How will that be different if you are

1   sitting on a jury as opposed to you working?

2          THE PROSPECTIVE JUROR:  If I have to serve for jury

3   duty, I got to tell the boss I have to be out for I don't know

4   how many days.  There is no problem with that.

5          THE COURT:  So is it the time that you need to be

6   with your daughters or is it the money?

7          THE PROSPECTIVE JUROR:  No, it's the time.  I don't

8   want to left them alone.  That's the time.

9          THE COURT:  What times do you normally work?

10         THE PROSPECTIVE JUROR:  I started at 6:30 in the

11  morning until four o'clock, 4:30.

12         THE COURT:  I see.  So after 4:30 you're usually

13  home?

14         THE PROSPECTIVE JUROR:  Yes, exactly.

15         THE COURT:  If you are here, you wouldn't be home?

16         THE PROSPECTIVE JUROR:  Yes.

17         THE COURT:  You live in Staten Island?

18         THE PROSPECTIVE JUROR:  Yes.

19         THE COURT:  So if you finished the jury here at

20  5:30, what time would you get home?

21         THE PROSPECTIVE JUROR:  We got to say -- If we

22  finish 4:00 we got to say 7 o'clock at night because I have to

23  take the bus or the ferry, one of these choices.  And I live

24  close to New Jersey.  So it's got to be on the end, all the

25  way on the end.

1          THE COURT:  If you left here at 5:30 --

2          THE PROSPECTIVE JUROR:  I got to be home 7, 730 in

3   my home, yes.

4          THE COURT:  But you said you have a 11-year-old, a

5   14-year-old, and a 18?

6          THE PROSPECTIVE JUROR:  Yes, and 18 years.

7          THE COURT:  The 18-year-old is home, so she can help

8   take care of the others?

9          THE PROSPECTIVE JUROR:  I hope.  We never leave

10  alone there.  That's the reason.

11         THE COURT:  Great.  So if that's your only

12  concern --

13         THE PROSPECTIVE JUROR:  Yes.

14         THE COURT:  -- it sounds like the 18-year-old should

15  be able to take care of?

16         THE PROSPECTIVE JUROR:  I hope, yes.

17         THE COURT:  Good.  And you will get paid?  That's

18  not the problem, the issue?

19         THE PROSPECTIVE JUROR:  No problem.

20         THE COURT:  Thank you.

21         THE PROSPECTIVE JUROR:  You're welcome.

22         (Prospective juror leaves sidebar.)

23         THE COURT:  Ruiko --

24         THE PROSPECTIVE JUROR:  Yes, Judge.

25         THE COURT:  -- Tokunaga?

1          THE PROSPECTIVE JUROR:  Tokunaga.

2          THE COURT:  Tell me your issue, please.

3          THE PROSPECTIVE JUROR:  My issue is -- this is going

4    to sound lame, but I have a dying cat at home, and I have to

5    --  she has to go into the animal medical center regularly for

6    testing.  I don't get to choose the day.  They kind of just

7    call me and I got to go.

8          THE COURT:  Are you working?

9          THE PROSPECTIVE JUROR:  I am working, but I'm

10   working from home.

11         THE COURT:  How often do you have to take your cat

12   in?

13         THE PROSPECTIVE JUROR:  Recently, it's been once a

14   week.  I think -- they haven't made my next appointment yet.

15   We are waiting for test results that I haven't gotten yet, so

16   I don't know.

17         THE COURT:  Could those things be done in the

18   morning because you live in Brooklyn?  Could you do it before

19   trial or after?

20         THE PROSPECTIVE JUROR:  I don't really get to choose

21   because they're ver busy.  They tell me when to come and it is

22   usually 10, 11, 12, and I just go.

23         THE COURT:  And there is nobody else that can do?

24         THE PROSPECTIVE JUROR:  I live alone.

25         THE COURT:  You couldn't ask a neighbor or friend to

1  help?

2          THE PROSPECTIVE JUROR:  It is a big ask.

3          MR. CECUTTI:  No objection.

4          MS. DEAN:  No.

5          THE PROSPECTIVE JUROR:  She's kind of spicy.

6          THE COURT:  You are excused.  Go back to the second

7  floor.

8          THE PROSPECTIVE JUROR:  Thank you.

9          THE COURT:  Thank you.

10          (Prospective juror excused.)

11          THE COURT:  Hello, Tresan McFarlane?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Tell us your issue, please.

14          THE PROSPECTIVE JUROR:  I have two kids, one is 8,

15  she's in school, and the other one, she's one -- I'll say 15

16  months.  That's about it.

17          THE COURT:  All right.

18          THE PROSPECTIVE JUROR:  That's the only issue.  I

19  would like to take part of the case, but having somebody watch

20  after 2:00, that's where the issues arises.

21          THE COURT:  So after two o'clock?

22          THE PROSPECTIVE JUROR:  Yeah, that's the issue.

23          THE COURT:  There is nobody else who could cover for

24  you?

25          THE PROSPECTIVE JUROR:  No, because her father works

1  during the times from 11:00 to 8:00, so.

2            MS. DEAN:  No objection, Judge.

3            MR. CECUTTI:  No objection.

4            THE COURT:  You are excused.  You can go back to the

5  second floor.

6            THE PROSPECTIVE JUROR:  Thank you.

7            (Prospective juror excused.)

8            THE COURT:  Erin Cleary?

9            THE PROSPECTIVE JUROR:  Erin Cleary.

10           THE COURT:  What's your issue?

11           THE PROSPECTIVE JUROR:  From Nassau.

12           THE COURT:  No, no.  That's not it.  You told us

13  that you have a scheduling issue.

14           THE PROSPECTIVE JUROR:  Yes.

15           THE COURT:  Yes.

16           THE PROSPECTIVE JUROR:  I have two eight-year-olds

17 and I don't have any daycare because of my husband's job, so I

18 don't know how I would manage that.

19           THE COURT:  So they are in school; right?

20           THE PROSPECTIVE JUROR:  They're in school.  My

21 husband works overnight, and I come from work and I take them

22 when I go to work, he has them.

23           THE COURT:  So normally what time would you take

24 them?

25           THE PROSPECTIVE JUROR:  I get -- I leave my job

1  about three o'clock, I have someone pick them up and I pick

2  them up like 3:30, 3 o'clock.

3            THE COURT:  And nobody can do that for you?

4            THE PROSPECTIVE JUROR:  The person who does that has

5  Parkinson's, I have nobody else.

6            THE COURT:  I see.  Your husband you said is

7  working?

8            THE PROSPECTIVE JUROR:  I'm sorry?

9            THE COURT:  You said the father can't pick up the

10  children?

11            THE PROSPECTIVE JUROR:  No, he works midnights.  He

12  is a police officer.

13            MR. CECUTTI:  No objection.

14            MS. DEAN:  No objection.

15            THE COURT:  Thank you.  You are excused.

16            (Prospective juror excused.)

17            (Sidebar continues; prospective juror joins.)

18            THE COURT:  Hello.  You are John Pascual?

19            THE PROSPECTIVE JUROR:  Yes.

20            THE COURT:  What is your issue?

21            THE PROSPECTIVE JUROR:  My mom is handicap and I

22  take her to disability PT and she can't drive herself and I'm

23  really the only one that can drive her.

24            THE COURT:  How often do you have to take her?

25            THE PROSPECTIVE JUROR:  Twice a week.

1          THE COURT:  There is no one else who can do it?

2          THE PROSPECTIVE JUROR:  My dad usually does it, but

3    he is working and he really doesn't have anymore vacation as

4    of right now.

5          THE COURT:  And that's definitely she has to go

6    twice a week?

7          THE PROSPECTIVE JUROR:  Yes.

8          MS. DEAN:  No objection.

9          MR. CECUTTI:  No objection.

10         THE COURT:  All right.  You are excused.

11         THE PROSPECTIVE JUROR:  Thank you.

12         THE COURT:  Thank you.

13         (Prospective juror excused.)

14         THE COURT:  Hello.

15         THE PROSPECTIVE JUROR:  Good morning, Your Honor.

16         THE COURT:  Cloe Baniswal.

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  Yes.

19         THE PROSPECTIVE JUROR:  So I have a trip that's

20    already booked from the 28th to the 24th.

21         THE COURT:  Of February?

22         THE PROSPECTIVE JUROR:  Yes.

23         THE COURT:  Where are you going?

24         THE PROSPECTIVE JUROR:  Tennessee.

25         THE COURT:  And do you have tickets already?

1        THE PROSPECTIVE JUROR:  Yes.

2        THE COURT:  And it can't be re-scheduled?

3        THE PROSPECTIVE JUROR:  It cannot be, unfortunately.

4        MS. DEAN:  No objection.

5        MR. CECUTTI:  No objection.

6        THE COURT:  You are excused.

7        THE PROSPECTIVE JUROR:  Thank you.

8        THE COURT:  You can go back.

9        (Prospective juror excused.)

10       (Sidebar continues; prospective juror joins.)

11       THE COURT:  Hello, Huascar Grullon?

12       THE PROSPECTIVE JUROR:  Yes.

13       THE COURT:  What is your issue?

14       THE PROSPECTIVE JUROR:  I'm not going to be here

15  next week.  I'm going on vacation next week.

16       THE COURT:  Where are you going?

17       THE PROSPECTIVE JUROR:  Going to the Bahamas.

18       THE COURT:  Do you have tickets already?

19       THE PROSPECTIVE JUROR:  Yeah, going on a cruise.

20       MS. DEAN:  No objection.

21       MR. CECUTTI:  No objection.

22       THE COURT:  You're excused.  Go back to the jury

23  room.

24       THE PROSPECTIVE JUROR:  Thank you.

25       THE COURT:  Maybe there is another trial this week.

1          THE PROSPECTIVE JUROR:  Thank you.

2          (Prospective juror excused.)

3          THE COURT:  Juror No. 105, Milagras --

4          THE PROSPECTIVE JUROR:  Milagras De La

5     Concha-Gonzalz.

6          THE COURT:  Yes.

7          THE PROSPECTIVE JUROR:  Yes, I'm a school counselor

8     in Brentwood, in Long Island, and there's a few things pending

9     medically.  I have an MRI scheduled for next week for this

10    lump on my side.  I just got diagnosed with osteoporosis.  So

11    the traveling here from East Northport, Long Island is just

12    very difficult.

13         MR. CECUTTI:  No objection.

14         MS. DEAN:  No objection.

15         THE COURT:  All right.  You are excused.

16         THE PROSPECTIVE JUROR:  Thank you.

17         THE COURT:  You can go back to the jury room.

18         (Prospective juror excused.)

19         THE COURT:  110.

20         (Sidebar continues; prospective juror joins.)

21         THE PROSPECTIVE JUROR:  Hello.

22         THE COURT:  Hello.

23         THE PROSPECTIVE JUROR:  Hello.

24         THE COURT:  Juror No. 110.  Olga Bizhko.

25         THE PROSPECTIVE JUROR:  Yes.

1          THE COURT:  What's your issue?

2          THE PROSPECTIVE JUROR:  I have two little kids and I

3    have purchased tickets for vacation from March 3rd to March

4    8th.

5          THE COURT:  Where are you going?

6          THE PROSPECTIVE JUROR:  Jamaica.  My friend is

7    renewing her vows.

8          THE COURT:  And those are tickets you can't change?

9          THE PROSPECTIVE JUROR:  No.  I mean, she's not going

10   to change the date of her renewal vows.

11         MS. DEAN:  No objection.

12         MR. CECUTTI:  No objection.

13         THE COURT:  Okay.  You are excused.

14         THE PROSPECTIVE JUROR:  Thank you so much.

15         THE COURT:  Go back to the jury room.

16         (Prospective juror excused.)

17         THE COURT:  Hello.  112, Joe Sanchez.

18         THE PROSPECTIVE JUROR:  Yes.

19         THE COURT:  What is your issue?  What is your issue?

20         THE PROSPECTIVE JUROR:  I just moved to Suffolk

21   County last year and I don't know many people to pick up my

22   daughter from the school.  And also to, you know, take my

23   daughter to school.

24         THE COURT:  How old is your daughter?

25         THE PROSPECTIVE JUROR:  11 years old.

1      THE COURT:  What time does she finish school?

2      THE PROSPECTIVE JUROR:  2:45.

3      THE COURT:  Are you working?

4      THE PROSPECTIVE JUROR:  Yes.

5      THE COURT:  Do you work?

6      THE PROSPECTIVE JUROR:  Yes.

7      THE COURT:  What are your normal work hours?

8      THE PROSPECTIVE JUROR:  I'm doing deliveries.

9      THE COURT:  So at 2:45, are you the one who picks

10  her up?

11     THE PROSPECTIVE JUROR:  Hum?

12     THE COURT:  Do you pick up your daughter now?

13     THE PROSPECTIVE JUROR:  Every day.

14     THE COURT:  If you were here, you don't have anybody

15  who could pick her up?

16     THE PROSPECTIVE JUROR:  No.  I have to pick up my

17  daughter from Queens and bring her at 4:00 in the morning, to

18  bring my daughter.  She take care of my daughter.

19     THE COURT:  But --

20     THE PROSPECTIVE JUROR:  My daughter.

21     THE COURT:  -- your daughter is in school?

22     THE PROSPECTIVE JUROR:  Yes.

23     THE COURT:  And you said your sister is helping?

24     THE PROSPECTIVE JUROR:  Today, yes.

25     THE COURT:  And she can't help for the rest of the

1  week?

2          THE PROSPECTIVE JUROR:  Not many days, I don't think

3  for four weeks, three weeks.

4          MR. CECUTTI:  No objection.

5          MS. DEAN:  No objection.

6          THE COURT:  You are excused.  You can go back to the

7  jury room.  Okay.

8          THE PROSPECTIVE JUROR:  Thank you.

9          (Prospective juror excused.)

10          (Sidebar continues; prospective juror joins.)

11          THE COURT:  Hello.  Juror No. 114, Emery Benedek?

12          THE PROSPECTIVE JUROR:  Yes, that's me.

13          THE COURT:  Tell me what the issue here is.

14          THE PROSPECTIVE JUROR:  Well, my profession is I'm

15  an ocularist.  I design and fit prosthetic eyes.  And

16  basically my appointments are already set for people, for

17  example, today we had to cancel appointments because I found

18  out I was doing this, so, I mean, there's no one else that can

19  do it.  These patients require that I, you know, otherwise

20  they're going to have to wait a while.

21          THE COURT:  You fit them with prosthetic?

22          THE PROSPECTIVE JUROR:  Yes, they refers --

23  ophthalmologists sends them to us.  It's called Mager and

24  Gougelman.  I have been there 12 years.  Before that, I was at

25  New York Hospital, Columbia Presbyterian.

1    THE COURT:  So there is no one else that could cover

2    for you?

3    THE PROSPECTIVE JUROR:  Exactly.  We have a full

4    scheduled.

5    THE COURT:  Okay.

6    THE PROSPECTIVE JUROR:  Like I said, we had to

7    cancel people today.

8    THE COURT:  I see.

9    THE PROSPECTIVE JUROR:  I didn't know when I was

10   going to be back.

11   THE COURT:  Right.

12   MR. CECUTTI:  No objection.

13   MS. DEAN:  No objection.

14   THE COURT:  Thank you.

15   THE PROSPECTIVE JUROR:  Thank you.

16   THE COURT:  You're excused.

17   THE PROSPECTIVE JUROR:  What do I do now?

18   THE COURT:  Go back to the second floor.

19   (Prospective juror excused.)

20   (Sidebar continues; prospective juror joins.)

21   THE COURT:  Hello.  Juror No. 120, Gareth Manwaring?

22   THE PROSPECTIVE JUROR:  Yes.

23   THE COURT:  Tell us your issue.

24   THE PROSPECTIVE JUROR:  I work in the film and TV

25   industry.  Because of the strikes last year, I have been

1   pretty much out of work for six months, so I rely on day work

2   and being that I could only get a couple of days here and

3   there, this would potentially be an issue for me.

4           THE COURT:  So do you have any jobs currently

5   planned in the next month?

6           THE PROSPECTIVE JUROR:  I had offers for these days

7   and these weeks, but they're all on hold because of being

8   here.

9           THE COURT:  Okay.

10          THE PROSPECTIVE JUROR:  Otherwise, it is every week

11  I get a call at the end of the week, hopefully.

12          THE COURT:  And if you don't take the jobs, you

13  don't get paid?

14          THE PROSPECTIVE JUROR:  Right.  It's all freelance.

15          MR. CECUTTI:  No objection.

16          MS. DEAN:  No objection.

17          THE COURT:  Thank you.  You are excused.

18          THE PROSPECTIVE JUROR:  Okay.

19          (Prospective juror excused.)

20          (Sidebar continues; prospective juror joins.)

21          THE COURT:  Juror No. 121, Denise Nalini?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Tell us your issue or issues.  I know

24  you had two.

25          THE PROSPECTIVE JUROR:  First of all, four weeks is

1    too long because my job only pays for 10 days of jury duty.

2            THE COURT:  Okay.

3            THE PROSPECTIVE JUROR:  And the second issue is that

4    my son served time in the federal prison.

5            THE COURT:  Okay.

6            THE PROSPECTIVE JUROR:  It was in this courtroom and

7    he died of a drug overdose in 2014.

8            THE COURT:  I'm sorry.

9            THE PROSPECTIVE JUROR:  And I have family ties with

10   the Gotti family.

11           THE COURT:  And do you think those things would make

12   you not fair?

13           THE PROSPECTIVE JUROR:  Yes.

14           MS. DEAN:  No objection.

15           MR. CECUTTI:  No objection.

16           THE COURT:  So you're excused.

17           THE PROSPECTIVE JUROR:  Thank you.

18           THE COURT:  Go back to the jury room.  Thank you.

19           (Prospective juror excused.)

20           (Sidebar continues; prospective juror joins.)

21           THE COURT:  Hello.  You're Juror No. 123, Ioannis

22   Papadeas?

23           THE PROSPECTIVE JUROR:  Yes.

24           THE COURT:  What is your issue?

25           THE PROSPECTIVE JUROR:  I am traveling to Europe

1    this Sunday.

2           THE COURT:  Okay.  And are those -- do you already

3    have the airplane ticket?

4           THE PROSPECTIVE JUROR:  Yeah, yeah.  I have the

5    tickets here.  Do you want to --

6           THE COURT:  When will you be back?

7           THE PROSPECTIVE JUROR:  Next Friday.

8           MS. DEAN:  No objection.

9           MR. CECUTTI:  No objection.

10          THE COURT:  All right.  You are excused.

11          THE PROSPECTIVE JUROR:  Thank you.

12          THE COURT:  Thank you.

13          (Prospective juror excused.)

14          (Sidebar continues; prospective juror joins.)

15          THE COURT:  Juror No. 124, Aisha Anthony.  What is

16   your issue?

17          THE PROSPECTIVE JUROR:  I'm having surgery next

18   Wednesday, yeah.

19          THE COURT:  Is this something that could be

20   re-scheduled?

21          THE PROSPECTIVE JUROR:  I waited month for this

22   appointment.

23          MS. DEAN:  No objection.

24          MR. CECUTTI:  No objection.

25          THE COURT:  You are excused.  Thank you.

1          (Prospective juror leaves sidebar.)

2          (Sidebar continues; prospective juror joins.)

3          THE COURT:  Juror No. 129, Dwayne Lawson?

4          THE PROSPECTIVE JUROR:  Yes, ma'am.

5          THE COURT:  What is your issue?

6          THE PROSPECTIVE JUROR:  The thing is my vacation is

7    coming up on March 3rd and I already booked the tickets and

8    hotel.

9          THE COURT:  March 3rd?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  For how long?

12          THE PROSPECTIVE JUROR:  It's for a week.

13          MR. CECUTTI:  No objection.

14          MS. DEAN:  No objection.

15          THE COURT:  Thank you.  You are excused.

16          (Prospective juror excused.)

17          THE COURT:  Juror No. 130, Joel Georges.

18          THE PROSPECTIVE JUROR:  Good morning.

19          THE COURT:  What is your issue?

20          THE PROSPECTIVE JUROR:  I'm self-employed.  I do gig

21    work.  So four weeks is definitely a hardship for my family

22    and I'm the only breadwinner.

23          THE COURT:  I see.  What kind of work you do?

24          THE PROSPECTIVE JUROR:  I do Instacart, Uber.

25          THE COURT:  I see.  Could you make up that work at

1   night if you were sitting on the jury?

2          THE PROSPECTIVE JUROR:  I usually work 8:00 to 7:00.

3          THE COURT:  I see.

4          THE PROSPECTIVE JUROR:  Yeah.

5          MR. CECUTTI:  No objection.

6          MS. DEAN:  No objection.

7          THE COURT:  Thank you.  You are excused.

8          THE PROSPECTIVE JUROR:  Thank you.

9          (Prospective juror excused.)

10         (Sidebar continues; prospective juror joins.)

11         THE COURT:  Juror No. 132.

12         THE PROSPECTIVE JUROR:  Hello.

13         THE COURT:  Hello.  Eric Bush.  Tell us your issue.

14         THE PROSPECTIVE JUROR:  I'm a New York State peace

15  officer, and I have health issues.

16         THE COURT:  Uh-hum.

17         THE PROSPECTIVE JUROR:  Glaucoma, high blood

18  pressure, diabetes.  I just came out of the hospital, I had

19  low sodium.

20         THE COURT:  Okay.  So the health issues --

21         THE PROSPECTIVE JUROR:  Yes, ma'am.

22         THE COURT:  How does that affect you?

23         THE PROSPECTIVE JUROR:  The eyesight.  I'm not too

24  good and I can't hold my urine.

25         THE COURT:  Are you a working full-time?

1        THE PROSPECTIVE JUROR:  Yeah, I'm supposed to retire

2   soon.  I'm looking forward to it.

3        THE COURT:  Well, when you are working, how do you

4   deal with your medical issues?

5        THE PROSPECTIVE JUROR:  Well, I take off, take FMLA,

6   family leave.

7        THE COURT:  Okay.

8        THE PROSPECTIVE JUROR:  So I just got back, so.

9        MR. CECUTTI:  No objection.

10       MS. DEAN:  No objection.

11       THE COURT:  All right.  So you're excused.

12       THE PROSPECTIVE JUROR:  Thank you.

13       THE COURT:  Go back to the jury room, please.

14       (Prospective juror excused.)

15       (Sidebar continues; prospective juror joins.)

16       THE COURT:  Hello.

17       THE PROSPECTIVE JUROR:  Hi.

18       THE COURT:  Juror No. 134, Jose Abarca?

19       THE PROSPECTIVE JUROR:  Yes.

20       THE COURT:  What is your issue?

21       THE PROSPECTIVE JUROR:  I'm a manager.  I manage the

22   team and I need to do the end-of-year review.  Normally, I

23   have more time, but my boss also needs to be present and he

24   has had some medical issues, so he has been out a lot.  I need

25   to be able to do that next week.  So Tuesday, Wednesday, and

1   Thursday I'm delivering those reviews.

2          THE COURT:  Is that something that you can do next

3   week?

4          THE PROSPECTIVE JUROR:  No, because my boss is

5   having another surgery this week and he will be out.

6          THE COURT:  So your boss will be back next week?

7          THE PROSPECTIVE JUROR:  Yeah.

8          THE COURT:  And are these reviews things that could

9   be put off?

10         THE PROSPECTIVE JUROR:  So we need to deliver them

11  before the end of February, so, basically, by the end of next

12  week, in order -- so I can tell people what their raises are

13  going to be so they won't get surprises with they get their

14  paycheck and then maybe it doesn't line up with their

15  expectations.

16         THE COURT:  Is this anything that you can do in the

17  evenings after jury duty?

18         THE PROSPECTIVE JUROR:  I mean, unfortunately, even

19  though I have flexibility, I don't know that I can ask that

20  for any of the people that work for me or my boss who has like

21  the medical issue.

22         THE COURT:  Yes.

23         THE PROSPECTIVE JUROR:  So it's next week I have to

24  have that, but I could be available after that.

25         THE COURT:  Or maybe later this week, if there was

1   another trial, could you serve this week?

2          THE PROSPECTIVE JUROR:  Yes, all of the people that

3   I am delivering reviews to, I have one that's tomorrow and

4   then one Tuesday, Wednesday, next week, so Wednesday through

5   Friday I'm available this week.

6          MS. DEAN:  No objection.

7          THE COURT:  You want to talk about it?

8          MR. CECUTTI:  Yes.

9          THE COURT:  If you can step aside so I can talk to

10  the lawyers.

11         THE PROSPECTIVE JUROR:  Yeah.

12         MR. CECUTTI:  It seems there is the possibility of

13  flexibility here and maybe if he was able to get further

14  information about scheduling during the break, he might be

15  available.

16         THE COURT:  What I heard him say was that his boss

17  has medical issues this week, which is why he needs to be

18  available next week, and there isn't flexibility because they

19  need to have this done.

20         I pressed him about whether he was available for

21  other services because I wanted to make sure that he wasn't

22  just trying to get out of jury duty.  So it seems like he

23  doesn't have flexibility because of his boss's medical issue

24  this week.

25         I can ask him.  We are going to take a break, but

1   what I am hearing him say is this week is because of medical

2   issues.

3               MR. CECUTTI:  If you could do some brief follow up.

4               THE COURT:  Okay.  Along the lines of flexibility?

5               MR. CECUTTI:  Yes.

6               THE COURT:  All right.

7               (Sidebar continues; prospective juror joins.)

8               THE COURT:  Hi, Mr. Abarca.  I had a couple of

9   follow-up questions.

10              THE PROSPECTIVE JUROR:  Yes.

11              THE COURT:  We want to figure out how flexible

12  things are --

13              THE PROSPECTIVE JUROR:  Right.  Right.

14              THE COURT:  -- because if your boss has some medical

15  issues this week --

16              THE PROSPECTIVE JUROR:  So he's having the surgery

17  on Wednesday, but tomorrow I do have to deliver the review of

18  one individual who's going to India for a month.

19              THE COURT:  Right.

20              THE PROSPECTIVE JUROR:  So his doctor told my boss

21  Wednesday, Thursday, Friday, he needs to be out.

22              THE COURT:  I see.

23              THE PROSPECTIVE JUROR:  He will be back next week.

24  So next week, Tuesday, Wednesday, Thursday, I have different

25  reviews on each of those days, because he is not only sitting

1  in with me, I also have peers with the other teams, so he's

2  fully book like next week.

3            By after next week, then we'll be done with that

4  process and then we will probably be free.

5            THE COURT:  It's not something that could be put off

6  because it needs to be done before the end of February?

7            THE PROSPECTIVE JUROR:  Before peoples' paychecks go

8  out.

9            THE COURT:  Is there anyone else who can do this

10  other than you, your colleagues?

11            THE PROSPECTIVE JUROR:  It's the people that, you

12  know, I manage.  So I need to kind of give their year-end

13  review and, you know, basically, like, manage their

14  expectations and I need to set guidance for them.  So I'm

15  really kind of that person that watches over them, supervises

16  them.  I'm responsible for their career growth and things like

17  that.  That's kind of my responsibility.

18            THE COURT:  All right.

19            MR. CECUTTI:  No objection.

20            THE COURT:  All right.  Thank you.  You are excused.

21            THE PROSPECTIVE JUROR:  Thank you so much.

22            THE COURT:  Thank you.

23            (Prospective juror excused.)

24            THE COURT:  All right.  Let's see how many people we

25  have from this group.

1          So people to be added to the list 96, 97, 103, 106,

2     107, 108, 109, 111, 113, 115, 116, 117, 118, 119, 122, 125.

3              MR. CECUTTI:  Judge, I have 125 out.

4              THE COURT:  Yes, did we -- I don't.

5              MR. CECUTTI:  No.  That's my mistake.  Sorry.

6     Sorry.

7              THE COURT:  So 122, 125, 126, 127.

8              MS. HAJJAR:  You're deputy informed us that 125 is

9     absent.

10             THE COURT:  Okay.  Good.  Wait.  What do you mean?

11         So we have 72 jurors for this -- from whom to pick.

12     So I think that's a good one.

13             MS. DEAN:  Okay.

14             THE COURT:  So it is 12:30.  So I can give until

15     maybe 1:15 to come back, otherwise it is a half hour and that

16     is very short.

17             MS. DEAN:  Okay.

18             THE COURT:  At 1:15 we should all be back here and

19     resume questioning and we should be done.

20             MS. DEAN:  Thank you.

21             MS. HAJJAR:  Thank you.

22             MR. CECUTTI:  Thank you.

23             (End of sidebar conference.)

24             (In open court.)

25             THE COURT:  Thank you, everyone.  So we are going to

1  take a lunch break now until 1:15.

2       There is a cafeteria on the third floor, but you're

3  free to go out.  Don't go too far.  There are a couple of

4  restaurants nearby.  We need you to be back here promptly at

5  1:15 so that we finish up today.  The weather is supposed to

6  be bad and I want to make sure everyone is out and does not

7  have to come back tomorrow, if we pick a jury.

8       Please don't talk about the case, even with each

9  other.  Don't go online and don't do any research about anyone

10  here or about the case.  Definitely don't go posting that

11  you're being considered for a jury, it looks like an

12  interesting case.  The only thing that you could do is if you

13  need to tell somebody about the scheduling.  But beyond that

14  don't tell anybody about the case.  Don't talk about it.

15  Don't do any research.

16       If you bump into the lawyers outside or any of the

17  participants, they will ignore you.  They're not being rude.

18  They've been told not to have any interactions with the

19  jurors.  All right.  Please enjoy your lunch.  When you come

20  back, everybody will gather in the room across the hall.  Ryan

21  will show you that courtroom.  So if you get back a little

22  early, that room will be open.  There will be some other

23  jurors there as well.  There were people that we talked to

24  earlier, before you.  We will all be together this afternoon

25  as we complete the jury selection process.

1        Thank you very much.  I will see you all at 1:30.

2        (Prospective jurors exit.)

3        THE COURT:  Thank you.  See you all at 1:15.

4        Were there any issues you wanted to discuss or we

5   will just pick up with the rest of the questions?

6        MR. CECUTTI:  Yes.  Thank you.

7        THE COURT:  Thank you.

8        (Lunch recess.)

9

10       (Continued on next page.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     AFTERNOON SESSION

2              (In open court; jury not present.)

3              THE COURT:  Please be seated.

4              While we have a moment, I wanted to confirm that it

5       looked like from the first group that were 50 and in the

6       second group that were 20.

7              Am I right?

8              MS. DEAN:  Yes, Your Honor.

9              MR. CECUTTI:  Yes.

10             THE COURT:  And do the parties want to use the

11      silent peremptory strikes or did you want to go into a

12      different room and exercise the strikes?

13             MS. DEAN:  The Government would like to go into a

14      different room.

15             THE COURT:  Okay.

16             MR. CECUTTI:  No objection to that.  That's fine.

17             THE COURT:  So then we could ask the jurors to leave

18      or we could use the jury room back here.  Since it is not my

19      courtroom, I'm not familiar with the jury room.  During one of

20      the breaks, I will take a look and see if it's appropriate.

21      Otherwise, we can ask the jurors to leave and then you can

22      exercise the strikes here.

23             MR. CECUTTI:  That might be easiest just because we

24      have all of our papers.

25             THE COURT:  That sounds good.  I think they can all

1   go into Judge Chen's courtroom against the hall and then we

2   will bring them back.  And, actually, that's good because the

3   selected jurors can be seated in the box at that point.

