UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,    : 20-CR-549(AMD)
    :
    :
    :
    :
   -against-    : United States Courthouse
    : Brooklyn, New York
    :
    :
CORY MARTIN,    : Wednesday, November 6, 2024
    : 11:30 a.m.
    Defendant.    :
    :
    :

- - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE ANN M. DONNELLY
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Government:    BREON S. PEACE UNITED STATES ATTORNEY
    EASTERN DISTRICT OF NEW YORK
    271 Cadman Plaza East
    Brooklyn, New York 11201
    BY:EMILY J. DEAN
    Assistant United States Attorney

For the Defendant:    LAW OFFICE OF ANTHONY CECUTTI
    305 Broadway - Suite 700
    New York, New York 10007
    BY:ANTHONY CECUTTI, ESQ.

    THE LAW FIRM OF KESTINE M. THIELE
    305 Broadway - Suite 700
    New York, New York 10007
    BY:KESTINE M. THIELE, ESQ.

Court Reporter:    LINDA A. MARINO, OFFICIAL COURT REPORTER
    225 Cadman Plaza East/Brooklyn, NY 11201
    lindacsr@aol.com
Proceedings recorded by mechanical stenography, transcript
produced by Computer-Aided Transcription.

1      THE COURTROOM DEPUTY:  This is criminal cause for

2 sentencing, Docket No. 20-CR-549, USA v. Cory Martin.

3      Counsel, state your appearance, Government first.

4      MS. DEAN:  Good morning, your Honor.  Emily Dean for

5 the Government accompanied by Teddy Rader, paralegal

6 specialist.

7      THE PROBATION OFFICER:  Jeremy Toner on behalf of

8 the probation department.

9      THE COURT:  Good morning.

10      MR. CECUTTI:  Good morning.  Anthony Cecutti and

11 Kestine Thiele for Cory Martin, who is present and standing to

12 my left.

13      THE COURT:  Good morning, everyone.

14      Does Mr. Martin have any family here today?

15      MR. CECUTTI:  No, your Honor.  The majority of

16 Mr. Martin's family lives out of New York City or state.

17      THE COURT:  That's what I thought.  Thank you.

18 Everybody can have a seat.

19      We're here today for sentencing.  Mr. Martin was

20 convicted after a jury trial of murder for hire, murder for

21 hire conspiracy, wire fraud conspiracy, aggravated identity

22 theft, and fraudulent use of identification.

23      I'm going to go over the things that I've reviewed

24 in connection with today's proceedings and just tell me if

25 I've missed anything.  I obviously tried the case.

1    But in addition to that, the presentence

2  investigation report, including the probation department's

3  sentencing recommendation, which I believe both sides have.

4    Is that correct?

5    MS. DEAN:  Yes, your Honor, and the addendum as

6  well.

7    THE COURT:  Yes, and the addendum.

8    And then Mr. -- the defense sentencing packet, which

9  includes memoranda and a report from a mitigation specialist.

10  I also have the Government's sentencing memorandum.

11    Is there anything else that I should have?

12    MS. DEAN:  No, your Honor.

13    MR. CECUTTI:  No, your Honor.

14    THE COURT:  Counsel, I know that you have discussed

15  the presentence report with Mr. Martin; is that correct?

16    MR. CECUTTI:  Yes, your Honor, we have discussed the

17  presentence report with him, along with the addendum and

18  sentencing recommendation.

19    THE COURT:  Is either side seeking an evidentiary

20  hearing?

21    MS. DEAN:  No, your Honor.

22    MR. CECUTTI:  No, your Honor.

23    THE COURT:  This is somewhat academic, but I am

24  required to calculate the guidelines range, which I will do.

25    Probation has calculated a total offense level of 43

1   and Counts One and Two are grouped pursuant to Guidelines

2   Section 3D1.2B, murder for hire and murder for hire conspiracy

3   in count group one.  There's a base level of 43 with one

4   adjustment which is pursuant to Guideline Section 3B1.1C;

5   there's a two-point additional adjustment because Mr. Martin

6   was a leader in the criminal activity, and that leads to a 45,

7   Level 45.

8          Counts Three and Five are also grouped for guideline

9   calculations purposes and this would be count group two.  So,

10  that's wire fraud conspiracy and the fraudulent use of

11  identification.  There's a base offense level of seven with

12  two applicable adjustments; the first is a ten-point upward

13  adjustment pursuant to Guideline Section 2B.1B1F and that is

14  because Mr. Martin is accountable for a total loss that

15  exceeds $150,000; there's an additional two-point upward

16  adjustment because Mr. Martin was the leader of the criminal

17  activity, resulting in 19 points.