4           MS. DEAN:  Thank you.

5           THE COURT:  Thank you.

6           THE COURTROOM DEPUTY:  Jury entering.

7           (Prospective jurors enter.)

8           THE COURT:  Please be seated, everyone.

9           Good afternoon.  I hope you had a good lunch.  We

10  combined the two groups that were questioned this morning, so

11  there may be some unfamiliar faces, but everybody has gone

12  through the same process up until this point.  So we are going

13  to proceed together.  I have some other questions to ask you

14  and just remind you if you have a yes answer, please raise

15  your number so we can note that you need to be asked some

16  follow-up questions.

17          So the next question is about other participants and

18  you're familiarity with those people or those entities or

19  locations.  So there are about 47 people and entities that may

20  be mentioned in this case, or they may be called as witnesses,

21  so I need to know whether you know any of these people or are

22  familiar with any of these entities.  Wait until I have gone

23  through the whole list and then you can raise your number if

24  you recognize any of these people:

25          Brandy Odom, Nicole Odom, Aisha Odom, Alisha Tucker,

1    Robert Clouden, Patricia Smith, Samson Alabi, Adelle Anderson,

2    Blythe Bradley, Selm Gultekin, Andrew Hoffman, Samuel Lemus,

3    Anthony Turrisi, Jasper Moulder, John Hector, Eungee Hwang,

4    Jamie Brust, Adam Van Duzer, Jordan Allar.

5            These next people are employed by the NYPD.

6            Lieutenant Juan Cruz, Sergeant Matthew Noftsier,

7    Sergeant Richard Pignatelli, Detective James Richardson,

8    Detective Ajuba Granville, Detective Kim Cenizal, Detective

9    Omar Santiago, Detective Benjamin Colecchia, Detective Claude

10   Jean-Pierre, Detective Julie Casale, Detective Michael

11   Hopkins, Detective Frank Lorello, Detective George Velez,

12   Detective Cynthia Ramirez, Officer Stephen Deluzio, Officer

13   Cedric Raymondo, Officer Junaid Saeed, Criminalist Andrew

14   Deschamps, Criminalist Thomas Carboy, Criminalist Saree

15   Chanpae-Chen, Criminalist Kassandra Aguayo.

16           And then these are employees of the Office of Chief

17   Medical Examiner.

18           Criminalist Bo Lim, Dr. Shana Straub, Dr. Angela

19   Soler, and FBI agents -- Special Agents Richard Busick and

20   Matthew Weidemer.

21           And then the entities are Globe Life Insurance

22   Company and America National Insurance Company.

23           Does anybody know any of these people or are

24   familiar with these entities?

25           All right.  Okay.  38.  Thank you.

1        So there are a couple of locations as well that will

2   be mentioned and I just wanted to know if anybody is familiar

3   with these locations.

4        Canarsie or Seaview Park in Brooklyn, 249-45 148th

5   Road in Queens, New York and its immediate vicinity.

6        Those are the two locations.

7        Okay, 126 and 97.

8        THE COURT:  Okay, 39 and 47.  46.  Sorry.  Thank

9   you.  So I'm going to ask you about some legal principles.

10       The fact that the charges in this case, as in all

11  criminal cases prosecuted in federal court are prosecuted in

12  the name of the United States, does not entitle the

13  prosecution to any greater consideration than any other

14  litigant in this court.  All parties are equal in a court of

15  law, such as this and no party is entitled to specific

16  consideration or to favor.

17       Is there anyone who is unable to accept and apply

18  this rule of law, that everyone is equal before the law,

19  including the Government?  All right.

20       In a criminal case, the charges against the

21  defendant are contained in a document called an indictment.

22  An indictment is simply the way the defendant gives the

23  Government notice of the charges.  An indictment is an

24  accusation and nothing more.

25       An indictment is not evidence and you are to give it

1    no weight in arriving at your verdict.

2              Is there anyone who is unable to accept and apply

3    this rule of law?

4              Okay.

5              Does anybody have any biases or prejudices against

6    members of any racial or ethic groups that would make it

7    difficult for you to be fair and impartial?

8              So let me go over some fundamental legal principles

9    that apply in every legal case.

10             Every person accused of a crime is presumed to be

11   innocent, including Mr. Martin.  An accused has absolutely no

12   burden to prove anything, including his innocence.

13             Is there anyone who is unable to accept this legal

14   principle?

15             Is there anyone who is unable to accept that Mr.

16   Martin is presumed innocent?

17             All right.

18             Every defendant has the right to remain silent and

19   not testify.  A juror may not consider whether a defendant has

20   testified at trial or not.  In other words, if a defendant

21   chooses not to testify, you could not hold it against him.

22             Is there anyone who is unable to accept and apply

23   this rule of law?

24             The Government has the burden of proving each

25   element of each crime beyond a reasonable doubt.  If the

1  Government fails to prove this, the jury is required to return

2  a verdict of not guilty.

3          Is there anyone who is unable to accept and apply

4  this rule of law?

5          Is there anyone who feels that even if the

6  Government would fail to meet its burden of proof to establish

7  Mr. Martin's guilt beyond a reasonable doubt that you would

8  still vote to render a guilty verdict for reasons unrelated to

9  the law and the evidence?

10          Conversely, is there anyone who feels that even if

11  the Government established Mr. Martin's guilt beyond a

12  reasonable doubt that you would not be able to render a guilty

13  verdict for reasons unrelated to the law and the evidence?

14          Is there anyone who has a religious or other belief

15  that would prevent him or her from passing judgment against

16  another person?

17          A person accused of a crime may only be convicted

18  upon a unanimous verdict, that is, all of the jurors must

19  agree that the defendant's guilt of a particular offense has

20  been proven beyond a reasonable doubt.

21          Is there anyone who is unable to accept and apply

22  this rule of law, that a verdict must be unanimous?

23          The jurors are the exclusive judges of the facts.

24  It is your function to decide the facts and to do it according

25  to the legal rules.  You will receive instructions on the law

1  at the end of the case and you will be required to follow

2  those legal rules even if you disagree with them, or even if

3  you have your own beliefs and ideas about what the law is or

4  should be.

5           Is there anyone who would not be able to do so?

6           Under the law, the question of punishment is for the

7  Court alone to decide and the possible punishment must not

8  enter into the deliberations of the jurors as to whether the

9  defendant on trial is guilty.

10          Is there anyone who will not be able to accept and

11 apply this rule of law?

12          Okay, let's move on to another set of questions.

13          Have you or anyone you know worked as or expressed

14 interest in working as a sex worker or prostitute or have you

15 or anyone you know patronized or paid a sex worker or

16 prostitute for sex?

17          Have you or anyone close to you ever had problems,

18 legal or personal, relating to substance abuse, and this

19 includes drugs or alcohol?

20          Okay.  9, 27, 38, 41, 54, 93, 97, 122, 127.

21          All right.  Thank you.  This case will involve

22 testimony about domestic violence, including physical and

23 sexual abuse.

24          Have you or any close friends or family been the

25 victim of domestic violence or abuse, including mental abuse,

1    abuse of children, or sexual violence?

2              Okay.  12, 38, 54, 60, 94, 97, 91.

3              97, I got you.

4              116, 117, 119, 122, 127, 133.  Thank you.

5              So let's talk about witness credibility.

6              During the trial you will hear witnesses from all

7    sorts of background.  You must judge the credibility of each

8    witness based on his or her testimony, not on any assumptions

9    about them based on who they are, what they do, or whether

10   they are offered by the Government or the defense.

11             Is there anyone who would have difficulty applying

12   this rule of law?

13             You may hear testimony from someone who has been

14   convicted of a crime.

15             Is there anyone who would not believe someone just

16   because that person has been convicted of a crime?

17             46.  Thank you.

18             Some of the evidence in this case will come from a

19   witness who will testify on behalf of the Government pursuant

20   to a cooperation agreement with the Government.  This witness

21   has pled guilty to federal crimes and agreed to cooperate with

22   the Government in hopes of receiving leniency from the

23   sentencing judge in that witness' case.

24             Do any of you have feelings about such a witness

25   that would affect your ability to consider such evidence

1  fairly and impartially?  Okay.

2          Have you, a family member, or close friend ever

3  studied law or worked in a law office, judge's chambers,

4  court, or otherwise involved in the legal field?

5          Let's see.  5, 11, 12, 14, 16, 19, 25.  I have got

6  11 and 12 already.

7          27, 31, 38, 41, 43, 46, 54, 60, 61, 63, 78, 79, 86,

8  90, 91, 93, 94, 113, 117.  Oh, 97.  Sorry.  122, 131, and 133.

9  131.  I got you.  Thanks.

10          Have you, a family member, or close friend ever

11  worked for, been a member of or applied for employment with a

12  law enforcement agency or organization?

13          And by this I mean any state or federal law

14  enforcement agencies, such as the FBI, drug enforcement

15  agency, New York City Police Department, U.S. Attorney's

16  Office, or any state or local police department, prosecutor's

17  office, correctional facility.  And I will also include in

18  this any group that partners with a law enforcement agency or

19  organization.

20          Okay, 1, 11, 12, 13, 23, 27, 35, 36, 38, 54, 60, 61.

21  83, 86, 88, 90, 91, 93, 97, 117.  Sorry.  Yes.  97, I got.

22          Now 117, 126, and 127.

23          All right.  Thank you.

24          Have you, a family member, or close friend ever

25  worked in the field of medicine or forensic science, for

1  example, chemistry, toxicology, pathology, cell phone

2  information technology?

3          So I see 43.  Can you raise your number.  5.  So, 5,

4  36, 43, and 117.  Okay.

5          Is there anyone who feels that the Government must

6  present forensic evidence, such as fingerprint and DNA, and

7  would not be able to rely solely on witness testimony in order

8  to render a fair and impartial verdict?

9          So 25, 36, 41, 43, 54, I have 36.  70, 80.

10          54, I got you.

11          88, 89, 91, 93, 94, 108, 109, and 113.

12          All right.  Thank you.

13          Is there anyone who has any strong views or feelings

14  about any of the following agencies or departments that would

15  make it difficult for you to evaluate the evidence fairly and

16  impartially in accordance with the Court's instructions?  The

17  United States Department of Justice, the Federal Bureau of

18  Investigation, the New York Police Department?

19          70 and 37.

20          Is there anyone who has beliefs concerning law

21  enforcement or law enforcement activity that would prevent you

22  from being fair and impartial in this case?

23          46.  Okay.

24          Have you or any member of your immediate family been

25  questioned by the police or other law enforcement authorities?

1          9, 86, 89, 54, 93, 122.

2          Law enforcement witnesses may testify in this case.

3    You will be instructed that their testimony is not entitled to

4    any greater or lesser weight than that of any other witness

5    simply because they are law enforcement officers.

6          Is there anyone who would not be able to follow this

7    instruction?  In other words, is there anyone who would either

8    believe or not believe someone just because that person is a

9    law enforcement Officer?

10          70.  All right.

11          Have you, a family member, or close friend ever

12   worked for a criminal defense lawyer or private investigator?

13          86, 41, 46, 54.

14          Does anyone have any strong views with criminal

15   defense lawyers or investigators that would prevent you from

16   rendering a fair and impartial verdict?

17          Okay.  Have you, a family member, or close friend

18   been involved in litigation or other legal proceeding in any

19   way, as a plaintiff, a defendant, a victim or, or a witness?

20   And this includes criminal, civil, or administrative cases.

21          Let's start from here.

22          5, 9, 11, 12, 14, 16, 20.

23          27, 36, 38, 41.  43, 54, 61.

24          I got you 54.

25          86, 89, 91, 93, 109, 116, 122, 126.

1          Have you, a family member, or close friend ever been

2    the victim of, a witness to or charged with a crime?

3          9, 11, 41, 86.  9, 91, 97, 113, and 122.

4          All right.

5          Has anyone ever served on a jury for a criminal

6    trial before?

7          6, 60, 107, 108, and 115.

8          Has anyone served on a jury for a civil trial?

9          5, 54, 39, and 122.

10         And for those jurors, I would remind you that the

11   burden of proof in the civil case is preponderance of the

12   evidence, meaning whichever side has the greater weight of the

13   evidence, the burden in a criminal case is very different.

14   The Government has the burden of proving the defendant's guilt

15   beyond a reasonable doubt.

16         Would any of you have difficulty understanding or

17   following that?  Juror No. 9.

18         THE PROSPECTIVE JUROR:  I was also for civil.

19         THE COURT:  Civil, okay.  Thank you.

20         Thank you.  Has anyone served on a Grand Jury

21   before?

22         27 and 122.  For the two of you, I would remind you

23   that the burden of proof in a Grand Jury is probable cause.

24   That was the standard you were using in a trial for criminal

25   cases.  Again, it's beyond a reasonable doubt, which is very

1  different.  Would you have any trouble following that

2  standard?

3           All right.  Thank you.

4           Is there anything that you have heard so far that

5  would cause you to favor one side over the other?

6           All right.  Is there anyone who would have any

7  difficulty setting aside any ideas, notions or beliefs about

8  the law that you may have encountered in order to render a

9  verdict that is based solely on the evidence presented at the

10 trial and applying the law as you will be instructed?  Is

11 there anyone who would have any problem setting aside any

12 beliefs to do that?

13          43.

14          Okay.  Now, for the duration of the trial, if you

15 are picked to sit on this jury, you're not going to be

16 sequestered, so you can go home at the end of the day, but you

17 may not communicate with anyone about this case.  So you

18 cannot talk to your family or your friends about what you are

19 hearing in court.  Don't talk about it.  Don't give comments

20 about any of the witnesses or the judges or the lawyers or

21 anything.  You just can't talk about the case.

22          And also you -- that would include not posting

23 anything online.  So please don't post anything about the

24 trial for the duration of the trial.

25          Also, it is very important for you not to start

1    doing research on your own about the case.  So sometimes

2    people are attempted to start looking on Google Maps for a

3    location, for example, or start to Google witnesses and find

4    out -- what you might find on the internet.  The reason it is

5    best not to do that is that you can't believe everything that

6    you see.  And for you to be fair and impartial as a juror, you

7    have to use just what you see in court:  The witness testimony

8    and the exhibits and the evidence that's presented in court.

9          When the trial is over, you can do all the research

10   you want.  You can go to the locations.  You can look around,

11   do whatever it is you want.  It is fine after the trial.  But

12   during the duration of the trial, you must refrain from

13   looking at things online or looking at the newspaper.  If it

14   gets any media attention, if you happen to hear any news or

15   see something on TV, you must turn it off so you don't

16   inadvertently hear something.  Again, you can't rely on the

17   accuracy of what other people are saying.  It must be based

18   just on what you as a juror see and hear in court.  And you

19   also have to be able to refrain from talking about the case to

20   anybody.

21         So is there anyone who will have a problem with

22   that?

23         All right.  36.

24         And I will also remind you -- this isn't a question,

25   but this is just to remind you that when we take breaks, don't

1  talk about the case even with each other because you're not

2  supposed to talk about the case until you're in the

3  deliberation room and you can have a fair airing about your

4  views of the case.  But in the meantime, don't talk to each

5  other about the case.  Don't interact with any of the lawyers

6  or other parties.  They have all been instructed not to talk

7  to you.  So if you inadvertently see them and they run away

8  from you, that's because we've told them to do that.  They're

9  not being rude.  They must not have any contact with you.  All

10 right.  So, if anybody comes and tries to talk to you about

11 the case, you should refrain from talking to them about the

12 case and also let the Court know that somebody has tried to

13 talk to you about the case.

14        So that is my instruction in terms of communication

15 for the trial and actually for the remainder of the jury

16 selection.

17        This is the last question.

18        Is there any other reason why you could not sit on

19 this jury and render a fair verdict based on the evidence

20 presented to you and consistent with the law as you will be

21 instructed?  Is there any reason or any question that I have

22 not asked, for example, that you want to raise?

23        46.  All right.  10.  93, 126.

24        (Continued on next page.)

25

1           THE COURT:  All right.  Wonderful.  So thank you,

2    everybody.

3           Those are the questions I have for now.  What I

4    will do is as we did this morning take the answers at

5    sidebar.  So everybody should line up and Ryan will show you

6    how to do that.

7           When you come up, I will, with the lawyers here,

8    we'll talk about whatever your "yes" answers are to the

9    particular questions.

10          For the rest of you, feel free to get up and

11   stretch.  Please don't leave the room unless you check in

12   with Ryan so he knows you've gone to the bathroom or some

13   other reason so we don't have any delays.  So this shouldn't

14   take very long.

15          Once we're done with this process, I'll be asking

16   you to answer the ten questions that are on the back of your

17   number.  So if you want to look at that while we're waiting,

18   that's fine.  But we'll take your answers for people who

19   said yes here at sidebar one by one.  Thank you for your

20   patience.

21          (Sidebar held outside the presence of the jury.)

22          THE COURT:  Hello, Juror No. 1.  You said you have

23   an issue on views on law enforcement?

24          THE PROSPECTIVE JUROR:  If I what?

25          THE COURT:  Your answer was about law enforcement.

1        THE PROSPECTIVE JUROR:  No, I know -- my cousin's

2   husband, he works for the FBI.

3        THE COURT:  Oh, okay.

4        THE PROSPECTIVE JUROR:  He's located in Florida

5   right now.  He used to be in Virginia and they moved over to

6   Florida.  So I have a family member who is there.

7        THE COURT:  I see.

8        THE PROSPECTIVE JUROR:  Also, when you did the

9   first round before with all the questions about medications

10  and stuff.  I do take blood pressure medication.  And I do

11  take, like, it's a trimethylene.  It's a it's for retention

12  for water.  I'm always going to the bathroom.  Recently I,

13  travelled and blood pressure went sky high.  My doctor put

14  me on meds.  So I don't know if the first question that you

15  ask when you first came in was related to that.  I was kind

16  of anxiety and panic attack to even know what was going on

17  because I do suffer with that, also.

18        THE COURT:  Okay.

19        THE PROSPECTIVE JUROR:  So that was one of the

20  questions I did have to ask.  If I have to use the bathroom,

21  if that's going to be an issue because I do have to go

22  often.

23        THE COURT:  Yes.  How often?  Could you sit for

24  half an hour without using the bathroom?

25        THE PROSPECTIVE JUROR:  It all depends on how many

1    liquids I drink.  I was like every minute I was going out

2    when I was on the second floor.

3              THE COURT:  Generally, if you let Judge Donnelly

4    know that you need to take a break.

5              THE PROSPECTIVE JUROR:  Okay.  And I also do

6    suffer with an a lot of panic and anxiety because my husband

7    died, like, six years ago and I was in the room with him

8    when he passed away from an asthma attack.  And I do get,

9    like, panic attacks I do get anxiety.  And if I see certain

10   things that trigger me, and being in a hospital, that would

11   probably shake me.  I would get nervous.

12             THE COURT:  Okay.  And is there anything you've

13   heard so far about this trial?

14             THE PROSPECTIVE JUROR:  Being that when you said

15   the -- if you have to see pictures and, like, evidence that

16   kind of shook me.

17             THE COURT:  I see.

18             THE PROSPECTIVE JUROR:  I get nervous I get

19   anxiety thinking of that.  I was with my husband in the

20   hospital when he passed away and he was on a --

21             THE COURT:  It's okay.  You doesn't have to give

22   details.

23             THE PROSPECTIVE JUROR:  Yeah.  Yeah.

24             THE COURT:  You don't have to go into details.

25             THE PROSPECTIVE JUROR:  So that was kind of scary

1  I can't deal with seeing things like that.  It triggers too

2  much for me.

3          THE COURT:  So do you think you could sit through

4  the case?

5          THE PROSPECTIVE JUROR:  I don't think I could.  It

6  see evidence, no.

7          THE COURT:  Okay.

8          MR. CECUTTI:  No objection.

9          MS. DEAN:  No objection.

10          THE COURT:  Thank you.  So you can go back to the

11  jury room on the second floor.

12          THE PROSPECTIVE JUROR:  Thank you.

13          (The prospective juror was excused by the Court.)

14          THE COURT:  Hello.  Virginia Sigal.

15          THE PROSPECTIVE JUROR:  Yes, that's me.

16          THE COURT:  You said that you have some prior

17  experience will with.

18          THE PROSPECTIVE JUROR:  My husband is an attorney.

19          THE COURT:  Oh, okay.

20          THE PROSPECTIVE JUROR:  And my brother-in-law is a

21  federal bankruptcy judge in Michigan.

22          THE COURT:  Okay.

23          THE PROSPECTIVE JUROR:  He's the judge that did

24  the Detroit bankruptcy.

25          THE COURT:  I see.  Do you talk to them about

1    legal issues?

2              THE PROSPECTIVE JUROR:  Not really.

3              THE COURT:  Okay.  If Judge Donnelly instructed

4    you on the law, and your family member said it was something

5    different, would you follow Judge Donnelly's instruction?

6              THE PROSPECTIVE JUROR:  I would follow the judge's

7    instruction, yeah.

8              THE COURT:  You also talked about --

9              THE PROSPECTIVE JUROR:  I was in a court case.

10             THE COURT:  -- prior litigation.

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Yes.

13             THE PROSPECTIVE JUROR:  A guy ran through a

14   traffic light and hit my car.  I was driving my mom's car

15   and he sued me.  It was great.  He was driving without a

16   driver's license and did it without taking a left from

17   the -- right from the left lane.  I still got sued.

18             THE COURT:  Okay.  Is there anything about that

19   experience that would make you not be fair in this criminal

20   case?

21             THE PROSPECTIVE JUROR:  No settled against me out

22   of court with the insurance companies.

23             THE COURT:  Okay.  And you also have been a juror?

24             THE PROSPECTIVE JUROR:  Yes.  Two civil cases.

25             THE COURT:  And is there anything about that

 1  experience that would affect your ability to be fair in this

 2  criminal case?

 3          THE PROSPECTIVE JUROR:  No, that was fine.

 4          THE COURT:  I think that's were the questions.

 5  All right.  Thank you.

 6          THE PROSPECTIVE JUROR:  Thank you.  I raised my

 7  hand on medical.

 8          THE COURT:  Yes.

 9          THE PROSPECTIVE JUROR:  My son is a 3rd year

10  resident in internal medicine at Penn Medical.  He's going

11  to be doing his fellowship here in New York.  My other son

12  is in med school, first year.  Then all my brothers-in-law

13  are doctors.

14          THE COURT:  The same question as with lawyers.  If

15  you heard something and a medical expert said something,

16  would you be asking questions of your family members about

17  medicine.

18          THE PROSPECTIVE JUROR:  No.

19          MR. CECUTTI:  May I inquire?

20          Some information about her husband's legal work

21  and whether or not he does criminal practice.

22          THE PROSPECTIVE JUROR:  He's a tax attorney.

23          MR. CECUTTI:  Okay.

24          THE PROSPECTIVE JUROR:  And we would talk about

25  deal structuring because I was a banker.  We wouldn't even

1  talk because I was a banker and he was doing M&As.

2         THE COURT:  You don't know any lawyers in the

3  criminal field?

4         THE PROSPECTIVE JUROR:  No.  Talk a lot about tax.

5  Interesting.

6         THE COURT:  Thank you.  Juror No. 6 Katherine

7  Stamford.

8         THE PROSPECTIVE JUROR:  Yes.

9         THE COURT:  You had been on a criminal trial.

10        THE PROSPECTIVE JUROR:  Yes.

11        THE COURT:  And don't tell me which way it went.

12 Did you come to a verdict?

13        THE PROSPECTIVE JUROR:  It did.

14        THE COURT:  Is there anything about that

15 experience that would not make you not fair in this case?

16        THE PROSPECTIVE JUROR:  No.  I have two other

17 thoughts, though, I realize I didn't answer.  My house was

18 burgled when I was a kid.  I don't know if that means I was

19 the victim of a crime.  And my dad briefly worked for the

20 Department of Corrections in the women's prison at Rikers as

21 the commissary manager.  So I just I forgot about that.

22        THE COURT:  Okay.  So was there anything about the

23 burglary that would make you not be fair in this case?

24        THE PROSPECTIVE JUROR:  No, we weren't home.

25        THE COURT:  And then, as far as your father's

1   connection to Rikers, is there anything that would make it

2   be fair?

3           THE PROSPECTIVE JUROR:  It was just a job.

4           THE COURT:  Okay, great.  I think that's all you

5   had.

6           THE PROSPECTIVE JUROR:  Thanks.

7           THE COURT:  Hi.

8           THE PROSPECTIVE JUROR:  Hi.

9           THE COURT:  No. 7, you said yes.  I lost track of

10  the which ones you said yes to.

11          THE PROSPECTIVE JUROR:  I don't think I said

12  anything.

13          THE COURT:  I'm sorry.

14          THE PROSPECTIVE JUROR:  I don't think I said yes.

15          THE COURT:  Oh, okay.  Did you have anything you

16  wanted to bring up with us?

17          THE PROSPECTIVE JUROR:  No.

18          THE COURT:  Okay.  Thank you.

19          Juror No. 9, Michael Hollis, you answered yes

20  because you've been the victim or witness to a crime.

21          THE PROSPECTIVE JUROR:  Yes, I served as a witness

22  for someone in -- it's been a long time now probably 2008 or

23  '7.

24          THE COURT:  Okay.

25          THE PROSPECTIVE JUROR:  That was charged for a

1  crime.

2          THE COURT:  Okay.

3          THE PROSPECTIVE JUROR:  I was called to the stand.

4          THE COURT:  I see.  And were you called by the

5  Government or by the defense?

6          THE PROSPECTIVE JUROR:  By the defense.

7          THE COURT:  Okay.  And was there anything about

8  that experience that would affect your ability to be fair to

9  both the Government and to the defense in this case?

10          THE PROSPECTIVE JUROR:  I don't think so.

11          THE COURT:  Do you think you were treated fairly?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  I think you also said that you had

14  experience or you knew somebody with a substance abuse.

15          THE PROSPECTIVE JUROR:  Yes.  I've had close

16  friend of mine passed away from substance abuse.

17          THE COURT:  I'm sorry.

18          THE PROSPECTIVE JUROR:  And I also have some

19  friends in recovery.

20          THE COURT:  Do you think that would make you favor

21  one side or the other in a case where substance abuse might

22  come up?

23          THE PROSPECTIVE JUROR:  Maybe empathetic towards

24  someone that has that problem, but I could be impartial for

25  the most part.

1          THE COURT:  Okay.  So having empathy with somebody

2  is human.

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  The question is whether you can be

5  fair to both sides?

6          THE PROSPECTIVE JUROR:  I think I could be fair,

7  yeah.

8          THE COURT:  Okay.  Was there anything else?

9          THE PROSPECTIVE JUROR:  I think one that I had

10  been charged ever.  And I was wrongfully charged with a

11  crime and then all charges were then dropped at one point.

12          THE COURT:  What were you charged with?

13          THE PROSPECTIVE JUROR:  I was charged with being

14  the driver of a vehicle with a DUI when I was the passenger.

15  And the D.A. and A.D.A., with some obvious evidence coming

16  to light, dropped everything.  I was found not found not

17  guilty, it was all charged dropped.

18          THE COURT:  Dismissed.  You were the passenger or

19  driver?

20          THE PROSPECTIVE JUROR:  I was the passenger.

21  Because I left, they assumed I was the driver.

22          THE COURT:  I see.

23          So is there anything about that experience that

24  would affect your ability to be fair?

25          THE PROSPECTIVE JUROR:  I don't think so.

1          THE COURT:  So you could be fair to the Government

2     as well as to the defense?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  All right.  Was there anything else?

5          THE PROSPECTIVE JUROR:  I think that was it.  I've

6     served on a civil case but that was that was it.

7          THE COURT:  You know it's a different standard of

8     proof.

9          THE PROSPECTIVE JUROR:  Yes.

10         THE COURT:  Okay.  Thank you very much.

11         THE PROSPECTIVE JUROR:  Thank you.

12         THE COURT:  You're junior 10.

13         THE PROSPECTIVE JUROR:  Yes.

14         THE COURT:  Okay.  Erma Lewis.

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  So tell me what you wanted to tell us.

17         THE PROSPECTIVE JUROR:  Yes, two things.  I live

18    with my mom and we live together.  She's 103, and in order

19    for me to get here I'm realizing it's for four weeks, it's

20    going it be difficult.  I have to have someone come in and

21    be with her before the home attendant comes in at 10:00.  So

22    that's one thing, it's kind of a stretch for four weeks.

23         And the other thing is it's a murder trial, it's a

24    murder trial and I have difficulty with seeing visuals and

25    dismembered bodies.  I have a difficulty with that.  Even at

1  home, if it comes on TV, I really can't stomach it.  So I'm

2  not sure that I would be able to look at the visuals.

3  Movies and I close my eyes.  So that's just.

4          THE COURT:  That's fine.

5          MR. CECUTTI:  No objection.

6          THE COURT:  Do you think you can be fair or you

7  don't think you could look at it?

8          THE PROSPECTIVE JUROR:  I don't think I can

9  stomach it.

10          MS. DEAN:  No objection.

11          THE COURT:  Then you're excused.  Thank you very

12  much.

13          THE PROSPECTIVE JUROR:  Thank you.

14          (The prospective juror was excused by the Court.)

15          THE COURT:  Hello, Juror No. 11.  Gabrielle

16  Mendoza.

17          You say you or someone you know has prior legal

18  experience and law enforcement experience?

19          THE PROSPECTIVE JUROR:  Yes.  I did my masters

20  level externship at the Nassau County Reentry Task Force and

21  I also applied for the N.Y.P.D. Psychological Testing Unit.

22          THE COURT:  And the fact that you --

23          THE PROSPECTIVE JUROR:  I worked in the

24  Nassau County Reentry Task Force.

25          THE COURT:  But for the N.Y.P.D., did you end up

1  working with them or not?

2          THE PROSPECTIVE JUROR:  No.

3          THE COURT:  So the fact that you tried to get that

4  position, do you think it would affect your ability to be

5  fair when there's N.Y.P.D. witnesses involved?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  Would you favor them or anyone else?

8          THE PROSPECTIVE JUROR:  No.

9          THE COURT:  Okay.  And then as far as legal

10 experience?

11         THE PROSPECTIVE JUROR:  Yes.  So I have my masters

12 in forensic mental health counseling and I also have an

13 advanced certification in victimology studies in forensic

14 psychology.  So we learn about law quite a bit.

15         THE COURT:  Yes, okay.  Do you think that you can

16 listen to the evidence and be fair to both sides in a case

17 like this.

18         THE PROSPECTIVE JUROR:  Yes.

19         THE COURT:  And if there were experts, I don't

20 know if there will be, but if there were experts in that

21 field, then you know that field, would you still be able to

22 evaluate the expert's testimony and be fair?

23         THE PROSPECTIVE JUROR:  Yes.  I believe so.

24         THE COURT:  All right.  And you also said -- I

25 think that's it.

1          Was there anything else you wanted to tell us?

2          THE PROSPECTIVE JUROR:  When I was a young child,

3  my father was in prison, federal prison, for five years.

4          THE COURT:  Okay.  What was he charged with?

5          THE PROSPECTIVE JUROR:  I believe it was

6  distribution of narcotics.

7          THE COURT:  So having that experience, do you

8  think you could be fair in this case?

9          THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  Any follow-up?

11          MR. CECUTTI:  No.

12          MS. DEAN:  No.

13          THE COURT:  Thanks very much.

14          THE PROSPECTIVE JUROR:  Thank you.

15          THE COURT:  Juror No. 12, Glenda-Lee Roche.

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  You answered yes to a couple of

18  questions.  Why don't you tell us about whichever one you

19  want to start with.