18         For Count Four, the aggravated identity theft, the

19  guideline sentence is the statutory term that's required,

20  which is two years imprisonment.  So, doing a multiple count

21  adjustment, Probation applied the highest offense level of 45

22  and there are no additional points added to this offense.

23         Under the guidelines, an offense level that's over

24  43 is treated as an offense level of 43 and that's why the

25  total offense level is 43.

1          Mr. Martin has one criminal history point.

2          And, so, under the guidelines the total offense

3    level of 43 plus the criminal history category of I, the

4    guideline range is life imprisonment, but, of course, by

5    statute there are mandatory terms of life for Counts One and

6    Two.  And as I said before, the mandatory term of imprisonment

7    for Count Four is two years.

8          So, I don't understand anybody to be objecting to

9    the guideline calculation; is that correct?

10         MS. DEAN:  That's correct, your Honor.

11         MR. CECUTTI:  Yes, your Honor, that's correct.

12         THE COURT:  I know there is an objection generally

13   to the presentence report insofar as it described the offense

14   conduct, and I guess that's reference to Paragraph 9 through

15   28.

16         MR. CECUTTI:  Yes, that's correct, your Honor.  We

17   are objecting to the entirety of Part A, the offense conduct,

18   which I believe is captured in Paragraphs 9 through 28.

19         THE COURT:  So you object to 9 through 28.

20         MR. CECUTTI:  Yes.

21         THE COURT:  Okay.  That objection is overruled.

22         So, I adopt the presentence investigation report in

23   its entirety.

24         Now, I understand that members of Ms. Odom's family

25   would like to speak.  And I think the best way to do that is

1  to maybe take them before I hear from the lawyers unless you

2  all feel otherwise.

3           MS. DEAN:  That's fine with the Government, your

4  Honor.

5           There has been a request to change who is speaking.

6  Ms. Odom, Brandy's mother, would still like to speak today,

7  but the notice we had given was that one of Brandy's sisters

8  would speak today.  If the Court will allow and if the defense

9  doesn't have an objection, instead of Brandy's sister speaking

10 the request is for two family friends who have been present

11 throughout the trial and are present here today to speak.

12 That's Mr. Jason Savage and Ms. Erica Stanback.

13          THE COURT:  You don't have any objection.

14          MR. CECUTTI:  No objection, your Honor.

15          THE COURT:  I don't know who you want to begin.

16          I also want to make this so we can hear.  You want

17 to have her come up here?

18          And this is Ms. Odom's mother; is that right?

19          MS. DEAN:  Is it fine for Ms. Odom to be seated?

20          THE COURT:  Yes.  Let's make sure she has access to

21 the microphone.

22          Take your time and keep in mind the court reporter

23 is taking down what you say.  So, take as much time as you

24 need, just speak slowly.  And let's pull the microphone up

25 just a little bit so we can hear you.

1          MS. ODOM:  Cory --

2          Can you hear me?

3          THE COURT:  Even a little closer.  That's great.

4   Speak right into it.

5          MS. ODOM:  Cory, I only have one question for you

6   and "why" is not it, but rather do you know what it feels like

7   for a mother to lose her child?

8          If not, then let me elaborate the hurt that my heart

9   felt and still feels.

10         I cry every minute, every hour, every night, and

11  every day.  I, as a mother, will never witness Brandy get

12  married, have kids, or meet her new niece.  I no longer have

13  that privilege to hear her say Happy Mother's Day or just to

14  see her and hear her voice.  I miss all of that.

15         I sometimes have good and bad days where it's hard

16  for me to sleep.  Sleep don't come easy for me because when I

17  sleep, I can see my beautiful and chocolate baby when we are

18  so happy and in a good place.  We are having so much fun and I

19  can see her laughing, telling me that she loves me.  I can see

20  her.  I can touch her.  Those are my happy days.