20          THE PROSPECTIVE JUROR:  My mom, my sister, and my

21  two cousins are on the police force.  My aunt, I have

22  domestic violence it was -- anyway.  I testified at my dad's

23  murder trial.  My dad was stabbed ten times by his

24  downstairs neighbor.

25          THE COURT:  So let's take each of those.  You said

1    you have a family members who are police.

2              THE PROSPECTIVE JUROR:  My mom, my sister and two

3    of my cousins.

4              THE COURT:  Do you think you could be fair in a

5    case where some witnesses will be police officers and some

6    won't be?  Will you give them the same consideration?

7              THE PROSPECTIVE JUROR:  Yes, of course.

8              THE COURT:  You said you testified at a trial.

9              THE PROSPECTIVE JUROR:  Yeah, my dad's murder

10   trial.

11             THE COURT:  So is there anything about that

12   experience that would make it hard for you to be fair in

13   this case?

14             THE PROSPECTIVE JUROR:  No.  The evidence,

15   watching what was done to him was a lot.  I don't want to

16   see that.  I don't want to see somebody getting hurt.  I

17   can't do that.

18             THE COURT:  I see.  Okay.  I'm sorry to hear about

19   your dad.  So you're saying that because of your experience

20   with your father's trial, you would have a hard time looking

21   at evidence in this case that's a murder trial.

22             THE PROSPECTIVE JUROR:  We just made two years.

23             THE COURT:  I see.

24             MS. DEAN:  No objection.

25             THE COURT:  You're excused.  Thank you.

1              (The prospective juror was excused by the Court.)

2              THE COURT:  Hello.  You are Juror No. 13, Peter

3    Chakery.

4              You said you or someone you know is involved if

5    law enforcement?

6              THE PROSPECTIVE JUROR:  My cousin is in the FBI.

7    She does data analysis.

8              THE COURT:  Okay.

9              THE PROSPECTIVE JUROR:  And I also have an uncle,

10   he's recently retired from N.Y.P.D.  He was a detective in

11   Brownsville.

12             THE COURT:  And did you talk to them about their

13   cases and their work?

14             THE PROSPECTIVE JUROR:  Not my cousin in the FBI,

15   more my uncle.

16             THE COURT:  Is there anything about things that

17   you've talked about that would make you not be fair in this

18   case?

19             THE PROSPECTIVE JUROR:  No.

20             THE COURT:  Do you think you would favor the law

21   enforcement because of that connection?

22             THE PROSPECTIVE JUROR:  No.

23             THE COURT:  And you could be fair to both sides?

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  Okay.  Was there any other question

1   you wanted to answer?

2           THE PROSPECTIVE JUROR:  I think that was the only

3   one I have.

4           THE COURT:  Thanks very much.

5           Juror No. 14, Shelley Jordan, yes.

6           You said that you or someone you knew had some

7   prior legal experience?

8           THE PROSPECTIVE JUROR:  Yes, I do.

9           THE COURT:  Okay.  Tell us about that.

10          THE PROSPECTIVE JUROR:  I'm a retired paralegal.

11  My significant other is a court officer.

12          THE COURT:  Is a court officer?

13          THE PROSPECTIVE JUROR:  Okay.

14          THE COURT:  What were kind of legal practice were

15  you a paralegal?

16          THE PROSPECTIVE JUROR:  Matrimonial.

17          THE COURT:  I'm sorry.

18          THE PROSPECTIVE JUROR:  Matrimonial and other

19  general practice.

20          THE COURT:  Not criminal?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  Do you think you could -- are you

23  still in touch with lawyers and things like that?

24          THE PROSPECTIVE JUROR:  No.

25          THE COURT:  So the question there would be whether

1  you could follow the law as Judge Donnelly tells you?

2          THE PROSPECTIVE JUROR:  I think so.

3          THE COURT:  Okay.  Do you think you would rely on

4  what lawyers might have told you instead, or would you

5  follow the judge's instruction?

6          THE PROSPECTIVE JUROR:  I'm not sure.

7          THE COURT:  You're not sure.

8          THE PROSPECTIVE JUROR:  Mm-hmm.

9          THE COURT:  If Judge Donnelly told you this is

10 what the law is.

11         THE PROSPECTIVE JUROR:  I guess so.

12         THE COURT:  If you didn't follow the law, what

13 else would you do?

14         THE PROSPECTIVE JUROR:  I guess I would follow it.

15         THE COURT:  Okay.  I just want to know if there is

16 any concern that you wanted to bring it my attention.

17         THE PROSPECTIVE JUROR:  No.

18         THE COURT:  Okay.  Great.  Was there anything else

19 you wanted to bring up?

20         THE PROSPECTIVE JUROR:  No.

21         THE COURT:  Okay.  Thank you.

22         MR. CECUTTI:  Your Honor, no, I don't have a

23 question.  An application.

24         No objection.

25         THE COURT:  Okay.

1          MS. DEAN:  Can we have a brief moment?

2          THE COURT:  Step aside a second.

3          MR. HAJJAR:  Your Honor, I'm sorry.  I understand

4    that if the application to strike for cause might be

5    premised in the last sort of equivocal answer we're confused

6    on whether that's based on --

7          THE COURT:  We'll hear from you.

8          MR. CECUTTI:  Your Honor asked several questions

9    regarding her ability to be fair and impartial whether or

10   not she could follow Judge Donnelly's instructions.  And on

11   each occasion, she gave equivocal responses.  "I don't

12   know," "I think."  Because of the number of questions that

13   your Honor had asked and her consistency with being

14   equivocal is why I'm asking that she be struck for cause.

15         THE COURT:  I took it to be nervousness on her

16   part because I didn't hear her say that she was in touch

17   with any lawyers or that she would be following anybody

18   else's legal instruction.  And when I asked her a little bit

19   more about what she meant, I think she came to the

20   realization that she was just saying "I guess so" because

21   she wasn't comfortable.  But you can certainly ask her some

22   follow-up questions because I didn't hear her say that she

23   wouldn't follow the law.  I think she just wasn't

24   comfortable just saying yes because of her confidence

25   issues.  I can certainly press her.

1          MR. HAJJAR:  Your Honor can ask if she can explain

2     the answer of what she meant.

3          MR. CECUTTI:  Your Honor, I don't know why she was

4     equivocal on each occasion.  There may be other reasons such

5     as personal reasons, beliefs, things that.  She's already

6     heard about the case it's a catch-all question that your

7     Honor had.

8          THE COURT:  I'll ask her.  I noticed it but I

9     chalked it up to nervousness.  But I can certainly ask.

10          MR. CECUTTI:  Okay.

11          THE COURT:  Ms. Jordan, I have a couple of

12     follow-up questions.

13          The issue is about I had explained before that the

14     jury will listen to the evidence and then Judge Donnelly

15     will tell you what the law is.

16          THE PROSPECTIVE JUROR:  Right.

17          THE COURT:  And so, the question -- and the jurors

18     have to follow the law as Judge Donnelly tells you.

19     Sometimes people think that's not what I think the law

20     should be and they don't apply it.

21          I need to find out if that's you or whether you

22     would follow the law.

23          THE PROSPECTIVE JUROR:  I would follow the law, I

24     suppose.  I don't know.

25          THE COURT:  Look, I just want to --

1          THE PROSPECTIVE JUROR:  I have haven't done this

2     before, I'm not familiar with it.

3          THE COURT:  It's very natural to be nervous,

4     that's fine.  You're doing great.

5          And so, if there's any reason you wouldn't follow

6     the law, or that you would have trouble following the law,

7     it's useful to know but it's okay.  So do you think you

8     could follow the law as Judge Donnelly tells you what the

9     law is.

10         THE PROSPECTIVE JUROR:  I couldn't say for sure.

11         MS. DEAN:  No objection, your Honor.

12         THE COURT:  Okay.  You're excused.

13         THE PROSPECTIVE JUROR:  Thank you.

14         (The prospective juror was excused by the Court.)

15         THE COURT:  Juror No. 16 Shari Durden-McCain.

16         I've seen you before this morning.

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  Tell me what your answers were.  You

19    said you or someone you had some prior legal experience.

20         THE PROSPECTIVE JUROR:  Yes, I worked for

21    Allstate Insurance.  I was a claims adjuster and I dealt

22    with a lot of attorneys.

23         THE COURT:  Okay.

24         THE PROSPECTIVE JUROR:  Settling claims.

25         THE COURT:  Okay.  Thank you.  And so the question

1   there would be two things, right?  The first is whether you

2   would be able to follow the law since you've dealt are

3   lawyers before and they probably told you what the they

4   thought the was.

5           THE PROSPECTIVE JUROR:  Yes.

6           THE COURT:  Would you be able to follow the law as

7   Judge Donnelly tells you?

8           THE PROSPECTIVE JUROR:  Yes.

9           THE COURT:  Since you were working in insurance,

10  and I mentioned that there were insurance companies in this

11  case, do you think you could be fair?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Just because you worked in an

14  insurance company.

15          THE PROSPECTIVE JUROR:  Yes, have to be.

16          THE COURT:  Okay.  Great.

17          THE PROSPECTIVE JUROR:  But I didn't -- I'm

18  retired now.  So I retired from the last position that I

19  applied for was in the fraud department which is in finance.

20          THE COURT:  I see.  I think those are the

21  questions you answered yes to.

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Great.

24          THE PROSPECTIVE JUROR:  Question, I told you about

25  the doctor's appointment I had for the 20th.

1          THE COURT:  Yes, that's right.

2          THE PROSPECTIVE JUROR:  I did a follow-up call

3     they told me I have to call every day to see if I can

4     squeeze in an appointment because the doctor is not here on

5     a daily basis.

6          THE COURT:  So that's going to be a problem for

7     you?

8          THE PROSPECTIVE JUROR:  So if I have to push it

9     back, I hope it doesn't push back all the way to March

10    because I have a vacation in March that I spoke about.

11         THE COURT:  I see.  So let me talk to the lawyers

12    for a minute.

13         THE PROSPECTIVE JUROR:  Okay.

14         THE COURT:  What do you want to do?

15         MS. DEAN:  I think, Judge, the question is:  Is

16    this the kind of doctor's appointment that can be pushed

17    back?  If not, we don't want her health to suffer because of

18    it and it's unclear if she can do this.

19         THE COURT:  I heard her say she could but she

20    didn't want it pushed into March because she has vacation

21    plans.  I can ask her about vacation.

22         MR. CECUTTI:  We would have no objection.  This

23    does seem to be that is going to create a conflict and I

24    think your Honor following up on it would be appropriate.

25         THE COURT:  Do you want me to follow up?

1        MS. DEAN:  We would.  This is something that's

2   potentially workable, so that's why we would like a

3   follow-up.

4        THE COURT:  Great.

5        Sorry to keep pressing.

6        THE PROSPECTIVE JUROR:  That's okay.

7        THE COURT:  If you were to push the doctor's

8   appointment back, you said you didn't want it to interfere

9   with your vacation plans.

10       When are your vacation plans?

11       THE PROSPECTIVE JUROR:  March 14th to the 20th.

12       THE COURT:  Okay.  And so, if it turned out that

13  the doctor's appointment got pushed back past that to

14  March 20th, would that be a problem with your health?

15       THE PROSPECTIVE JUROR:  I'm looking to try to see

16  if we can, but she's telling -- the receptionist is telling

17  me that his schedule is not on a daily basis.  So that's why

18  she's telling me to keep calling so I can get in.  But I

19  don't know how to notify y'all if she tells me the 29th I

20  have an available appointment.

21       THE COURT:  And you couldn't.  But what if you

22  were to say, no, I can't make it the 29th.  Can you make it?

23       THE PROSPECTIVE JUROR:  I can do that.

24       THE COURT:  March 21st, March 22nd.

25       THE PROSPECTIVE JUROR:  I would have to do it

1  after.

2          THE COURT:  Is it okay?

3          THE PROSPECTIVE JUROR:  This is the first time I

4  will be meeting the doctor.

5          THE COURT:  Okay.

6          THE PROSPECTIVE JUROR:  So I never met him before.

7  So it just would have been my first visit.

8          THE COURT:  What issue?

9          THE PROSPECTIVE JUROR:  A dermatologist.

10         THE COURT:  Okay.  All right.  So let's, you know,

11 if we can push it back.  We don't want to make it

12 inconvenient but if you can do it.

13         THE PROSPECTIVE JUROR:  Do I have to notify you

14 when they tell me they have availability for the --

15         THE COURT:  I think what is going to happen is if

16 you're picked for the jury you'll sit until the trial is

17 done.  So if they say we have an appointment availability

18 March 3rd you can't do it because you'll be on the jury.

19 You have to say some time after the 11th or if the trial

20 ends early or after your vacation.

21         THE PROSPECTIVE JUROR:  Okay.

22         THE COURT:  Is that okay?

23         THE PROSPECTIVE JUROR:  Yes, that's fine.

24         THE COURT:  Great.  Thank you.  Useful to do a

25 follow-up.

1           Hello.  Donna.

2           THE PROSPECTIVE JUROR:  Kuchlewski.  Juror No. 19.

3           THE COURT:  You said you had prior legal

4  experience or someone you know?

5           THE PROSPECTIVE JUROR:  Family member.

6           THE COURT:  Okay.  What is that?

7           THE PROSPECTIVE JUROR:  He's a patent attorney.

8           THE COURT:  Who?

9           THE PROSPECTIVE JUROR:  My nephew.

10          THE COURT:  Oh, nephew, okay.  Okay.  And not

11 criminal.

12          THE PROSPECTIVE JUROR:  No.

13          THE COURT:  If Judge Donnelly told you what the

14 law was, would you accept that or would you?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  My nephew said something, would you

17 follow the judge's instruction?

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Great.  I think that was the only

20 thing.

21          THE PROSPECTIVE JUROR:  That's all I had.

22          THE COURT:  Thank you.

23          Hello Juror, No. 20.  You said you or someone you

24 know worked in the legal field.

25          THE PROSPECTIVE JUROR:  Excuse me.

1        THE COURT:  You knew someone worked in the law?

2        THE PROSPECTIVE JUROR:  No, I'm part of a suit.  I

3    got hit by a car on October 26, 2020, and I have someone

4    suing the person who hit me.  That's the extent of it,

5    really.

6        THE COURT:  You are a plaintiff in a lawsuit?

7        THE PROSPECTIVE JUROR:  Yes.

8        THE COURT:  Great.  Is there anything about that

9    experience so far that would make you not be fair in this

10   case?

11       THE PROSPECTIVE JUROR:  It's all been meeting with

12   the lawyer signing papers.  There hasn't been much to it.

13       THE COURT:  Okay.

14       THE PROSPECTIVE JUROR:  That's all I know.

15       THE COURT:  That's fine.  Is there anything else

16   you wanted to bring up?

17       THE PROSPECTIVE JUROR:  No.

18       THE COURT:  Okay.

19       THE PROSPECTIVE JUROR:  Oh, actually, one thing.

20   I'm a teacher.  I know earlier we were talking about being

21   able to do that for an extended period of time.  I don't

22   know how much that plays into it.

23       THE COURT:  Do you teach for public school?

24       THE PROSPECTIVE JUROR:  Yes.

25       THE COURT:  So they'll pay you?

1           THE PROSPECTIVE JUROR:  I understand paying me.

2    Students not having their teacher in the classroom.  I kind

3    of figured?

4           THE COURT:  Thank you for bringing it to our

5    attention if you can work it out.

6           THE PROSPECTIVE JUROR:  Okay.  Thank you.

7           THE COURT:  Juror No. 23.  I'm trying to see

8    which.

9           THE PROSPECTIVE JUROR:  I only answered yes to

10   knowing someone in law enforcement.  My cousin is in

11   N.Y.P.D.  That's all I think that's all I answered yes to.

12          THE COURT:  Is there anything about the fact that

13   your cousin is N.Y.P.D. that would make you not be fair in

14   this case?

15          THE PROSPECTIVE JUROR:  No.

16          THE COURT:  There will be N.Y.P.D. officers

17   testifying.  Would you be able to give their testimony the

18   same weight as other people?

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  Okay.  Great.  Thank you very much

21   kindly.

22          Juror No. 24, Mark Sabella.

23          THE PROSPECTIVE JUROR:  Yes.

24          THE COURT:  You answered yes to some questions.

25   Can you tell us.

1          THE PROSPECTIVE JUROR:  I didn't answer yes.

2          THE COURT:  You didn't?  Was there anything you

3     wanted to bring it my attention?

4          THE PROSPECTIVE JUROR:  No.

5          THE COURT:  Great.  Good to see you.

6          You are Juror No. 25 Jo Ann Sison.  And you

7     answered yes, prior legal experience.

8          THE PROSPECTIVE JUROR:  Yeah, my sister is a

9     litigation lawyer but she's in the Philippines.

10          THE COURT:  Okay.

11          THE PROSPECTIVE JUROR:  So I don't know if you

12     consider.

13          THE COURT:  It's just a question of whether you

14     would consult her about the law.

15          THE PROSPECTIVE JUROR:  No.

16          THE COURT:  Okay.  So if you were instructed on

17     what the law is, would you follow the judge's instruction?

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Yes.  Okay.  Was there anything else

20     you wanted to tell us about?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  Okay.  Great.  Thank you.

23          MS. DEAN:  Judge, I think she also responded yes

24     regarding her forensics question.

25          THE PROSPECTIVE JUROR:  I think there's something

1  like --

2           THE COURT:  What was that.

3           THE PROSPECTIVE JUROR:  The forensics?

4           THE COURT:  Forensics.

5           THE PROSPECTIVE JUROR:  Yes.

6           THE COURT:  I didn't write that down, sorry.  What

7  did you want to tell us about that?

8           THE PROSPECTIVE JUROR:  What was the question

9  again.

10          THE COURT:  The question is whether you or anyone

11 you know is involved in forensic science.

12          THE PROSPECTIVE JUROR:  No.

13          MS. DEAN:  I'm sorry.  The other forensics

14 question, Judge, I think was about witness testimony versus

15 forensics.

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  Tell me the number.

18          MS. DEAN:  23.

19          THE PROSPECTIVE JUROR:  I think it's more.

20          THE COURT:  Oh, I see.  Okay.

21          So the question was whether you could rely on just

22 witness testimony or would you require the Government to --

23          THE PROSPECTIVE JUROR:  I think I could be more

24 leaning to if there's forensic results.

25          THE COURT:  Okay.  So if there's forensic

1  evidence, you can certainly consider it just like other

2  evidence.

3         THE PROSPECTIVE JUROR:  Yes.

4         THE COURT:  The question is, if there was wasn't

5  forensic evidence, could you still consider the case based

6  just on what witnesses are testifying to?

7         THE PROSPECTIVE JUROR:  Yes.  Yes, I can.

8         THE COURT:  Okay.  And so, you would be able to

9  consider a case and not say if there's no forensic evidence

10 then that's not a good case?

11        THE PROSPECTIVE JUROR:  Yeah, I could.

12        THE COURT:  You could be fair without forensic

13 evidence.

14        THE PROSPECTIVE JUROR:  Fair without, yes.

15        THE COURT:  Good.  Thank you.  Hello.  Juror

16 No. 26 Queen Lian.

17        THE PROSPECTIVE JUROR:  Yes.

18        THE COURT:  What did you want to tell me about.

19        THE PROSPECTIVE JUROR:  When I sit here, I feel

20 very tired.  My eyes can't open, I want to close my eyes.  I

21 feel very tired in this room.

22        THE COURT:  Very tired?

23        THE PROSPECTIVE JUROR:  Yeah, I don't know why.

24        THE COURT:  Are you usually tired?

25        THE PROSPECTIVE JUROR:  No.  I don't know why.

1          THE COURT:  I know very people get very nervous in

2    court, that's very normal; it's okay.

3          All right.  Did you understand everything that

4    we've been doing?

5          THE PROSPECTIVE JUROR:  Almost, yeah.

6          THE COURT:  Almost everything.

7          Is there something in particular that's making you

8    nervous or tired?

9          THE PROSPECTIVE JUROR:  I don't know, I cannot

10   concentrate.

11         THE COURT:  You can't concentrate.

12         THE PROSPECTIVE JUROR:  I want to close my eyes.

13         THE COURT:  Did you have enough sleep?

14         THE PROSPECTIVE JUROR:  I sleep last night but I

15   don't know why.

16         THE COURT:  Do you normally work?

17         THE PROSPECTIVE JUROR:  Yeah, I work.

18         THE COURT:  What kind of work do you do?

19         THE PROSPECTIVE JUROR:  Clerical.

20         THE COURT:  In an office?

21         THE PROSPECTIVE JUROR:  Yes.

22         THE COURT:  So when you're working, do you feel

23   like you want to close your eyes?

24         THE PROSPECTIVE JUROR:  No.

25         THE COURT:  Okay.  So do you think you can be a

1  juror in this case?  Do you think you can sit and listen to

2  evidence?

3             THE PROSPECTIVE JUROR:  I'm not really sure.

4             MS. DEAN:  No objection.

5             MR. CECUTTI:  No objection.

6             THE COURT:  Why don't you go back to the jury room

7  on the second floor.  You're excused from this trial.

8             THE PROSPECTIVE JUROR:  Okay.  Thank you.  Now.

9             THE COURT:  Yes.  The.

10            THE PROSPECTIVE JUROR:  Thank you.

11            (The prospective juror was excused by the Court.)

12            THE COURT:  Juror No. 27.

13            THE PROSPECTIVE JUROR:  Hi.

14            THE COURT:  So you said yes to a couple of

15  questions.

16            THE PROSPECTIVE JUROR:  I did.

17            THE COURT:  About prior legal experience, about

18  law enforcement agency connections, and involvement in the

19  criminal justice system or litigation so tell me about that.

20            THE PROSPECTIVE JUROR:  So my cousin, whose not

21  technically my cousin, but like my sister, has a law degree

22  and works at the University of Notre Dame counseling.  She

23  worked in corporate law here.  She was sworn in this

24  building.  My family was involved in a criminal/civil case

25  like 50 years ago where my mother and sister were killed in

1   a car accident, so I was named as a plaintiff in that.  I

2   served on federal grand jury here.  The alcohol/drug abuse

3   question.  My father is an alcoholic; my cousin is an

4   alcoholic, it's in my family.

5         THE COURT:  And given that family experience, do

6   you think you could be fair in a case where substance abuse

7   is being mentioned?

8         THE PROSPECTIVE JUROR:  Yeah.

9         THE COURT:  Was there anything about your grand

10  jury experience that would make you not fair in this case?

11        THE PROSPECTIVE JUROR:  No, I loved my grand jury

12  experience.

13        THE COURT:  Okay.

14        THE PROSPECTIVE JUROR:  I thought it was

15  fascinating.

16        THE COURT:  I remind you that the burden of proof

17  is different.  This has to be a beyond a reasonable doubt.

18        THE PROSPECTIVE JUROR:  That was like in 2010, so

19  it was quite a while ago.

20        THE COURT:  Still.

21        THE PROSPECTIVE JUROR:  Okay.

22        THE COURT:  And then you said you have a cousin

23  with a law degree.  If Judge Donnelly instructed you on what

24  the law is, would you say that's not what my cousin said the

25  law is.

1          THE PROSPECTIVE JUROR:  No, I would listen to the

2  judge.

3          THE COURT:  Okay.  Good.  And then in terms of the

4  tragedy with your mother and sister, was there anything

5  about that experience and the court system that would make

6  you not fair in this case?

7          THE PROSPECTIVE JUROR:  No, I was just a child.  I

8  just raised my number because I was involved.  My name was

9  on the case, I think, so I didn't want to.

10          THE COURT:  Great.  Is there anything else that

11  you want to bring to the Court's attention?

12          THE PROSPECTIVE JUROR:  I don't think so.

13          THE COURT:  Okay.

14          THE PROSPECTIVE JUROR:  I'm a teacher but I'm out

15  of the classroom so that gives me flexibility in, like,

16  being available I guess.

17          THE COURT:  Wonderful.  Thank you so much.

18          THE PROSPECTIVE JUROR:  Thank you.

19          MS. DEAN:  Judge, can we inquire as to what kind

20  of law, whether it's criminal law, the close family member

21  who practices as we did with an other juror.

22          She said lawyer and University of Notre Dame?

23          MR. CECUTTI:  I think corporate.

24          MS. DEAN:  Corporate?  My mistake.

25          THE COURT:  Juror No. 28, Angela Barba.

1              THE PROSPECTIVE JUROR:  Yes.

2              THE COURT:  What did you want to bring to the

3    Court's attention?

4              THE PROSPECTIVE JUROR:  I'm sorry.

5              THE COURT:  You answered yes to a question?

6              THE PROSPECTIVE JUROR:  I did not.

7              THE COURT:  You did not?

8              THE PROSPECTIVE JUROR:  No.

9              THE COURT:  Was there anything you wanted to say?

10             THE PROSPECTIVE JUROR:  No.

11             THE COURT:  Okay.  Great good to see you.

12             THE PROSPECTIVE JUROR:  Is that this?  Do you want

13   me to answer any of these?

14             THE COURT:  We'll do that later.

15             THE PROSPECTIVE JUROR:  Okay.

16             THE COURT:  Might have confused them when we.

17             You are Juror No. 29?

18             THE PROSPECTIVE JUROR:  29, yes.

19             THE COURT:  And Sean Liang.

20             THE PROSPECTIVE JUROR:  Yes, that's correct.

21             THE COURT:  So you said you had answered yes to a

22   couple questions, right?

23             THE PROSPECTIVE JUROR:  I don't think I said.

24             THE COURT:  I don't think you did.  Was there

25   anything you wanted to bring to my attention?

1            THE PROSPECTIVE JUROR:  No.  They told me everyone

2  had to come up to say something.

3            THE COURT:  That's wonderful.

4            THE PROSPECTIVE JUROR:  Pleasure meeting you all.

5            THE COURT:  We'll hear from you later.

6            Juror No. 31 Karina Lew.

7            THE PROSPECTIVE JUROR:  Yes.

8            THE COURT:  Did you say yes to any of the

9  questions this afternoon?

10            THE PROSPECTIVE JUROR:  I studied business law

11  back in college and I took an ethics class.  I didn't do

12  very well in the business law but I did take the class.

13            THE COURT:  That's fine.  It's not for everyone.

14            THE PROSPECTIVE JUROR:  I discovered that very

15  quickly.

16            THE COURT:  So did you study any other law?

17            THE PROSPECTIVE JUROR:  No, that was it.  The end

18  of my business law career right there.

19            THE COURT:  Sounds great.  Is there anything else?

20            THE PROSPECTIVE JUROR:  No, that was it.

21            THE COURT:  Thank you.

22            You're Juror No. 32, Sarah Mejia.

23            THE PROSPECTIVE JUROR:  Yes.

24            THE COURT:  Is there anything you wanted to bring

25  to my attention?

1          THE PROSPECTIVE JUROR:  No, that's it.

2          THE COURT:  We'll be asking those questions later

3    so thank you.

4          That's it.

5          Hi.  35, Stanley Zeng.

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Did you have anything you wanted to

8    bring to the Court's attention?

9          THE PROSPECTIVE JUROR:  I answered yes to the

10   N.Y.P.D., like, law enforcement question.

11         THE COURT:  Okay.

12         THE PROSPECTIVE JUROR:  So my uncle is a

13   lieutenant or sergeant, I can't remember which one, and I

14   have a friend who is also a cop.  But that's the only

15   question I answered yes to.

16         THE COURT:  Great.  Is it N.Y.P.D. or some or

17   police department?

18         THE PROSPECTIVE JUROR:  N.Y.P.D.

19         THE COURT:  Is there anything about the fact that

20   you have these connections to N.Y.P.D., would that make you

21   unfair in this case?

22         THE PROSPECTIVE JUROR:  No.

23         THE COURT:  Okay.  Could you consider the evidence

24   presented by N.Y.P.D. the same way as any other witness?

25         THE PROSPECTIVE JUROR:  Yes.

1          THE COURT:  Okay.  Thank you.

2          THE PROSPECTIVE JUROR:  Thank you.

3          THE COURT:  Hello.  Juror No. 36, Brian Evans.

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  So you said that you had some you or

6   someone you know worked with law enforcement.

7          THE PROSPECTIVE JUROR:  Yes.  I have two cousins

8   that work.  One cousin that works for Nassau County P.D. and

9   another one that works for the Department of Corrections.

10         THE COURT:  Okay.  And the fact that you have

11  these law enforcement connections, would you still be fair

12  and impartial if you were a juror?

13         THE PROSPECTIVE JUROR:  No.

14         THE COURT:  You're shaking your head.  What are

15  your concerns?

16         THE PROSPECTIVE JUROR:  Well, I think it's

17  unconscious bias, basically, that I have.  I have ADHD and

18  that will also help.  The medication I'm on messes with my

19  mind sometimes.

20         THE COURT:  Okay.

21         THE PROSPECTIVE JUROR:  So, yeah, that's why I say

22  I can't exactly like guarantee that I'll be unbiased in it,

23  in my opinion, but I will try my best but.  I can't

24  guarantee it, though.

25         THE COURT:  So you think you would favor law

1   enforcement because of the connection?

2              THE PROSPECTIVE JUROR:  Yeah.

3              THE COURT:  You wouldn't be fair?

4              THE PROSPECTIVE JUROR:  Yes.

5              MS. DEAN:  No objection.

6              MR. CECUTTI:  No objection.

7              THE COURT:  Thank you for letting us know.  You're

8   excused.

9              THE PROSPECTIVE JUROR:  Thank you.

10             (The prospective juror was excused by the Court.)

11             THE COURT:  Hello.  Good afternoon, Juror No. 38.

12             So you said you had some prior legal experience

13  and also some connection with domestic violence?

14             THE PROSPECTIVE JUROR:  Yeah.

15             THE COURT:  Can you tell us about that?

16             THE PROSPECTIVE JUROR:  My stepfather used to beat

17  my mother when I was a child.

18             THE COURT:  Okay.

19             THE PROSPECTIVE JUROR:  And she died of alcoholism

20  at 35, I was 14.  I pay Globe Insurance.  I pay his life

21  insurance every month.  I don't know if that means anything.

22  And I'm a retired police officer.

23             THE COURT:  Okay.  Which police department?

24             THE PROSPECTIVE JUROR:  N.Y.P.D.

25             THE COURT:  And when did you retire?

1          THE PROSPECTIVE JUROR:  August of 2020.

2          THE COURT:  So the fact that you used to work for

3    the N.Y.P.D., do you think you could still be fair to both

4    defense and the Government in this case?

5          THE PROSPECTIVE JUROR:  Yes.  I would try my best,

6    yes.

7          THE COURT:  Would you give any witnesses from the

8    N.Y.P.D. the same weight as any other witness?

9          THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  Would you believe them more because

11    they're N.Y.P.D.?

12          THE PROSPECTIVE JUROR:  I would try not to.

13          THE COURT:  Yeah.  You sound like you have some

14    doubts, though.

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Do you think you might think they were

17    more likely to tell the truth because just because they're

18    police officers?

19          THE PROSPECTIVE JUROR:  Yes.  Because my personal

20    thing, I'm not going to arrest or give someone a summons

21    just to waste my time.