21         Then I have to wake up and that's when the reality

22  hits me really, really hard because now that I am awoke, I

23  cannot see her or touch her or hear her voice.  And that's

24  when I have my bad days.  And that hurts me real bad.

25         I just want my Brandy back but I know in my heart

1   that it is not possible.  So, yes, I will continue looking for

2   those dreams that she brings to me.  That is her way of

3   showing me that she is still here.  I am so grateful for those

4   dreams.

5           Cory, I may forgive you one day because I know that

6   is what Brandy would want because that was the kind of person

7   she was.  But today will not be that day.  May God have mercy

8   on your soul because I do not.

9           I said my piece and I told my truth.  Now I will

10  leave it in God's hands now because only God knows what he has

11  in store for you.

12          THE COURT:  Thank you so much.

13          MS. ODOM:   Thank you.

14          THE COURT:  Ms. Dean, can you remind us who the next

15  person is?

16          MS. DEAN:  Jason Savage, a family friend who was

17  like an uncle to Brandy.

18          THE COURT:  Mr. Savage, if you can have a seat right

19  there and just take your time, okay?

20          MR. SAVAGE:  Cory, this type of evil that you

21  conjured up is on another level.  And even though I can't

22  judge you, I know God will.  And to tear apart this beautiful

23  family by what you did is disgusting and perverse and I hope

24  the judge finds it in her rights to keep you locked up.

25          THE COURT:  Thank you so much.

1          Was there one other person?

2          MS. DEAN:  One more.  Ms. Erica Stanback, also a

3    close family friend who was like an aunt to Brandy.

4          THE COURT:  Good morning.  I'm going to ask you to

5    speak into the microphone.

6          MS. STANBACK:  Good morning.  My name is Erica

7    Stanback.  I've known Brandy since she was young.  I'm more

8    than a friend to the family, I'm like an aunt.  Watched her

9    grow up.  She used to come play in my room with the kids.  So,

10   it's kind of hard to grasp around this whole thing with her

11   death and how she passed.  So, what I'm saying is just coming

12   from the heart.

13         What I have to say to Cory is to be a father to a

14   child, and a girl child, it's kind of hard to grasp around

15   that for you harming someone else's child and a daughter.  And

16   you have a daughter.

17         I just pray for your kids because they're the ones

18   who have to suffer knowing that their parent is a murderer.

19   And that's going to be the hardest thing for you to bear in

20   life.

21         I just pray that you think about everything that you

22   did.  Because there's always consequences to what you do.  You

23   may not get caught now, you may not get caught later, but you

24   will get caught when you're doing something you're not

25   supposed to do.

1      So, may God have mercy on your soul and may God

2 bless your kids because they are the ones who's gonna be the

3 ones suffering from all of this in the future.

4      THE COURT:  Thank you so much.

5      Ms. Dean, is there anybody else?

6      MS. DEAN:  No, your Honor.

7      THE COURT:  All right.  I have reviewed all of the

8 sentencing submissions and I'll hear from the parties in the

9 following order:  First, from Mr. Cecutti; then from the

10 Government; and then Mr. Martin, if you have something you'd

11 like to say, I'll hear from you as well.

12      Mr. Cecutti?

13      MR. CECUTTI:  Your Honor, this is clearly a

14 difficult and sad day for everyone here.  We have represented

15 Cory for four years.  We've gotten to know him extremely well.

16 And the one thing that I wanted to impress upon the Court is

17 that Cory takes this entire process extremely seriously and

18 he's done a lot to grow and change.

19      Mandatory life sentences are unique in that they

20 send a particular message.  And that message is that the

21 particular person receiving that sentence is not redeemable.

22 And for Cory, that is not true.  He is very much a redeemable

23 person.  And we've seen him over four years change and grow

24 and we completely believe that he will continue to do so

25 moving forward.

1    Cory has a family and, as your Honor just learned

2  and also learned from our submission, has children.  He loves

3  his family, he loves his children.  His family loves him and

4  his children love him.