22          THE COURT:  So that sounds like you have some

23    issues about presumption of innocence.  Would you presume

24    somebody innocent if they were charged?  Would you still

25    presume them innocent at the beginning of the trial?

1            THE PROSPECTIVE JUROR:  Yes.

2            THE COURT:  Okay.  And would you ever -- would you

3    accept that the Government has to proved the evidence beyond

4    a reasonable doubt?

5            THE PROSPECTIVE JUROR:  Yes.

6            THE COURT:  But you said you wouldn't arrest

7    somebody to waste people's time.  So do you think just

8    because somebody has been arrested that they're guilty?

9            THE PROSPECTIVE JUROR:  I can only speak on

10   myself.

11           THE COURT:  Right.  But when you were an officer?

12           THE PROSPECTIVE JUROR:  Yes.

13           THE COURT:  Maybe that's how you did it?

14           THE PROSPECTIVE JUROR:  Yes.

15           THE COURT:  Would you be able to watch

16   witnesses --

17           THE PROSPECTIVE JUROR:  Yes.

18           THE COURT:  -- testify?

19           THE PROSPECTIVE JUROR:  Yes, I would.

20           THE COURT:  And if a police officer testified,

21   would you treat them just like any other person who might

22   tell the truth or not tell the truth, or would you say, you

23   know what, they're a police officer, I'm going to assume

24   that they are telling the truth.

25           THE PROSPECTIVE JUROR:  I would obviously assume

1   they're telling the truth if they're under, you know.

2           THE COURT:  Right.  But the same as any other

3   person.

4           THE PROSPECTIVE JUROR:  Yes.

5           THE COURT:  So.

6           THE PROSPECTIVE JUROR:  I wouldn't.

7           THE COURT:  So would you give greater -- I guess,

8   I'm not asking the question very well.

9           Would you give greater weight to a witness just

10  because that witness is a police officer?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  Okay.

13          MR. CECUTTI:  No objection.

14          MS. DEAN:  No objection.

15          THE COURT:  Thank you for being so honest with us.

16  You're excused.

17          (The prospective juror was excused by the Court.)

18          THE COURT:  Hello, Juror No. 39.  Rochelle Adams.

19          You said that you had been in a civil trial

20  before?

21          THE PROSPECTIVE JUROR:  Yes.

22          THE COURT:  Was there anything about that

23  experience that will make you not fair in this criminal

24  trial?

25          THE PROSPECTIVE JUROR:  No.

1     THE COURT:  Okay.  Did you reach a verdict in that
2  case?
3     THE PROSPECTIVE JUROR:  Yes.
4     THE COURT:  Was there anything else that you
5  wanted to bring to my attention?
6     THE PROSPECTIVE JUROR:  About if I know where
7  Canarsie is, yes.
8     THE COURT:  I know if there was testimony about
9  the case would you try to tell people that you know you have
10 special knowledge of the case or anything like that?
11    THE PROSPECTIVE JUROR:  No.
12    THE COURT:  Would you be able to put that out of
13 your mind?
14    THE PROSPECTIVE JUROR:  Yeah.
15    THE COURT:  And go with what the evidence shows?
16    THE PROSPECTIVE JUROR:  Yes.
17    THE COURT:  And what is your connection?  You know
18 where it is?  Is that someplace where your live?
19    THE PROSPECTIVE JUROR:  My son's football team
20 used to practice there.
21    THE COURT:  I see.  Any follow-up?
22    MS. DEAN:  No.
23    MR. CECUTTI:  No.
24    THE COURT:  Thanks so much.
25    Hello, Juror No. 41, Jennifer Velez.  You were

1    here before.

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  How are you doing?

4              THE PROSPECTIVE JUROR:  Okay.  Thank you.

5              THE COURT:  So you answered yes about prior legal

6    experience and also about whether you would require forensic

7    evidence as opposed to witness testimony.

8              THE PROSPECTIVE JUROR:  Yeah.  Although I don't

9    think necessarily that's always the case, so I probably

10   would change my answer on that one.

11             THE COURT:  I see, okay.

12             The issue is:  There is some people who think that

13   case is any good unless there's forensic evidence like

14   fingerprints or DNA.  But you will be instructed that you

15   can rely on witness testimony without other evidence as long

16   as the Government has proven its case beyond a reasonable

17   doubt, okay?

18             So the question is, just would you be able to rest

19   the case on witness?

20             THE PROSPECTIVE JUROR:  Solely witness

21   testimony --

22             THE COURT:  Or would you say --

23             THE PROSPECTIVE JUROR:  -- from five years ago.

24             THE COURT:  I can't accept this case because it's

25   only witnesses saying something without forensic evidence.

1          THE PROSPECTIVE JUROR:  I assume that that's

2   sometimes all you have.  I guess it gets to the credibility

3   of the witnesses.  It's just hard to know what memory is

4   flawed.  But I also believe that there's awfully just a

5   witness.  I know it's difficult.  I know I'm not answering.

6   I guess it would be possible to convict on witness

7   testimony.

8          THE COURT:  Okay.  That's a thoughtful answer

9   because it really is, you know, if somebody testified and

10  you didn't believe them then it's not really evidence

11  because it's nothing, right?  But if you believe them that

12  address evidence and you'll get instruction on how to weigh

13  things the question is off the bat some people will say if

14  there isn't any forensic evidence, then forget it and we

15  just want to know if you are one of those people.

16         THE PROSPECTIVE JUROR:  No.

17         THE COURT:  All right.  Great.  That's what we

18  wanted to know.

19         THE PROSPECTIVE JUROR:  Lawyers.

20         THE COURT:  Lawyers, yes.  And also the connection

21  to the or victim witness or charged with an a crime.

22         THE PROSPECTIVE JUROR:  I think you have asked

23  about addiction.

24         THE COURT:  Yes.  Tell us about these things.

25         THE PROSPECTIVE JUROR:  Yeah, my dad went to law

 1  school.  Didn't pass the bar.  My uncle is a lawyer, works

 2  closely with my dad.  My closest friend's an attorney.  So

 3  definitely.

 4          THE COURT:  Are any of them criminal attorneys.

 5          THE PROSPECTIVE JUROR:  My uncle is a criminal

 6  defense.

 7          THE COURT:  And did you talk to them about the

 8  law?

 9          THE PROSPECTIVE JUROR:  Not extensively, you know.

10          THE COURT:  Is your friend a criminal lawyer?

11          THE PROSPECTIVE JUROR:  She's not a criminal

12  lawyer, no.

13          THE COURT:  So the question there is focused on

14  whether you can accept Judge Donnelly's instruction on the

15  law because sometimes people will hear what a judge says and

16  says that's not what my father told me.

17          Would you accept what the judge tells you is the

18  law?

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  And then about the substance abuse.

21  What did you want to say?

22          THE PROSPECTIVE JUROR:  The question is:  Do we

23  have addiction in the family and friends and things like

24  that?

25          THE COURT:  Yes.

1          THE PROSPECTIVE JUROR:  Yes.  Yeah.  Family

2   members, addicts.  I have lost people to overdoses.

3          THE COURT:  Sorry to hear that.

4          THE PROSPECTIVE JUROR:  I think it's common now.

5          THE COURT:  Do you think if you heard evidence

6   about drug addiction or drug abuse, would that affect your

7   ability to be fair in the case?

8          THE PROSPECTIVE JUROR:  I would hope not.

9          THE COURT:  I'm sorry.

10          THE PROSPECTIVE JUROR:  I would hope not.  I could

11   be fair.

12          THE COURT:  You could be fair?

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  And how do you think it might affect

15   you that gives you a moment's pause?

16          THE PROSPECTIVE JUROR:  I have complicated -- it's

17   just complicated.

18          THE COURT:  Of course.

19          THE PROSPECTIVE JUROR:  It's just complicated

20   because people that you love are addicted and there's both

21   anger and compassion.

22          THE COURT:  Okay.

23          THE PROSPECTIVE JUROR:  So, yeah, it's just

24   complicated.  But I think I could be fair you would hope.

25          THE COURT:  Yes.  Okay.  So I know it's emotional,

1  of course, and it's a terrible thing that's been happening

2  in this area but could you, if you heard the evidence, would

3  you be fair to the Government and to the defendant in this

4  case?

5           THE PROSPECTIVE JUROR:  Yes.

6           THE COURT:  Okay.

7           THE PROSPECTIVE JUROR:  Yeah.

8           THE COURT:  Okay.  Any follow-up?

9           MS. DEAN:  No.

10           MR. CECUTTI:  No.

11           THE PROSPECTIVE JUROR:  I think I have a question.

12  Are you asking these as well later?

13           THE COURT:  Later.

14           MS. DEAN:  Judge, I'm sorry.  Maybe we covered it

15  regarding whether someone as a victim witness or charged

16  with a crime.

17           Who was that?

18           THE PROSPECTIVE JUROR:  I mean, I lived in

19  San Francisco, so my car has been broken into a ton of times

20  and been questioned by, not questioned, but talked to by the

21  police about that and my house was burgled.

22           THE COURT:  Is there anything about those

23  experiences that would make you not be fair to both the

24  Government and the defense?

25           THE PROSPECTIVE JUROR:  I don't think it would

1    impact me.

2              THE COURT:  So you could be fair?

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Okay.  Great.  Thank you very much.

5    Juror No. 43, Roxann Rose.

6              THE PROSPECTIVE JUROR:  Hi.

7              THE COURT:  You told us that you had some prior

8    connection to the legal work as well as forensic science.

9              THE PROSPECTIVE JUROR:  I've been teaching

10   college-level forensic science for the last ten years for

11   Syracuse University.  Also, chemistry teacher to the last

12   20 years.

13             THE COURT:  Okay.

14             THE PROSPECTIVE JUROR:  But, basically, in what I

15   teach my students is when they get to the station,

16   everything's out there and it's burden of proof and you need

17   just about -- you certainly need more than one piece of

18   evidence ever and you should just ignore it if it's one

19   piece.

20             But I think in New York, this far, you get here,

21   I'm really prone to no matter who is on the other side of

22   it, I have trouble being impartial.  If I'm looking at that

23   evidence, it's going to be what I think it is.  I'm not

24   going to hear what anybody else has to say.

25             THE COURT:  That's when you're working on the

1   evidence.  But here you weren't at the crime scene.

2           THE PROSPECTIVE JUROR:  No.

3           THE COURT:  You, yourself, the forensic evidence.

4   And what you'll be doing is listening to people who are

5   there or what they bring to you and what they tell you and

6   what they say would you be.

7           THE PROSPECTIVE JUROR:  I understand.

8           THE COURT:  Be fair in that case.

9           THE PROSPECTIVE JUROR:  I don't know if I can be

10  because also, as a young woman, I was not comfortable saying

11  I was attacked twice.

12          THE COURT:  I see.

13          THE PROSPECTIVE JUROR:  So late teens, early 20s,

14  and once it was sexual.

15          THE COURT:  I see.

16          THE PROSPECTIVE JUROR:  So ever since then I had

17  big dogs.

18          THE COURT:  Big dogs.

19          THE PROSPECTIVE JUROR:  Like rottweilers and 100

20  coonhounds.

21          THE COURT:  Okay.

22          THE PROSPECTIVE JUROR:  I am trying to be as

23  truthful as possible and I don't want to sound ignorant or

24  belligerent or whatever.  I don't think this is the type of

25  case that I can be impartial.

1           MS. DEAN:  No.

2           MR. CECUTTI:  No objection.

3           THE COURT:  Thank you for letting us know you're

4   excused.

5           THE PROSPECTIVE JUROR:  Thank you.

6           (The prospective juror was excused by the Court.)

7           THE COURT:  Do you want to keep going or does

8   anybody need a break?

9           Juror No. 46, Leon Andrew.

10          How you are you?

11          THE PROSPECTIVE JUROR:  I'm pretty good.

12          THE COURT:  Well, you have some connection to law

13  and then also you had some issues with individuals who were

14  convicted of a crime?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Tell us about that.

17          THE PROSPECTIVE JUROR:  Okay.  Too many times I've

18  seen, like, people get convicted.  And after a while, it

19  gets turned over.  And a question was asked in regards to

20  eyewitnesses and that brought me back to actually some cases

21  that I've seen where there was eyewitnesses and then it got

22  turned over and that was the reason why I said that.

23          THE COURT:  Okay.  I see.  So you're talking about

24  cases where people were convicted.

25          THE PROSPECTIVE JUROR:  Convicted.

1          THE COURT:  And later were found to be exonerated?

2          THE PROSPECTIVE JUROR:  Correct.

3          THE COURT:  And it was based on the conviction

4    exonerated based on eyewitness testimony.

5          THE PROSPECTIVE JUROR:  Because lack of forensic

6    evidence.

7          THE COURT:  And so, does that mean because you

8    also answered that, well, does that mean that you would have

9    some concerns about a case that rested just on witness

10   testimony?

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  So you would require forensic

13   evidence?

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Okay.  Was there any other issue you

16   wanted to bring up?

17         THE PROSPECTIVE JUROR:  Another issue I had where

18   the first question you had asked earlier this morning with

19   regard to some disabilities.

20         THE COURT:  Yes.

21         THE PROSPECTIVE JUROR:  Based on my -- I'm not

22   going to say lack, I slowed down in education.  A lot of

23   times, I have problem, like, really retrieving information

24   and able to -- I forget a lot -- so this is one of the

25   things that I usually have that actually keeps me back.

1   That's why I had finished school.  Actually, I reached 10th

2   grade and I couldn't continue so I had to do a trade.

3             THE COURT:  Are you working now?

4             THE PROSPECTIVE JUROR:  Yes, I am.

5             THE COURT:  What kind of work do you do?

6             THE PROSPECTIVE JUROR:  I'm a maintenance mechanic

7   in a nursing home.

8             THE COURT:  Okay.

9             THE PROSPECTIVE JUROR:  So any information that I

10  gather I have to pretty much write it down in order to

11  complete that task.

12            THE COURT:  Okay.  So if you were -- are you

13  saying that if you were a juror you would have to write

14  things down to remember it?

15            THE PROSPECTIVE JUROR:  Yes, I would definitely in

16  order to pretty much remember stuff because it doesn't come

17  back very easy to me.

18            MS. DEAN:  No objection.

19            MR. CECUTTI:  I need a minute.

20            THE COURT:  Could you step back minute so the

21  lawyers can talk.

22            THE PROSPECTIVE JUROR:  Sure.

23            (A brief pause in the proceedings was held.)

24            MR. CECUTTI:  Your Honor, would like your Honor to

25  inquire further about the issue concerning forensics and his

1   ability to require the Government to produce forensic

2   evidence.  I understand your Honor asked that question but

3   some follow-up would be helpful.

4           THE COURT:  I heard him say that because of

5   exonerations that were based just on witness testimony, he

6   would require forensic evidence.

7           MR. CECUTTI:  The issue here is, this is not a

8   case where there is going to be any eyewitness who says

9   Mr. Martin shot this person and I saw this from 15 feet

10  away.  The evidence is going to come from a cooperating

11  witness who is going to testify in great detail about her

12  relationship to Mr. Martin and what happened concerning the

13  death of Brandy Odom.

14          So while I certainly heard in expressing concern

15  about wrongful convictions based upon eyewitness

16  identification, that's not this case.

17          And so, the link to the requirement of forensic

18  evidence is understandable based upon what he's thinking

19  concerning eyewitness identification and wrongful

20  investigation, but again, that's not this case.

21          THE COURT:  So what do you want me to ask him?

22          MR. CECUTTI:  This is not going to be a case

23  concerning eyewitness identification.  And as such, would

24  you require the Government to present forensic evidence to

25  find the defendant guilty?

1      THE COURT:  I don't want to give a preview of the

2   evidence, so I'm hesitant to start characterizing what the

3   evidence would be.  Let me ask him because I also asked him

4   about strong views about law enforcement.  So let me ask him

5   and see how that goes.

6      MS. DEAN:  Your Honor, that was one of the

7   questions that we would ask you to follow-up on the law

8   enforcement activity and whether he could be fair.  And he

9   also answered that he could not be fair with regards to your

10   last question kind of the catch-all question.

11      THE COURT:  Right.

12      MS. DEAN:  So if we're going forward which is our

13   position he has already he's indicate he can't be fair.  But

14   one of the things that follow-up on both of those as well

15   we'd appreciate it.  Great.  Thanks..

16      (Continued on the next page.)

17

18

19

20

21

22

23

24

25

1          (Sidebar continues; prospective juror joins.)

2          THE COURT:  So you also answered yes to my last

3    question about whether there was anything you heard that would

4    make you not be fair.  Can you tell me a little bit about

5    that?

6          THE PROSPECTIVE JUROR:  What was it about?

7          THE COURT:  The question is was there anything,

8    having heard all these preliminary questions, was there any

9    reason you could not be fair in this case?

10         THE PROSPECTIVE JUROR:  No.  I'll -- no.

11         THE COURT:  No?

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  You also said you had strong beliefs

14   about law enforcement that would affect your ability to be

15   fair.  Can you tell me about that?

16         THE PROSPECTIVE JUROR:  Based on what I was thinking

17   at the moment, I really cannot gather information.  It's not

18   coming back to me.  Because something you had said prior to

19   that that made me answer that but right now, it's not coming

20   back to me, the information.

21         THE COURT:  All right.  So the question was does

22   anybody have any strong beliefs about law enforcement that

23   would make you not be fair.

24         THE PROSPECTIVE JUROR:  I cannot remember.  Maybe I

25   did, but I can't remember.

1          THE COURT:  That's okay.  Do you have any views

2    about law enforcement?

3          THE PROSPECTIVE JUROR:  No, because I have family

4    members in law enforcement.

5          THE COURT:  Who are your family members?

6          THE PROSPECTIVE JUROR:  My nephew.

7          THE COURT:  And given that you have a nephew in law

8    enforcement, what --

9          THE PROSPECTIVE JUROR:  If wouldn't affect me in any

10   way negative.  It wouldn't.  And my wife also, she works with

11   the court system in Manhattan.

12         THE COURT:  Okay.  So which law enforcement is your

13   nephew in?

14         THE PROSPECTIVE JUROR:  He works in NYPD, First

15   Precinct in Manhattan.

16         THE COURT:  And you heard that there will be

17   witnesses who are from NYPD.  Would you give their testimony

18   the same weight as any other witness?

19         THE PROSPECTIVE JUROR:  Not necessarily.

20         THE COURT:  No?

21         THE PROSPECTIVE JUROR:  No.

22         THE COURT:  Can you tell me about that?

23         THE PROSPECTIVE JUROR:  Because I had interactions

24   with NYPD already that wasn't very, you know, forthcoming to

25   me and it's, I mean, every individual are different and there

1   are good and bad and I just look at everybody on a personal,

2   you know, individual.

3            THE COURT:  Right.

4            THE PROSPECTIVE JUROR:  So that's why I'm not too

5   sure about that.

6            THE COURT:  Okay.  Well, you know, judging people as

7   individuals, it's a good thing.

8            THE PROSPECTIVE JUROR:  Yes.

9            THE COURT:  The question is whether you would have

10  any bias against --

11           THE PROSPECTIVE JUROR:  Against the department, no.

12           THE COURT:  And if NYPD -- so what was the negative

13  interaction with the NYPD?

14           THE PROSPECTIVE JUROR:  It was where I was pulled

15  over.  I was actually sick and I was pulled over by a police

16  officer and he told me I made the wrong turn, I made a wrong

17  turn.  Maybe I did, I didn't see, and he was really nasty

18  towards me and I just -- that was pretty much it.

19           THE COURT:  So do you think that would make you not

20  believe an NYPD officer just because he's an NYPD officer?

21           THE PROSPECTIVE JUROR:  A lot of them tend to make

22  up.

23           THE COURT:  Make up?

24           THE PROSPECTIVE JUROR:  Make up stuff to get

25  arrests, whatever it is, and that's the same reason why I had

1 said in regard to the forensic evidence, I would rather have

2 that than to believe some eyewitnesses, potential eyewitnesses

3 or whatever it is.

4         THE COURT:  Right.  Well, you know, so with the

5 police officer, just like any other person, sometimes some

6 people tell the truth, sometimes people are not telling the

7 truth.

8         THE PROSPECTIVE JUROR:  Yes.

9         THE COURT:  As long as you're judging them based on

10 what you think is happening, that's okay.

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  But the question is if people say he's a

13 police officer, I'm not going to believe him or if people say

14 he is a police officer, I am going to believe him.

15         THE PROSPECTIVE JUROR:  No, I would not do that.

16         THE COURT:  So you are going to look at everything?

17         THE PROSPECTIVE JUROR:  Yes, I will judge a person

18 based on what I get, not whatever position they're standing

19 on, I won't.

20         THE COURT:  Great.  And as far as the forensic

21 evidence, sometimes it's a case where there are no

22 fingerprints, right, and so would you say if there are no

23 fingerprints, then I'm not going to accept the case?

24         THE PROSPECTIVE JUROR:  It would be extremely

25 difficult based on what I've seen.

1          THE COURT:  Based on what you've seen.

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  Yes.

4          THE PROSPECTIVE JUROR:  Extremely difficult.

5          THE COURT:  So even if Judge Donnelly said if

6     there's enough witness testimony that you believe, that then

7     that might be enough to convict, would you say no, I can't

8     convict because there's no forensic --

9          THE PROSPECTIVE JUROR:  It would be hard.

10          THE COURT:  It would be hard?

11          THE PROSPECTIVE JUROR:  It would be hard, yes.

12          THE COURT:  Could you do it or would you say I

13     really can't?

14          THE PROSPECTIVE JUROR:  It would be difficult.

15          THE COURT:  Okay.

16          THE PROSPECTIVE JUROR:  Evidence or circumstances.

17          THE COURT:  But you haven't seen anything yet.

18          THE PROSPECTIVE JUROR:  Exactly.  That's true too.

19          THE COURT:  So if the witnesses came in and you

20     believed them, could you convict or you still wouldn't convict

21     because you need physical evidence?

22          THE PROSPECTIVE JUROR:  I don't know.

23          THE COURT:  You don't know?

24          THE PROSPECTIVE JUROR:  I really don't.

25          THE COURT:  That's fair.  It's hard to say.

1          THE PROSPECTIVE JUROR:  I really don't.

2          THE COURT:  All right.  Thank you.  Can you step to

3    the side for a minute.  Let me talk.

4          (Prospective juror leaves.)

5          MS. DEAN:  Our position is the same.  He's being

6    really honest but he can't say he'll follow the law with

7    regard to that.

8          MR. CECUTTI:  I disagree.  I think that he is

9    willing to follow the law but he's expressing difficulty

10   around a conviction without forensic evidence.

11         THE COURT:  Right.  And I just posited that if he

12   believed that there was credible witness testimony, would you

13   still require forensic evidence and he basically said yes.  He

14   said it would be difficult for him to convict.  He didn't say

15   impossible.

16         MR. CECUTTI:  Right.  He said it was difficult.

17   But, again, he hasn't heard any of the evidence in the case.

18         THE COURT:  Right.

19         MR. CECUTTI:  And he can acknowledge it would be

20   difficult.

21         THE COURT:  Yes.

22         MR. CECUTTI:  But he did not say I would require the

23   government to have forensic evidence.

24         THE COURT:  So let me ask him directly because it's

25   about following the law:  Judge Donnelly said you can convict,

1  if the government proved beyond a reasonable doubt, without

2  forensic evidence, would you still require forensic evidence.

3          MR. CECUTTI:  Okay.

4          THE COURT:  Okay.

5          (Prospective juror joins.)

6          THE COURT:  Okay.  Sorry.  We're trying to come up

7  with the right questions.

8          THE PROSPECTIVE JUROR:  Okay.

9          THE COURT:  So if, at the end of the trial,

10 Judge Donnelly said you may convict based on witness

11 testimony.

12         THE PROSPECTIVE JUROR:  Testimony, yes.

13         THE COURT:  If the witness testimony convinces you

14 beyond a reasonable doubt that based on the guilt.

15         THE PROSPECTIVE JUROR:  Yes, if I'm really

16 convinced, yes.

17         THE COURT:  Okay.  But the question is if the --

18 even if you're convinced based on the testimony that the

19 person is guilty, would you still require forensic evidence?

20         THE PROSPECTIVE JUROR:  Well, at that point, that's

21 when I will have to give in because if there is none as you

22 have mentioned earlier, if there is none and the witness is,

23 like, clear cut like that, of course.

24         THE COURT:  Okay.  Great.  Thank you.

25         THE PROSPECTIVE JUROR:  Okay.

1      THE COURT:  That's it.  Was there anything else you

2  wanted to bring up?

3      THE PROSPECTIVE JUROR:  No.  That was it.

4      THE COURT:  Okay.  Have a seat.

5      (Prospective juror leaves.)

6      THE COURT:  So I think he can be fair.

7      MR. CECUTTI:  Yes.

8      THE COURT:  That was 46.

9      (Prospective juror joins.)

10      THE COURT:  Mr. Barsan, did you answer yes to any of

11  my questions?

12      THE PROSPECTIVE JUROR:  No.

13      THE COURT:  Was there anything you wanted to bring

14  to our attention?

15      THE PROSPECTIVE JUROR:  No.

16      THE COURT:  Okay.  We'll hear you from you in a few

17  minutes.

18      (Prospective juror leaves.)

19      (Prospective juror joins.)

20      THE COURT:  Hello, Ms. Chahine.  And you answered

21  yes to a couple of questions?

22      THE PROSPECTIVE JUROR:  Yes.

23      THE COURT:  Domestic abuse, law enforcement agency

24  contacts, prior legal experience and part --

25      THE PROSPECTIVE JUROR:  The legal experience was

1   just a temp job in an office.

2          THE COURT:  Okay.  Great.  So just tell us about

3   each of those things.

4          THE PROSPECTIVE JUROR:  So the domestic violence,

5   growing up, my mom just, and a lot of domestic violence around

6   me, my dad and family, and just I was exposed to a lot of it.

7          What was the other question?

8          THE COURT:  You said you had some connection with

9   law enforcement.

10          THE PROSPECTIVE JUROR:  Yes.  So my cousin was an

11   NYC, NYPD Detective.  That was like family.  He doesn't do

12   that anymore.  That was law enforcement.  I worked at a

13   private investigator office when I was out in California 20,

14   over 20 years ago.

15          THE COURT:  Okay.

16          THE PROSPECTIVE JUROR:  So subpoenas, doing

17   research, legal research.  And the temp job when I was in

18   college in a law office.  What were the other ones?

19          THE COURT:  You had been on a civil trial.

20          THE PROSPECTIVE JUROR:  I was on a civil trial.

21          THE COURT:  Was there anything about the civil trial

22   experience that would make you not be fair in this case?

23          THE PROSPECTIVE JUROR:  No.  It was a long time ago

24   and it was a lawsuit, he slipped and fell and was suing and he

25   lost it.

1        THE COURT:  That's fine.

2        THE PROSPECTIVE JUROR:  That was pretty much it.

3        THE COURT:  And then is there anything about the

4   fact that you have the cousin with the NYPD that would affect

5   your ability to be fair to the defense as well as the

6   government?

7        THE PROSPECTIVE JUROR:  I haven't seen him in years.

8   I mean I do have friends in law enforcement, but I don't think

9   that would affect my judgment.

10       THE COURT:  Would you give a law enforcement witness

11   the same consideration as any other witness and not favor

12   them?

13       THE PROSPECTIVE JUROR:  Not necessarily, no.  It

14   would just depend on the evidence and what's said.  I've never

15   been on a case like this.

16       THE COURT:  Yes.

17       THE PROSPECTIVE JUROR:  It's really hard to say in

18   the, theoretically or hypothetically.  I don't have

19   experience.  I guess it would just depend on what I'm hearing

20   and how I'm hearing it and what the evidence is.  I don't

21   think I would give it more weight but it depends on the

22   circumstance.

23       THE COURT:  Right.  Well, "it depends" is actually a

24   good thing for a juror because we don't want jurors who make

25   up their mind before they hear the evidence.

1        THE PROSPECTIVE JUROR:  Yes, it's so hard.  You

2   asked all these questions, would you be objective.  It's so

3   hard.  Everyone has got their personal experience.  I hope.

4        THE COURT:  And that's why we have so many jurors,

5   right, because everybody comes with their own life experience

6   and ideas.  The question is whether you could set aside things

7   that you --

8        THE PROSPECTIVE JUROR:  Yes.

9        THE COURT:  -- think you know.

10       THE PROSPECTIVE JUROR:  I hope.  I mean in all

11  honesty, I follow what's happening, I have very strong

12  opinions on, you know, what's happening in the world and

13  domestically so I can't, in all honesty, say that's not going

14  to, you know, come up with my mind and my heart.

15       THE COURT:  Right.

16       THE PROSPECTIVE JUROR:  I would try to do the right

17  thing but you'd be lying to yourself.

18       THE COURT:  And what do you think the right thing

19  is?

20       THE PROSPECTIVE JUROR:  To hear the evidence, to try

21  to be as objective and as possible, you should remove your

22  emotions from it as best you can.

23       THE COURT:  That's great.

24       THE PROSPECTIVE JUROR:  I mean I'm already -- you

25  know, it's hard.  I mean I know the defendant is sitting here

1  and I'm trying not to look at him.  It's, you know, you feel

2  what you feel, you know.

3             THE COURT:  Well, you know, I asked one of the

4  questions and I'll ask it now.  Can you presume that

5  Mr. Martin is innocent right now?

6             THE PROSPECTIVE JUROR:  I do, yes, until, until -- I

7  mean I don't know anything about the case.  I'm just concerned

8  because, obviously, it's a very violent and it's an intense

9  case and I came forward to say I'm conflicted with that

10  because of my past and what I struggle with but I certainly

11  don't presume he's guilty because he's sitting in that seat.

12  I don't.

13             THE COURT:  Okay.  Can you tell me a little bit

14  about the, what you're expressing about your past and how bad

15  it might affect you.

16             THE PROSPECTIVE JUROR:  Well, the domestic violence

17  and I have, you know, people in my life who have been victims

18  of rape and abuse and, you know, I've had my own experience.

19  So it's, you know -- and I, you know, battle with my own fears

20  and anxieties and, you know, it's not a situation that would,

21  that paralyzes me.  You know I have a pretty intense job and

22  confronted with a lot every day but I do get, you know -- I

23  don't know.

24             THE COURT:  Let's put it this way.

25             THE PROSPECTIVE JUROR:  Yes.

1          THE COURT:  Let me ask you a different way.

2          If you were the government or the defendant in this

3    case, would you want you to be a juror?

4          THE PROSPECTIVE JUROR:  Why did you ask me that

5    question?

6          THE COURT:  Right, because it's just whether you

7    could be a good juror and be fair and listen to the evidence

8    and apply the law and just be fair.

9          THE PROSPECTIVE JUROR:  I may regret saying this but

10   probably, yes.

11         THE COURT:  Yes, okay.

12         THE PROSPECTIVE JUROR:  I, you know --

13         THE COURT:  Okay.

14         THE PROSPECTIVE JUROR:  You know.

15         THE COURT:  That's fine.  It's hard.

16         THE PROSPECTIVE JUROR:  It's very hard.

17         THE COURT:  People who are thoughtful will have lots

18   of different ways of answering.

19         THE PROSPECTIVE JUROR:  There's just so much, so

20   much going on in the world and I would like to do my, whatever

21   can I do to help.  I'm actually praying send something my way

22   to help, and then this comes my way, four weeks of this.

23         THE COURT:  So I want to make sure that you, as part

24   of being a juror, that you don't try to make a point, right?