5    He is fundamentally an individual and a human being,

6  somebody like all of us in this room; lives and breathes, has

7  goals and interests and desires, has a purpose, and has a

8  meaning that he wants to pursue for his life.

9    He's not the same person that he was in 2017 or

10  2018.  He's not the same person in 2019, 2020.  He's not the

11  same person as last year.  Again, your Honor, he has changed,

12  he has grown, and he will continue to change and grow.  He's

13  committed to helping other people and he's already begun to do

14  that at Essex Correctional Center, where he's helping younger

15  inmates.

16    He also has done programs.  He wants to continue to

17  program, he wants to work, he wants to do everything he can to

18  better himself while he's incarcerated.  And he's focused on

19  finding purpose and meaning in his life.  And he knows that he

20  will have to do that under adverse circumstances and he's

21  committed to doing that.

22    Cory is, your Honor, being redeemed.  He can be

23  redeemed and I believe he will be redeemed.

24    Thank you.

25    THE COURT:  Thank you, Mr. Cecutti.

1      Ms. Dean?

2      MS. DEAN:  Thank you, your Honor.  I'll be

3 relatively brief.  Your Honor sat through the trial and you've

4 seen our submissions and you know this case backwards and

5 forwards and what it entails.

6      I agree that mandatory life is a sentence that's

7 supposed to send a message.  It should be reserved for the

8 most serious of cases and this is most certainly that.

9      In my career, two-thirds of which has been all

10 homicide work, this is the worst case I've ever seen.  This is

11 the most brutal case, from the strangulation to the sexual

12 assault that was designed to make it look like a customer

13 killed Brandy to the gratuitous dismemberment meant to throw

14 law enforcement off the track to the premeditation, which was

15 stunning in this case.  Over a year of planning.  The thought

16 processes that this defendant went through thinking about ways

17 to throw law enforcement off, the studying for a crime that

18 involved this brutal murder and dismemberment.  The details of

19 this crime, they're just simply stunning, your Honor.  They

20 are deserving of the mandatory life sentence that is required

21 in this case.

22      And on top of that, woven throughout the facts of

23 Brandy's murder was the horrific abuse that Adelle Anderson,

24 that Brandy Odom, that Ms. Anderson's children endured at the

25 hands of this Defendant.  That is woven throughout this case,

1   that's part of this case.  The subplot before deciding to kill

2   Brandy Odom to kill another adult and to even kill children;

3   an eight-year-old and a two-year-old child, that was woven

4   throughout this case.

5           The Defendant was the mastermind of all of that.

6   And the Government in this case has asked, of course, for the

7   required mandatory life sentence but we've also asked for

8   consecutive time; 20 years consecutive time, on Counts Three

9   and Five, and two years consecutive time on Count Four.

10          The time that we've asked for, the sentence we've

11  asked for, is meritous in this case.

12          THE COURT:  Thank you so much.

13          Mr. Martin, is there anything that you want to say?

14          THE DEFENDANT:  No, your Honor.

15          THE COURT:  Okay.  I want to begin by just reminding

16  the parties of the considerations that I make in determining

17  the sentence in this case, which is mandatory life

18  imprisonment, but I think it's important to remind ourselves

19  of what the statutory goals are in sentencing.  And it is that

20  they reflect the seriousness of the crime, that they promote

21  respect for the law, that they act as a deterrent, that they

22  protect the public.  And those are the factors in this case

23  that more than warrant a life sentence.

24          Your very excellent lawyers have taken the position

25  that life sentences serve no practical or moral purpose.  That

1   is perhaps something that we can debate.  And there may very

2   well be cases in which the imposition of a life sentence works

3   an injustice or it doesn't serve a practical or moral purpose.

4   But this is not one of those cases.

5           Anyone who has made a career in criminal justice --

6   lawyers, FBI agents, marshals, police officers -- know a lot

7   about violent crime and what human beings are capable of doing

8   to one another.  It's all too often that we see senseless gang

9   violence, violence against children, murders in flashes of

10  anger.  And in many of those cases, maybe even the majority of

11  them, it's possible to determine some motivation, it's

12  possible to have hope for rehabilitation, and it's possible to

13  hope that somebody maybe could be returned to the community

14  one day.