25   That you're rendering a verdict that is based just on what you

1   hear and that's fair in this case, whether it's guilty or not

2   guilty.

3           THE PROSPECTIVE JUROR:  No, no, no, I would not.

4   More of my concern is there's such a responsibility that I'm

5   holding to a person's life, that life and the lives who have

6   been affected, and I'm just so scared I'm making the wrong

7   decision.

8           THE COURT:  You won't be making the decision alone.

9           THE PROSPECTIVE JUROR:  Yes.  That's really more of

10  what I --

11          THE COURT:  We want jurors to take the

12  responsibility very seriously.

13          THE PROSPECTIVE JUROR:  It's a huge responsibility,

14  yes.

15          THE COURT:  Good.  Thank you.

16          THE PROSPECTIVE JUROR:  Thank you.

17          MS. DEAN:  Judge, two other questions.  The

18  forensics question, I think this juror responded to, and also

19  about I have being questioned by police.

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  Okay.

22          THE PROSPECTIVE JUROR:  So that was on -- it was

23  related to my uncle.  I'm Lebanese, I was born in Lebanon, and

24  he was questioned several years.  I was questioned by the FBI,

25  the whole family was, in relation to him, some potential,

1  Hezbollah.  You know, it's -- he was innocent but, you know,

2  being from that region, Hezbollah is like the water.  You

3  can't not know somebody from there.  So he came up in

4  questioning because of a brother-in-law who knew somebody and,

5  you know, I think in my honest opinion, it was really unjust

6  what happened but everyone was questioned to try to find him,

7  you know, somehow.

8        So it was complicated.  I was questioned once and

9  they were lovely to me but it was, you know, that was the

10 situation.  So that was my experience in answering the

11 questions.

12       THE COURT:  And the questioning was happening in

13 New York?

14       THE PROSPECTIVE JUROR:  Yes, it was a public -- yes.

15 I was at work.  We went for coffee.  I had no relationship

16 with him.  Just several questions.  You know, it's a --

17       THE COURT:  Right, but given that that happened,

18 could you still be fair in this case?

19       THE PROSPECTIVE JUROR:  You know, I really have to

20 think about that because it was, you know, I could -- yes, I

21 believe I could be fair, but I would be lying if I said I

22 wasn't really upset by sort of how that unfolded and, you

23 know, it's complicated.  You know, it's not unique to him.

24       THE COURT:  Okay.  And then the question about

25 whether if you, would you require the government to present

1  forensic evidence.

2           THE PROSPECTIVE JUROR:  Yes.

3           THE COURT:  Or could you convict just based on

4  witness testimony.

5           THE PROSPECTIVE JUROR:  I would not be comfortable

6  convicting just on the witness, you know, testimony.

7           THE COURT:  But if you believed the witnesses,

8  right?  If you don't believe the witnesses, it doesn't count,

9  but if you believed the witnesses and you thought the

10 government had, through the witness testimony, proven their

11 guilt, their case, beyond a reasonable doubt, could you

12 convict or would you say no, if there's no forensic evidence?

13          THE PROSPECTIVE JUROR:  It's really hard to answer.

14 I have not been -- you're saying if I believe the witnesses

15 based on --

16          THE COURT:  If the government otherwise proved their

17 case, would you still want, would you still need forensic

18 evidence in order to convict?

19          THE PROSPECTIVE JUROR:  I'm having a hard time

20 answering that.  I mean I'm just -- because I'm thinking of

21 cases where, you know, witnesses were believed but the

22 forensic evidence was there, wasn't there, and then later they

23 find out, you know, they're innocent.  So I don't know.  I

24 honestly don't know.  I can't answer.  I don't know.

25          I mean, obviously, if I believed the witnesses, then

1  probably.  I just would be more comfortable if it's such a

2  serious case and the repercussions of it were going to be so

3  impactful.

4          THE COURT:  Well, I mean the government always has a

5  burden of proof, right?  It has to prove its case beyond a

6  reasonable doubt for there to be a conviction.  The question

7  is whether you can convict.

8          THE PROSPECTIVE JUROR:  I guess my question is how

9  is it proven without, beyond a reasonable doubt if you don't

10  have the forensic evidence.  That's where I'm not sure.

11          THE COURT:  Right.

12          THE PROSPECTIVE JUROR:  That's why I'm having a hard

13  time answering that.

14          THE COURT:  Well, there could be cases where there

15  is no forensic evidence but you still find, as a juror, that

16  it's beyond a reasonable doubt but it's up to you.

17          THE PROSPECTIVE JUROR:  I guess in that case, yes.

18  Again, I'm speaking from not having experience.  I suppose,

19  yes.

20          THE COURT:  Okay.  That's fine.  Okay.  Thanks.

21          THE PROSPECTIVE JUROR:  Thank you.

22          (Prospective juror leaves.)

23          MS. DEAN:  Judge, the government, I would say no

24  objection if -- but she's gone.  We do believe this juror

25  should be excused for cause.

1          MR. CECUTTI:  We do not believe she should be

2     excused for cause.  She answered all of Your Honor's questions

3     thoughtfully and honestly.  At no point regarding the

4     forensics question did she say unequivocally, I could not find

5     Mr. Martin guilty if there was no forensic evidence.  She

6     simply said it would be difficult.  So she shouldn't be

7     excused for cause.

8          THE COURT:  I agree.  She said she could be fair and

9     I think she was being thoughtful rather than, you know,

10    stating that she couldn't be fair.  I said as long as you --

11    if you believe the witnesses and the government had otherwise

12    proven its case beyond a reasonable doubt, she said proven

13    beyond a reasonable doubt, then yes, in so many words.  So I

14    think that's fine.  She as -- she will stay on the jury.

15          (Prospective juror joins.)

16          THE COURT:  Hello.  You are Patricia Zinke?

17          THE PROSPECTIVE JUROR:  Yes.  You said it right.

18    Most people don't.

19          THE COURT:  You said you have some experience with

20    law enforcement and also with domestic violence and with law.

21          THE PROSPECTIVE JUROR:  So the lawyer doesn't count

22    because he does marine law, like two ships hit each other on

23    the Pacific Ocean.  That's what he does.

24          THE COURT:  Who is that?

25          THE PROSPECTIVE JUROR:  My brother-in-law.

1        And the domestic violence, my sister was emotionally

2   abused by her ex-husband which is why he's an ex-husband.  And

3   my mother had some physical abuse by my father but not -- you

4   know, it wasn't every day.  It would be once every couple of

5   months kind of thing.

6                THE COURT:  And then also with law enforcement?

7                THE PROSPECTIVE JUROR:  My whole block is cops.

8                THE COURT:  What?

9                THE PROSPECTIVE JUROR:  My whole block is cops,

10  postal inspectors, cops.

11               THE COURT:  Neighbors?

12               THE PROSPECTIVE JUROR:  Yes.

13               THE COURT:  So the fact that you have so many

14  neighbors who are law enforcement, would that affect your

15  ability to be fair?

16               THE PROSPECTIVE JUROR:  No.

17               THE COURT:  Do you think you can judge a law

18  enforcement officer the same as everybody else?

19               THE PROSPECTIVE JUROR:  Yes.

20               THE COURT:  Would you tend to believe them more or

21  less?

22               THE PROSPECTIVE JUROR:  No.

23               THE COURT:  Just like everyone else?

24               THE PROSPECTIVE JUROR:  Yes.  I know my neighbors.

25               THE COURT:  And as far as the domestic violence, do

1   you think that experience would make you not be fair in any

2   way in a case that involves domestic violence?

3           THE PROSPECTIVE JUROR:  I don't think so.  You know.

4   I don't know.

5           THE COURT:  You don't know.  What makes you doubt?

6           THE PROSPECTIVE JUROR:  Well, more the philosophical

7   violence.  Like with my mother, that was traumatic.  I was

8   young.  But I think now, just because in my work, I've seen

9   people come into the ER with domestic violence, things like

10  that, you kind of separate it.

11          THE COURT:  Well, I mean I think we can all agree

12  domestic violence is bad.

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  But the question is whether you -- when

15  you hear that evidence, whether that would make you so

16  emotional that you couldn't judge.

17          THE PROSPECTIVE JUROR:  No.  No.  I'm very good at

18  compartmentalizing things.

19          THE COURT:  All right.  Sounds good.

20          And then as far as your brother-in-law and the law?

21          THE PROSPECTIVE JUROR:  That's fine.

22          THE COURT:  That doesn't matter, you said?

23          THE PROSPECTIVE JUROR:  No.

24          THE COURT:  Because we want to make sure that you'll

25  follow the law.

1        THE PROSPECTIVE JUROR:  He's a partner in Hong Kong,

2   he was in Hong Kong for 40 years.  So most of his work is very

3   social.

4        THE COURT:  Fair.  Was there anything else?

5        THE PROSPECTIVE JUROR:  No.  I was on a jury before

6   but that was a long time ago.  That was, like, four years ago.

7   That was Manhattan criminal court.

8        THE COURT:  Is there anything about that experience

9   that would affect your ability to be fair in this case?

10       THE PROSPECTIVE JUROR:  No.  No.

11       THE COURT:  Great.  I think that's it.  Thank you.

12       THE PROSPECTIVE JUROR:  Thank you.

13       (Prospective juror leaves.)

14       (Prospective juror joins.)

15       THE COURT:  Hi.

16       THE PROSPECTIVE JUROR:  Good afternoon, Your Honor.

17       THE COURT:  What number are you?

18       THE PROSPECTIVE JUROR:  Sixty-one.

19       THE COURT:  So your Richard In?

20       THE PROSPECTIVE JUROR:  Yes.

21       THE COURT:  So what -- you have here that you have

22   some contact with law enforcement?

23       THE PROSPECTIVE JUROR:  Yes.

24       THE COURT:  Tell us about that.

25       THE PROSPECTIVE JUROR:  Lots of friends that

1   currently serve on the NYPD.

2           THE COURT:  Okay.  And how about --

3           THE PROSPECTIVE JUROR:  Also, if you want

4   prosecutors, I'm also friends with a lot of ADAs and a former

5   ADA currently works for me.

6           MR. CECUTTI:  I'm sorry?

7           THE PROSPECTIVE JUROR:  A former ADA currently works

8   for me.

9           THE COURT:  And then you also had prior legal

10  experience?

11          THE PROSPECTIVE JUROR:  Yes, I'm a lawyer.

12          THE COURT:  You are a lawyer?

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  What kind of law do you practice?

15          THE PROSPECTIVE JUROR:  Right now, I'm the executive

16  director of a local nonprofit in Queens.

17          THE COURT:  What's the organization?

18          THE PROSPECTIVE JUROR:  The name of the

19  organization?  It's Korean-American Civic Empowerment.  We do

20  a lot of things and also run a clinic and that's where we

21  hired the former ADA to run that department.  So, currently,

22  we do represent a stabbing victim in the Bronx.

23          THE COURT:  Okay.  And given those connections with

24  law enforcement and victims, do you think you can be fair in

25  this case that involves witnesses who are law enforcement?

1          THE PROSPECTIVE JUROR:  Right.  I believe so.

2          THE COURT:  Can you be fair to the defense as well

3    as the government?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  And can you put aside any feelings you

6    might have about police officers and judge their testimony

7    just like anybody else?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Okay.  I think those were the ones you

10   answered yes to.  Is there anything else you wanted to bring

11   to our attention?

12         THE PROSPECTIVE JUROR:  I know there's a series of

13   questions.  I don't know if we're going over them.

14         THE COURT:  We'll go over those later.

15         THE PROSPECTIVE JUROR:  Okay.

16         THE COURT:  Thanks very much.

17         THE PROSPECTIVE JUROR:  Thank you.

18         (Prospective juror leaves.)

19         (Prospective juror joins.)

20         THE COURT:  Hello.  Adam Mak?

21         THE PROSPECTIVE JUROR:  Yes.

22         THE COURT:  So you said you had some prior legal

23   experience or someone you know?

24         THE PROSPECTIVE JUROR:  Yes.  My wife work for the

25   law firm before but she only do the administration work.

1          THE COURT:  Okay.  What was the family member?  Who
2    was it?

3          THE PROSPECTIVE JUROR:  My wife.

4          THE COURT:  Your wife.  Okay.  Sorry.  Okay.  And I
5    think that was the only thing you said you have an answer to.

6          THE PROSPECTIVE JUROR:  Yes, only this one.

7          THE COURT:  Okay.  Yes?

8          THE PROSPECTIVE JUROR:  I only say yes for this
9    question.

10         THE COURT:  Great.  Was there anything else you
11   wanted to bring to our attention?

12         THE PROSPECTIVE JUROR:  No.

13         THE COURT:  Okay.  Great.  Thank you.

14         THE PROSPECTIVE JUROR:  Thank you.

15         (Prospective juror leaves.)

16         (Prospective juror joins.)

17         THE COURT:  Hello.  What number are you?

18         THE PROSPECTIVE JUROR:  Sixty-nine.

19         THE COURT:  Savitri?

20         THE PROSPECTIVE JUROR:  Kanhai.

21         THE COURT:  Great.  Did you answer yes to any of the
22   questions?

23         THE PROSPECTIVE JUROR:  No.

24         THE COURT:  Was there anything you wanted to bring
25   to our attention?

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  Okay.  Great.  We'll talk in a few

3    minutes.

4          (Prospective juror leaves.)

5          (Prospective juror joins.)

6          THE COURT:  Zykerious Crawford?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  Yes.  So you -- did you answer yes to

9    any of my questions?

10          THE PROSPECTIVE JUROR:  No, I didn't.

11          THE COURT:  Was there anything you wanted to bring

12    to our attention?

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  We'll ask you those questions later.

15          THE PROSPECTIVE JUROR:  Okay.  Thank you.

16          (Prospective juror leaves.)

17          (Prospective juror joins.)

18          THE COURT:  Hi.  Ilya Gurtenboim?

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  So you answered that you had some issues

21    about people testifying if they were convicted of a crime.

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Can you tell us about that?

24          THE PROSPECTIVE JUROR:  Can you repeat the question?

25          THE COURT:  The question was if you had a problem

1  with accepting testimony of somebody convicted of a crime.

2          THE PROSPECTIVE JUROR:  Sure.  I don't believe them.

3          THE COURT:  Never?

4          THE PROSPECTIVE JUROR:  No.

5          THE COURT:  No matter what they were convicted of?

6  No matter what the circumstances were?

7          THE PROSPECTIVE JUROR:  No.  Don't matter.

8          MS. DEAN:  No objection.

9          MR. CECUTTI:  No objection.

10         THE COURT:  All right.  Thank you.  You can be

11 excused.  You can go back to the jury room.  Thank you.

12         THE PROSPECTIVE JUROR:  Where do I go?

13         THE COURT:  The second floor.

14         (Prospective juror excused.)

15         (Prospective juror joins.)

16         THE COURT:  Hello.  Come on up, please.  You're

17 Matthew Gannon?

18         THE PROSPECTIVE JUROR:  Yes.

19         THE COURT:  So you answered -- I'm looking to see if

20 you answered yes to any of my questions.

21         THE PROSPECTIVE JUROR:  I did not.

22         THE COURT:  You didn't.  Is there anything you

23 wanted to bring to our attention?

24         THE PROSPECTIVE JUROR:  Yes, I did have a couple of

25 clarifying questions.

1          THE COURT:  Okay.  Great.

2          THE PROSPECTIVE JUROR:  One of which is while I do

3   not have any planned travel, my wife does, and I just need to

4   be able to pick up my child, my one year old, by, like,

5   6 o'clock on certain days.  I live in Brooklyn.  It's not far

6   but I want to make sure that I would know that the court would

7   be done by 5:00.

8          THE COURT:  The trial probably would go to 5:30 on

9   most days.

10          THE PROSPECTIVE JUROR:  I don't know that I would be

11   able to make it --

12          THE COURT:  Okay.

13          THE PROSPECTIVE JUROR:  -- to his daycare on time.

14          THE COURT:  Is there anybody who could help out with

15   that?

16          THE PROSPECTIVE JUROR:  I don't think so.

17          THE COURT:  How far do you have to go?

18          THE PROSPECTIVE JUROR:  It's Carroll Gardens.  It's

19   not very far but --

20          MS. DEAN:  Could we ask about how many days?

21          THE COURT:  How many days?  Is it every day?

22          THE PROSPECTIVE JUROR:  It is March 3rd through

23   March 11th that she will be out of the country, my wife.

24          THE COURT:  So every day?

25          THE PROSPECTIVE JUROR:  The other days, you know,

1  she can pick him up and it's fine, but for that specific week

2  or so, it would be an issue.

3        THE COURT:  Is it a school or child care?

4        THE PROSPECTIVE JUROR:  It's child care.

5        MR. CECUTTI:  No objection.

6        MS. DEAN:  Can we speak for a minute?

7        THE COURT:  Let me talk to the lawyers for a minute.

8  Please step aside.

9        (Prospective juror leaves.)

10        MS. DEAN:  I just think this is so close to the end

11  of the trial.

12        THE COURT:  March 3rd?

13        MS. DEAN:  So we expect to rest by around March 1st

14  or, the latest, March 4th.

15        THE COURT:  But the defense has a case.

16        MS. DEAN:  So it's just a handful of days we're

17  talking about.  He's talking about if he was out by 5:00 as

18  opposed to 5:30.  It a matter of half an hour.

19        THE COURT:  If she could conclude by 5:00, not 5:30.

20        MR. CECUTTI:  She's been clear about that, 5:30, and

21  also may go over.

22        MS. DEAN:  He also said the pickup is Carroll

23  Gardens.  We're in Brooklyn Heights.  Literally, by 5:30, you

24  can get to Carroll Gardens.  I don't think it's an issue to

25  lose a juror.  Even if we went up to 5:30, even on foot, you'd

1  make it to Carroll Gardens.

2        THE COURT:  On foot?  Really?

3        MS. DEAN:  Yes.

4        THE COURT:  Let me ask him about his mode of

5  transportation.

6        MS. DEAN:  Okay.

7        (Prospective juror joins.)

8        THE COURT:  So if you were -- I don't know, you may

9  not know this, but if you left this courthouse to get to where

10  you need to go to pick up your son, how much time would it

11  take you?

12        THE PROSPECTIVE JUROR:  What's the procedural time

13  to exit the courthouse, like, get my phone back?

14        THE COURT:  Assuming that you stepped out of the

15  courthouse at 5:30.  I don't know if you're taking the subway.

16        THE PROSPECTIVE JUROR:  I am taking the subway but I

17  have to pick up a stroller.  Our stroller is too large.  They

18  don't let us leave it at the daycare.

19        THE COURT:  Where do you keep the stroller?

20        THE PROSPECTIVE JUROR:  At my apartment.

21        THE COURT:  How about you bring the stroller here?

22  You can bring the stroller here.

23        THE PROSPECTIVE JUROR:  Okay.

24        THE COURT:  Leave it downstairs.  Would that help?

25        THE PROSPECTIVE JUROR:  It would be tight.  It would

1   be tight and I just get concerned about picking him up on

2   time.

3           THE COURT:  And if you didn't show up at 6:00?

4           THE PROSPECTIVE JUROR:  That's when the daycare

5   closes.  I don't know what they would do.

6           THE COURT:  And there's literally no one who

7   could --

8           THE PROSPECTIVE JUROR:  No, there's not.  My family

9   lives in Long Island.  My mom has cancer.  She can't be here

10  all the time.

11          THE COURT:  Someone might say that Carroll Gardens

12  would be close enough to walk to.

13          THE PROSPECTIVE JUROR:  It could be.  When I was

14  checking this morning, it was a half hour walk from the

15  daycare because I was considering walking.

16          THE COURT:  But you would have to get out by, like,

17  5:30.  Okay?  Thanks.  Let me just talk to the lawyers.

18          THE PROSPECTIVE JUROR:  Sure.

19          (Prospective juror leaves.)

20          THE COURT:  I'm not in charge of the scheduling so I

21  don't know if I can tell Judge Donnelly what the situation is.

22  If you're done with the trial, great.

23          MS. DEAN:  I understand, Judge.  From the

24  government's perspective, even if we're not done, this is

25  workable even going to 5:30.

1      THE COURT:  Well, it's not workable from the juror's

2    point of view.  I mean maybe we can table it and see if

3    there's other jurors.

4      MR. CECUTTI:  Even if we finish at 5:30 on one day,

5    he's got to do various things in order to pick up his one year

6    old.

7      THE COURT:  I mean I'm -- he could definitely leave

8    the stroller here, right?  That's not a problem.  So that

9    extra step wouldn't be necessary, but the question is whether

10   it's possible to get where he needs to go.

11      MS. DEAN:  We're really not trying to be

12   unreasonable.  You've heard the government all day saying -- I

13   just think in this one situation, he has said -- even by foot,

14   it's 30 minutes, and he's saying he would take the subway.

15      THE COURT:  Here's the deal.  Right?  If he stays on

16   this case and you get to that point and you've got, you know,

17   a witness who's going over late, you are going to have a juror

18   who is very stressed out because he needs to go pick up his

19   son or you are going to have the Judge stressed out because

20   she's going to be asked to cut the witness short.  So I just

21   don't --

22      MR. CECUTTI:  Or it can be us.  We can have a

23   defense witness on and in that same situation.

24      THE COURT:  Because you'll be done but the defense

25   isn't done.

1          MS. HAJJAR:  One thing we can do, Your Honor, just

2    because of the limited number of jurors we have today is just

3    note this and come back to this juror if we -- I just would

4    hate to have too few jurors in this process.

5          THE COURT:  I appreciate that but let's just keep

6    going.  It's already 3:30.  How many do we have?

7          THE CLERK:  We have 28 out of 36.

8          MR. CECUTTI:  I don't think we're going to run into

9    the issue.

10         THE COURT:  We're into the alternates now.  Why

11   don't we put this juror at the end and then see, I'll put a

12   question mark, and if we get to the point where he is

13   absolutely the last alternate possible, then we can see if

14   that's what we need to do.  Okay?  All right.  Great.

15         (Prospective juror joins.)

16         THE COURT:  We're going to see what we can do.

17   We're going to leave you on for now.

18         THE PROSPECTIVE JUROR:  That's fine.  Can I ask one

19   other question?

20         THE COURT:  Yes.

21         THE PROSPECTIVE JUROR:  The company I work for has

22   with the DOJ, has voluntarily raised an ex-CPA matter to the

23   DOJ and is cooperating on that matter.  As a matter of

24   reporting, I am generally aware of kind of what's going on

25   with regard to that.

1          THE COURT:  I see.

2          THE PROSPECTIVE JUROR:  We're pursuing that appeal

3   and it could affect an element of my compensation package.  So

4   while I have -- they said it could take a year or more for any

5   kind of, you know, real information to come out of that.  I

6   just wanted to disclose that.

7          THE COURT:  Right.  Do you think that would affect

8   your ability --

9          THE PROSPECTIVE JUROR:  Personally, no.

10          THE COURT:  Well, would you favor the DOJ because

11   you think that --

12          THE PROSPECTIVE JUROR:  No.

13          THE COURT:  -- you're giving them a win in court

14   will help you?

15          THE PROSPECTIVE JUROR:  No, of course not.

16          THE COURT:  Okay.  All right.

17          THE PROSPECTIVE JUROR:  They're not going to throw

18   me a bone.  It's the DOJ.

19          THE COURT:  I thought I would ask.

20          Was there anything else?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  That's it.  Thank you.

23          (Prospective juror leaves.)

24          (Prospective juror joins.)

25          THE COURT:  Walter Martinez?

1          THE PROSPECTIVE JUROR:  Yes, ma'am.

2          THE COURT:  So do you have any questions that you

3    want to raise with us?  I don't think you said yes to any of

4    my questions.

5          THE PROSPECTIVE JUROR:  I think if anybody work in

6    the legal, something like this.

7          THE COURT:  Legal, yes.

8          THE PROSPECTIVE JUROR:  I used to work as a legal

9    specialist when I was in the military.

10         THE COURT:  Okay.  And do you have any legal

11   training or background?

12         THE PROSPECTIVE JUROR:  Before?

13         THE COURT:  Yes, when you were working as a legal

14   specialist.

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  Like did you go to law school?

17         THE PROSPECTIVE JUROR:  No.  No.

18         THE COURT:  But you worked with lawyers?

19         THE PROSPECTIVE JUROR:  Yes.

20         THE COURT:  Okay.  Do you -- so the question here is

21   if Judge Donnelly tells you what the law is, will you be able

22   to accept it or are you going to be thinking about what the

23   lawyers you worked with told you?

24         THE PROSPECTIVE JUROR:  It's difficult.

25         THE COURT:  Difficult, really?

1           THE PROSPECTIVE JUROR:  I would accept it.

2           THE COURT:  You will accept what the Judge tells

3    you?

4           THE PROSPECTIVE JUROR:  Yes.  Also, I don't consider

5    myself that I can be fair because I have a relative and a

6    friend that got killed in similar situations.

7           THE COURT:  Okay.  I see.  In similar situations?

8           THE PROSPECTIVE JUROR:  I mean not the situation but

9    same way almost.

10          THE COURT:  How long ago was that?

11          THE PROSPECTIVE JUROR:  One was, like, four years

12   ago and 18 years ago.

13          THE COURT:  And was there a trial?

14          THE PROSPECTIVE JUROR:  Actually, that was back in

15   my country of origin, by gang members pretty much.

16          THE COURT:  Which country?

17          THE PROSPECTIVE JUROR:  In El Salvador.

18          THE COURT:  So would the fact that you had -- is

19   this a relative you said who was killed?

20          THE PROSPECTIVE JUROR:  One relative and a friend.

21          THE COURT:  Do you think that would affect your

22   ability to be fair in this case?

23          THE PROSPECTIVE JUROR:  I would think it could.

24          THE COURT:  I'm sorry?

25          THE PROSPECTIVE JUROR:  I would think it could.

1          THE COURT:  You could be fair?

2          THE PROSPECTIVE JUROR:  It could be affected.

3          THE COURT:  It's a different legal system so the

4     question is whether you could be fair here.

5          THE PROSPECTIVE JUROR:  I can try to be fair but I

6     don't --

7          THE COURT:  And what is causing you not to think

8     immediately that you could be fair?

9          THE PROSPECTIVE JUROR:  I don't know.

10         THE COURT:  Well, I mean, I know that was a very

11    traumatic thing and I'm sorry about that.  The question is

12    whether you can be fair to this person who hasn't been

13    convicted.  He's presumed innocent.  We haven't heard any

14    evidence.  So the issue is whether you could be fair here to

15    somebody who has been charged with a crime.

16         THE PROSPECTIVE JUROR:  Right.

17         THE COURT:  You don't -- whether you would wait to

18    hear what the evidence is --

19         THE PROSPECTIVE JUROR:  I guess, yes.

20         THE COURT:   -- weigh everything and then apply the

21    law?  Could you do that?

22         THE PROSPECTIVE JUROR:  Sure, I could, yes.

23         THE COURT:  Any follow-up?

24         MR. CECUTTI:  No objection.

25         MS. DEAN:  Can we be heard then?

1       THE COURT:  Yes.

2       Just step aside for a minute.

3       THE PROSPECTIVE JUROR:  Sure.

4       (Prospective juror leaves.)

5       MR. CECUTTI:  Your Honor, he clearly has hesitation.

6   He identified what appears to be close relatives who were

7   murdered and dismembered in his country in recent -- one I

8   believe is eight years ago and the other one is four years

9   ago.  This is a case where he's going to be hearing testimony

10  and evidence being presented of exactly the same facts.

11      Your Honor had, for lack of a better word, pressed

12  him and he had communicated his inability, he thought, to be

13  fair, although at the very end, he did say he was fair.  I

14  think taking things into account and be mindful of what his

15  prior life experiences have been and the loss of these close

16  relatives, this is not the case for him.

17      THE COURT:  Did he say that they were murdered and

18  dismembered?

19      MR. CECUTTI:  I don't know.

20      THE COURT:  He said similar circumstances but I

21  didn't hear that.

22      MR. CECUTTI:  Correct, but I think at the very

23  least, something extremely violent happened to these two close

24  relatives that may have included both murder and

25  dismemberment.

1      THE COURT:  I'll ask about the similarity and then

2  I'll ask about whether he could still be fair in this case

3  because it sounded like he said yes but I'll ask him directly.

4      MS. DEAN:  And if I may, Your Honor, if I can just

5  compare this to Juror 46 who was up here for some time and

6  indicated several times that he didn't know if he could be

7  fair and equivocated throughout a very lengthy colloquy with

8  Your Honor and at the end, when Your Honor similarly pressed

9  him, that Your Honor and the defense attorney found, in the

10  end, that they believed that he had, the answer he landed on

11  at the end was an answer, the answer he landed on at the end

12  was the answer that was the most appropriate to consider.

13  This juror at the end speaking to you said he could be fair

14  and that's why we don't agree that this is for cause.

15      THE COURT:  All right.  I know you don't agree.  Let

16  me ask him some questions.

17      MR. CECUTTI:  Okay.

18      THE COURT:  I would like Mr. Martinez now.

19      (Continued on next page.)

20

21

22

23

24

25

1              (Sidebar continues; Prospective Juror 78 present.)

2              THE COURT:  Mr. Martinez, let me ask you -- I'm

3        sorry to ask you these questions, but the relative and friend

4        who were killed in El Salvador, what were the circumstances?

5              THE PROSPECTIVE JUROR:  One of them, my relative

6        actually was a member of the gangs.

7              THE COURT:  Okay.

8              THE PROSPECTIVE JUROR:  My friend, he was just

9        outside drinking pretty much and he got approached, but who

10       knows who.

11             THE COURT:  Okay.

12             THE PROSPECTIVE JUROR:  And they tried to steal his

13       bike and that's how he got.

14             THE COURT:  Okay.  And you said it was similar

15       circumstances, so were they dismembered?

16             THE PROSPECTIVE JUROR:  It was similar

17       circumstances.  It's like they were hit by with machetes.  So,

18       they -- yeah.

19             THE COURT:  Did they ever catch who did it?

20             THE PROSPECTIVE JUROR:  No.

21             THE COURT:  Do you think knowing or having that

22       memory of what happened to them would make you not be fair in

23       this case or do you think you could still be fair?

24             THE PROSPECTIVE JUROR:  (No response.)

25             THE COURT:  And by fair, I mean, you know --

1           THE PROSPECTIVE JUROR:  You mean impartial?

2           THE COURT:  Yes, be fair to the Government and also

3   to the defendant.

4           THE PROSPECTIVE JUROR:  I think.

5           THE COURT:  Yes?

6           THE PROSPECTIVE JUROR:  Yes.

7           THE COURT:  Okay.  Because it's important that you

8   take the emotion out of it, in this particular case, and give

9   this particular individual a fair trial.

10          THE PROSPECTIVE JUROR:  I understand.

11          THE COURT:  And then also give the Government a fair

12  chance.

13          THE PROSPECTIVE JUROR:  Yeah.

14          THE COURT:  Can you do that?

15          THE PROSPECTIVE JUROR:  Yes, I can.

16          THE COURT:  Okay, great.  Thank you.

17          (Prospective Juror 78 leaves sidebar.)

18          MR. CECUTTI:  We maintain our objection.

19          THE COURT:  I hear you, but I also heard him say he

20  can be fair.

21          MR. CECUTTI:  If I could just respond to his

22  responses.