15          But the circumstances of this case do not permit

16  that hope.  This is not a murder that happened in a flash of

17  anger, it was not part of a senseless gang war.

18          Mr. Martin, you are not a teenager or young man who

19  was lured into violence.  One of the difficulties about this

20  case is finding words that are adequate to describe the horror

21  of it.  Even the most seasoned investigator will not soon

22  forget what it is that you did to Brandy Odom.  Certainly the

23  people in the park who found her dismembered body will never

24  forget it.

25          And this is something that you systematically

1  plotted for more than a year:  The murder of a completely

2  innocent person, Brandy Odom, whose only mistake was to trust

3  you and Adelle Anderson.

4          And as the Assistant United States Attorney pointed

5  out, before focusing on her you considered killing other

6  people, including two little children.  Those children's sin

7  in your mind was they weren't your children.  And while you

8  decided not to murder them, you subjected them to hideous

9  abuse, trying to throw the younger child out the window; a

10  grown man punching an eight-year-old in the face, putting a

11  gun in his mouth and threatening to blow his head off.  It's

12  stomach turning.

13          Then you trained your sights on Brandy, who you

14  described as nothing but a whore, someone nobody loved and

15  nobody cared about.  Certainly you didn't care anything about

16  her or even recognize her as anything other than a source of

17  money for you.

18          You did not see her as a human being who deserved

19  basic respect and dignity.  You made her work for you.  You

20  took control over her, her bank account, her identification.

21  And then you murdered her and you strangled her.

22          And the evidence shows that she fought you back.  It

23  takes a long time to strangle somebody.  It's an agonizing

24  death.

25          And then after you murdered her, you brutalized her

1   body and discarded her as though she were just garbage.

2           But you were wrong about Brandy having no one.

3           And I do want to take this time to acknowledge the

4   people who loved and cared for Brandy; her mother, her sister,

5   all of those people who attended every day of this trial, and

6   had to endure hearing and seeing what you did to their child,

7   their sister, their family member, their friend.

8           I think one thing that Brandy's family recognized in

9   this case were there were so many people who did care for

10  Brandy.  Her customers who said she was a good person, she had

11  plans, she had dreams.  And the people who investigated this

12  case; the police officers, detectives, agents, and

13  prosecutors, who spent years leaving no stone unturned to

14  gather the evidence that would bring Brandy's killer to

15  justice.  Brandy mattered to them too.

16          Of course, the evidence proved without question that

17  you committed these indescribable and despicable acts and that

18  evidence painted a devastating picture.  You were willing to

19  do anything to achieve your goal of making money; abusing

20  Adelle Anderson, threatening to kill her children, planning to

21  kill them but deciding against it because Brandy was easier.

22          Researching how you could kill Brandy without

23  getting caught, how you could dispose of her body.

24          There is not a shred of evidence in this record that

25  you ever had a single second thought about what you were

1    doing.  Not once during those months and months of planning.

2    No suggestion that you had a pang of conscience, any regret

3    for what you were going to do or after you did it.  You kept

4    trying to get the money without a second thought.

5            And that's why a life sentence in this case is not

6    only warranted, but because of the utter depravity of your

7    conduct and of your crimes, it is necessary to protect the

8    public from you, from a person who viewed other human beings

9    as disposal, as vessels to make money, nothing more.  And your

10   conduct in this case demonstrates that you are a remorseless

11   predator who is a danger to the community whenever you are at

12   liberty.  I am confident that you would do this again if you

13   were given the opportunity.

14           On your conviction for murder for hire and murder

15   for hire conspiracy, the sentence is life imprisonment on each

16   count to run concurrently.

17           On your conviction for wire fraud conspiracy and

18   fraudulent use of identification, 20 years sentence on each,

19   concurrent with each other and concurrent with the life

20   sentences imposed on Counts One and Two.

21           On your conviction for aggravated identity theft,

22   it's two years that runs consecutive to the sentences on the

23   other counts.

24           Given the statutory requirements for sentence, there

25   will be no term of supervised release.  There will be no fine.

1    There's a $500 special assessment.

2              And then I do need to ask the Government on the

3    question of restitution whether or not you've prepared an

4    order.