23          THE COURT:  Okay.

24          MR. CECUTTI:  This is an individual who appears to

25  have been, based on observation, emotionally impacted by these

1  two violent incidents involving two people that were close to

2  him who appear to have been murdered with machetes.

3          I think at the end of the day, this is a case that

4  is way too close to home for him and he should be excused for

5  cause.

6          THE COURT:  Okay.  I didn't hear him say that that

7  case involved a murder-for-hire in an insurance scheme.  It

8  sounded like it was a violent attack that was gang-related.

9          And so, I understand that the use of machetes is

10  similar in the sense that it might involve an attack in that

11  way, but the nature of the crime is not exactly similar.  I

12  don't think it is really that close, other than the instrument

13  that might have been used.  And I asked him several different

14  ways whether he could be fair and he did say he was fair, and

15  his demeanor indicated to me that he didn't hesitate about

16  that when he finally said.

17          So, 79.

18          (Sidebar continues; Prospective Juror 79 joins.)

19          THE COURT:  Hello.  Ms. Mahalia Tiburcio?

20          THE PROSPECTIVE JUROR:  Yes.  Hello.

21          THE COURT:  Okay.  You said that you had some prior

22  legal experience?

23          THE PROSPECTIVE JUROR:  Yeah, my sister.  My sister

24  is a lawyer, but she's a lawyer from DR.

25          THE COURT:  The Dominican Republic?

1          THE PROSPECTIVE JUROR:  Yeah.

2          THE COURT:  Okay.

3          THE PROSPECTIVE JUROR:  But she worked in an office,

4    but not anymore.  Yeah.

5          THE COURT:  Great.  And do you ever talk to her

6    about the law?

7          THE PROSPECTIVE JUROR:  Yeah, sometimes.

8          THE COURT:  So, if the judge instructed you what the

9    law is, would you say:  No, that's not what my sister said, or

10   would you follow the law as the judge instructs you?

11         THE PROSPECTIVE JUROR:  As you instruct me, yeah.

12         THE COURT:  Great.  And was that the only question

13   you had a yes to?

14         THE PROSPECTIVE JUROR:  No.

15         Well, I'm unemployed and I found -- I got two

16   interviews this week.

17         THE COURT:  Oh, okay.

18         THE PROSPECTIVE JUROR:  And I have been unemployed

19   for, it's about a year now.  So yeah, I kind of feel like

20   based on the...

21         THE COURT:  You need to find a job?

22         THE PROSPECTIVE JUROR:  Yeah.

23         THE COURT:  And you said this week, but this week we

24   won't have trial.  The trial will start next week.

25         THE PROSPECTIVE JUROR:  Yeah.

1          THE COURT:  Is that going to be a problem for you?

2          THE PROSPECTIVE JUROR:  Yeah, because I don't know

3     exactly -- and I've been looking for a job for like a year

4     now.

5          THE COURT:  Right.

6          THE PROSPECTIVE JUROR:  Yeah, and I finally got two

7     interviews.

8          THE COURT:  Right.

9          THE PROSPECTIVE JUROR:  One on Friday, and I'm

10    pushing back the one tomorrow because I wasn't sure.  And it

11    is getting late to message them.

12         THE COURT:  Okay.  So, what you're saying is you're

13    looking for a job?

14         THE PROSPECTIVE JUROR:  Yeah.

15         THE COURT:  And --

16         THE PROSPECTIVE JUROR:  And also, I heard that

17    there's going to be like pictures, and I don't want to --

18    yeah, I don't want to see that.

19         THE COURT:  Okay.  But do you think having to see

20    autopsy pictures, crime scene pictures --

21         THE PROSPECTIVE JUROR:  Yeah.  That's why I'm not on

22    Instagram.  Ever since 2018, after the case of Junior, the one

23    that got -- yeah, I tried to stay away from social media.

24         THE COURT:  So, do you think you couldn't be fair as

25    a juror if you had to see pictures like that?

1    THE PROSPECTIVE JUROR:  Yeah.  I think it would be

2    hard.

3    MS. DEAN:  No objection.

4    MR. CECUTTI:  No objection.

5    THE COURT:  Okay.  Thanks for letting us know.  You

6    are excused.

7    THE PROSPECTIVE JUROR:  Thank you.

8    (Prospective Juror 79 excused.)

9    (Sidebar continues; Prospective Juror 82 joins.)

10   THE COURT:  Hello, Juror No. 82, Peter Lim?

11   THE PROSPECTIVE JUROR:  Yes.

12   THE COURT:  Hi.  Did you answer yes to any of the

13   questions?

14   THE PROSPECTIVE JUROR:  I'm sorry, say again.

15   THE COURT:  Did you answer yes to a question?

16   THE PROSPECTIVE JUROR:  No.

17   THE COURT:  No, okay.  That's okay.  We will ask you

18   questions later.

19   THE PROSPECTIVE JUROR:  Okay.

20   THE COURT:  Thank you.

21   Was there anything that you wanted to bring up?

22   THE PROSPECTIVE JUROR:  Actually, I've been a juror

23   once before.

24   THE COURT:  Yes.  Okay, good.

25   And was there anything about that experience that

1  would affect your ability to be a fair juror this time?

2          THE PROSPECTIVE JUROR:  Huh?

3          THE COURT:  Was there anything about being a juror

4  before that would make you not fair?

5          THE PROSPECTIVE JUROR:  No.

6          THE COURT:  No?  You could be a fair juror in this

7  case?

8          THE PROSPECTIVE JUROR:  Yeah.

9          THE COURT:  Okay, great.  Thank you.

10         THE PROSPECTIVE JUROR:  Okay.

11         THE COURT:  Have a seat.

12         (Prospective Juror 82 leaves sidebar.)

13         (Sidebar continues; Prospective Juror 83 joins.)

14         THE COURT:  Hello, Juror No. 83, Nicholas Taddeo?

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  You said you had some prior law

17 enforcement connection?

18         THE PROSPECTIVE JUROR:  My older brother and his son

19 are both corrections officers, Auburn.

20         THE COURT:  In New York?

21         THE PROSPECTIVE JUROR:  Yeah, Auburn.

22         THE COURT:  And is there anything about the fact

23 that you have law enforcement in your family, would that

24 affect your ability to be fair in this case?

25         THE PROSPECTIVE JUROR:  No.

1          THE COURT:  Could you give a law enforcement officer

2     the same consideration as any other witness?

3          THE PROSPECTIVE JUROR:  Yeah.

4          THE COURT:  Is there anything else you wanted to

5     bring to my attention?

6          THE PROSPECTIVE JUROR:  No, I don't think so.

7          THE COURT:  No.  Great.

8          THE PROSPECTIVE JUROR:  Thank you.

9          THE COURT:  Thank you.  Have a seat.

10          (Prospective Juror 83 leaves sidebar.)

11          (Sidebar continues; Prospective Juror 86 joins.)

12          THE COURT:  Hello, Juror No. 86?

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  Karla Lopez.  You answered yes when I

15     asked about legal experience.

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  And also about law enforcement and also

18     working with defense lawyer experience.

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  Tell me about that.

21          THE PROSPECTIVE JUROR:  I'm a paralegal.

22          THE COURT:  Yes.

23          THE PROSPECTIVE JUROR:  My boss is a criminal

24     defense attorney.

25          THE COURT:  Oh, okay.

1          THE PROSPECTIVE JUROR:  Yeah.

2          THE COURT:  In New York.

3          THE PROSPECTIVE JUROR:  Yes, in Brooklyn, Sunset

4    Park.

5          THE COURT:  What is your boss's name?

6          THE PROSPECTIVE JUROR:  Eddie Heriberto Cabrerra.

7    H-E --

8          THE COURT:  I'm sorry, Eddie?

9          THE PROSPECTIVE JUROR:  H-E-R-I-B-E-R-T-O, last name

10   Cabrerra, C-A-B-E -- C-A-B-R-E-R-R-A.

11         THE COURT:  Great.  So do you think having that

12   legal background on the defense side would affect your ability

13   to be fair to both the Government and the defense?

14         THE PROSPECTIVE JUROR:  No.

15         THE COURT:  If you heard Judge Donnelly instruct you

16   on what the law is, would you accept what she said or would

17   you think about what your boss might say about the law?

18         THE PROSPECTIVE JUROR:  No, what the judge says.

19         THE COURT:  Is there any reason you couldn't be fair

20   as a juror?

21         THE PROSPECTIVE JUROR:  No.

22         THE COURT:  Okay.  Was there anything else that you

23   wanted to bring to my attention?

24         THE PROSPECTIVE JUROR:  No.

25         THE COURT:  Okay, great.

1          THE PROSPECTIVE JUROR:  Thank you.

2          THE COURT:  Thank you.

3          (Prospective Juror 86 leaves sidebar.)

4          (Sidebar continues; Prospective Juror 88 joins.)

5          THE COURT:  Hello, Prospective Juror 88.

6          THE PROSPECTIVE JUROR:  Hi.

7          THE COURT:  Fira Rabkin?

8          THE PROSPECTIVE JUROR:  Rabkin.

9          THE COURT:  How are you doing?

10         THE PROSPECTIVE JUROR:  Great, thank you.

11         THE COURT:  You said you had some law enforcement

12  contact?

13         THE PROSPECTIVE JUROR:  Well, I thought the question

14  was a little different.  I had applied to be a 9-1-1 operator,

15  was accepted --

16         THE COURT:  Okay.

17         THE PROSPECTIVE JUROR:  -- and did not follow

18  through.

19         THE COURT:  So you never worked as a 9-1-1 operator?

20         THE PROSPECTIVE JUROR:  No.

21         THE COURT:  So the fact that you had wanted to work

22  in law enforcement --

23         THE PROSPECTIVE JUROR:  Right.

24         THE COURT:  -- would that affect your ability to be

25  fair in this case?

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  You also mentioned that you might have

3    some problems relying on witness testimony without forensic

4    evidence?

5          THE PROSPECTIVE JUROR:  It seem wise.  I don't know.

6          THE COURT:  Well, the law says the Government must

7    prove its case beyond a reasonable doubt.

8          THE PROSPECTIVE JUROR:  Exactly.

9          THE COURT:  And you can use witness testimony or any

10   other evidence.  So, the question there is just whether, if

11   the Government -- we are not saying you should change the

12   burden of proof, but if the burden of proof was met by just

13   witness testimony, would you --

14         THE PROSPECTIVE JUROR:  It would have to be very

15   convincing.

16         THE COURT:  But if you were convinced that it was

17   beyond a reasonable doubt, would you be able to convict?

18         THE PROSPECTIVE JUROR:  Sure, but it would have to

19   be very convincing.

20         THE COURT:  Well, would you change the burden of

21   proof or would you still say it's beyond a reasonable doubt?

22         THE PROSPECTIVE JUROR:  No, it's beyond a reasonable

23   doubt.  But that would have to be a very convincing witness --

24         THE COURT:  Yes.

25         THE PROSPECTIVE JUROR:  -- who you would trust

1    absolutely, and I think that's a little hard to do.

2            THE COURT:  Okay.  But if you found the witness

3    credible --

4            THE PROSPECTIVE JUROR:  Yeah.

5            THE COURT:  -- and you found that the evidence had

6    been met beyond a reasonable doubt, could you convict?

7            THE PROSPECTIVE JUROR:  Yeah.

8            THE COURT:  All right.  Any follow up?

9            MR. CECUTTI:  No.

10           THE COURT:  Great.  Was there anything else that you

11   wanted to bring to my attention?

12           THE PROSPECTIVE JUROR:  Me, no.

13           THE COURT:  Great.  Thank you.

14           (Prospective Juror 88 leaves sidebar.)

15           MS. DEAN:  I'm sorry, Judge, I don't think I was

16   quick enough with the juror before this, 86.  There were two

17   questions she answered yes to that we didn't follow up on,

18   which were being questioned by the police and also having been

19   a victim, witness or charged with a crime.

20           THE COURT:  Okay.  Can we have 86 come back, or we

21   can have the next person, we can do 89, and then have 86

22   again.

23           (Sidebar continues; Prospective Juror 89 joins.)

24           THE PROSPECTIVE JUROR:  Hello.

25           THE COURT:  Hello, Juror No. 89, Kenrick Lau?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  You said you had been a victim of, a

3     witness to, or charged with a crime.

4          THE PROSPECTIVE JUROR:  No, I was going to ask you.

5     This was all in high school, does that count?

6          THE COURT:  Well, it's more about the experience;

7     right.

8          THE PROSPECTIVE JUROR:  I witnessed some stuff in

9     high school, just fighting, stuff like that.

10         THE COURT:  Did you have to testify?

11         THE PROSPECTIVE JUROR:  It was like an oath trial, I

12    believe.

13         THE COURT:  And oath trial.

14         Was there anything about that experience that would

15    affect your ability to be fair?

16         THE PROSPECTIVE JUROR:  No.

17         THE COURT:  Who did you testify for in that trial?

18         THE PROSPECTIVE JUROR:  I was just a witness.

19         THE COURT:  You were a witness?

20         THE PROSPECTIVE JUROR:  Yeah, I was just witnessing

21    it.

22         THE COURT:  Okay.  So, this is a criminal trial and

23    not an administrative case, so could you be fair to both sides

24    here?

25         THE PROSPECTIVE JUROR:  Yeah, absolutely.

1            THE COURT:  Great.

2            And then -- hold on a second.  You also said that

3   you might have some concerns about requiring -- the question

4   was whether you could rely solely on witness testimony without

5   forensic evidence.

6            So, the Government --

7            THE PROSPECTIVE JUROR:  Did I --

8            THE COURT:  -- of course, would have to prove --

9            THE PROSPECTIVE JUROR:  Did I answer that way?

10           THE COURT:  I wrote it down.  If I wrote it down

11  wrong --

12           THE PROSPECTIVE JUROR:  Yeah, I don't think I

13  answered that.

14           THE COURT:  Okay, that's fine.  And I have here you

15  were questioned by law enforcement.

16           THE PROSPECTIVE JUROR:  Yes, that one I answered.

17           THE COURT:  That's it.

18           THE PROSPECTIVE JUROR:  That was in high school

19  also.

20           THE COURT:  Okay.

21           THE PROSPECTIVE JUROR:  So, there was one question

22  you mentioned that whether I worked for a law firm.

23           THE COURT:  Okay.

24           THE PROSPECTIVE JUROR:  I did in high school also.

25           THE COURT:  Okay.

1          THE PROSPECTIVE JUROR:  It was an intern-type thing

2    for like two weeks.  I don't know if that matters.

3          THE COURT:  Did you stay in touch with the lawyers?

4          THE PROSPECTIVE JUROR:  No.  I didn't even know the

5    lawyers.  I was just a mail clerk.

6          THE COURT:  Great.  Anything else?

7          THE PROSPECTIVE JUROR:  That's it.

8          THE COURT:  Okay.  Great.  Thank you.

9          THE PROSPECTIVE JUROR:  Thank you.

10         (Prospective Juror 89 leaves sidebar.)

11         (Sidebar continues; Prospective Juror 86 joins.)

12         THE COURT:  86.  Hi, Ms. Lopez.  I forgot to ask you

13   some questions.

14         THE PROSPECTIVE JUROR:  Uh-hum.

15         THE COURT:  You said yes when I asked if anybody had

16   been questioned by law enforcement.

17         THE PROSPECTIVE JUROR:  Uh-hum.

18         THE COURT:  Can you tell me about that?

19         THE PROSPECTIVE JUROR:  My brother, many years ago,

20   2004.  And my uncle, as well.

21         THE COURT:  And what was the circumstance?

22         THE PROSPECTIVE JUROR:  My brother was accused of

23   theft, I think at the job that he used to work.  The case was

24   dropped.  It was dismissed.  He's fine.

25         And my uncle was trespassing.  It was also

1   dismissed.

2          THE COURT:  Is that the same -- because you were

3   also asked about being a victim or witness or charged with a

4   crime.  Is that the same or something different?

5          THE PROSPECTIVE JUROR:  Yes.  So, also my biological

6   father is in jail, 25 years.

7          THE COURT:  What were the circumstances?

8          THE PROSPECTIVE JUROR:  Endangerment of a child and

9   rape.

10          THE COURT:  Do you know the circumstances of how he

11   was convicted?

12          THE PROSPECTIVE JUROR:  His stepdaughter gave birth

13   to a child that's his.  He is in Florida.

14          THE COURT:  Is there anything about that experience

15   that would make you not be fair in this case?

16          THE PROSPECTIVE JUROR:  No.

17          THE COURT:  Did you have anything to do with that

18   case as a witness or anything?

19          THE PROSPECTIVE JUROR:  No.

20          THE COURT:  Okay.  And do you have any feelings

21   about whether he was treated fairly or unfairly?

22          THE PROSPECTIVE JUROR:  I don't know.

23          THE COURT:  Okay.  All right.

24          Any follow-up?

25          MR. CECUTTI:  No.

1          MS. DEAN:  No.

2          THE COURT:  Okay.  Thank you very much.

3          THE PROSPECTIVE JUROR:  Thank you.

4          (Prospective Juror 86 leaves sidebar.)

5          (Sidebar continues; Prospective Juror 90 joins.)

6          THE COURT:  Hello.

7          THE PROSPECTIVE JUROR:  How you doing?

8          THE COURT:  Juror No. 90, you are Leon Eng?

9          THE PROSPECTIVE JUROR:  Correct.

10          THE COURT:  You said that you had some connection

11   with law enforcement?

12          THE PROSPECTIVE JUROR:  I work for ACS as a child

13   protective specialist.  I coordinate with NYPD for domestic

14   violence, DIRs, child abuse, stuff like that.

15          THE COURT:  All right.  Okay.  And so given that

16   experience, it looks like you still work in child protection?

17          THE PROSPECTIVE JUROR:  Correct.

18          THE COURT:  Okay.  Given that experience and

19   cooperation with law enforcement, do you think you could be

20   fair in this case?

21          THE PROSPECTIVE JUROR:  I can be more than fair, but

22   I need to see all the evidence, testimony before I make a

23   decision.

24          THE COURT:  And would you weigh the law enforcement

25   testimony the same as anyone else?

1              THE PROSPECTIVE JUROR:  I would weigh everything.

2    I'm sorry?

3              THE COURT:  You would weigh everything?

4              THE PROSPECTIVE JUROR:  I would weigh everything,

5    all sides of it, yes.

6              THE COURT:  So you would be fair both to the

7    Government and to the defense?

8              THE PROSPECTIVE JUROR:  Absolutely.

9              THE COURT:  And the fact that you had been working

10   with, you said, domestic violence as well, would that impact

11   your ability to be fair in this case, would that come up?

12             THE PROSPECTIVE JUROR:  I would be fair, yes.

13             THE COURT:  Any follow-up?

14             MR. CECUTTI:  No.

15             THE COURT:  Thank you.

16             (Prospective Juror 90 leaves sidebar.)

17             (Sidebar continues; Prospective Juror 91 joins.)

18             THE COURT:  91.  Hi, Mr. Oh, nice to see you again.

19             You said you might have some issues relying solely

20   on witness testimony?

21             THE PROSPECTIVE JUROR:  Yeah.  I have pretty strong

22   opinions about just relying on witness testimony.  It's

23   very -- it can be very unreliable, especially if there is no

24   supporting evidence behind it.  Just my personal belief.

25             THE COURT:  Well, here, the Government has the

1  burden of proof.

2           THE PROSPECTIVE JUROR:  Yes.

3           THE COURT:  So the question is if you believe the

4  witness and you thought that the witness testimony or, you

5  know -- met the burden --

6           THE PROSPECTIVE JUROR:  Right.

7           THE COURT:  -- of being beyond a reasonable doubt,

8  could you convict or would you still want --

9           THE PROSPECTIVE JUROR:  There is always going to be

10 that little piece of doubt in my head just because, like,

11 there have been so many cases and so many things that I'm

12 familiar with where people say something that sounds

13 convincing or sounds credible, but it doesn't end up being

14 true or could be mistaken or it could be -- as you know,

15 memories are not the strongest.  People miss details.  I

16 just -- my burden of proof is higher than that, personally.

17          THE COURT:  Okay.  So you, you said it's higher than

18 beyond a reasonable doubt?

19          THE PROSPECTIVE JUROR:  I would say so, yes.  There

20 would always be a doubt in the back of my head.

21          THE COURT:  Sure.  It's about beyond a reasonable

22 doubt.  So, it allows for doubt, it just has to be reasonable.

23          THE PROSPECTIVE JUROR:  I mean I believe it's

24 reasonable given the fact that there's studies shown that

25 eyewitness testimony isn't always consistent or always

1  reliable.

2        THE COURT:  So, if the judge said the burden of

3  proof is beyond a reasonable doubt, would you say:  My burden

4  of proof is higher?

5        THE PROSPECTIVE JUROR:  Um, I think I'm

6  understanding your question.

7        I'm saying that I think that my doubt is reasonable.

8  If that's not something that the judge agrees with, then I

9  guess I just have to go play within those parameters.

10        THE COURT:  That you?

11        THE PROSPECTIVE JUROR:  I would have to play within

12  those parameters, but me, personally, having to go through all

13  of the evidence, if that's all I have to go on, it's gonna be

14  tough for me to really come to a fair conclusion in my mind

15  because there's always going to be that question in the back

16  of my head, like, well, what is actually linking this person

17  to this crime other than what people are saying.

18        THE COURT:  I see.  Okay.

19        THE PROSPECTIVE JUROR:  Yeah.

20        THE COURT:  So, is what you're saying that if there

21  was witness testimony without forensic evidence, that that

22  would not meet your standard to convict?

23        THE PROSPECTIVE JUROR:  I would say so, yes.

24        THE COURT:  If the judge said the standard is beyond

25  a reasonable doubt, would you apply something higher than that

1    or would you apply beyond a reasonable doubt?

2              THE PROSPECTIVE JUROR:  I mean, how does the Court

3    define reasonable doubt?  Because I think those doubts are

4    reasonable in my mind.

5              THE COURT:  I see.  I don't have the jury

6    instructions in my head precisely how it would be, it is not

7    beyond all doubt, it is beyond a reasonable doubt.

8              THE PROSPECTIVE JUROR:  As I said, I think those

9    doubts are reasonable in my thinking, in my beliefs.

10             THE COURT:  Okay.

11             THE PROSPECTIVE JUROR:  And, you know, what I've

12   seen and what I've researched, you know, seeing how eyewitness

13   testimony can be -- well, just overall, just testimony without

14   strong physical evidence linking people to a crime.

15   Especially in cases where the defendant is a person of color,

16   there's been a lot of cases of them being wrongfully convicted

17   without -- the absence of physical evidence, so...

18             THE COURT:  Okay.  And then you also answered yes to

19   a couple of other questions.

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  You said you had prior legal experience,

22   some connection with law enforcement?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Go ahead.

25             THE PROSPECTIVE JUROR:  Oh, yeah.  Yeah, a friend of

1    mine is a captain in a police department in California.  Him

2    and I have grown up together.

3              Another friend of mine from college, she works at an

4    employment law firm in Oakland.  I can't remember the name off

5    the top of my head.

6              THE COURT:  Okay.  So, for your friend who is in

7    NYPD --

8              THE PROSPECTIVE JUROR:  Or at Perkins back in

9    California.

10             THE COURT:  Okay.

11             THE PROSPECTIVE JUROR:  Yeah.

12             THE COURT:  So, the friend who is in law

13   enforcement --

14             THE PROSPECTIVE JUROR:  Uh-hum.

15             THE COURT:  -- would that affect, the fact that you

16   have a friend in law enforcement, would that affect your

17   ability to be fair and to judge law enforcement testimony?

18             THE PROSPECTIVE JUROR:  I don't believe so.

19             THE COURT:  Okay.

20             THE PROSPECTIVE JUROR:  Yeah.

21             THE COURT:  And then your employment law connection

22   is -- that person doesn't do criminal?

23             THE PROSPECTIVE JUROR:  Doesn't do criminal law, no.

24             THE COURT:  And then you also talked about domestic

25   violence?

1        THE PROSPECTIVE JUROR:  Yes.

2        THE COURT:  Tell me about that.

3        THE PROSPECTIVE JUROR:  My uncle abused my aunt and

4   my cousins.  I have very strong feelings about that.

5            Also, a friend of mine that I have growing up, his

6   dad also abused his mom, also heavily abused him.

7            I mean, growing up in immigrant community you have a

8   lot of -- it goes beyond like the level of discipline into

9   abuse.  I've seen a lot of cases like that, a lot of my

10  friends grew up in households like that.

11           THE COURT:  And given that some of the evidence in

12  this case might be like that, do you think you still could be

13  fair?

14           THE PROSPECTIVE JUROR:  I'm not 100 percent sure.

15           THE COURT:  You're not a hundred percent sure?

16           THE PROSPECTIVE JUROR:  Yeah.

17           THE COURT:  In what way are you not?

18           MS. DEAN:  Judge, no objection.  I didn't want to

19  interrupt.

20           MR. CECUTTI:  No objection.

21           THE COURT:  All right.  So, you are excused.

22           THE PROSPECTIVE JUROR:  Thank you.

23           THE COURT:  Okay.  Thank you.

24           (Prospective Juror 91 excused.)

25           (Sidebar continues; Prospective Juror 92 joins.)

1          THE COURT:  Hello, Juror No. 92, Eddison Jones.

2          How are you doing?

3          I don't see -- did you answer yes to any of my

4    questions?

5          THE PROSPECTIVE JUROR:  No.

6          THE COURT:  Well, is there anything that you wanted

7    to bring to my attention?

8          THE PROSPECTIVE JUROR:  No.

9          THE COURT:  We will ask you questions later.

10         (Prospective Juror 92 leaves sidebar.)

11         THE COURT:  So, even without Juror 76, we have 36

12   qualified jurors at this point.

13         Can you double-check your records to see if we have

14   reached 36?

15         MR. CECUTTI:  That's what I have.

16         THE COURT:  Yes, okay.

17         MS. DEAN:  Judge, I'm going to ask, we did miss a

18   question that's rather important with regards to 46.

19         He had answered he wouldn't believe someone who was

20   convicted of a crime.  It was 46 and 70.  We just didn't

21   follow up on that.

22         So, if we're going to stop, I would ask that we

23   follow up on that one question before...

24         THE COURT:  46.  Tell me the numbers that I need

25   to --

1          MS. DEAN:  The number of the questions?

2          THE COURT:  Yes.

3          MR. CECUTTI:  26.

4          MS. DEAN:  Thank you.  26.

5          THE COURT:  About individuals convicted of a crime?

6          MS. DEAN:  Yes.  That was the one that we missed.

7          THE COURT:  Okay.  46.

8          THE COURTROOM DEPUTY:  46.

9          (Sidebar continues; Prospective Juror 46 joins.)

10         THE COURT:  Alternatively, we still have jurors

11    left, so we're in good shape.

12         MR. CECUTTI:  Yes.

13         (Sidebar continues; Prospective Juror 46 joins.)

14         THE COURT:  Hi.

15         THE PROSPECTIVE JUROR:  Hello.

16         THE COURT:  There was a question that I forgot to

17    ask you.  You said that you had some issues believing a

18    witness who was convicted of a crime?

19         THE PROSPECTIVE JUROR:  Yes, I said that.

20         THE COURT:  Can you tell me about that?

21         THE PROSPECTIVE JUROR:  I think that someone who had

22    committed a crime, did a wrong, and they're wrong, I think.

23         THE COURT:  Okay.  So do you think, would you never

24    believe them or you would just judge them like anybody else?

25         THE PROSPECTIVE JUROR:  I would judge them just like

1   anyone else.

2          THE COURT:  You would not judge them like anybody

3   else?

4          THE PROSPECTIVE JUROR:  I would judge them like

5   anybody else.

6          THE COURT:  Just like anybody else?

7          THE PROSPECTIVE JUROR:  Yes.  Because I think by

8   doing wrong, it's wrong, they would continue wrong.  That's

9   what I think.  So if -- if you do wrong, you will continue

10  doing wrong.  So it's going to be very hard for me to believe

11  you.

12         THE COURT:  I see.  So, if somebody testified and

13  you knew that they had been convicted of a crime --

14         THE PROSPECTIVE JUROR:  Uh-huh.

15         THE COURT:  -- would you not believe them?

16         THE PROSPECTIVE JUROR:  Hum, you mean if they admit?

17         THE COURT:  Yes.  Let's say, somebody testified --

18         THE PROSPECTIVE JUROR:  Uh-huh.

19         THE COURT:  -- and they admit that they were

20  convicted of a crime --

21         THE PROSPECTIVE JUROR:  Oh, okay, yes.  If they

22  admit, yes.

23         THE COURT:  Oh, okay.

24         THE PROSPECTIVE JUROR:  Okay, well, in that case,

25  yes.

1          THE COURT:  Okay.  And once admitted that they had

2    been convicted of a crime --

3          THE PROSPECTIVE JUROR:  Once they speak the truth,

4    yes.

5          THE COURT:  -- would you judge their testimony like

6    anyone else who had not been convicted of a crime?

7          THE PROSPECTIVE JUROR:  No, I won't.  Once they're

8    honest, I won't.

9          THE COURT:  You won't?

10          THE PROSPECTIVE JUROR:  I won't judge the testimony

11    as long as they admit of committing a crime.

12          THE COURT:  Let me not use the word judge.

13          So would you consider their testimony, if somebody

14    testified that he was convicted of a crime and admitted to --

15          THE PROSPECTIVE JUROR:  Uh-hum, okay.

16          THE COURT:  -- and then testified about something,

17    would you believe him or would you say I don't care what you

18    said, I know you were convicted of a crime and, therefore, I

19    don't believe you?

20          THE PROSPECTIVE JUROR:  I won't believe that person.

21          THE COURT:  I want to?

22          THE PROSPECTIVE JUROR:  I won't.

23          THE COURT:  Would not?

24          THE PROSPECTIVE JUROR:  I would not believe that

25    person.

1          THE COURT:  So, if a person were convicted of a

2    crime --

3          THE PROSPECTIVE JUROR:  A crime, uh-hum.

4          THE COURT:  -- Even if he admitted it, you still

5    wouldn't believe what's telling you?

6          THE PROSPECTIVE JUROR:  No, if he -- I'm getting

7    confused.

8          THE COURT:  Yes, I know.  I'm trying to make this --

9          THE PROSPECTIVE JUROR:  I'm getting confused.

10          If somebody is convicted a crime, okay, was lying

11    about something and they got convicted and they used them to

12    testify for...  I just lost my train of thought.

13          Yes, if somebody commit a crime and they testify,

14    like they admit it, yes, I will believe them.

15          But if they were convicted and they have -- you're

16    talking about if somebody was convicted and they come up as a

17    witness?

18          THE COURT:  Yes.

19          THE PROSPECTIVE JUROR:  If they were convicted of a

20    crime and they come up as a witness, it's going to be very

21    difficult for me to believe them.

22          THE COURT:  Okay.

23          THE PROSPECTIVE JUROR:  Yes, that's just my point.

24          THE COURT:  Okay, that was the question.

25          THE PROSPECTIVE JUROR:  Yes.  Yes.

1      THE COURT:  So would you just not believe them or

2 would you listen to their testimony?

3      THE PROSPECTIVE JUROR:  I will listen to the

4 testimony.  It would be very difficult for me to believe them.

5      THE COURT:  Because you would immediately think they

6 were convicted and, so, they did wrong and they're doing wrong

7 now?

8      THE PROSPECTIVE JUROR:  Yes.  It would be in the

9 back of my mind, yes.