5              MS. DEAN:  Your Honor, the defense has requested --

6    with respect to the $16,726.89, the defense has requested

7    underlying documentation for that, which I have spoken to

8    Nicole Odom about and she's going to work with both her

9    employer to provide underlying documentation for the pay loss

10   and also to talk to the funeral home and look for

11   documentation with respect to those fees as well.

12             So, if we could have some portion of that 90 days

13   where we can return with that documentation, that would be

14   helpful.

15             THE COURT:  That's fine.  Do you need a date for

16   that?

17             MS. DEAN:  I think it might make sense to set a

18   date.

19             THE COURT:  I think so too.

20             Maybe 30 days out?

21             MS. DEAN:  I think that's fine.  Thank you, your

22   Honor.

23             THE COURT:  December 6?

24             And Mr. Cecutti, I'm just doing that for I guess a

25   control date.

1          Are you envisioning a hearing of any sort?

2          MR. CECUTTI:  No, your Honor.

3          Since the last date, we hadn't received any

4  documentation.  So, I just ask the Government to provide us

5  with any documentation they have to support the claim of

6  restitution.

7          THE COURT:  Okay.  So, December 6 will be the date

8  for providing that documentation.

9          And then I think it might make sense to set another

10 date for advising the Court of what next steps are, and maybe

11 that will be early January.

12         MS. DEAN:  That sounds good, your Honor.

13         MR. CECUTTI:  That's fine.

14         THE COURT:  January 14.

15         And I think, unless there's -- I don't think there's

16 any need to come back into court unless you want -- well,

17 perhaps there is.

18         Why don't we set a January 14 date for an update and

19 we'll see what the next steps are after that, okay?

20         MS. DEAN:  Thank you, your Honor.  Yes.

21         THE COURT:  All right.  Anything Probation wants to

22 add?

23         THE PROBATION OFFICER:  No, your Honor.

24         THE COURT:  Anything from the parties?  Anything

25 I've forgotten to do?

1          Sorry, Probation has something.

2          THE PROBATION OFFICER:  The special assessment, your

3   Honor?

4          THE COURT:  I think I said it, the $500, but always

5   good to be reminded.

6          Do we have to dismiss the underlying --

7          MS. DEAN:  We do.  Yes, thank you.

8          This is the superseding indictment, so we move to

9   dismiss the indictment underlying the superseding indictment,

10  the original indictment.

11         THE COURT:  That's dismissed.

12         Mr. Cecutti, I neglected to ask you what you wanted

13  me to recommend, if you want me to recommend a place of

14  incarceration.

15         MR. CECUTTI:  Yes, your Honor please.

16         We're asking that the Court recommend that Cory be

17  designated to FCI Petersburg or as close to Virginia Beach,

18  Virginia, as possible to facilitate visits with his family.

19         THE COURT:  Okay.  I will make those --

20         MR. CECUTTI:  Additionally, if your Honor could also

21  recommend to the Bureau of Prisons that Cory be availed all

22  opportunities for programming and vocational training while

23  he's incarcerated.

24         THE COURT:  Okay.  I'll make that recommendation.

25         MR. CECUTTI:  Thank you.

1          MS. DEAN:  Your Honor, I might have just missed it

2     with everything we were going through, but did you already

3     advise on the right to appeal?

4          THE COURT:  Not yet.  That was my next thing.

5          Mr. Martin, you do have the right to appeal your

6     conviction.  If you file a notice of appeal, you must do so

7     within -- hold on for just a second.

8          If you wish, the Clerk will file and serve a notice

9     of appeal for you.  If you can't afford to pay for an

10    appellate lawyer, you can apply to have a lawyer appointed.

11    And if you can't afford to pay the filing fees, you can apply

12    for leave to appeal in forma pauperis.

13         Anything else that I need to put on the record?

14         MS. DEAN:  Nothing from the Government, thank you.

15         MR. CECUTTI:  No, your Honor.  We will file that

16    notice of appeal today.

17         THE COURT:  I do want to take this opportunity to

18    extend my sympathies to Ms. Odom's family who supported her at

19    every day of this trial.  Thank you so much.

20

21         (Matter concluded.)

22

23

24

25