10      MS. DEAN:  No objection.

11      THE COURT:  Step aside for a moment.

12      THE PROSPECTIVE JUROR:  Yes.

13      (Prospective juror 46 leaves sidebar.)

14      THE COURT:  I'm having a hard time with this juror

15 because he says things that are somewhat confusing, and at the

16 end of this discussion he seems to be saying that somebody who

17 is convicted of a crime he would have trouble believing.  I

18 know it is not 100 percent like he wouldn't believe them, but

19 he said so many contradictory things I'm just having a hard

20 time following.  So, I am not convinced.

21      MR. CECUTTI:  No objection.

22      THE COURT:  All right.  So, we will strike this

23 juror and bring up somebody else.

24      (Sidebar continues; Prospective Juror 46 joins.)

25      THE COURT:  Thank you, Mr. Andrew.  You are excused.

1          THE PROSPECTIVE JUROR:  Thank you.

2          (Prospective Juror 46 excused.)

3          THE COURT:  Let go to the next one.

4          (Sidebar continues; Prospective Juror 93 joins.)

5          THE COURT:  Juror No. 93, Paul DeMichael?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  You answered yes when I asked about law

8   enforcement contacts --

9          THE PROSPECTIVE JUROR:  Yes.

10         THE COURT:  -- legal experience, and then about

11  relying on a case that's just testimony without forensic

12  evidence.  Let's start with that one.

13         So, the question was whether you could accept a case

14  based on witness testimony alone without forensic evidence.

15         THE PROSPECTIVE JUROR:  So, it's based on the

16  witness then?

17         THE COURT:  Well, the Government has the burden of

18  proving the case beyond a reasonable doubt.

19         THE PROSPECTIVE JUROR:  So, you're going by

20  witness's statement then?

21         THE COURT:  So witnesses will testify.  If you

22  believe the witnesses' testimony, then that counts as

23  evidence.

24         THE PROSPECTIVE JUROR:  Right.

25         THE COURT:  If you don't believe them, it's not

1   evidence.  Right.  But if you believe them, it's evidence.

2          So that's evidence, and you could find that the

3   Government proved its case beyond a reasonable doubt based

4   just on witness's testimony, the law says you can do that.

5   The question is whether you --

6          THE PROSPECTIVE JUROR:  Whether I believe in that.

7   So, I don't believe in that.

8          THE COURT:  You don't believe?

9          THE PROSPECTIVE JUROR:  In the witness's statement

10  being his final word, no.

11         THE COURT:  But even if you believed them to be

12  true?

13         You don't have to accept anybody's say so.  You get

14  to judge whether you believe the witness --

15         THE PROSPECTIVE JUROR:  To me, I don't know if they

16  are 100 percent telling the truth.

17         THE COURT:  But if you thought they were telling the

18  truth -- it's a lot of hypotheticals, I'm sorry.

19         THE PROSPECTIVE JUROR:  Right.

20         THE COURT:  If you thought they were telling the

21  truth, the question is would you still need to have forensic

22  evidence?

23         THE PROSPECTIVE JUROR:  Evidence, yes.

24         THE COURT:  Yes, you would?

25         THE PROSPECTIVE JUROR:  Yes, I would.

1          THE COURT:  Okay.  So even if you thought there was

2    enough credible witness testimony?

3          THE PROSPECTIVE JUROR:  I think evidence is 100

4    percent --

5          THE COURT:  Is --

6          THE PROSPECTIVE JUROR:  -- is telling the truth

7    100 percent, evidence.

8          THE COURT:  So you -- I'm just trying to see if I

9    understand what you're saying.

10          THE PROSPECTIVE JUROR:  So I think if you have

11    hundred percent -- if you have evidence that's showing that

12    the truth like, to me.

13          THE COURT:  Right.  Could you convict or would you

14    still say I need fingerprint or forensic evidence?

15          THE PROSPECTIVE JUROR:  So, if you have fingerprint

16    and evidence, that's -- you go by that.

17          THE COURT:  Right.  But if you don't have that?

18          THE PROSPECTIVE JUROR:  Then I wouldn't go by it.

19          THE COURT:  Okay.  So you would require forensic

20    evidence?

21          THE PROSPECTIVE JUROR:  Yes.  Yes.

22          THE COURT:  Okay.

23          MS. DEAN:  No objection.

24          MR. CECUTTI:  No objection.

25          THE COURT:  Thank you.  You are excused.

1          (Prospective Juror 93 excused.)

2          (Sidebar continues; Prospective Juror 94 joins.)

3          THE COURT:  Hello.  You are Juror No. 94, Kenya Benn?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  You said that you had some prior legal

6   experience, and then also you answered yes when I asked if

7   anybody had a problem with the case just resting on witness

8   testimony without forensic evidence.

9          Can you talk about that?

10         THE PROSPECTIVE JUROR:  Yeah.  I just believe that

11  all evidence should be incorporated into the case before --

12         THE COURT:  Yes.

13         THE PROSPECTIVE JUROR:  -- everything --

14         THE COURT:  Okay.

15         THE PROSPECTIVE JUROR:  -- everything is done.  But

16  I mean, I don't really have much more to say about that.

17         THE COURT:  Well, let me ask you a couple of

18  questions about that.

19         THE PROSPECTIVE JUROR:  Uh-hum.

20         THE COURT:  So, the law says that the Government can

21  prove its case using all kinds of evidence, right.  And as

22  long as they meet and they have proven the case beyond a

23  reasonable doubt, and that's up to the jury to decide what

24  beyond a reasonable doubt looks like.

25         THE PROSPECTIVE JUROR:  Uh-hum.

1          THE COURT:  And so, some of the -- among the

2   evidence the Government can present is witness testimony.

3   Witnesses will come and testify under oath.

4          THE PROSPECTIVE JUROR:  Uh-hum.

5          THE COURT:  If you believe the witness, then it is

6   evidence that you can consider in whether the Government has

7   proven the case beyond a reasonable doubt.

8          THE PROSPECTIVE JUROR:  Okay.

9          THE COURT:  Okay.  And so then the question is could

10  you find the Government proved its case beyond a reasonable

11  doubt or are you, as a juror, going to want or require more

12  evidence, like fingerprint evidence?

13         THE PROSPECTIVE JUROR:  I personally would require

14  just a little bit like -- I would want to see more evidence

15  for -- I mean, other than witness testimony.  That's just --

16         THE COURT:  What if there wasn't any?

17         THE PROSPECTIVE JUROR:  There wasn't any, then...  I

18  mean, that -- I mean, that's -- I wouldn't -- I would be a

19  little biased probably.  I mean I have a little bit of bad

20  experience with the justice system.

21         THE COURT:  Okay.  Tell me about that.

22         THE PROSPECTIVE JUROR:  Just some prior family

23  experience where evidence wasn't provided for the case.

24         THE COURT:  Okay.

25         THE PROSPECTIVE JUROR:  And then I, myself, have had

1   an experience with law enforcement, bad experiences with law

2   enforcement.  So I have a bit of a bias as far as what

3   evidence is collected.

4          THE COURT:  Uh-hum.

5          THE PROSPECTIVE JUROR:  And if it's not collected.

6          THE COURT:  Uh-hum.

7          THE PROSPECTIVE JUROR:  I believe that all evidence

8   should be collected on a case to prove someone's innocence.  I

9   mean, that's where I stand with things.

10         THE COURT:  Okay.  And what was the bad experience

11  that you had with law enforcement?

12         THE PROSPECTIVE JUROR:  Well, police officers broke

13  into my home and assaulted me.  I kind of have a -- it's just

14  -- and then evidence wasn't taken into account during that

15  case.  So, I kind of have that in the back of my mind.

16         THE COURT:  Right.  Do you think that would make you

17  treat law enforcement testimony differently from any other

18  person, any other witness?

19         THE PROSPECTIVE JUROR:  I'm not that biased with law

20  enforcement, but I am -- I do slightly have that.  Yeah,

21  just... yeah, I think that would make me treat the case just

22  a little bit differently.

23         THE COURT:  The case of when law enforcement broke

24  into your home, was that ever prosecuted?

25         THE PROSPECTIVE JUROR:  No.

1       THE COURT:  There was no prosecution?

2       THE PROSPECTIVE JUROR:  No.

3       THE COURT:  Did you try to report that?

4       THE PROSPECTIVE JUROR:  I did.

5       THE COURT:  And what happened?

6       THE PROSPECTIVE JUROR:  It went to the

7  commissioner's office and it went nowhere else from there.  I

8  didn't see any notice.

9       THE COURT:  Okay.  And so is that what you mean by

10 they didn't collect evidence?

11      THE PROSPECTIVE JUROR:  They didn't collect

12 evidence, yeah.

13      THE COURT:  So, if you are sitting as a juror in a

14 case where there is the Government and there is a defendant,

15 do you think you would favor one side or the other?

16      THE PROSPECTIVE JUROR:  Well, in a case like this, I

17 couldn't say I would be -- it's a clean slate because I'm

18 going into it not knowing anything.  But I just have that

19 personal bias against law enforcement in general.  So

20 especially with just witness testimony --

21      THE COURT:  All right.

22      THE PROSPECTIVE JUROR:  -- I don't know if I would

23 necessarily believe everything that was discussed.

24      THE COURT:  I see.  Okay.

25      Can I have a moment to talk to the lawyers?  Just

1    step aside.  Thank you.

2           (Prospective Juror 94 leaves sidebar.)

3           So I heard her say she has bias against law

4    enforcement.  I'm open to follow-up questions.

5           MS. DEAN:  Would Your Honor mind inquiring about if

6    she was able to -- if NYPD or police officers, detectives,

7    agents, take the stand, if she would be able to evaluate them

8    like she would evaluate any other witness?

9           THE COURT:  I thought I asked that question, but I

10   will ask it again.

11          MS. DEAN:  I'm sorry.  I didn't hear that, Your Honor.

12          MR. CECUTTI:  I have no objection to that follow-up.

13          I will say that she said that she would come into

14   the case with a clean slate.

15          I'll also add, it's not just witness testimony that

16   the Government will present.  There may be in lacking forensic

17   evidence.  They're going to call witnesses, but there is going

18   to be other evidence as well.

19          So, I think that some of the jurors, in particular

20   this one, was zeroing in on -- I think Your Honor understands

21   what I'm saying.

22          THE COURT:  Yes, I know.  And it is a little bit

23   annoying because I framed the question based on what the

24   lawyers told me.

25          And if it will not be the case where the Government

1    only has eyewitness testimony and actually has forensic

2    evidence, the fact that we are engaging in this discussion is

3    needless.

4            If it's the case that there actually will be other

5    evidence, then we shouldn't be asking the question can you

6    convict based just on witness testimony.  It is not

7    eyewitness, but it is witness testimony.

8            MS. HAJJAR:  I think our concern, Your Honor, is not

9    the answer to that question, but her use of the word bias and

10   her linking that to the fact that she was sexually assaulted

11   by a police officer.  And that that connection had strong

12   feelings about law enforcement as a result of how that case

13   was resolved, which that is what -- I think that is troubling

14   to the Government.

15           THE COURT:  Yes.  And I heard her say that and

16   that's why I wanted to ask follow-up.

17           But we have spent a lot of time on this question

18   that the Government asked for about the forensic evidence, and

19   I'm starting to hear that it is really unnecessary to throw --

20   this is --

21           MS. DEAN:  There --

22           THE COURT:  -- a source of some frustration that you

23   asked for that question when that may not be necessary.

24

25           (Continued on next page.)

1          THE COURT:  And so, all I need is if we're going

2    spend any more time on that question I want to make sure

3    it's actually necessary.  We may not need some information.

4    We're running out of time and I want to get this jury

5    picked.

6          MS. DEAN:  It is actually necessary.

7          THE COURT:  So I will ask the follow-up questions

8    with this witness about what happened to her.

9          MR. CECUTTI:  And, your Honor, this prospective

10   juror was not sexually assaulted by anyone, she said she was

11   assaulted.

12         THE COURT:  I will ask her for the circumstances.

13         Ms. Benn, a couple of follow-up questions.  I know

14   this is probably difficult to answer, but when you said it

15   was the police officers who broke into your home and

16   sexually assaulted you.

17         THE PROSPECTIVE JUROR:  Not sexually assaulted.

18   Assaulted.

19         THE COURT:  Assaulted?

20         THE PROSPECTIVE JUROR:  Assaulted, yes.

21         THE COURT:  Do you know what happened?

22         THE PROSPECTIVE JUROR:  It was a mental health

23   call and I was tackled in my home and it was very

24   traumatizing for me and nothing was done about it.  And I

25   kind of -- I have had bad experiences since that experience.

1    THE COURT:  Okay.  And do you think the police

2  officers lied in that case?

3    THE PROSPECTIVE JUROR:  That is probably the case,

4  yeah, I do believe that, yes.

5    THE COURT:  Do you think that experience, knowing

6  what you did and what you went through, would make you think

7  that the law that police officers are lying in this case; or

8  could you be fair and just say maybe they're telling the

9  truth and maybe they're not telling the truth.

10    THE PROSPECTIVE JUROR:  Every case is different.

11    THE COURT:  Yes.

12    THE PROSPECTIVE JUROR:  And every officer is

13  different.  So, in this case, it would be my -- what I went

14  through wouldn't really be related.  So I wouldn't -- other

15  than really my slight bias with law enforcement and how they

16  manage themselves.  I wouldn't consider how police officers

17  really were operating themselves so much in this case unless

18  it was brought up.

19    THE COURT:  Okay.  So it's great.  It's good when

20  jurors say every case is different because you showed --

21  every day situation you used the word bias.  So what do you

22  mean by that?

23    THE PROSPECTIVE JUROR:  I just have I have a

24  slight bias towards, yeah, law enforcement as in I have a

25  slight negative viewpoint of law enforcement.

1          THE COURT:  Okay.  Could you put that aside and be

2   fair to law enforcement in this case?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Okay.  Is there any follow-up?

5          MS. DEAN:  No.

6          MR. CECUTTI:  No.

7          THE COURT:  Great.  Thank you very much.

8          So I think that gets us over.

9          (A brief pause in the proceedings was held.)

10         THE COURT:  So that would be our last juror.  Ryan

11  has come up with a list for us.  And this shows that we

12  struck 46.  So and then 76 is a question mark but we're

13  going to strike 76 as well.

14         MR. CECUTTI:  Okay.

15         THE COURT:  Childcare issues.  And so, 94 shifts

16  everybody back one but it gives us the 36 that we need.

17         MR. CECUTTI:  Okay.

18         THE COURT:  So I think we can start.

19         MR. CECUTTI:  So to be clear 78 through 94 are

20  potential alternates.

21         THE COURT:  This shifts because 46 is out.

22         82 is not an alternate anymore.

23         MR. CECUTTI:  Got it.  So up to 82 are the jurors.

24         THE COURT:  Hold on a second.  So this is correct?

25         So it's correct.  So 82.  So it was originally

1   here and it got corrected.  Up to 78 is the jurors from 82

2   to 94 are alternates.

3            MR. CECUTTI:  I had it right the first time?

4            THE COURT:  You did.

5            MR. CECUTTI:  Okay.

6            THE COURT:  Ryan was ahead of me.  I thought we

7   had to change the chart but we already fixed it.

8            MR. CECUTTI:  Great.

9            THE COURT:  So do you want to -- so what I plan to

10  do is to excuse the jurors to go across the hall and give

11  you time to do your strikes.  No, we have to do the

12  questions.  Let's do that.  We don't have a microphone, do

13  we?  So let's do those questions and then you'll do the

14  peremptories.

15           (Sidebar discussion concludes.)

16           (In open court.)

17           THE COURT:  Thank you, everybody for your

18  patience.  Okay.

19           It's 4:30 but I think we're going to make it.

20           So the next phase is that the ten questions on the

21  back of your jury list we're going to go through those.  The

22  first thing I'm going to do is let Juror No. 76 know that

23  you are excused.

24           You're excused.  Thank you very much for your

25  participation today.

1          (The prospective juror was excused by the Court.)

2          THE COURT:  So the rest of you should be patient

3    and we're going to ask the first 36 jurors.  So up to juror

4    94 we're going to ask each of you in open court because

5    these questions shouldn't be problematic to answer the

6    questions on the back of your number.

7          And those questions are about where you live,

8    don't give us your address, just where you live, tell us

9    your neighborhood or town, what you do for a living.

10          Who you work for, how long you've worked there.

11    What you used to do if you are retired or no longer working?

12          If you're married and if you have a significant

13    other, what does that person do?

14          Do you have any children.  If they're adults, what

15    to they do.

16          What schooling you have?  Do you have any

17    specialized training?

18          What you like to do in your spare time:  Hobbies,

19    interests, TV shows, movies, podcasts including crime

20    dramas, true crime documentaries, those kinds of things.

21          How you get your news whether it be newspaper, TV,

22    websites, or radio.  Tell us which ones.

23          Do you belong to any associations that you think

24    we should know about or find interesting?

25          Do you use social media and which platforms do you

1    intend to use?

2            Question 11 is the catch-all question of is there

3    any way you could not be a fair and impartial juror in this

4    case, okay?

5            So we're just going to ask each of you to answer

6    all those questions in turn and we'll start with Juror No. 5

7    and when you're done Juror No. 6 will do it and we'll go.

8    It should go pretty quickly, and so, hopefully, we'll be

9    able to get through all 36 jurors before we move on to the

10   next phase.

11           Okay.  And if you have any questions, you can feel

12   free to ask me.

13           Go ahead, Juror No. 5.

14           THE PROSPECTIVE JUROR:  I live in Nassau County in

15   Locust Valley and I've lived there for, I guess, next week

16   will be 31 years.  I grew up on Long Island, so I'm a

17   Long Islander.  I'm retired.  I was a banker for many, many

18   years all different kinds of banking.  And then I coached

19   crew, rowing, for four years.  Girls high school crew and

20   the name, my last employer was Our Lady of Mercy Academy.

21   It was a Catholic school I coached at.

22           I'm married my husband is a tax attorney; he's

23   retired.  I have two sons, they're both adults.  One is a

24   doctor and he'll be studying cardiology here in New York

25   soon.  And the other is a first-year medical student.

1    I went to college and I have a masters in business

2   administration with a focus, sort of, in finance.

3        In my spare time, I'm a full-time aged athlete.  I

4   row crew every day and I compete nationally and

5   internationally.  So that's, like, a full, full-time thing

6   but it's lots of fun.

7        And besides that I'm studying Italian and I take

8   Spanish classes to kind of reinforce my Spanish.

9        I like watching anything on Brit Box, basically.

10  I like mysteries:  "Vera," "Monk," "All Creatures Great and

11  Small," stuff like that.

12       We do a lot, since COVID, we've been doing a lot

13  of sucking down TV at night, so we watch a lot.

14       I get my news on my iPad and I tend to look at the

15  New York Times, that's my main source.  I'll watch some

16  local news on Channel 4, NBC not really from websites per

17  se, just the New York Times.  I have a subscription to the

18  Week Magazine and the Atlantic and New Yorker.

19       I don't belong to any civic organizations, just a

20  lot of different crew clubs.  I row under several banners,

21  so that's where I spend most of my time.

22       I do use social media I'm not a poster.  I have a

23  Facebook account and stuff like that but I don't really post

24  to it.  I just look at it here and there and I have to say I

25  have a little bit of an "Instaproblem."  I get stuck down

1  rabbit holes of looking at elephants and stuff like that but

2  that's pretty much all I use.

3          And I don't see any reason I couldn't listen to

4  the evidence and follow transactions and be fair.

5          THE COURT:  Thank you.  State your jury number.

6          THE PROSPECTIVE JUROR:  I'm Juror No. 6.  I live

7  in Forest Hills, Queens.  I've been in Queens my whole life,

8  so 50 years but Forest Hills for the last 25.

9          I am a freelance HR consultant.  I currently have

10  two clients, one is a fashion designer and one is a public

11  park in Manhattan and I've been with one of them for about a

12  year part time and the other one just for the last month or

13  so.

14          I am married.  My husband owns a cybersecurity

15  consulting firm.  I do have children.  Two, they're both

16  young, they're both in school, a ten and a 14-year-old.  I

17  have a bachelors degree.

18          In any spare time, I like to bake, I like to

19  listen to podcasts.  I taught myself how to embroider during

20  COVID so I enjoy that.

21          Favorite TV shows, I'll watch pretty much

22  anything.  I like documentaries.  I'm watching "Yellowstone"

23  right now.  I subscribe to the New York Times and I look at

24  that on my phone.  I'll check CNN's website occasionally.  I

25  don't read newspapers really and I don't watch television

1   like that.

2           I don't belong to any associations.

3           I have an Instagram account but I don't post and

4   that's the extent of my social media usage.  Just perusing

5   and there's no reason why I could not be impartial and

6   listen to the evidence.

7           THE COURT:  Thank you.

8           THE PROSPECTIVE JUROR:  Juror No. 7.  I'm from

9   Smithtown, Long Island.  I've lived there my entire life

10  about 24 years.

11          What I do for a living?  I work in finance.  I

12  work at a global infrastructure fund in the City and I've

13  work there for about three and a half years now.

14          I'm not married.  I don't have children.  I have a

15  bachelors degree in finance and economics.

16          What I like to do in my spare time.  I watch a lot

17  of sports, hang out with friends, go to the gym and watch a

18  lot of movies, too.

19          Favorite TV shows.  One I'm watching right now is

20  Ted Lasso that I just started.  It's pretty good, pretty

21  funny.

22          How do I get my news.  Subscribe to the Wall

23  Street Journal and I do use Twitter for a lot of news, just

24  following different outlets there.

25          I don't belong to any associations or

1   organizations right now.

2          And social media, the usual, like Instagram,

3   Twitter, yeah, all of those.

4          And I do not think there's any reason that I could

5   not listen to the evidence.

6          THE COURT:  Thank you.

7          THE PROSPECTIVE JUROR:  Juror No. 9.  I live in

8   Queens and I'm a private music instructor and performer for

9   a living.

10          I am not married.  I'm single.  I have a

11   bachelor's degree in music.

12          Spare time, I like to read and exercise, go to the

13   gym.

14          Favorite TV shows recently watched "The Curse."

15   Consume a lot of media as an artist and podcasts as well,

16   like, "Blowback" and other political podcasts.

17          I get my news from a lot of different sources on

18   the Internet and different Substack writers that I discover

19   through, like, similar podcasts.

20          I use pretty much every social media app I can as

21   a performing artist to help promote what I do.

22          And I don't think there is any reason I -- could

23   not render an impartial verdict.

24          THE COURT:  Thank you.

25          THE PROSPECTIVE JUROR:  Juror No. 11.  I live in

1  Bellerose, Nassau County.

2          What I do for a living?  I am a permitted mental

3  health counselor.  I provide community psychiatric treatment

4  and support.  I work under Medicaid and my employer's

5  University settlement.  I work with families, children, and

6  teens at a range of mental illness.  We've had domestic

7  violence and other situations with the court.  I've worked

8  there about eight months.

9          I'm not married.  I do not have any children.

10          I went to John Jay.  I got my masters in forensic

11  mental health counseling.  I have advanced certification in

12  victimology studies in forensic psychology.

13          What I do for a spare time.  I hike and I listen

14  to a lot of podcasts.  My favorite TV shows are "Criminal

15  Minds," "Mind Hunter."

16          How do I get my news.  Online, CNN.

17          Do I belong to any associations?  Yes.  New York

18  Mental Health Counselors and the APA.

19          Do I use social media?  Yes, I do.  Twitter,

20  TikTok, Instagram.

21          No, there is no reason I shouldn't be able to

22  listen to the evidence.

23          THE COURT:  Thank you.

24          THE PROSPECTIVE JUROR:  Juror No. 13.  I live in

25  Bellerose, Queens for three years now.  I work in digital

1  marketing.  I oversee a team of coordinators that build

2  e-mail marketing campaigns and site-based campaigns.  I've

3  been working there for ten years.

4          I'm not married.  I don't have any children.

5          I have a bachelors in communications.

6          Hobbies.  I like working out.  I like music.  I

7  like volleyball.

8          Movies and stuff like that.

9          Favorite movies and shows.  Usually comedies or

10  dramas like "Seinfeld" or "Breaking Bad," stuff like that.

11          Usually, I get my news from TV.  I don't belong to

12  any associations or organizations and I use Facebook and

13  Instagram.

14          And there is no reason I would not be able to

15  listen to evidence.

16          THE COURT:  And I would just add for the last

17  question it's important to say that you could be fair and

18  impartial, okay.

19          THE PROSPECTIVE JUROR:  Okay.

20          THE COURT:  No, that's okay.

21          THE PROSPECTIVE JUROR:  I'm from Brooklyn.

22          THE COURT:  Juror No. 16.

23          THE PROSPECTIVE JUROR:  No. 16.

24          THE COURT:  Excellent.

25          THE PROSPECTIVE JUROR:  I'm from Brooklyn,

1    Kings County.  I've been living there for 25 years.  I am

2    retired from an insurance company.  I've worked there for

3    over 25 years.  I self-developed myself into event planning.

4    I am a party planner.  I also do occupational therapy on the

5    side with a family member with their own business which is

6    it's to health wellness, it's health wellness.

7              I am married.  My husband has a part-time

8    construction business with his family member and he also is

9    a homecare health provider.

10             I have three adult children.  My oldest son is in

11   communications; he's a radio speaker.  My second son works

12   for the Parks Department, the City of New York.  And my

13   daughter works for MTA.

14             I went to Pace University, business

15   administration.  I have a certificate in special training

16   for occupational therapy, health wellness.

17             I like to paint, sip and paint.  I like to do

18   event planning.

19             My spare time is I like writing, walking, and I do

20   go to the seniors -- the senior, what do you call it, rehab

21   and I help out there with the occupational therapy.

22             My favorite TV shows are "Family Feud," "Chicago

23   P.D." "Chicago Med," "Law & Order," just a few.

24             Movies, anything that's exciting.

25             I get my news through YouTube, television, no

1   website.

2          I don't belong to any associations or

3   organizations.

4          I have social media with just only Facebook which

5   is to promote the businesses.

6          And I don't see why I could not be fair in hearing

7   the evidence.

8          THE COURT:  Thank you.

9          THE PROSPECTIVE JUROR:  I'm Juror No. 19.  I live

10  in Massapequa, Long Island and I've lived there all my life

11  which is 60-years-plus.

12         I am retired.  My employer was Avis Rent-a-Car and

13  I worked there for 37 years.  And what I did there was

14  project management.

15         I am not married.  I do not have any children.

16         I have a bachelors in math and a certificate in

17  project management.

18         In my spare time, spring is coming, gardening is

19  my passion, so I love to do that.  I also read a lot, too,

20  and I do walk.

21         Favorite TV shows, the "NCIS" series, the "FBI"

22  series and that's pretty much it.

23         My news, also subscriptions like some of the

24  ladies, to the New York Times.  The local TV, you know, the

25  11:00 o'clock news just to wrap up.  That's what I do.

1          Associations.  Project management association and

2  several local gardening clubs.

3          Social media, Facebook, and Instagram.  Not real

4  good, but I try.

5          And there's no reason I couldn't listen to the

6  evidence and not be fair and impartial.

7          THE COURT:  Thank you.

8          THE PROSPECTIVE JUROR:  Juror No. 20.  I live in

9  Bayside, Queens.  I've been there for about, I guess, five

10  years now.

11          I'm a teacher.  I work with the New York City

12  Department of Education.  I've worked there now for nine

13  years.

14          I'm not married.  I don't have children.

15          I have a masters degree in special education

16  mathematics.

17          In my spare time, I like to like play guitar,

18  watch sports.  I don't watch much TV.  Favorite television

19  shows are baseball games and football games.

20          I get my news from CNN.com mostly.

21          I don't belong to any associations or anything

22  like that.

23          I only use the Facebook maybe once a day.  I check

24  that.

25          And there's no reason I couldn't render a fair and

1    impartial verdict.

2              THE COURT:  Thank you.

3              THE PROSPECTIVE JUROR:  Juror No. 23.  I currently

4    live in Astoria.  Been there the last two years, but

5    otherwise, was in Forest Hills the rest of my life.

6              I am a tax accountant for KPMG.  Been working

7    there for a little over three years.

8              I am not married, don't have any children.  I have

9    a masters degree in tax and data analytics.

10             Spare time, I like to go to concerts and go out to

11   eat.

12             Favorite TV shows probably "The Bear" and I also

13   love "Criminal Minds."

14             Getting my news, honestly, I probably get it

15   mostly through social media.  So, Instagram, TikTok, New

16   York Times through those outlets probably.

17             Any associations.  I'm a CPA so I'm probably part

18   of some that I can't think of.

19             And then social media, yeah, TikTok, Instagram.

20             And then I don't think there's any reason that are

21   I wouldn't be a fair and impartial juror.

22             THE COURT:  Thank you.

23             THE PROSPECTIVE JUROR:  Juror No. 24.  I live in

24   Holbrook, Long Island.  I've been there for 30 years.

25             I'm retired.  I formerly was a food service

1   director for the North Babylon School District.

2           I'm married.  My wife is in retail sales.

3           Two children.  One is a drug and alcohol

4   counselor.  The other is a tax accountant.

5           I have a bachelors in hospitality management and

6   culinary arts.

7           Gardening would be a spare time hobby.

8           I enjoy watching sports on TV.  I don't really

9   have any favorite TV shows.  I get the news through TV.

10          I don't belong to any associations.

11          I have a Facebook account.

12          And I would be able to render a fair and impartial

13  verdict.

14          THE COURT:  Thank you.

15          THE PROSPECTIVE JUROR:  Juror No. 25.  I live in

16  Westbury, Nassau.  I've been living there since 2010, so

17  that's about 14 years.

18          I'm a case manager/supervisor with an agency that

19  contracts with the Department of Health.  I've been with

20  them for seven to eight years now.

21          I'm married and my husband is a physical

22  therapist.  I have four children, two of which are adults.

23  One is a speech pathologist and the other one works with

24  Starbucks.

25          I have a bachelors degree in accountancy.

1          Spare time, I would say, I don't have spare time
2   but if I do I make sure that I get my sleep.
3          I love rom-coms.  News, I only get it from my
4   husband.  Every time he comes home, he shares news with me.
5   And, I guess, also in the radio.
6          I don't belong to any association or organizations
7   or civic clubs at this time.
8          I only go to Facebook.
9          And I don't think I have any reason for not being
10  able to render a fair and impartial verdict.
11          (Continued on the next page.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1    THE PROSPECTIVE JUROR:  I'm Juror No. 27.

2        I live in Franklin Square, Nassau County, for the

3   past 15 years.  I am an educator, elementary school.  I work

4   for New York City public schools for the past 27 years.  I'm

5   currently an instructional coach.  I work with teachers but I

6   also work with children.  I am single.  I have no children.  I

7   have a Bachelor's in finance, a Master's in elementary

8   education and a certificate for teaching English to speakers

9   of other language as well as school building leadership and

10  school district leadership.

11       In my spare time, I love watching television and I'm

12  very eclectic, from "The Office," "Big Bang Theory," to "Cold

13  Justice" to whatever is on.  It's on -- my television is on

14  all the time as background noise.  I get my news from ABC News

15  in the morning and I listen to 1010 WINS on the way home when

16  I'm not on the telephone talking to friends.

17       I am a member of the UFT and my local Roman Catholic

18  church and I am on Facebook, Instagram and Teacher Tok, mostly

19  just scrolling, not posting a lot.  And I believe I can listen

20  to the evidence, follow the Court's instructions and render a

21  fair and impartial verdict.

22       THE PROSPECTIVE JUROR:  I'm Juror No. 28.

23       I live in Glen Head, Nassau County.  I am a

24  secondary school special education teacher at Manhasset.  I've

25  worked there for eight years.  I am married.  My husband is a

1    self-employed electrical contractor.  I have four children:

2    12, 15, 18 and 19.  I have no time for hobbies or watching TV.

3    I really don't watch much TV.  When I do, it's usually true

4    crime or documentaries.

5           I get my news from News Nation is the station I

6    usually watch.  I don't belong to any associations right now.

7    I do have TikTok, Facebook and Instagram.  I'm sorry.  And I

8    don't see any reason why I couldn't render a fair and

9    impartial verdict.

10          THE PROSPECTIVE JUROR:  Juror 29.

11          I was born and raised in Brooklyn.  More

12   specifically, in Bensonhurst.  I am a tax accountant under

13   Crowe and I've been working there for a little bit over a

14   year.  I am not married and I do not have children.  I have a

15   Master's in taxation.

16          For spare time, I like to cook and bake.  Sometimes

17   I like to play pool.  I don't really watch much TVs or movies.

18   The latest ones I watch is "The Office."  My news source would

19   be from the Times or CNN.  And I do not belong to any

20   associations or organizations.  And I rarely use Instagram

21   which is about it.  And I do not see a reason for me to render

22   a fair or impartial verdict.

23          THE COURT:  Just to be clear, there's no reason that

24   you could not?

25          THE PROSPECTIVE JUROR:  Yes.  Sorry.  Thank you.

1          THE PROSPECTIVE JUROR:  Hi.  I'm Juror No. 31.

2          I live in Suffolk County, Huntington.  I work as a

3    finance representative for Fidelity Investments.  I've been

4    there for a little under a year.  I am single with no

5    children.  I have a Bachelor's in global business in Chinese.

6          I like to sleep in my spare time.  I do a lot of

7    that.  I don't really watch TV or movies.  I'm more of a

8    YouTube person.  I don't belong to any associations or

9    organizations.  I get my news from YouTube and, like, every

10   once in a while, I'll see an old article on Instagram.  I use

11   Instagram the most and like YouTube.  I don't use TikTok or

12   anything else.  And I don't see why I wouldn't be able to give

13   a fair and impartial verdict.

14         THE PROSPECTIVE JUROR:  Hi.  I live in Astoria.

15   I've been there for three years.

16         THE COURT:  You're No. L32?

17         THE PROSPECTIVE JUROR:  Juror 32, yes.  Sorry.

18         THE COURT:  That's okay.

19         THE PROSPECTIVE JUROR:  As I was saying, I live in

20   Astoria.  Been there for three years.  I lived in Brooklyn for

21   about six.  For a living, I do advertising strategy and

22   analytics.  Was recently Laid off in mass media layoffs, but

23   my former occupation was a director of client services at Ad

24   Marketplace.  Was there for about two and some years.  Not

25   married but my significant other, she is a veterinarian.  No

1 children.  I have a Bachelor's in psychology, a master's in

2 data analytics and research.

3          In my spare time, I do like to run, lift, travel

4 wherever I can and learn new instruments.  Favorite TV shows:

5 "Veep," "Parks and Rec."  Anything really that's true crime.

6 Movies, A24 movies.  I get my news via CNN, the New York

7 Times.  Don't belong to any associations and I do have

8 Facebook.  I don't really use it.  Otherwise, it's Instagram,

9 like a self-respecting Millennial.  And there is no reason I

10 could not listen to the evidence and render a fair and

11 impartial verdict.

12          THE PROSPECTIVE JUROR:  Hello.  I'm Juror No. 35.

13          I've lived in Brooklyn for my whole life, 26 years,

14 Dyker.  I'm a software engineer.  I have worked at Justworks

15 for the last two years.  It's a startup here in New York.  I'm

16 not married.  I don't have children.  I have a Bachelor's in

17 computer science and I'm -- I have a lifeguard certificate.

18          In my spare time, I like to play basketball, watch

19 basketball, cook.  Favorite TV shows right now, maybe

20 "Succession."  News, yes, mostly social media or like Reddit.

21 Don't really go on news sites or anything like that.  No

22 organizations, associations, and the social media, I use

23 Reddit, Instagram, Facebook, Twitter, all of them basically.

24 And there's no reason I can't render a fair and impartial

25 verdict.

1          THE PROSPECTIVE JUROR:  Juror 39.  I live in

2    Brooklyn.

3          I'm an operating room assistant at New York

4    Presbyterian Hospital, Columbia location.  I'm single.  I have

5    one adult child.  He is in college.  I have an Associate's

6    degree in medical assisting.

7          Favorite TV shows are like reality shows, "90-Day

8    Fiancee," stuff like that.  I get my news from TV.  No

9    organizations.  I use TikTok, Instagram and Facebook.  And

10   there's no reason that I couldn't be fair and impartial.

11         THE PROSPECTIVE JUROR:  I am Juror 41.

12         I live in Brooklyn.  I've been there for the last

13   four years.  I'm an actor at an improv and acting teacher and

14   coach.  I work part-time for the People's Improv Theater and

15   then do individual coaching sessions directly with students.

16   I'm not married.  No kids.  I have a Bachelor's in

17   international relations.  Minor in communications.

18         Spare time, I go to the gym, archery, I perform

19   improv.  I watch a lot of theater.  Favorite TV shows or

20   movies, I like comedies or action.  News, basically New York

21   Times, a couple of folks on Instagram that I follow.  No

22   organizations.  Social media, generally posting my shows on

23   Instagram and sometimes Facebook.  And there's no reason why I

24   couldn't listen to the evidence and render a fair and

25   impartial verdict.

1         THE PROSPECTIVE JUROR:   Juror 52.

2         I'm from Queens.  Forty-three years there.  I work

3    at Amazon.  Single.  No kids.  High school diploma.

4         Hobbies:  Sports, travel.  TV shows:  Comedies.

5    News:  TV, ABC.  Do you belong to any associations?  No.

6    Social media:  IG, Twitter.  And there's no reason I can't

7    render a fair and impartial verdict.

8         THE PROSPECTIVE JUROR:   I'm Juror 54.

9         I live in Astoria, Queens, 18 years.  Grew up in

10   Brooklyn.  For a living, I'm an executive assistant at a

11   consulting firm named Teneo.  I've been there 11 years

12   supporting the global CFO there and the global strategy

13   communications president.  I'm not married.  No children.  I

14   went to NYU.  I have a BA in comparative literature.

15        Spare time, I love to hike and travel, read, music,

16   pottery.  I don't do that all but when I have some time, I try

17   to get some of it in.  Favorite TV shows?  I don't have a

18   favorite.  My recent -- what I've recently -- I've been

19   watching documentaries.  Most recent, "The Big League" on the

20   soccer leagues and "When they see us."  Those are the two most

21   recent I've watched.  My news source is mostly or mainly the

22   New York Times, NPR, CNBC.  At this time, no associations or

23   organizations.  I have a Facebook account, Instagram, but I'm

24   not a big fan of social media so I'm never really on.  And

25   there's no reason why I could not render a fair and impartial

1    verdict.

2             THE PROSPECTIVE JUROR:  Hi.  I'm Juror 60.

3             I live in Massapequa, Long Island.  I've been there

4    31 years.  I am a nurse.  I work for NYU Long Island and I've

5    worked for them for 31 years.  I'm married.  My husband

6    retired in January and he was a vice president for a real

7    estate management firm.  I have two children.  They are

8    adults.  My younger son is learning disabled and he works for

9    AHRC in their landscaping division.  My older son is on the

10   spectrum and he's currently not working.  I have a Bachelor's

11   of Science in nursing.

12            In my spare time, I like to garden, take walks and

13   read historical fiction.  My favorite TV show at the moment is

14   "Bridgerton."  I get my news from the newspaper and TV.  No

15   associations.  I have a Facebook account which I have never

16   posted on.  And I could listen to evidence, follow

17   instructions and render a fair and impartial verdict.

18            THE PROSPECTIVE JUROR:  I'm Juror No. 61.

19            I currently live in Queens.  Been living there for

20   34 years.  More particularly, Flushing for the past 12 and a

21   half.  I am a lawyer.  I'm also an executive director of

22   Korean-American Civic Empowerment.  I've been working there

23   for the past three years, second as its EE.  And prior to

24   that, I've worked in multiple law firms and interned for a New

25   York State Supreme Court judge in New York County.  I am

1    single.  I do not have children.  I have a Bachelor's in

2    history and a JD from law school.

3         In my spare time, I listen to podcasts, some TV here

4    and there.  Favorite TV show right now, I'm just rewatching

5    "Scrubs."  I get the news through the PBC NewsHour as well as

6    several Instagram accounts from different news organizations

7    and other nonprofit organizations.  I currently belong to --

8    I'm a member of my church as well as a member of the New York

9    City Bar, KALAGNY, AABANY, and the Korean Society.  I do use

10   social media, YouTube, Facebook and Instagram.  And I can

11   render a fair and impartial verdict.  Thank you.

12        THE PROSPECTIVE JUROR:  Juror No. 63.

13        I live in Flushing, Queens for 37 years.  I'm

14   retired.  I was a program engineer in Bank of America.  I'm

15   married and my wife is real estate salesperson at Touch Keys.

16   I have degree in banking and hotel management.

17        I like to do reading in my spare time.  I always

18   watch action movie on nine.  I read the news from website.  I

19   do not belong to any organizations.  I have Facebook.  There's

20   no reason for me not to listen to the evidence.  Thank you.

21        THE PROSPECTIVE JUROR:  Juror Number 69.

22        I live in Queens for 20 years.  I'm a nurse's aide.

23   I'm married.  My husband is a bursar director.  I have three

24   children:  One in college, one in high school, one work with

25   MTA.  I went to high school.

1        I watch movies and cook in my spare time.  I get my

2   news on TV.  I don't belong to any organization.  I do not

3   have social media.  There is no reason I can't render a fair

4   verdict.

5            THE COURT:  Thank you.

6            THE PROSPECTIVE JUROR:  Hi.  I'm Juror No. 67.

7        I live in Flatbush, Little Caribbean, Brooklyn.

8   I've been there for about four years.  I am an assistant

9   principal.  I work for East Harlem Scholar's Academy and I've

10  worked there for four years.  I am engaged.  My significant

11  other is a full-time psychology student and after-school

12  director.  I do not have any children.  I have a Bachelor's in

13  sociology, a Master's in education and I'm starting a Doctoral

14  degree in the fall.  I also have a professional teaching

15  license and an instructional coaching license.

16       In my spare time, I enjoy traveling, I enjoy baking.

17  I bake every week.  My favorite TV shows, I enjoy lots of true

18  crime like "Snapped," "The First 48."  I also enjoy "Harry

19  Potter" is my favorite movie and I also enjoy "Grey's

20  Anatomy."  I generally get my news via word of mouth and/or

21  the New York Times and social media.  I do not belong to any

22  associations or organizations.  I do have social media.  I

23  have Instagram, TikTok and Facebook.  And I do, don't see -- I

24  don't think there's any reason that I couldn't render a fair

25  and impartial verdict.

1          THE PROSPECTIVE JUROR:   Juror No. 78.

2          I live in Hempstead, New York.  I've been living

3    there for the past 20 years.  I work as a forklift driver in a

4    factory.  Married with three children.

5          I like to read in my spare time.  I don't have any

6    favorite show or movie.  I get my news through the TV.  I

7    don't belong to any association organization.  Social media, I

8    have Facebook.  And I don't have any reason to render a fair

9    and impartial verdict.

10          THE COURT:  Okay.  You mean there's no reason you

11    could not render a fair and impartial verdict?

12          THE PROSPECTIVE JUROR:  Correct.

13          THE COURT:  Okay.  It's a confusing question.

14          THE PROSPECTIVE JUROR:  Hi.  I'm Juror 82.

15          I live in Queens for about 23 years.  Right now, I'm

16    a driver for United Nation Mission of the Republic of Zambia.

17    I've been there about two years.  I'm single.  I don't have

18    any children.  I have some college but I never finished it.

19          Hobby:  Watching movies usually, usually on social

20    media, Netflix.  News:  Probably internet.  I don't belong to

21    any association.  I have only Facebook for social media.  And

22    there is no reason I could not listen to the evidence.

23          THE PROSPECTIVE JUROR:  I'm Juror No. 83.

24          I've lived in Queens for the last four years in Kew

25    Gardens Hills and Jackson Heights before that.  I work for

1  Forte Prep Academy which is a public charter school in

2  Elmhurst Queens.  I'm the director of student supports which

3  is like the head of the special education department.  I coach

4  teachers.  I've been there for the last four years.  I'm

5  married.  My wife is a digital communications manager for the

6  Robin Hood Foundation.  We have one son who is one year old.

7  I have a Bachelor's degree in political science and public

8  policy and a Master's degree in special education.  I hold a

9  special education certification.

10       My spare time, with a one year old, there's not a

11  ton of it but I train for marathons.  I like to watch sports.

12  My favorite TV shows right now are "Abbott Elementary," "The

13  Bear," "True Detective Night Country."  News, I listen to a

14  lot of podcasts.  I get a lot of news from like MSNBC or CNN

15  or anything like that and social media.  Associations, I've

16  done some advocacy work with the American Foundation for

17  Suicide Prevention and I'm a member of First Presbyterian

18  Church in Jamaica, Queens.  I have a lot of social media.  I

19  guess I have most of the social media accounts and it's a

20  place where I also get news from.  And I don't think there's

21  any reason that I could not listen to the evidence or follow

22  the instructions or render a fair and impartial verdict.

23       THE PROSPECTIVE JUROR:  I'm Juror 86.

24       I live in Bay Ridge, Brooklyn.  I've lived there for

25  the past 18 years.  I'm a paralegal.  I work for Eddy &

1  Associates in Brooklyn.  I've been there for the past three

2  years.  I'm not married.  I have no children.  I have a

3  Bachelor's in legal studies and a Master's in criminology and

4  justice.

5          In my spare time, I go to the gym.  I don't have any

6  favorite TV shows but do I like documentaries.  News:

7  Websites, social media.  I don't belong to any clubs or

8  organizations.  Social media:  Instagram and Facebook.  And I

9  can be fair and impartial.

10         THE PROSPECTIVE JUROR:  Hi.  I'm Juror No. 88.

11         I live in South Brooklyn.  I pretty much grew up

12 there but then got married and moved away.  Came back after my

13 divorce and my father's death to take care of my mother.  So

14 I've been back, I've lost track, 15, 20 years or so.  I work

15 at Wegmans at the Brooklyn Navy Yard.  That's a new position

16 for me.  I've been there only for about two months and that's

17 because my mother who has been my primary responsibility all

18 these years had passed away.  So it's very physically taxing.

19         I don't have a lot of relaxation time.  I sleep a

20 lot.  When I can, I like to read.  I don't own a TV.  So I

21 really don't -- I haven't watched television also in ten years

22 or so.  So I generally will stream something on Amazon Prime

23 or something like that if I wanted entertainment.  I get --

24 the only social media I have is Twitter and I think I find it

25 to be a very good aggregator of news.  If there's a headline,

1   it's on Twitter.  So I get my information there and much of my

2   entertainment there as well because the jokes are funny.  And

3   there's no reason that I cannot be impartial and fair and

4   carrying out a verdict.

5          THE PROSPECTIVE JUROR:  Hi.  I'm Juror 89.

6          I live in Staten Island.  I've been there for

7   40 years.  I'm supervise mechanics for New York City

8   Department of Transportation and I've been there for 15 years.

9   I'm not married and I have no children.  I have an Associate's

10   in occupational studies and I'm working on my Bachelor's in

11   wildlife conservation.

12          My spare time is spent with my rescue animals and my

13   flock of chickens.  I don't really have a favorite TV show.  I

14   watch a lot of documentaries.  I really try not to get the

15   news but when I need the news, I'll turn on PIX 11 or

16   New York 1.  I'm not a part of any associations or clubs.

17   Social media, I use Instagram.  I have Facebook but don't

18   really use it.  And there's no reason I couldn't render a fair

19   and impartial verdict.

20          THE PROSPECTIVE JUROR:  I'm Juror No. 90.

21          I am a -- I work with children for the City of New

22   York.  I'm sorry.  Skip.  Long day.  I live in Queens over

23   40 years in the Flushing area.  I work with children under,

24   with the City of New York almost two years now.  Single.  No

25   kids.  Bachelor's degree, criminal justice, a minor in

1   psychology.

2        In my spare time, I like to sleep and eat.  Favorite

3   TV show right now, "Abbott Elementary" and "The Bear."  I just

4   started that.  News:  Local channels.  No associations,

5   organizations.  Social media:  I have Facebook and Instagram

6   but I use it maybe once every other week.  And I have no --

7   there's no reason why I could not render a fair and impartial

8   verdict.

9        THE PROSPECTIVE JUROR:  Juror 92.

10       I live in College Point, New York.  I've lived there

11  for two years.  And I work as a warehouse worker.

12       In my spare time, I like to walk and shop.  I get my

13  news from ABC-7 and FOX5-NY.  I don't belong to any

14  associations, organizations or civic clubs.  I use Instagram.

15  And there is no reason why I cannot render a fair and

16  impartial verdict.

17       THE PROSPECTIVE JUROR:  Juror No. 94.

18       I live in Brentwood in Suffolk County and I've been

19  living there for the past 24 years, my whole life.  I used to

20  work in finance until I recently switched to real estate.  And

21  I've only just started working there.  I'm not married.  I

22  don't have children.  I'm still working on my degree.

23       In my spare time, I like to read, play music and

24  game.  My favorite TV shows, I don't have any right now but

25  most recently, I've been watching "Mr. And Mrs. Smith."  I

1   usually get my news from New York Times.  I subscribe to that

2   as well as CNN and some YouTube sources.  I belong to the

3   National Society of Leadership and Success.  That's the only

4   one.  I do have social media.  I have Facebook and Instagram

5   but I don't really post.  And there's no reason why I couldn't

6   render a fair and impartial verdict.

7               THE COURT:  Thank you.

8               So we're done with this phase.  Let me talk to the

9   lawyers for a minute at sidebar and then we'll enter the last

10  phase.

11              (The following occurred at sidebar.)

12              THE COURT:  So I'm going to ask everybody to go back

13  into Judge Chen's courtroom so you can do your peremptory

14  challenges here.  Can I give you ten minutes?  I don't want to

15  keep them here very long.

16              The other thing is that since we have so many extra

17  jurors, can we let the jurors from 100 upward leave so we

18  don't have the backlog in terms of people?

19              MR. CECUTTI:  Yes.

20              THE COURT:  That will leave us a few extra.

21              MS. DEAN:  Yes.

22              THE COURT:  Then I'll give you a ten minute break to

23  talk and then we should do the peremptories here back and

24  forth and then call in the jurors.

25              MR. CECUTTI:  Okay.

1          MS. DEAN:  Okay.

2          THE COURT:  Thank you.

3          (In open court; sidebar ends.)

4          THE COURT:  So for the last phase, the lawyers and I

5    need to meet in here and the jurors will go across the hall to

6    the other courtroom.  This next phase should take about

7    20 minutes.  I'm trying very hard to get you out by 6:00.  I

8    think I can do it.

9          I apologize that you're probably here later than you

10   thought you would be but this way, this will all be done.  The

11   jurors who will be picked will know that they come back next

12   Tuesday to hear the evidence in this case and the rest of you

13   can go home.  Okay?  So please bear with me.

14         Ryan is going to take the first group from 1 to 99

15   across the hall.  The rest of you, let me talk to you in a

16   moment and that's what we'll do.  Okay?

17         (Prospective jurors as indicated leave.)

18         THE COURT:  So the rest of you, Jurors No. 103

19   through 135, you can leave.  You are free to go.  Thank you

20   very much.

21         Go to the second floor to check out and then they'll

22   give you instructions on when you need to report back if you

23   do.  Leave your numbers here.  Okay?

24         Thank you.  Thank you very much.

25         (Prospective jurors as indicated excused.)

1          THE COURT:  So, I don't know, the defendant can stay
2   here and the government, if you want to find a room somewhere,
3   you can meet there.
4          MS. DEAN:  Thank you.
5          THE COURT:  But I will check with you in ten minutes
6   because I would like to get going.  Thank you.
7          (Court is in recess.)
8          (In open court; prospective jurors not present.)
9          THE COURT:  All right.  Let's start exercising
10  peremptory challenges.
11         The first challenge is by the government.
12         MS. DEAN:  Yes, Your Honor.  The government
13  challenges No. 9.
14         THE COURT:  And the defendant gets two challenges.
15         MR. CECUTTI:  And this is 5 through 78, right,
16  Your Honor?
17         THE COURT:  Yes.
18         MR. CECUTTI:  No. 6 and 16.
19         THE COURT:  All right.  And then you've got the next
20  two.
21         MR. CECUTTI:  Seven and 11.
22         THE COURT:  All right.  The government gets one.
23         MS. DEAN:  Forty-one.
24         THE COURT:  All right.  The government gets one.
25         MS. DEAN:  Fifty-four.

1          THE COURT:  Defendant gets two.

2          MR. CECUTTI:  One moment, Your Honor.

3          (Pause.)

4          MR. CECUTTI:  Nineteen and 27.

5          THE COURT:  All right.  And the defendant gets two

6   more.

7          MR. CECUTTI:  Twenty-eight and 31.

8          THE COURT:  All right.  Next strike is the

9   government.

10          MS. DEAN:  Sixty-seven.

11          THE COURT:  And then the government gets one more.

12          MS. DEAN:  Fifty-two.

13          THE COURT:  Defendant now get one.

14          MR. CECUTTI:  Sixty-one.

15          THE COURT:  All right.  And then the defendant gets

16  one final strike for the twelve jurors.

17          MR. CECUTTI:  Seventy-eight.

18          THE COURT:  All right.  And the government gets a

19  final strike for the twelve jurors.

20          MS. DEAN:  Your Honor, the government wants to

21  understand if we hold this strike, does the last juror

22  remaining in the first 28 become the first juror in the

23  alternate panel and, thus, the last alternate drops out of the

24  alternate panel?

25          THE COURT:  I don't think there's a rule for that.

1   I can certainly say that if you take a pass, then it makes

2   sense to me that the -- well, I'm just trying to think how

3   that works.  You're basically trying to move 82 into the

4   twelfth spot?

5             MS. DEAN:  That's correct.

6             THE COURT:  Okay.

7             Mr. Cecutti, do you see any problem with that?

8             MR. CECUTTI:  One moment, Your Honor.

9             THE COURT:  If the government chooses to take a

10  pass -- well, no, actually, that's the wrong way.

11            MS. DEAN:  Not the twelfth spot because the twelve

12  will be decided.

13            THE COURT:  So let's do it this way.

14            So 5 is going to be One.  Juror No. Two will be 13.

15  Juror No. Three will be 20.  Four will be 23.  Five is 24.

16  Six is 25.  Seven is 29.  Eight is 32.  Nine is 35.  Ten is

17  39.  Eleven is 60.  And twelve is actually 63 now.

18            So 69 becomes eligible to be one of the alternate

19  spots; is that what you're asking?

20            MS. DEAN:  Yes.  That is what the government is

21  asking.  Thank you.

22            MR. CECUTTI:  One moment, Your Honor.

23            (Pause.)

24            MR. CECUTTI:  Your Honor.  I'm sorry, the question

25  for us is what exactly?

1        THE COURT:  The -- hold on a second.

2        So the question is if the government takes a pass on

3   their final strike for the twelve jurors, do they have to

4   strike the alternates -- does 69 disappear and then the

5   alternates are chosen from 82 to 94.

6        MR. CECUTTI:  I believe so.  I think the way that we

7   had it set up was we were going to strike from 5 to 78, and

8   then our alternates we were going to select from 82 to 94.

9        THE COURT:  If that's how you were envisioning it,

10  that's how we set it up because we had -- that black line on

11  the chart that you have --

12       MS. DEAN:  Right.

13       THE COURT:  -- demarcates the jurors who are

14  eligible for the first twelve seats and then the jurors who

15  will be considered for alternate.

16       MS. DEAN:  Understood, Your Honor.

17       So notwithstanding the fact that there would be a

18  juror left over from the 28, I think that black line assumes

19  that the government and the defense used all their peremptory

20  strikes.

21       THE COURT:  Right, and the problem is that's how we

22  were all operating so if you shifted, now the defendant's

23  peremptories are out of whack because they were not

24  considering anybody in the first group for the alternates.

25       MS. DEAN:  And then, Your Honor, can we -- then if

1  we hold the strike, can we use the strike in the alternate

2  pool?

3          THE COURT:  No, because then that puts the 69 into

4  the alternate pool.

5          MS. DEAN:  No, Your Honor.  If we hold the strike,

6  if we don't use it for the first pool of 28, can we carry the

7  strike and use it in the alternate pool?

8          THE COURT:  That's what I'm saying, I don't -- it

9  doesn't make sense to do that because the alternate -- there

10 are four alternate strikes to be exercised in these eight

11 alternate spots that were set aside.

12         MS. DEAN:  Right, Your Honor, so if we don't use our

13 sixth strike in the jury pool, can we then carry that strike?

14         THE COURT:  I don't know what you mean by "carry

15 that strike."

16         MS. DEAN:  Can we use that strike in the alternate

17 pool?  So we would have not two strikes, but we would have

18 three strikes in the alternate pool because we wouldn't have

19 used our last strike.

20         THE COURT:  I know you haven't but the problem is if

21 we didn't discuss this in advance -- if the defendant

22 consents, that's fine, but if the defendant has been operating

23 under the assumption that the final eight jurors on this list

24 are the only ones being considered for the alternate pool and

25 you each would get four strikes there, then it's unfair to

1  suddenly shift things.

2          MS. DEAN:  Understood.

3          THE COURT:  So I think that's the problem.

4          So, in effect, if you wanted to exercise a strike in

5  the first batch up to 78, you're still free to do that.  If

6  you choose to take a pass, you've effectively stricken 69.

7          MS. DEAN:  Can I just have one moment with my

8  colleagues then?

9          THE COURT:  Yes.

10          (Pause.)

11          MS. DEAN:  Okay.  Your Honor.  We'll take a pass.

12  Thank you.

13          THE COURT:  Okay.  So then the government gets the

14  first strike among the eight final jurors on the list as the

15  first alternate strike.

16          MS. DEAN:  Eighty-six.

17          THE COURT:  And then the defendant gets a strike.

18          MR. CECUTTI:  Eighty-three.

19          THE COURT:  And then the defendant gets a final

20  strike.

21          MR. CECUTTI:  Ninety.

22          THE COURT:  And the government gets a final strike.

23          MS. DEAN:  Ninety-four.

24          THE COURT:  Okay.  So the alternates will then be

25  Alternate One is 82, Alternate Two is 88, Alternate Three is

1    89 and Alternate Four is 92.

2          MS. HAJJAR:  I'm sorry, Your Honor.  I think we just

3    made an error with the numbers.

4          THE COURT:  All right.

5          MS. HAJJAR:  Our last strike, I think, should be 88,

6    not 94.

7          THE COURT:  Wait.  Say that again?

8          MS. HAJJAR:  I'm sorry about that.  We struck, I

9    believe --

10          THE COURT:  You want to keep 94 but you want to

11    strike 88?

12          MS. HAJJAR:  Exactly.  So the government's strikes

13    should be 86 and 88.

14          THE COURT:  So 82 is now Alternate One, 89 is

15    Alternate Two, 92 is Alternate Three and 94 is Alternate Four.

16          All right.  So I think we're ready to -- do you have

17    any questions?  Do you want me to read out the numbers?

18          MS. DEAN:  Please.  Thank you.

19          THE COURT:  So I have Juror No. One will be Virginia

20    Sigal.  Juror Two will be Peter Chakery.  Three is Paul Flanz.

21    Four is Kylie Chow.  Five is Mark Sabella.  Six is Jo Ann

22    Sison.  Seven is Shawn Liang.  Eight is Sarah Mejia.  Nine is

23    Stanley Zeng.  Ten is Rochelle Adams.  Eleven is Patricia

24    Zinke.  Twelve is Adam Mak.  Alternate One is Peter Lim.

25    Alternate Two is Kenrick Lau.  Alternate Three is Eddison

1   Jones.  And Alternate Four is Kenya Benn.

2               MR. CECUTTI:  That's what we have, Your Honor.

3               THE COURT:  Okay.  Great.  So let's bring them in.

4   Everybody will be free to sit where they want.  I'll call out

5   the names and they'll be seated in the jury box.

6               (Prospective jurors enter.)

7               THE COURT:  You can sit wherever you want and I'll

8   just call out who will be sitting on this jury.

9               All right.  So this is the results episode of

10  today's proceedings.  We have picked our twelve jurors and

11  four alternates.  So when I call out your name, Ryan will

12  direct you to the appropriate seat.

13              So Juror No. One will be Virginia Sigal.  Juror No.

14  Two is Peter Chakery.  Juror No. Three is Paul Flanz.

15  Juror Four is Kylie Chow.  Juror Five is Mark Sabella.

16  Juror Six is Jo Ann Sison.  Juror Seven is Shawn Liang.

17  Juror Eight is Sarah Mejia.  Juror Nine is Stanley Zeng.

18  Juror Ten is Rochelle Adams.  Juror Eleven is Patricia Zinke.

19  Juror Twelve is Adam Mak.  Alternate Juror No. One is Peter

20  Lim.  Alternate Juror No. Two is Kenrick Lau.  Alternate Juror

21  No. Three is Eddison Jones.  And Alternate Juror No. Four is

22  Kenya Ben.

23              Is this jury acceptable to the government?

24              MS. DEAN:  Yes, Your Honor.

25              THE COURT:  Is this jury acceptable to the

1   defendant?

2           MR. CECUTTI:  Yes, Your Honor.

3           THE COURT:  All right.  We have a jury.  So thank

4   you very much.

5           For those of you who were not picked as a juror,

6   thank you so much for your participation today.  I hope that

7   you found this if not enjoyable, at least interesting, and I

8   hope that you will get an opportunity to serve on a jury in

9   the future.  So you are excused.  Thank you very much.  Please

10  go back to the second floor and check out.

11          (Prospective jurors as indicated excused.)

12          THE COURT:  All right.  Please be seated, everyone.

13          Congratulations.  So what we're going to do now is

14  Donna Greene from Judge Donnelly's Chambers will show you

15  where the jury room is and that's where you will convene and

16  spend the time on trial.  She'll give you more details on when

17  to report and all those other good things.

18          My participation in this case ends here.  Thank you

19  so much.  This has been delightful, you've all been really

20  wonderful, and I really enjoyed meeting all of you.  So good

21  luck and I hope this is a good experience for you.

22          Thank you very much.

23          (Jury exits.)

24          THE COURT:  All right.  So thank you everybody and

25  good work getting this all done in one day.

1          Were there any last issues to discuss?

2          MS. DEAN:  Not from the government.  Thank you.

3          THE COURT:  Mr. Cecutti?

4          MR. CECUTTI:  No, Your Honor.

5          THE COURT:  Thank you, everybody.

6          You'll hear from Judge Donnelly what your next steps

7   are.

8          Thank you very much, everyone.

9          MR. CECUTTI:  Thank you.

10          (Matter concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25